**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

                    **Plaintiffs,**

        -against-

DMITREI ABRAMOV, SERGEY AKOPYAN, YULIA BILYK, ARTUR DENISOV, THE ESTATE OF YURIY DENISOV, ALEKSANDR FIRAYNER, OLEKSIY GERASYMENKO, YURIY GINDINOV, ARIS GRIGORYAN, VALERIA HAMAMY, OLGA IZRAYEV, VLADIMIR KAMINSKY, MURDAKHAY KHAIMOV, BORIS KHANIS, ZLATISLAV KOMISARCHIK, VLADISLAV KRAITER, INNA LYUBRONETSKAYA, GALINA MILERMAN, URIYEL MIRZAKANDOV, ALEKSANDR NISANOV, INNA PINSKY, VADIM POVZLOV, ELMAN RAFAILOV, TATIANA RODIONOVA, OLEG SHNAIDER, INNA SHILIMOV, BORIS SOBOLEV, GIKOR SONAYAN, MAKSYM TKACHENKO, YEFIM VELNIK, ALEXSANDR VERBITSKY, EDUARD ZARUBIN, ABSOLUTE MEDICAL SUPPLIES INC., ALLEVIATION PRODUCTS CORPORATION, ANY MEDICAL SUPPLY, INC., BENTO ORTHO INC., BEST CHOICE MEDICAL SUPPLY, INC., CHAPA PRODUCTS CORPORATION, EMPIRE STATE MEDICAL SUPPLIES, INC., EXCEL PRODUCTS INC., FIRST AMERICAN ALLIANCE, INC., FOREST MEDICAL EQUIPMENT, INC., HEALING HEALTH PRODUCTS, INC., INFINITE ORTHO PRODUCTS INC., LIBERTY SURGICAL SUPPLIES INC., MAIGA PRODUCTS CORPORATION, MAXFORD INC., MDAX INC., MILLDORP INC., NEW UTRECH SERVICES, INC., NUMED MEDICAL SUPPLY, INC., PACIFIC SURGICAL SUPPLY, INC., PAIN FREE LEAVING, INC., PPSC MEDICAL SUPPLY, INC., PRAVEL INC., PREFERRED ORTHO PRODUCTS INC., PROMED DURABLE EQUIPMENT, INC., QUALITY CUSTOM MEDICAL SUPPLY, INC., QUALITY MEDICAL SUPPLY INC., RIDGE MEDICAL SUPPLIES CORP., SIGMA MED CARE INC., SOLUTION BRIDGE INC., SOVERA MEDICAL SUPPLY, CORP., STATE MEDICAL SUPPLY INC., SURE WAY NY INC., T & S MEDICAL SUPPLY CORPORATION, TOWN SUPPLY, INC., VERASO MEDICAL SUPPLY, CORP., WELLMAX PRODUCTS, CORP. AND Y.A.M. MEDICAL SUPPLY, INC., MARGARITA AKMALOVA, GRIGOL APRESYANTSI, SERGEY MEZKULA, VALERIY SEMENIKHIN, AND VADIM ZALOGIN, AMERICAN MOBILITY MEDICAL, INC., BIV WHOLESALE INC., COMDEX INC., GLOBAL BEST DEAL, INC., GRIGOL SUPPLY, INC., IG&NAT SERVICES, INC., IMPREZZA NYC INC., METRA WHOLESALE INC., ONE STOP WHOLESALE, INC., ORTIZ OMEGA CORP., VDS MEDICAL SUPPLY, INC., VZ GROUP, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

                    **Defendants.**

-------------------------------------------------------------------------------- X

CIVIL ACTION

NO:_____

COMPLAINT

(TRIAL BY JURY DEMANDED)

Plaintiffs Allstate Insurance Company,  Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company (collectively "Plaintiffs"), by their attorneys, Stern & Montana, LLP, for their Complaint against Defendants Dmitrei Abramov ("Abramov"), Sergey Akopyan ("Akopyan"), Yulia Bilyk ("Bilyk"), Artur Denisov ("A. Denisov"), the Estate of Yuriy Denisov, Aleksandr Firayner ("Firayner"), Oleksiy Gerasymenko ("Gerasymenko"), Yuriy Gindinov ('Gindinov"), Aris Grigoryan ("Grigoryan"), Valeria Hamamy ("Hamamy"), Olga Izrayev ("Izrayev"), Vladimir Kaminsky ("Kaminsky"), Murdakhay Khaimov ("Khaimov"), Boris Khanis ("Khanis"), Zlatislav Komisarchik ("Komisarchik"), Vladislav Kraiter ("Kraiter"), Inna Lyubronetskaya ("Lyubronetskaya"), Galina Milerman ("Milerman"), Uriyel Mirzakandov ("Mirzakandov"), Aleksandr Nisanov ("Nisanov"), Inna Pinsky ("Pinsky"), Vadim Povzlov ("Povzlov"), Elman Rafailov ("Rafailov"), Tatiana Rodionova ("Rodionova"), Oleg Shnaider ("Shnaider"), Inna Shilimov ("Shilimov"), Boris Sobolev ("Sobolev"), Gikor Sonayan ("Sonayan"), Maksym Tkachenko ("Tkachenko"), Yefim Velnik ("Velnik"), Alexsandr Verbitsky ("Verbitsky"), Eduard Zarubin ("Zarubin"), (collectively "**Retail Owners**")**;** Absolute Medical Supplies Inc. ("Absolute Medical Supplies"), Alleviation Products Corporation ("Alleviation Products"), Any Medical Supply, Inc. ("Any Medical Supply"), Bento Ortho Inc. ("Bento Ortho"), Best Choice Medical Supply, Inc. ("Best Choice Medical Supply"), Chapa Products Corporation ("Chapa Products"), Empire State Medical Supplies, Inc. ("Empire State Medical Supplies"), Excel Products Inc. ("Excel Products"), First American Alliance, Inc. ("First American Alliance"), Forest Medical Equipment, Inc. ("Forest Medical Equipment"), Healing Health Products, Inc. ("Healing Health Products"), Infinite Ortho Products Inc. ("Infinite Ortho Products"), Liberty Surgical Supplies Inc. ("Liberty Surgical Supplies"), Maiga Products Corporation ("Maiga Products"), Maxford Inc. ("Maxford"), MDAX Inc. ("MDAX"), Milldorp

2

Inc. ("Milldorp"), New Utrech Services, Inc. ("New Utrech Services"), Numed Medical Supply, Inc. ("Numed Medical Supply"), Pacific Surgical Supply, Inc. ("Pacific Surgical Supply"), Pain Free Leaving, Inc. ("Pain Free Leaving"), PPSC Medical Supply, Inc. ("PPSC Medical Supply"), Pravel Inc. ("Pravel"), Preferred Ortho Products Inc. ("Preferred Ortho Products"), Promed Durable Equipment, Inc. ("Promed Durable Equipment"), Quality Custom Medical Supply, Inc. ("Quality Custom Medical Supply"), Quality Medical Supply Inc. ("Quality Medical Supply"), Ridge Medical Supplies Corp. ("Ridge Medical Supplies"), Sigma Med Care Inc. ("Sigma Med Care"), Solution Bridge Inc. ("Solution Bridge"), Sovera Medical Supply, Corp. ("Sovera Medical Supply"), State Medical Supply Inc. ("State Medical Supply"), Sure Way NY Inc. ("Sure Way NY"), T & S Medical Supply Corporation ("T & S Medical Supply"), Town Supply, Inc. ("Town Supply"), Veraso Medical Supply, Corp. ("Veraso Medical Supply"), Wellmax Products, Corp. ("Wellmax Products") and Y.A.M. Medical Supply, Inc. ("YAM Medical Supply") (collectively **"Retailers");** Retail Owners and Retailers are collectively referred to as "**Retail Defendants**"), Margarita Akmalova ("Akmalova"), Grigol Apresyantsi ("Apresyantsi"), Sergey Mezkula ("Mezkula"), Valeriy Semenikhin ("Semenikhin"), and Vadim Zalogin ("Zalogin"), (collectively "**Wholesale Owners**"); American Mobility Medical, Inc. ("American Mobility Medical"), Biv Wholesale Inc. ("Biv Wholesale"), Comdex Inc. ("Comdex"), Global Best Deal, Inc. ("Global Best Deal"), Grigol Supply, Inc. ("Grigol Supply"), IG&NAT Services, Inc. ("IG&NAT Services"), Imprezza NYC Inc. ("Imprezza NYC"), Metra Wholesale Inc. ("Metra Wholesale"), One Stop Wholesale, Inc. ("One Stop Wholesale"), Ortiz Omega Corp. ("Ortiz Omega"), VDS Medical Supply, Inc. (VDS Medical Supply), and VZ Group, Inc. ("VZ Group") (collectively "**Wholesalers**;" Wholesalers and Wholesale Owners are collectively referred to as "**Wholesale Defendants**"), John Does 1 through 20 and ABC Corporations 1 through 20 (collectively the Retail Defendants and Wholesale Defendants are referred to herein

as "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1.     On information and belief, from at least 2002 and continuing through the date of the filing of this Complaint, Defendants engaged in separate, but fundamentally similar massive schemes to defraud automobile insurance companies, including Plaintiffs, through New York State's No-fault system.

2.     This action seeks to recover more than $980,000.00 that Defendants stole from Plaintiffs through the submission of thousands of false and/or fraudulent insurance claims for durable medical equipment ("DME") and/or orthotic devices.  As used herein, (i) "DME" generally refers to equipment and/or supplies used for medical purposes by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools; and (ii) "orthotic devices" generally refers to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes.  Such items include, but are not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces.

3.     At all relevant times mentioned herein, each and every DME and/or orthotic device supplied by the Retailers was provided pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, as defined below.

4.     To execute the scheme to defraud alleged herein, the Retail Owners, through one or more of the Retailers, entered into separate arrangements with one or more of the Wholesale Defendants and one or more medical clinics operating in the New York metropolitan area that

bill No-fault insurers for medical services (hereinafter "No-fault Clinics") and one or more of the Wholesale Defendants.

5.      On information and belief, pursuant to these agreements and in exchange for kickbacks and/or other financial compensation, the No-fault Clinics, which are not named as defendants in this action, ensured that (i) their associated doctors and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population pursuant to a predetermined course of treatment irrespective of medical necessity, with the prescribed items being dictated by the Retailers; and (ii) the prescriptions were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone.

6.      On information and belief, pursuant to similar agreements, and in exchange for kickbacks and/or other financial compensation, including, but not limited to, a share in the profits of the scheme to defraud, the Wholesale Defendants provided the Retailers with inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices.  Other times, the Wholesale Defendants provided the Retailers with fraudulent wholesale invoices that reflected DME and/or orthotic devices that were never actually provided to Retailers.  In fact, irrespective of whether any DME and/or orthotic devices were actually provided to Retailers, the wholesale invoices typically reflected prices that were up to 20 times the actual prices that the Retailers paid to the Wholesale Defendants.

7.      On information and belief, to create the illusion that the Retailers paid the grossly inflated prices on the wholesale invoices, as more fully alleged in the "Money Laundering Scheme" section below, the Retailers issued checks to the Wholesale Defendants and other purported wholesalers for the full amounts reflected on the wholesale invoices.  The Retailers

then used those checks to demonstrate to Plaintiffs, and others, that they had paid the false wholesale invoice amounts.  In reality, on information and belief, the Wholesale Defendants converted the checks they received from the Retailers to cash and secretly returned to the Retailers up to approximately 98% of the wholesale invoice amounts.  These covert cash transactions were facilitated through various clandestine arrangements among the Retailers, the Wholesale Defendants, check brokers, check cashers and/or others unknown to Plaintiffs.

8.     On information and belief, through these transactions, the Retailers were able to surreptitiously obtain cash, which then was used for, among other things, kickbacks to the No-fault Clinics from which the Retailers purchased prescriptions for DME and/or orthotic devices.

9.     After obtaining the prescriptions from the No-fault Clinics and the inflated invoices from the Wholesale Defendants, the Retail Owners, through their respective Retailers, generated and submitted bills to Plaintiffs, among others, knowingly misrepresenting the actual amounts they paid for the DME and/or orthotic devices as well as the quality of the items purportedly provided.

10.    In order to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device billed was medically necessary, the documents submitted to Plaintiffs by the Retail Owners through their respective Retailers in support of their fraudulent claims, including the wholesale invoices, deliberately omitted and/or misrepresented basic information about the DME and/or orthotic devices, including, but not limited to, the manufacturer, make, model, size, features and/or functions of the item and/or included information that was meaningless in determining the kind and quality of any specific DME and/or orthotic device.

11.    On information and belief, the Retail Owners, through their respective Retailers, routinely purchased basic, low-quality and inexpensive items from the Wholesale Defendants,

but submitted documents, including, but not limited to, inflated wholesale invoices, to insurers, including Plaintiffs, that failed to accurately reflect the actual purchase price of each item.

12.     On information and belief, in support of their claims for reimbursement, and to facilitate the fraud described herein, the Retailer Owners, through their respective Retailers, generated delivery receipts that included a space for the patient's signature to document receipt of each item for which the Retail Owners, through their respective Retailers, billed Plaintiffs.

13.     In some instances where the patient did not sign the delivery receipt, the Retailers, working with the No-fault Clinics, arranged for the No-fault patient's signature to be forged on the delivery receipt, thereby falsely representing that the patient acknowledged receipt of the billed for DME and/or orthotic devices.  By way of example and not limitation, in connection with claims 0279400360-02, 0279400360-03, 0289558057-03 and 0366019073, one or more No-fault Claimants confirmed that the signatures on the delivery receipts submitted to Plaintiffs were forged.

14.     Defendants collectively utilized a common fraudulent blueprint as a business plan, sharing common documentation, using the same fraudulent billing codes, making the same misrepresentations, and engaging in virtually identical patterns of fraud that was not the product of happenstance, but instead evidence of related fraudulent billing schemes that trace back to a common genesis and framework.

15.     In order to execute the same fraudulent blueprint, at all relevant times mentioned herein, the Retail Owners, through their respective Retailers, undertook distinctly common actions, including but not limited to:  (i) paying kickbacks to No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices; (ii) obtaining prescriptions that were provided pursuant to a predetermined course of treatment as opposed to medical need; (iii) paying fees to the Wholesale Defendants in exchange for fraudulent wholesale invoices that the Retailers, in

turn, would use to substantiate bogus claims for reimbursement of No-fault benefits; (iv) arranging for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery of receipt forms pre-signed by Claimants to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular; and (v) systematically submitting bills to insurers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that the Retail Owners, through their respective Retailers, determined should be prescribed by the No-fault Clinics, with virtually every claimant receiving substantially similar DME and/or orthotic devices.

16.     At all relevant times mentioned herein, the Retail Owners, through the Retailers engaged in a fraudulent billing scheme involving the same or similar material misrepresentations and/or omitted material statements in No-fault claims submitted to Plaintiffs for payment.  In that regard, each and every bill and supporting documentation submitted by the Retailers contained the same or similar false representations of material facts, including, but not limited to: (a) false and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants; (b) false and misleading statements as to the amounts the Retailers were entitled to be reimbursed under the No-fault Law; (c) false and misleading statements that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants; (d) false and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed; (e) false and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants, and which failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information necessary to determine whether the charges submitted are legitimate; (f) false and misleading

8

prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, the Retailers paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices.  On information and belief, all of the foregoing was intended to manipulate the payment formulas under the No-fault Law in order to maximize the charges that the Retailers could submit to Plaintiffs and other insurers under the No-fault Law.

17.     By way of further example and not limitation of Defendants' nearly identical parallel schemes to defraud, every Retailer submitted the same type of documentation in support of their claims for reimbursement, including, but not limited to, substantially similar delivery receipts and assignment of benefits forms, containing the same typos, misspellings and stray marks.  By way of example and not limitation, Exhibit "1" in the accompanying Compendium of Exhibits is a spreadsheet containing a representative sample of claims submitted by one or more of the Retailers containing substantially similar delivery receipts and/or assignment of benefits forms that were obviously based on a shared template.

18.     In furtherance of the schemes to defraud alleged herein, Defendants undertook identifiable fraudulent actions pursuant to a common multiple part blueprint under the same reimbursement system billing for the same DME, following the same billing protocol, using the same billing codes and making the same multiple misrepresentations.

19.     By way of further example and not limitation that Defendants' schemes to defraud operated in a fundamentally similar manner, the Retail Defendants submitted bills to Plaintiffs for reimbursement using the same types of codes that were not recognized by, or otherwise listed in, the relevant New York State Medicaid fee schedule ("phantom codes") in effect at the time

for the same items the Retailer purported to supply to patients.   By billing under the same phantom codes for the same items, the Retailers charged Plaintiffs inflated amounts for cheap DME, materially misrepresenting the amounts that they were entitled to receive and deceived Plaintiffs, among others, into paying many times over what the No-fault Law would have otherwise allowed for reimbursement.   By way of example and not limitation, Exhibit "2" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the Retailers submitted fraudulent bills for Non-Fee Schedule items, using the same phantom codes for the same items.

20.   In addition to utilizing the same phantom codes for the same items, the Retail Defendants engaged in other types of billing fraud that were identical in scope.   For example, Retailers Any Medical Supply, Best Choice Medical Supply, Excel Products, Healing Health Products, Liberty Surgical Supplies, New Utrech Services, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, and Sigma Med Care routinely submitted bills to Plaintiffs for eggcrate mattresses (a Non-Fee Schedule item), which is not more than a thin mattress pad, using code E0272, which is a Fee Schedule code reserved for a "Foam Rubber Mattress"; and Retailers Absolute Medical Supplies, Alleviation Products, Bento Ortho, Best Choice Medical Supply, Chapa Products, Infinite Ortho Products, Maiga Products, Maxford, Milldorp, MDAX, New Utrech Services, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Pravel, Preferred Ortho Products, Quality Custom Medical Supply, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products routinely submitted bills to Plaintiffs for eggcrate mattresses using code using code E0184, which is a Fee Schedule code reserved for "Dry Pressure Mattresses".   By selecting an existing fee schedule code for a mattress that the foregoing Retailers did not actually provide the Retailers materially misrepresented the amounts

they were entitled to receive and further deceived Plaintiffs in paying amounts in excess of what the No-fault Law would have otherwise allowed for reimbursement.

21.     On information and belief, in these and in other ways set forth herein, the Defendants engaged in a pattern of similar and/or concerted conduct to defraud insurers in general and Plaintiffs, in particular.

22.     In carrying out the scheme to defraud, Defendants stole in excess of $980,000.00 from Plaintiffs by submitting, causing to be submitted or facilitating the submission of fraudulent claims for persons who allegedly sustained injuries covered by the New York State Comprehensive Motor Vehicle Insurance Reparations Act, Ins. Law §§ 5101, et seq. (popularly known as the "No-fault Law").

## **STATUTORY/REGULATORY SCHEME**

23.     Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians (hereinafter "Claimants" or "No-fault Claimants"), injuries which arise from the use or operation of such motor vehicles in the State of New York. Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their services.   As alleged herein, Defendants exploited and continue to exploit this system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed or, if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices.   Exhibit "3" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one

or more Plaintiffs to the Retailers for DME and/or orthotic devices provided based upon a predetermined course of treatment, irrespective of medical necessity.

24.     On information and belief, the Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law.  In exchange for their services, the Retailers accepted (and continue to accept) assignments of benefits from Claimants and submitted (and continue to submit) claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

25.     In accordance with the No-fault Law and 11 N.Y.C.R.R. 65 *et seq*., the Retailers submitted (and continue to submit) bills for their claims to Plaintiffs using the claim form prescribed by the New York State Department of Financial Services ("DFS," f/k/a the Department of Insurance) (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3") or a substantially similar form.

26.     Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Retailers contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime…

27.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs were (and are) required to promptly process claims within 30 days of receipt of proof of claim.

28.      Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person, such as a DME provider, may recover for health service related expenses. In particular, under this section, such persons are only entitled to

reimbursement of necessary medically related expenses in accordance with the applicable fee schedules adopted by the Superintendent of the DFS.

29.     Pursuant to Ins. Law § 5108, the Superintendent of the DFS adopted, by promulgation of Regulation 83,  the Workers' Compensation Fee Schedule for determining the permissible reimbursement amounts for which charges for health services provided to claimants under the No-fault law shall not exceed.  11 N.Y.C.R.R. § 65-3.

30.     Effective October 6, 2004, the DFS, through the Superintendent's promulgation and amendment to Regulation 83 (11 N.Y.C.R.R. § 68 *et. seq.*), established a fee schedule for the reimbursement of durable medical equipment and medical supplies by adopting the New York State Medicaid fee schedules for durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances.

31.     The Amendment to Regulation 83 provided:

> [The] maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided. If the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable, in accordance with Medicaid rules, shall be the lesser of:  (1) the acquisition cost (i.e. the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or (2) the usual and customary price charged to the general public.

11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F).

32.     Effective July 11, 2007, the Workers' Compensation Board ("WCB") established a fee schedule by also adopting the New York State Medicaid fee schedules for durable medical equipment (the "Fee Schedule"), medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances and that Fee Schedule was in effect at all relevant times herein.  *See* 12

N.Y.C.R.R. § 442.2.

33.      In view of the adoption by the WCB of the Fee Schedule, on or about April 16, 2008, the DFS promulgated the 30th Amendment to Regulation 83, which repealed Part F of Appendix 17-C, since it was no longer needed due to the DFS' prior adoption of the WCB fee schedule, which now includes the Fee Schedule that was, and is, in effect at all relevant times mentioned herein.

34.      At all relevant times mentioned herein, providers of DME are entitled to reimbursement in amounts set forth in the Fee Schedule.  In instances where an item of DME is not set forth in the Fee Schedule, the provider is entitled to reimbursement in an amount equal to the *lesser* of either the acquisition cost of the medical equipment to the provider, plus 50% or the usual and customary price charged to the public.  *See* 11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F) and 12 N.Y.C.R.R. § 442.2.

35.      Pursuant to Section 5108(c) of the No-fault Law, "no provider of health . . . services may demand or request any payment in addition to the charges authorized pursuant to this section."

36.      At all relevant times mentioned herein, nearly each and every bill mailed by the Retail Owners, through their respective Retailers, to Plaintiffs sought reimbursement in excess of the amounts authorized by the No-fault Law by materially misrepresenting the DME and/or orthotic devices provided, if provided at all, as well as the cost and quality of the billed for DME and/or orthotic devices.  To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which the Retailers' wholesale cost was a mere fraction of the amount they charged Plaintiffs and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of medical need.

14

37.     At all relevant times herein, the Defendants exploited the No-fault Law through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule ("Fee Schedule items" and "Non-Fee Schedule items," respectively) purportedly provided to Claimants.

38.     As set forth in the "Non-Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that (i) the DME and/or orthotic devices purportedly provided were reimbursable under the relevant Fee Schedule in existence at the time, when, in fact, the Retailers were utilizing codes that were not recognized by, or otherwise listed in, the relevant Fee Schedule ("phantom codes");  (ii) the charges reflected on the Retailers' bills were in accordance with 12 N.Y.C.R.R. § 442.2, when, in fact, the charges were grossly inflated; and/or (iii) the DME and/or orthotic devices purportedly provided were reimbursable pursuant to the Fee Schedule, when they were not.  In doing so, the Retail Owners, through their respective Retailers, deliberately misrepresented the amounts that they were entitled to receive under the No-fault Law.

39.     In addition, as set forth in the "Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers, also routinely submitted fraudulent bills to Plaintiffs for (i) DME and/or orthotic devices that were never provided, including, but not limited to, expensive custom-fabricated or custom-fit DME and/or orthotic devices; and/or (ii) DME and/or orthotic devices for which the Retailers billed Plaintiffs in excess of the relevant fee schedule in existence at the time.

40.     On information and belief, the Retailers and Wholesalers alike were created for

the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

41.     Every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, who, to the extent that they provided any DME and/or orthotic devices at all, provided No-fault Claimants with inferior, low-quality items, potentially compromising their health.

42.     The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeer Influenced and Corrupt Organizations Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud – although that would be troubling enough – rather, they adopted fraudulent blueprints as their business plans and used them to participate in systematic patterns of racketeering activity.  Every facet of Defendants' operations, from securing prescriptions for DME and/or orthotic devices pursuant to a predetermined course of treatment, to obtaining inflated wholesale invoices for inexpensive, low quality items, to generating bills that contained codes not recognized under the relevant fee schedule in existence at the time or that misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided, was carried out for the purpose of committing fraud.

43.     This lawsuit seeks to, among other things, enforce the plain language of the No-fault Law and implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to legitimate insurance claims for DME and/or orthotic devices.  In doing so, Plaintiffs seek compensatory damages and declaratory relief that Plaintiffs are not required to pay any of the Retail Defendants' No-fault claims because the Retail Owners, through the Retailers, submitted (1) false and fraudulent insurance claims to Plaintiffs deliberately misrepresenting the amounts they were entitled to be reimbursed; and/or (2) false

and fraudulent insurance claims to Plaintiffs for DME and/or orthotic devices the Retail Defendants never actually supplied to No-fault Claimants.  Such claims continue to be submitted by and/or in the name of the Retailers and are, or can be, the subject of No-fault collection actions and/or arbitrations to recover benefits, and thus, constitute a continuing harm to Plaintiffs.

44.     By way of example and not limitation, annexed hereto as Exhibit "4" is a spreadsheet listing in excess of $3.9 million of unpaid No-fault claims that form the basis of Plaintiffs' request for declaratory relief.  Said spreadsheet is grouped by claim number, Retailer, date of service and the amount billed.

## NATURE OF THE ACTION

45.     This action is brought pursuant to:

i)      The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c) and 1964(c);

ii)     New York State common law; and

iii)    the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## NATURE OF RELIEF SOUGHT

46.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, which they sustained as a result of the Defendants' schemes to defraud and acts of mail fraud in connection with their use of the facilities of the No-fault system to fraudulently obtain payments from Plaintiffs for DME and/or orthotic devices they allegedly provided to individuals covered by Plaintiffs under New York State's No-fault Law.

47.     Plaintiffs further seek a judgment declaring that they are under no obligation to pay any of the Retailers No-fault claims because:

i)      The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs to obtain reimbursement far in excess of the maximum permissible amount they could be entitled to; and

ii)     The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME and/or orthotic devices that they never supplied to No-fault Claimants.

48.     As a result of Defendants' actions alleged herein, Plaintiffs were defrauded of an amount in excess of $980,000.00, the exact amount to be determined at trial, in payments which Defendants received for fraudulently billing Plaintiffs for DME and/or orthotic devices that were never provided or, if provided, not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical need.

## THE PARTIES

**A.      Plaintiffs**

49.     Plaintiff Allstate Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

50.     Plaintiff Allstate Fire and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

51.     Plaintiff Allstate Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

52.     Plaintiff Allstate New Jersey Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in

Northbrook, Illinois.

53.     Plaintiff Allstate Property and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

54.     Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to their policyholders under and in accordance with New York State law.

**B.     The Individual Retail Owner Defendants**

55.     Dmitrei Abramov ("Abramov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Liberty Surgical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

56.     Sergey Akopyan ("Akopyan") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Any Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

57.     Yulia Bilyk ("Bilyk") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Sovera Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

58.     Artur Denisov ("A. Denisov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Absolute Medical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

59.     On information and belief Yuriy Denisov died on or about February 17, 2015. Yuriy Denisov was a natural person who resided in the State of New York, and was the principal, officer and/or director of Retailer Maxford and, at all times relevant herein, operated, managed and/or controlled its activities.  On July 8, 2015, the Surrogate's Court for the State of New York,

County of Richmond granted an application for Letters of Administration by Defendant A. Denisov, establishing A. Denisov as the executor of Defendant Estate of. Yuriy Denisov.

60.    Aleksandr Firayner ("Firayner") is a natural person residing in the State of New York, is the principal, officer, and/or director of Retailer Forest Medical Equipment and, at all times relevant herein, operated, managed, and/or controlled its activities.

61.    Oleksiy Gerasymenko ("Gerasymenko") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Bento Ortho and, at all times relevant herein, operated, managed and/or controlled its activities.

62.    Yuriy Gindinov ('Gindinov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer New Utrech Services and, at all times relevant herein, operated, managed and/or controlled its activities.

63.    Aris Grigoryan ("Grigoryan") is a natural person residing in the State of New York, is the principal, officer, and/or director of Retailer Sigma Med Care and, at all times relevant herein, operated, managed, and/or controlled its activities.

64.    Valeria Hamamy ("Hamamy") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Excel Products and, at all times relevant herein, operated, managed and/or controlled its activities.

65.    Olga Izrayev ("Izrayev") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Town Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

66.    Vladimir Kaminsky ("Kaminsky") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Promed Durable Equipment and, at all times relevant herein, operated, managed and/or controlled its activities.

67.    Murdakhay Khaimov ("Khaimov") is a natural person residing in the State of

New York, is the principal, officer and/or director of Retailer YAM Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

68.     Boris Khanis ("Khanis") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Ridge Medical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities.

69.     Zlatislav Komisarchik ("Komisarchik") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Preferred Ortho Products and Healing Health Products and, at all times relevant herein, operated, managed and/or controlled their activities.

70.     Vladislav Kraiter ("Kraiter") is a natural person residing in the State of Florida, is the principal, officer and/or director of Retailer PPSC Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

71.     Inna Lyubronetskaya ("Lyubronetskaya") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Empire State Medical Supplies and, at all times relevant herein, operated, managed and/or controlled its activities

72.     Galina Milerman ("Milerman") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Best Choice Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

73.     Uriyel Mirzakandov ("Mirzakandov") is a natural person residing in the State of New York, is the principal, officer, and/or director of Retailer MDAX and, at all times relevant herein, operated, managed, and/or controlled its activities.

74.     Aleksandr Nisanov ("Nisanov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Any Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

21

75.     Inna Pinsky ("Pinsky") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Alleviation Products, Chapa Products and Maiga Products and, at all times relevant herein, operated, managed and/or controlled their respective activities.

76.     Vadim Povzlov ("Povzlov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer State Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

77.     Elman Rafailov ("Rafailov") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Any Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

78.     Tatiana Rodionova ("Rodionova") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Sure Way NY and Milldorp and, at all times relevant herein, operated, managed and/or controlled their respective activities.

79.     Oleg Shnaider ("Shnaider") is a natural person residing in the State of New Jersey, is the principal, officer and/or director of Retailer Pacific Surgical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

80.     Inna Shilimov ("Shilimov") is a natural person residing in the State of Florida, is the principal, officer and/or director of Retailer Numed Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

81.     Boris Sobolev ("Sobolev") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Solution Bridge and, at all times relevant herein, operated, managed and/or controlled its activities.

82.     Gikor Sonayan ("Sonayan") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer First American Alliance and, at all times

relevant herein, operated, managed and/or controlled its activities.

83.     Maksym Tkachenko ("Tkachenko") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer T & S Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

84.     Yefim Velnik ("Velnik") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Pain Free Leaving and, at all times relevant herein, operated, managed and/or controlled its activities.

85.     Alexsandr Verbitsky ("Verbitsky") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailer Quality Custom Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

86.     Eduard Zarubin ("Zarubin") is a natural person residing in the State of New York, is the principal, officer and/or director of Retailers Infinite Ortho Products and Pravel and, at all times relevant herein, operated, managed and/or controlled their respective activities.

C.     **The Individual Wholesale Owner Defendants**

87.     Margarita Akmalova ("Akmalova") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesaler American Mobility Medical and, at all times relevant herein, operated, managed and/or controlled its activities.

88.     Grigol Apresyantsi ("Apresyantsi") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesaler Grigol Supply and, at all times relevant herein, operated, managed and/or controlled its activities

89.     Sergey Mezkula ("Mezkula") is a natural person residing in the State of New York, is the principal, officer and/or director of Wholesaler Global Best Deal and, at all times relevant herein, operated, managed and/or controlled its activities.

90.     Valeriy Semenikhin ("Semenikhin") is a natural person residing in the State of

New York, is the principal, officer and/or director of Wholesaler VDS Medical Supply, at all times relevant herein, operated, managed and/or controlled its activities.

91.     Vadim Zalogin ("Zalogin") is a natural person residing in the State of Florida, is the principal, officer and/or director of Wholesaler VZ Group and, at all times relevant herein, operated, managed and/or controlled its activities.

**D.     The Retailer Defendants**

92.     Alleviation Products Corporation, Inc. ("Alleviation Products") was incorporated on August 10, 2012, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 100 Church Street, Fl. 8, New York, New York 10007.  Alleviation Products is operated, managed and/or controlled by Defendant Pinsky and submitted fraudulent claims to Plaintiffs seeking  reimbursement for DME and/or orthotic devices under the No-fault Law

93.     Any Medical Supply, Inc. ("Any Medical Supply") was incorporated on October 6, 2010, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2407 East 22nd Street, Brooklyn, New York 11235.   Any Medical Supply is operated, managed and/or controlled by Defendants Akopyan, Nisanov and/or Rafailov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

94.     Absolute Medical Supplies Inc. ("Absolute Medical Supplies") was incorporated on February 28, 2014, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2844 West 15th Street, Brooklyn, New York 11224.   Absolute Medical Supplies is operated, managed and/or controlled by Defendant A. Denisov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

95.     Bento Ortho Inc. ("Bento Ortho") was incorporated on December 30, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 253B New Dorp Ln., Staten Island, New York 10306.  Bento Ortho is operated, managed and/or controlled by Defendant Gerasymenko and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

96.     Best Choice Medical Supply, Inc. ("Best Choice Medical Supply") was incorporated on December 22, 2011, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2259 65th Street, Brooklyn, New York 11204.  Best Choice Medical Supply is operated, managed and/or controlled by Defendant Milerman and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

97.     Chapa Products Corporation ("Chapa Products") was incorporated on August 28, 2012, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 116 West 23rd Street, Ste. 500, New York, New York 10011.  Chapa Products is operated, managed and/or controlled by Defendant Pinsky and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

98.     Empire State Medical Supplies, Inc. ("Empire State Medical Supplies") was incorporated on March 15, 2010, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 1611 McDonald Avenue, Brooklyn, NY 11230.  Empire State Medical Supplies is operated, managed and/or controlled by Defendant Lyubronetskaya and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

99.    Excel Products Inc. ("Excel Products") was incorporated on February 12, 2014, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2917 Avenue J, Brooklyn, New York 11210. Excel Products is operated, managed and/or controlled by Defendant Hamamy and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

100.    First American Alliance, Inc. ("First American Alliance") was incorporated on November 22, 2011, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 87-76 109th Street, Richmond Hill, New York 11418.   First American Alliance is operated, managed and/or controlled by Defendant Sonayan and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

101.    Forest Medical Equipment, Inc. ("Forest Medical Equipment") was incorporated on July 29, 2014, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2031 Forest Avenue, Suite #11, Staten Island, New York 10303.   Forest Medical Equipment is operated, managed and/or controlled by Defendant Firayner and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

102.    Healing Health Products, Inc. ("Healing Health Products") was incorporated on October 30, 2009, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2386 Stillwell Avenue, Brooklyn, New York 11223.   Healing Health Products is operated, managed and/or controlled by Defendant Komisarchik and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

103.    Infinite Ortho Products Inc. ("Infinite Ortho Products") was incorporated on November 10, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 375 Park Avenue, Suite 2607, New York, New York 10152.   Infinite Ortho Products is operated, managed and/or controlled by Defendant Zarubin and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

104.    Liberty Surgical Supplies Inc. ("Liberty Surgical Supplies") was incorporated on February 4, 2011, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2616 East 28th Street, Brooklyn, New York 11235.   Liberty Surgical Supplies is operated, managed and/or controlled by Defendant Abramov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

105.    Maiga Products Corporation ("Maiga Products") was incorporated on July 9, 2012, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 100 Church Street, Fl. 8, New York, New York 10007.   Maiga Products is operated, managed and/or controlled by Defendant Pinsky and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

106.    Maxford Inc. ("Maxford") was incorporated on February 14, 2013, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 244 Fifth Avenue, Suite 1961, New York, New York 10001. Maxford was operated, managed and/or controlled by Yuriy Denisov (deceased) and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

107.   MDAX Inc. ("MDAX") was incorporated on March 4, 2015, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 84-44 Eliot Avenue, Middle Village, New York 11379. MDAX was operated, managed and/or controlled by Defendant Mirzakandov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

108.   Milldorp Inc. ("Milldorp") was incorporated on November 29, 2012, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 1552B Dahill Road, Brooklyn, New York 11204.  Milldorp is operated, managed and/or controlled by Defendant Rodionova and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

109.   New Utrech Services, Inc. ("New Utrech Services") was incorporated on November 30, 2010, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 5601 13th Avenue, Brooklyn, New York 11219.  New Utrech Services is operated, managed and/or controlled by Defendant Gindinov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

110.   Numed Medical Supply, Inc. ("Numed Medical Supply") was incorporated on August 31, 2010, and until its corporate dissolution on or about May 25, 2012, purported to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1905 West 6th Street, Brooklyn, NY 11223.  Numed Medical Supply was operated, managed and/or controlled by Defendant Shilimov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

111.    Pacific Surgical Supply, Inc. ("Pacific Surgical Supply") was incorporated on December 3, 2007, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1811 Stillwell Avenue, Brooklyn, New York 11223.  Pacific Surgical Supply is operated, managed and/or controlled by Defendant Shnaider and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

112.    Pain Free Leaving, Inc. ("Pain Free Leaving") was incorporated on January 9, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2652 Coney Island Avenue, Brooklyn, New York 11214.  Pain Free Leaving is operated, managed and/or controlled by Defendant Velnik and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

113.    PPSC Medical Supply, Inc. ("PPSC Medical Supply") was incorporated on April 30, 2008, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 1755 Ocean Parkway, Apt. 17D, Brooklyn, New York 11223. PPSC Medical Supply is operated, managed and/or controlled by Defendant Kraiter and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

114.    Pravel Inc. ("Pravel") was incorporated on August 23, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 134 Highlawn Avenue, Brooklyn, New York 11223.  Pravel is operated, managed and/or controlled by Defendant Zarubin and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

115.    Preferred Ortho Products Inc. ("Preferred Ortho") was incorporated on September

26, 2011, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 32 Avenue O, Store #4, Brooklyn, New York 11204.   Preferred Ortho is operated, managed and/or controlled by Defendant Komisarchik and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

116.   Promed Durable Equipment, Inc. ("Promed Durable Equipment") was incorporated on August 21, 2007, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2082 Utica Avenue, Brooklyn, New York 11234.   Promed Durable Equipment is operated, managed and/or controlled by Defendant Kaminsky and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

117.   Quality Custom Medical Supply, Inc. ("Quality Custom Medical Supply") was incorporated on March 31, 2011, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 33 Avenue U, Brooklyn, New York 11223.   Quality Custom Medical Supply is operated, managed and/or controlled by Defendant Verbitsky and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

118.   Quality Medical Supply Inc. ("Quality Medical Supply") was incorporated on July 15, 2010, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2525 West Second Street, Apt. 3G, Brooklyn, New York 11223.   Quality Medical Supply is operated, managed and/or controlled by Defendant John Doe 1 and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

119.   Ridge Medical Supplies Corp. ("Ridge Medical Supplies") was incorporated on

April 4, 1995, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 210 Bridge Plaza Drive, Manalapan, New Jersey 07726.  Ridge Medical Supplies is operated, managed and/or controlled by Defendant Khanis and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

120.    Sigma Med Care, Inc. ("Sigma Med Care") was incorporated on May 6, 2015, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2628 Gerritsen Avenue, Brooklyn, New York 11229.  Sigma Med Care is operated, managed and/or controlled by Defendant Grigoryan and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

121.    Solution Bridge, Inc. ("Solution Bridge") was incorporated on January 7, 2014, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2871 West 17th Street, Brooklyn, New York 11224.  Solution Bridge is operated, managed and/or controlled by Defendant Sobolev and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

122.    Sovera Medical Supply, Corp. ("Sovera Medical Supply") was incorporated on November 12, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 2929 West 31st Street, Apt. 6C2, Brooklyn, NY 11214. Sovera Medical Supply is operated, managed and/or controlled by Defendant Bilyk and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

123.    State Medical Supply Inc. ("State Medical Supply") was incorporated on May 17,

2012, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 158 Avenue O, Brooklyn, New York 11204.  State Medical Supply is operated, managed and/or controlled by Defendant Povzlov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

124.    Sure Way NY Inc. ("Sure Way NY") was incorporated on May 31, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 200 West 39th Street, Suite 11, New York, New York 10018.  Sure Way is operated, managed and/or controlled by Defendant Rodionova and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

125.    T & S Medical Supply Corporation ("T & S Medical Supply") was incorporated on October 29, 2012, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 1799 West 6th Street, First Floor, Brooklyn, New York 11223.  T & S Medical Supply is operated, managed and/or controlled by Defendant Tkachenko and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

126.    Town Supply, Inc. ("Town Supply") was incorporated on September 24, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 102-21 Jamaica Avenue, Richmond Hill, New York 11418.  Town Supply is operated, managed and/or controlled by Defendant Izrayev and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

127.    Veraso Medical Supply, Corp. ("Veraso Medical Supply") was incorporated on

November 12, 2013, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2730 East 19th Street, Apt D7, Brooklyn, New York 11235.  Veraso Medical Supply is operated, managed and/or controlled by Defendant John Doe 2 and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

128.    Wellmax Products, Corp. ("Wellmax Products") was incorporated on December 11, 2013, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 222 Avenue T, 1st Fl., Brooklyn, New York 11223.  Wellmax Products is operated, managed and/or controlled by Defendant John Doe 3 and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

129.    Y.A.M. Medical Supply, Inc. ("YAM Medical Supply") was incorporated on January 30, 2003, and purports to be a retail DME supply company, authorized to do business in the State of New York, with its principal place of business located at 153-26 77th Avenue, Flushing, New York 11367.  YAM Medical Supply is operated, managed and/or controlled by Defendant Khaimov and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

**E.    The Wholesale Defendants**

130.    American Mobility Medical Inc. ("American Mobility Medical") was incorporated on March 9, 2009, and is a wholesale DME supply company authorized to do business in the State of Florida, with its principal place of business located at 3363 NE 163 Road Street, Suite # 804, Sunny Isles, Florida 33160. American Mobility Medical is operated, managed and/or controlled by Defendant Akmalova and supplies Retailer Empire State Medical Supplies, and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic

devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

131.   Biv Wholesale Inc. ("Biv Wholesale") was incorporated on August 20, 2013, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 208 Bay Street, Staten Island, New York 10301.  Biv Wholesale is operated, managed and/or controlled by Defendant John Doe 4 and supplies Retailers Bento Ortho, Pravel and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

132.   Comdex Inc. ("Comdex") was incorporated on February 11, 2013, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 525 Neptune Avenue, # 7-C, Brooklyn, New York 11224. Comdex is operated, managed and/or controlled by Defendant John Doe 5 and supplies Retailers Mildorp, Sure Way and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.   These

wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

133.    Global Best Deal, Inc. ("Global Best Deal") was incorporated on February 27, 2008, and until its corporate dissolution on or about October 1, 2012, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 316 Avenue X, Brooklyn, New York 11223.  Global Best Deal is operated, managed and/or controlled by Defendant Mezkula and supplies Retailer Any Medical Supply, and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

134.    Grigol Supply, Inc. ("Grigol Supply") was incorporated on March 18, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1479 Dahill Road, Brooklyn, New York 11204.  Grigol Supply is operated, managed and/or controlled by Defendant Apresyantsi and supplies Retailer Quality Medical Supply, and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices

purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement

135.    IG&NAT Services, Inc. ("IG&NAT Services") was incorporated on February 25, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1970 East 18th Street, Apt B10, Brooklyn, NY 11229.  IG&NAT Services is operated, managed and/or controlled by Defendant John Doe 6 and supplies Retailer Any Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

136.    Imprezza NYC Inc. ("Imprezza NYC") was incorporated on August 16, 2012, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2103 Avenue Z, Brooklyn, New York 11235.  Imprezza NYC is operated, managed and/or controlled by Defendant John Doe 7 and supplies Retailer Maxford and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable

36

information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

137.   Metra Wholesale Inc. ("Metra Wholesale") was incorporated on October 25, 2012, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 309 Sand Lane, 2nd Floor, Staten Island, New York 10305.  Metra Wholesale is operated, managed and/or controlled by Defendant John Doe 8 and supplies Retailer Quality Custom Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

138.   One Stop Wholesale, Inc. ("One Stop Wholesale") was incorporated on November 18, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 309 Sand Lane, 2nd Floor Front, Staten Island, NY 10305.  One Stop Wholesale is owned, controlled, and/or operated by John Doe 9 and supplies Retailer Quality Custom Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices actually provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the

Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

139. Ortiz Omega Corp. ("Ortiz Omega") was incorporated on November 21, 2011, and until its corporate dissolution on or about February 4, 2014, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1130 6th Avenue, Suite 23, New York, New York 10019. Ortiz Omega was operated, managed and/or controlled by Defendant John Doe 10 and supplied Retailer Infinite Ortho Products and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement

140. VDS Medical Supply, Inc. ("VDS Medical Supply") was incorporated on July 21, 2010, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2955 West 29th Street, Ste 7C, Brooklyn, New York 11224. VDS Medical Supply is operated, managed and/or controlled by Defendant Semenikhin and supplies Retailer Quality Medical Supply and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can

submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement

141.    VZ Group Inc. ("VZ Group") was incorporated on September 18, 2008, and is a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1816 Gravesend Road, Brooklyn, New York 11232.  VZ Group is operated, managed and/or controlled by Defendant Zalogin and supplies Retailers Any Medical Supply, New Utrech Services and other retailers unknown to Plaintiffs, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers.  These wholesale invoices (i) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers, in turn, can submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

**F.** **The John Doe Defendants**

142.    John Doe 1 is the principal, officer and/or director of Retailer Quality Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

143.    John Doe 2 is the principal, officer and/or director of Retailer Veraso Medical Supply and, at all times relevant herein, operated, managed and/or controlled its activities.

144.    John Doe 3 is the principal, officer and/or director of Retailer Wellmax Products and, at all times relevant herein, operated, managed and/or controlled its activities.

145.    John Doe 4 is the principal, officer and/or director of Wholesaler Biv Wholesale and, at all times relevant herein, operated, managed and/or controlled its activities.

146.    John Doe 5 is the principal, officer and/or director of Wholesaler Comdex and, at

all times relevant herein, operated, managed and/or controlled its activities.

147.   John Doe 6 is the principal, officer and/or director of Wholesaler IG&NAT Services and, at all times relevant herein, operated, managed and/or controlled its activities.

148.   John Doe 7 is the principal, officer and/or director of Wholesaler Imprezza NYC and, at all times relevant herein, operated, managed and/or controlled its activities.

149.   John Doe 8 is the principal, officer and/or director of Wholesaler Metra Wholesale and, at all times relevant herein, operated, managed and/or controlled its activities.

150.   John Doe 9 is the principal, officer and/or director of Wholesaler One Stop Wholesale and, at all times relevant herein, operated, managed and/or controlled its activities.

151.   John Doe 10 is the principal, officer and/or director of Wholesaler Ortiz Omega and, at all times relevant herein, operated, managed and/or controlled its activities.

152.   On information and belief, John Does 11 through 20 are the principals, officers and/or directors of the ABC Corporations 1 through 20.  On information and belief, John Doe Defendants 11 through 20, through the ABC Corporations 1 through 20, entered into kickback and/or other financial compensation agreements with the Retailers to provide inexpensive DME and/or orthotic devices and fraudulent wholesale invoices that enabled the Retailers to fraudulently bill Plaintiffs.  These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

**G.    The ABC Corporations**

153.   On information and belief, the ABC Corporations 1 through 20 are additional corporations that purport to be wholesale DME supply companies that supply the Retailers with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices actually provided to the Retailers.  These wholesale invoices:  (i) misrepresent the wholesale prices for the DME

and/or orthotic devices purportedly provided; and (ii) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers can, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement. These ABC Corporations 1 through 20 will be added as defendants when their names and the full extent of their participation become known through discovery.

## JURISDICTION AND VENUE

154.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. because they arise under the laws of the United States.

155.    This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

156.    This Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a).

157.    Pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1367 and New York CPLR § 302(a), this Court has personal jurisdiction over any non-domiciliary defendant.

158.    Venue lies in this District Court under the provisions of 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) as the Eastern District of New York is the district where one or more the Defendants reside and because this is the district where a substantial amount of the activities forming the basis of the Complaint occurred.

## FACTUAL BACKGROUND AND ALLEGATIONS
## APPLICABLE TO ALL CAUSES OF ACTION

159.    Plaintiffs underwrite automobile insurance in New York State.

160.    As set forth in the Statutory/Regulatory Scheme section above, pursuant to the

No-fault Law, Plaintiffs are required to pay for, *inter alia*, health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York.

161.    On information and belief, the Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law.   In exchange for their services, the Retailers accept assignments of benefits from the Claimants covered under the No-fault Law and submit claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

162.    To process and verify the claims submitted by the Retailers, Plaintiffs required and the Retailers submitted prescriptions and other documents relating to the DME and/or orthotic devices allegedly supplied to No-fault claimants for which the Retailers were seeking reimbursement from Plaintiffs.

163.    In certain instances, one or more of the Retailer Defendants, including Any Medical Supply, Bento Ortho, Empire State Medical Supplies, Infinite Ortho Products, Maxford, Milldorp, New Utrech Services, Pravel, Quality Custom Medical Supply, Quality Medical Supply, and Sure Way NY, also submitted inflated wholesale invoices to Plaintiffs in support of their claims for reimbursement.

164.    Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs are required to promptly process the Retailers' claims within 30 days of receipt of proof of claim.

165.    To fulfill their obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by the Retailers in support of their claims and paid the Retailers based on the representations and information contained in the bills and

documentation that Defendants mailed to Plaintiffs.

166.    The New York State Medicaid program has established limits on the maximum permissible charges for, among other things, DME and/or orthotic devices listed on the New York State DME Services Fee Schedule and provides that the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided.  12 N.Y.C.R.R. § 442.2.

167.    With respect to DME and/or medical supplies for which the New York State Medicaid program has not established a fee ("Non-Fee Schedule Items"), the regulation provides that the fee payable shall be the lesser of:

(1)     the acquisition cost (*i.e.*, the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or

(2)     the usual and customary price charged to the general public.

12 N.Y.C.R.R § 442.2.

168.    On information and belief, the Retailers were created as the centerpieces of  an elaborate scheme to fraudulently bill No-fault insurance carriers for DME and/or orthotic devices that were never provided, were not provided as billed or, if provided, were either of inferior quality relative to what was included in the bills submitted to Plaintiffs and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all No-fault Claimants received substantially similar DME and/or orthotic devices.

169.    The DME and/or orthotic devices that the Retailers purported to provide, and for which they billed Plaintiffs, seldom varied from patient-to-patient over a given period of time

and also did not change based on any differences in the patients' conditions.  Instead, the Retail

Owners, through their respective Retailers, created a billing apparatus that was designed to drain

the maximum amount of dollars from insurance companies for each and every patient, including

those who required little or no DME at all.

170.    On information and belief, the Retailer Owners created and controlled the

Retailers, which were part of separate, but similar well-organized illegal enterprises that engaged

in fundamentally similar, systematic and pervasive fraudulent practices that distinguished them

from legitimate providers of DME and/or orthotic devices.  The components of each enterprise

followed practices that were part of a racketeering scheme dictated by the Retail Owners,

including, but not limited to, the following practices:

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills misrepresenting the amounts they were entitled to be reimbursed under the No-fault Law;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills for DME and/or orthotic devices that were never provided to No-fault claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the wholesale costs and/or usual and customary price of the Non-fee Schedule items purportedly supplied to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted wholesale invoices as part of their proof of claim that systematically failed to provide a meaningful description of the DME and/or orthotic devices purportedly provided (*i.e.*, make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted wholesale invoices reflecting prices far in excess of those actually paid, concealing the manufacturer, make, model, size and quality of the DME and/or

orthotic devices purportedly supplied;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills reflecting prices far in excess of those actually paid, concealing that the items actually supplied were far less expensive than the amounts indicated in the wholesale invoice for any particular item;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted prescriptions for  DME and/or orthotic devices that generically described the item(s) so as to conceal the type of item(s) being prescribed;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, concealed the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol pursuant to a kickback arrangement with No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers, through their Retail Owners and/or those acting under their direction and control, had agreements and/or understandings as to what generic DME and/or orthotic devices would be prescribed by the No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers claimed to conduct their daily operations from locations that oftentimes had no signage or that were shuttered with no indication that any business was conducted at that location; and

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, entered into illicit relationships with the Wholesale Defendants, which, in exchange for kickbacks and/or a fee, provided the Retailers with wholesale invoices that fraudulently inflated the price, quantity and/or item(s) provided, with the payments relating to such wholesale invoices actually serving as the vehicle through which Defendants laundered the money back to the Retail Owners through the use of check cashing establishments.

171.    In these and numerous other ways, Defendants sought to deceive Plaintiffs into paying fraudulent claims that typically exceeded thousands of dollars per Claimant.

172.    The members of each enterprise alleged herein played well-defined and essential roles in the Defendants' scheme to defraud and in directing the affairs of the enterprises.  By way of example and not limitation, in furtherance of their scheme to defraud, the Retail Owners:

- Entered into kickback arrangements with No-fault Clinics, not named as defendants in this action, to ensure that their associated doctors

and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population, pursuant to a predetermined course of treatment, irrespective of medical necessity;

- Entered into kickback arrangements with No-fault Clinics to ensure that the prescriptions provided were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone;

- Entered into kickback arrangements with one or more of the Wholesale Defendants so that they would provide inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Submitted or caused to be submitted, on behalf of the Retailers, numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to many Claimants;

- Prepared or caused to be prepared fraudulent bills and sent them to Plaintiffs; and

- Participated, or caused those acting under their direction to participate, in the preparation and mailing of bogus claims, knowing that they contained materially false and misleading information.

173.    By way of further example and not limitation, in furtherance of their scheme to defraud, the Wholesale Owners, through the Defendant Wholesalers:

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide inexpensive DME and/or orthotic devices, coupled with wholesale invoices that grossly inflated the cost and/or quantity of the DME and/or orthotic devices reflected therein;

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide wholesale invoices that were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone; and

- Prepared or caused to be prepared fraudulent wholesale invoices and sent them to the Retailers, knowing that the Retailers, in turn, would submit them in support of fraudulent claims for reimbursement.

174.    By way of further example, in furtherance of the scheme to defraud alleged herein, the Defendant Wholesalers:

- Provided inexpensive DME and/or orthotic devices, along with

fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Provided generic, non-descript wholesale invoices that deliberately omitted the make, model and/or manufacturer of the DME and/or orthotic devices to ensure that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone;

- Provided the essential means through which the Retail Owners were able to submit fraudulent bills to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law;

- Knew or should have known that the inflated costs and/or quantities of the DME and/or orthotic devices reflected in the wholesale invoices they provided were materially misrepresented in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Knew or should have known that the generic, non-descript wholesale invoices they provided were used to materially misrepresent the nature, cost and quality of the DME and/or orthotic devices reflected in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Converted the checks they received from the Retailers to cash and returned to the Retailers up to 98% of the wholesale invoice amounts;

- Were oftentimes shell corporations, with no discernable, formal corporate structure or physical office space; and

- Claimed to conduct their daily operations from locations with no signage or that were shuttered with no indication that any business was conducted at that location.

175.    At all relevant times mentioned herein, the Wholesale Owners, either directly or through others acting under and pursuant to their direction, instruction and control, caused fraudulent wholesale invoices to be provided that they knew or should have known would be used by the Retailers in furtherance of the scheme to defraud alleged herein.

176.    At all relevant times mentioned herein, the fraudulent wholesale invoices issued by the Wholesale Defendants provided the essential means by which the Retail Owners, through their respective Retailers, were able to further the scheme to defraud alleged in this Complaint.

177.    At all relevant times mentioned herein, the Wholesaler Owners knew or should

have known that the fraudulent wholesale invoices that were provided to the Retailers through the Wholesalers would be used by the Retailers to obtain payment from insurers, in general, and Plaintiffs, in particular in connection with fraudulent claims.

178.    At all relevant times mentioned herein, the Retail Owners knew that the wholesale invoices provided by the Wholesale Defendants were fraudulent in that they misstated the price, quantity and quality of the DME and/or orthotic devices purportedly sold to the Retailers.

179.    At all relevant times mentioned herein, the Retail Owners, through their respective Retailers, directly or through others acting under and pursuant to their direction, instruction and control, submitted or caused to be submitted the fraudulent wholesale invoices provided by the Wholesale Defendants to Plaintiffs, in furtherance of the scheme to defraud alleged herein, to obtain payment in connection with fraudulent claims.

180.    At all relevant times mentioned herein, the Retail Owners and Wholesale Defendants, acting in concert with each other, participated in, conducted, controlled, conspired together, aided and abetted and furthered the fraudulent schemes through a common course of conduct and purpose, which was to defraud insurers, in general, and Plaintiffs, in particular, of money.

## THE MECHANICS OF THE SCHEME TO DEFRAUD

181.    On information and belief, beginning in 2002 and continuing until the present day, Defendants and others not named in the Complaint have engaged in systematic fraudulent billing schemes based upon the alleged sale of DME and/or orthotic devices.

182.    The Retail Owners incorporated, owned and/or controlled their respective Retailers for the purpose of defrauding insurers, in general, and Plaintiffs, in particular.

183.    Each of the Retailers, through their respective Retail Owners, engaged in virtually identical and parallel schemes to defraud wherein the Retail Owners (i) paid kickbacks to the

No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices; (ii) obtained prescriptions that were provided pursuant to a predetermined course of treatment, without regard to medical necessity; (iii) paid fees (pursuant to the money laundering scheme described below) to the Wholesale Defendants in exchange for fraudulent wholesale invoices that the Retailers, in turn, would use to substantiate bogus claims for reimbursement of No-fault benefits; (iv) arranged for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery receipt forms signed by Claimants on their behalf to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular; and (v) systematically submitted bills to insurers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that were purportedly provided to Claimants based on medical necessity when, in fact, the Retail Owners, through their respective Retailers, determined the DME that would be prescribed by the No-fault Clinics, with virtually every Claimant receiving substantially similar DME and/or orthotic devices.

184.   Each DME enterprise alleged in this complaint carried out its scheme to defraud though substantially similar means.

185.   With the retail DME defendants in place, Defendants devised and carried out fundamentally identical schemes to fraudulently bill insurers, in general, and Plaintiffs, in particular, for expensive DME and/or orthotic devices that were never provided, or if provided, were inexpensive items of inferior quality that cost a fraction of the amounts that Defendants materially misrepresented in their fraudulent bill submissions to Plaintiffs.

186.   Regardless of whether a No-fault Claimant was seen by a doctor on the date of the initial office visit at any of the unnamed No-fault Clinics operating in the New York metropolitan area, a No-fault Claimant's initial office consultation would automatically trigger a series of internal practices and procedures in which the No-fault Clinics, in exchange for kickbacks and/or

other financial compensation agreements with the Retailers and through their medical doctors and/or chiropractors, would issue a prescription for a standard battery of DME and/or orthotic devices, pursuant to a standard protocol or predetermined course of treatment and regardless of whether such items were medically necessary.

187. Irrespective of the purported complaints of pain or type of injury documented in connection with a particular claim, the No-fault Clinics prescribed virtually the exact same DME and/or orthotic devices to its patient population, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident.

188. In exchange for kickbacks and/or other financial compensation agreements with the Retailers, one or more No-fault Clinics operating in the New York metropolitan area also directed their associated physicians, chiropractors and/or other providers to prescribe DME and/or orthotic devices that are not included in the Fee Schedule, such as bed boards, car seats, EMS Units, infrared heat lamps, hot/cold packs, massagers and whirlpools; and to ensure that the prescriptions issued were generic and non-descript, meaning that they omitted any detailed description of the items to be supplied to the No-fault Claimants.

189. In furtherance of the scheme to defraud, the No-fault Clinics did not provide the No-fault Claimants directly with the prescriptions for DME and/or orthotic devices. Instead, these prescriptions were given directly to the Retailers to eliminate the possibility that the No-fault Claimant(s) would fill the prescription(s) with a legitimate retailer of DME and/or orthotic devices.

190. In addition to prescribing Non-Fee Schedule Items, as part of the kickback and/or other financial compensation agreement with the No-fault Clinics, the No-fault Clinics routinely provided the Retailers with generic, non-descript prescriptions for certain Fee Schedule Items,

50

such as back braces, knee braces, shoulder braces, ankle braces, elbow supports, cervical traction units, cervical collars, lumbar cushions and thermophores, which the Retailers then used in support of their claims for reimbursement at a higher rate.

191.    By submitting a generic, non-descript prescription, devoid of any detail, in support of their claims for reimbursement, the Retailers were provided the means through which they misrepresented the nature, quality and cost of the DME and/or orthotic devices allegedly provided.

192.    As part of the kickback or other financial compensation agreement with the No-fault Clinics and in furtherance of the scheme to defraud, on their first or second visit to the No-fault Clinic(s), the No-fault Claimants would be given a number of documents to complete and sign, including, but not limited to, assignment of benefit forms and one or more delivery receipts.

193.    In some instances, the Retailers sometimes forged or caused to be forged the No-fault Claimant's signature on the delivery receipt.

194.    In every instance, in furtherance of the scheme to defraud alleged herein, the delivery receipts describe the DME and/or orthotic devices in the same generic, non-descript manner as the prescriptions, claim forms, and wholesale invoices submitted by the Retailers in support of their claims for reimbursement.

195.    In furtherance of the scheme to defraud alleged herein, the delivery receipts submitted by the Retailers to Plaintiffs routinely misrepresented the DME and/or orthotic devices provided.

196.    In furtherance of the scheme to defraud alleged herein, the Retailers entered into agreements with one or more of the Wholesale Defendants whereby the Wholesale Defendants supplied the Retailers with invoices that were used to document inflated and outrageous wholesale costs, which one or more of the Retailers then submitted to insurers, in general, and

Plaintiffs, in particular, as part of their proof of claim.

197.    In furtherance of the scheme to defraud alleged herein, the wholesale invoices provided by the Wholesale Defendants to the Retailers included artificial prices that exceeded the actual wholesale price of the DME and/or orthotic devices reflected therein.

198.    To the extent the Retailers provided any DME and/or orthotic devices to No-fault Claimants, the DME and/or orthotic devices were inexpensive items that were materially misrepresented in the wholesale invoices received from the Wholesale Defendants.

199.    The wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices when they were actually provided.

200.    In furtherance of the scheme to defraud alleged herein, each of the wholesale invoices provided by the Wholesale Defendants to the Retailers intentionally omitted the make, model, or manufacturer of the DME and/or orthotic devices reflected in the invoice, thereby ensuring that the nature and quality of the item that was supposedly provided could not be verified based on the wholesale invoice alone.

201.    In other instances, on information and belief, the DME and/or orthotic devices reflected in the wholesale invoices provided by the Wholesale Defendants to the Retailers were never provided to the Retailers; rather, the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create the illusion of a sale.

202.    On information and belief, the wholesale invoices were provided to the Retailers to camouflage the conversion of the Retailers' checks payable to the Wholesale Defendants to cash at check cashing establishments.

203.    On information and belief, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice.  The Wholesale Defendants

would then convert the checks to cash through check cashing establishments, or by other means, and would return a substantial portion of the money to the Retailers, keeping a portion of the profits of the scheme for themselves.

204.    On information and belief, in furtherance of the scheme to defraud alleged herein, the Retailers requested that the Wholesale Defendants have their checks cashed on their corporate accounts to fraudulently demonstrate to insurers, such as Plaintiffs, that they paid for the wholesale items when, in fact, they did not.

205.    In furtherance of the scheme to defraud alleged herein, one or more of the Retailers routinely submitted fraudulent documents, including, but not limited to, claim forms, prescriptions, delivery receipts, and wholesale invoices that materially misrepresented the nature, quality and cost of the DME and/or orthotic devices purportedly provided to No-fault Claimants.

206.    The Wholesale Defendants and No-fault Clinics provided the means through which the Defendants were able to execute their scheme to defraud.

207.    The fraudulent wholesale invoices and prescriptions were provided with the knowledge that they would be submitted to insurers, in general, and Plaintiffs, in particular, to obtain reimbursement under the No-fault Law in excess of the actual cost of the DME and/or orthotic devices purportedly provided.

208.    In furtherance of the scheme to defraud alleged herein, the Retailers routinely submitted fraudulent bills seeking the maximum possible amount of reimbursement under the No-fault law for expensive DME and/or orthotic devices that were never actually provided or not provided as billed and/or, if provided, provided pursuant to a predetermined course of treatment, without regard to medical necessity.

209.    In many cases the Retailer Owners, through their Retailers, never actually provided the DME for which they billed Plaintiffs.  By way of example and not limitation,

Exhibit "5" in the accompanying Compendium of Exhibits is a spreadsheet identifying a representative sample of claims in which claimants testified during an EUO that they did not receive the DME for which one or more of the Retailers submitted bills to Plaintiffs.

210.    In furtherance of the scheme to defraud alleged herein, like the wholesale invoices, the Retailers' bills intentionally omitted the make, model and manufacturer of the DME and/or orthotic devices purportedly provided to No-fault Claimants in order to conceal the fact that the DME and/or orthotic devices purportedly provided were inexpensive and of poor quality, to the extent they were provided at all.

211.    In furtherance of the scheme to defraud alleged herein, upon receiving the fraudulent wholesale invoices from the Wholesale Defendants the Retailers, as a matter of pattern and practice, generated and submitted bills to Plaintiffs knowingly misrepresenting the actual amounts that they paid for DME and/or orthotic devices.

212.    By way of example and not limitation, and as set forth below in the "Non-Fee Schedule Scheme to Defraud" section, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retailers were utilizing the exact same phantom codes for which there was no published fee schedule;  (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items were the lesser of their acquisition costs or the usual and customary prices charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Retailers' bills corresponded with the equipment purportedly provided.

213.    In addition, as set forth below in the "Fee Schedule Scheme to Defraud" section below, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills

to Plaintiffs (i) in support of expensive custom-fitted DME and/or orthotic devices, such as LSOs, knee, wrist, elbow and shoulder braces that were never provided; (ii) in support of expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed; and/or (iii) which sought reimbursement rates for DME and/or orthotic devices in excess of the relevant fee schedule in existence at the time.

214. In furtherance of the scheme to defraud and to maximize reimbursement from Plaintiffs, each and every bill submitted by the Retailers deliberately obscured all identifying information relating to the billed for DME and/or orthotic devices so as to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device was medically necessary.

215. In furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive custom fabricated DME and/or orthotic devices, such as LSOs, knee, wrist, elbow, and shoulder braces that were never provided.  In other instances, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed.  By way of example and not limitation, Exhibit "6" in the accompanying Compendium of Exhibits is a spreadsheet containing a representative sample of claims in which one or more of the Retail Owners, through their respective Retailers, billed for expensive custom fabricated DME and/or orthotic devices that were never provided.  In addition, Exhibit "7" in the accompanying Compendium of Exhibits is a representative sample of claims in which one or more of the Retail Owners, through their respective Retailers, billed for supports and/or braces that required fittings and adjustments which they never performed.

216. Defendants' activity promoted and facilitated other acts that imposed costs onto

Plaintiffs well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, independent medical examinations ("IME") and peer reviews.

## THE NON-FEE SCHEDULE SCHEME TO DEFRAUD

### 1.     Fraudulent Billing Under Phantom Codes Not Recognized in the Fee Schedule

217.    In furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Best Choice Medical Supply, Chapa Products, Excel Products, First American Alliance, Forest Medical Equipment, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, MDAX, New Utrech Services, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, Solution Bridge, Sovera Medical Supply, State Medical Supply, Sure Way NY, T & S Medical Supply, Town Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills for Non-Fee Schedule items, wherein they misrepresented that those items were reimbursable under the Fee Schedule when, in fact, they were utilizing exact same phantom codes for the same items that were not listed on the relevant Fee Schedule in existence at the time.  *See* Exhibit "2."

218.    By way of example and not limitation, the Retail Owners, through their respective Retailers, including Alleviation Products, Any Medical Supply, Chapa Products, Excel Products, Empire State Medical Supplies, Healing Health Products, Liberty Surgical Supplies, Numed Medical Supply, PPSC Medical Supply, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, Sovera Medical Supply, T & S

56

Medical Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills to Plaintiffs for "hydrotherapy whirlpools" and/or "whirlpools" using phantom codes E1300 and E1310, which were not recognized under the relevant Fee Schedule in existence at the time, in amounts ranging from $200.85 to $620.00, notwithstanding that, to the extent anything was provided, the whirlpools are inexpensive "jet spas" which should have been billed at no more than $60.00.  Exhibit "8" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one of more Plaintiffs where the above listed Retailers submitted fraudulent bills for whirlpools using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

219.    By billing under the same phantom codes for the whirlpools, the Retail Owners, through their respective Retailers, billed and were paid almost ten times more than they would have otherwise have been entitled to receive under the No-fault Law.

220.    By way of further example and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Any Medical Supply, Chapa Products, Excel Products, First American Alliance, Healing Health Products, New Utrech Services, Numed Medical Supply, Pain Free Leaving, PPSC Medical Supply, Preferred Ortho Products, Sigma Med Care, Sovera Medical Supply, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs for "Water Circulating Pad with Pump" and/or "Water Circulating Pump" units using phantoms codes E0217 and E0237, which are not recognized in the Fee Schedule, in amounts ranging from $249.99 to $545.00, notwithstanding that, to the extent anything was provided, the water circulating units and pads were aqua relief systems that should have been billed at no more than $200.00.  Exhibit "9" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for a water circulation unit using a

phantom code not recognized under the relevant Fee Schedule in existence at the time.

221.   By billing under the same phantom codes for the water circulation units, the Retail Owners, through their respective Retailers, billed and were paid up to more than four times what they would have otherwise been entitled to receive under the No-fault Law.

222.   Separate and apart from billing for whirlpools and water circulation units under the same phantom codes not recognized under the Fee Schedule, the Retail Owners, through their respective Retailers, routinely submitted bills for other Non-Fee Schedule items using the same phantom codes in which they materially misrepresented that the items were reimbursable under the relevant Fee Schedule in existence at the time and the amount they were entitled to receive. By way of example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to, Empire State Medical Supplies, Healing Health Products, Liberty Surgical Supplies, MDAX, New Utrech Services, Pacific Surgical Supply, Preferred Ortho Products, Quality Custom Medical Supply, Quality Medical Supply, and Sigma Med Care routinely submitted bills to Plaintiffs for "bed boards" in amounts ranging from $44.85 to $267.00 using phantom code E0273 and/or E0315, notwithstanding that, to the extent any DME was provided, the bed board purportedly supplied was an inexpensive, thin piece of foldable cardboard or other material, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $40.00. Exhibit "10" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for bed boards using the same phantom codes not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including, but not limited to, Any Medical Supply, Liberty Surgical Supplies and Promed Durable Equipment, routinely submitted bills to Plaintiffs for "car seats" in amounts ranging from $181.50 to $219.41 using phantom code M1005, notwithstanding that, to the extent any DME was provided, the car seats purportedly provided were actually inexpensive bubble pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $13.00. Exhibit "11" in the

accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for car seats using the same phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Any Medical Supply, Empire State Medical Supplies, Healing Health Products, Liberty Surgical Supplies, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Preferred Ortho Products, Promed Durable Equipment, Quality Medical Supply, and State Medical Supply, routinely submitted bills to Plaintiffs for E.M.S. Units and /or E.M.S. Unit Four Leads ("EMS Units"), using phantom codes E0744 and E0745, in amounts ranging from $378.73 to $1205.50, notwithstanding that, to the extent anything was provided, the EMS Units are actually cheap "digital therapy machines" and/or TENS Units, reimbursable, if at all, as Non-Fee Schedule items, for which the usual and customary price charged to the general public is no more than $30.00.   Exhibit "12" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for EMS Units using the same phantom codes not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Alleviation Products, Any Medical Supply, Best Choice Medical Supply, Chapa Products, Empire State Medical Supplies, Excel Products, Healing Health Products, Liberty Surgical Supplies, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, Solution Bridge, Sovera Medical Supply, State Medical Supply, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs for "infrared heating lamps" in amounts in ranging from $62.74 to $525.88 using phantom codes E0200, E0205, and E0221, notwithstanding that, to the extent any DME was provided, the infrared heat lamps purportedly provided were actually cheap, hand held heat lamps, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $20.00.   Exhibit "13" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for infrared heat lamps using the same phantom codes not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including

Empire State Medical Supplies, Liberty Surgical Supplies, Promed Durable Equipment, and Ridge Medical Supplies, routinely submitted bills to Plaintiffs for "vibrating deep heat massagers" and/or "back massagers" in amounts ranging from $180.00 to $525.00 using phantom codes 99070, notwithstanding that, to the extent any DME was provided, the massagers purportedly provided were actually simple, hand held massagers, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $20.00. Exhibit "14" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for massagers using the same phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including Chapa Products, Empire State Medical Supplies, Liberty Surgical Supplies, Numed Medical Supply, Pain Free Leaving, PPSC Medical Supply, Promed Durable Equipment, Quality Medical Supply, Ridge Medical Supplies, Sovera Medical Supply, State Medical Supply, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs for "EMS Placement Belts" and/or "TENS/EMS Belts" in amounts ranging from $32.00 to $165.00 using phantom code E0731 and/or K0731, notwithstanding that, to the extent any DME was provided, the belts were thin cloth wraps lacking electrode pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $15.00. Exhibit "15" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for EMS/TENS placement belts using the same phantom codes not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners , through their respective Retailers, including Any Medical Supply, New Utrech Services, Promed Durable Equipment, and Sovera Medical Supply, routinely submitted bills to Plaintiffs for "cervical pillows," "orthopedic cervical pillows" and/or "orthopedic cervical double loop pillows" in amounts ranging from $31.50 to $165.00 using phantom code E0943, notwithstanding that, to the extent any DME was provided, the cervical pillows purportedly supplied were simple cushions, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $8.00. Exhibit "16" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for cervical pillows using the same phantom code not recognized under the relevant Fee Schedule in existence at

the time.

- The Retail Owners, through their respective Retailers, including Healing Health Products and PPSC Medical Supply, routinely submitted bills to Plaintiffs for "thermophores" and/or "electric heat pads moist" in amounts ranging from $114.00 to $135.00 using phantom code Z2304, notwithstanding that, to the extent any DME was provided, the DME purportedly supplied were simple and inexpensive heating pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $10.00.  Exhibit "17" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for thermophores and/or electric heat pads using the same phantom code not recognized under the relevant Fee Schedule in existence at the time.

- The Retail Owners, through their respective Retailers, including First American Alliance and Town Supply, routinely submitted bills to Plaintiffs for continuous passive motion machines ("CPM machines") in amounts ranging from $70.00 to $3,692.98 using phantom codes E0935 and E0936, notwithstanding that, to the extent any DME was provided, the amounts charged far exceeded the amounts they were allowed to submit for reimbursement.   Exhibit "18" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for CPM machines using the same phantom codes not recognized under the relevant Fee Schedule in existence at the time.

- Retailer Promed Durable Equipment routinely submitted bills to Plaintiffs for "hot/cold packs" and/or "cold packs" in amounts ranging from $90.00 to $363.00 using phantom code E9999, notwithstanding that, to the extent any DME was provided, the hot/cold packs were inexpensive items, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $5.00.   Exhibit "19" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where Promed Durable Equipment submitted fraudulent bills for hot/cold packs using a phantom code not recognized under the relevant Fee Schedule in existence at the time.

223.    By submitting bills to Plaintiffs that contained the exact same phantom codes not recognized under the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, deliberately misrepresented that their bills reflected either a

reimbursement amount set by the Fee Schedule, or alternatively that their bills reflected the lesser of their acquisition cost, plus 50% or the usual and customary price for the public, when in reality, to the extent anything was provided, the items did not have a Fee Schedule code and the Retail Owners, through their respective Retailers, were entitled to receive only a fraction of the amount reflected in their bills.

224.   Consequently, by submitting to Plaintiffs bills that contained the exact same phantom codes not recognized under the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, deliberately and materially misrepresented the amounts that they were entitled to receive and deceived Plaintiffs, among others, into paying many times over what the No-fault Law would have otherwise allowed for medically necessary DME and/or orthotic devices.

225.   In addition to containing phantom codes that are not recognized under the relevant Fee Schedule in existence at the time, the Retailers' bills routinely contained grossly inflated charges, supported by fraudulent wholesale invoices, for DME and/or orthotic devices that were inexpensive and of poor quality.

**2.      Fraudulent Billing Using Code 1399**

226.   In furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Chapa Products, Excel Products, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, Milldorp, New Utrech Services, Numed Medical Supply, Pain Free Leaving, Pravel, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Sigma Med Care, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and Wellmax

Products, routinely submitted bills for Non-Fee Schedule items using Fee Schedule code E1399, which is reserved for miscellaneous items, and in doing so, they fraudulently misrepresented the nature and quality of the billed for DME and/or orthotic devices and their acquisition costs. Exhibit "20" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for Non-Fee Schedule items using Fee Schedule Code E1399.

227.    By way of example and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Chapa Products, Excel Products, Healing Health Products, Infinite Ortho Products, Maiga Products, Maxford, MDAX, Milldorp, Pain Free Leaving, Pravel, Quality Custom Medical Supply, Sigma Med Care, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products. routinely submitted bills to Plaintiffs for massagers using code E1399, in amounts ranging from $127.50 to $290.00, falsely representing that the amount billed is the lesser of the usual and customary price charged to the general public or the Retailer's acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the massagers were simple, hand-held massagers for which the usual and customary price charged to the general public did not exceed $20.00.   Exhibit "21" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for massagers using Fee Schedule Code E1399.

228.    By way of further example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to, Bento Ortho, Excel Products, Maxford, Milldorp, Numed Medical Supply, Pravel, Promed Durable Equipment, and Sure Way NY, routinely submitted bills to Plaintiffs for bed boards using code E1399 in amounts ranging from $115.00 to $138.00, falsely

representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the bed boards purportedly supplied were inexpensive thin pieces of cardboard or other material for which the usual and customary price charged to the general public is not more than $40.00. Exhibit "22" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for bed boards using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Bento Ortho, Best Choice Medical Supply, Infinite Ortho Products, Maxford, New Utrech Services, Pravel, Sigma Med Care, and Sure Way NY, routinely submitted bills to Plaintiffs for car seats using code E1399 in amounts ranging from $99.99 to $237.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the car seats purportedly supplied were inexpensive bubble pads or other material for which the usual and customary price charged to the general public is not more than $13.00. Exhibit "23" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for car seats using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Any Medical Supply, Best Choice Medical Supply, Liberty Surgical Supplies, Pain Free Leaving, and Preferred Ortho Products, routinely submitted bills to Plaintiffs for hot/cold packs using code E1399 in amounts ranging from $17.25 to $91.50, falsely representing that these amounts were the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the hot/cold packs purportedly supplied were inexpensive, one-time use, disposable packs for which the usual and customary price charged to the general public is not more than $5.00. Exhibit "24" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for hot/cold packs using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Any Medical Supply, Healing Health Products, and Promed Durable Equipment, routinely submitted bills to Plaintiffs for lumbar cushions using code E1399 in amounts ranging from $79.50 to $297.45, falsely representing that these amounts were the lesser of the

usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the lumbar cushions purportedly supplied were inexpensive cushions for which the usual and customary price charged to the general public is not more than $10.00. Exhibit "25" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for lumbar cushions using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Healing Health Products and Preferred Ortho Products, routinely submitted bills to Plaintiffs for thermophores using code E1399, in amount of $87.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the thermophores purportedly supplied were inexpensive heat pads, for which the usual and customary price charged to the general public is not more than $10.00.  Exhibit "26" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for thermophores using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Bento Ortho, Infinite Ortho Products, Maxford, Milldorp, New Utrech Services, Pravel, and Sure Way NY, routinely submitted bills to Plaintiffs for cold water circulating units using code E1399, in amounts ranging from $249.99 to $630.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the cold water circulating units purportedly supplied were aqua relief systems that should have been billed at no more than $200.00.  Exhibit "27" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for cold water circulating units using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Bento Ortho, Infinite Ortho Products, Maxford, Milldorp, Pravel, and Sure Way NY, routinely submitted bills to Plaintiffs for EMS belts using code E1399, in amounts ranging from $71.00 to $85.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the belts

were thin cloth wraps lacking electrode pads, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $15.00. Exhibit "28" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for EMS belts using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Bento Ortho, Excel Products, Infinite Ortho Products, Maxford, Milldorp, New Utrech Services, Pravel, Quality Medical Supply, Sigma Med Care, Solution Bridge, and Sure Way NY, routinely submitted bills to Plaintiffs for EMS units using code E1399, in amounts ranging from $160.00 to $710.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the EMS Units are actually cheap "digital therapy machines" and/or TENS Units, reimbursable, if at all, as Non-Fee Schedule items, for which the usual and customary price charged to the general public is no more than $30.00. Exhibit "29" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for EMS units using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Bento Ortho, Infinite Ortho Products, Milldorp, New Utrech Services, Sigma Med Care, Sovera Medical Supply, and Sure Way NY, routinely submitted bills to Plaintiffs for hydrotherapy whirlpools using code E1399, in amounts ranging from $90.00 to $565.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the whirlpools are inexpensive "jet spas," which should have been billed at no more than $60.00. Exhibit "30" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for hydrotherapy whirlpools using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Bento Ortho, Infinite Ortho Products, Maxford, Milldorp, New Utrech Services, Pravel, Sigma Med Care, Solution Bridge, and Sure Way NY, routinely submitted bills to Plaintiffs for infrared heating lamps using code E1399, in

amounts ranging from $148.00 to $270.00, falsely representing that this amount was the lesser of the usual and customary prices charged to the public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the infrared heat lamps purportedly provided were actually cheap, hand held heat lamps, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is no more than $20.00.  Exhibit "31" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the above listed Retailers submitted fraudulent bills for infrared heating lamps using Fee Schedule Code E1399.

### 3.    Fraudulent Billing of Non-Fee Schedule Items under Fee Schedule Codes

229.    In furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for Non-Fee Schedule Items using codes reserved for Fee Schedule Items in order to maximize the fraudulent charges they could submit to Plaintiffs, despite the fact that they never provided the billed-for items.  By way of example and not limitation, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Chapa Products, Excel Products, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, Milldorp, New Utrech Services, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Pravel, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Sigma Med Care, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs for "egg crate mattresses," a Non-Fee Schedule Item, using the Fee Schedule code E0272, which is reserved for a "Foam Rubber Mattress" reimbursable in the maximum amount of $97.50 or $155.67, depending on the year the DME was provided, and/or Fee Schedule code E0184, which is reserved for "Dry Pressure Mattresses" reimbursable

in the maximum amount of $153.15.

230.    The Retailers never provided a foam rubber mattress to any No-fault Claimant.

231.    The Retailers never provided a Dry Pressure Mattress to any No-fault Claimant.

232.    To the extent any DME and/or orthotic device was provided, the Retailers provided simple bubble mattress pads, which they described as "egg crate mattresses," for which the usual and customary price charged to the general public did not exceed $37.00.

233.    By submitting bills using codes E0272 and/or E0184, the Retail Owners, through their respective Retailers, materially misrepresented that they provided foam rubber or dry pressure mattresses, when they did not, and also materially misrepresented that the item purportedly provided was a Fee Schedule item, seeking reimbursement in amounts upwards of four times what would otherwise have been a permissible charge for the Non-Fee Schedule item. Exhibit "32" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which one or more of the Retailers submitted fraudulent bills for egg crate mattresses by billing for the Non-Fee Schedule DME under a Fee Schedule code.

234.    By way of further example and not limitation, the Retail Owners, through their respective Retailers, including Alleviation Products, Any Medical Supply, Chapa Products, MDAX, Infinite Ortho Products, Maiga Products, New Utrech Services, Pacific Surgical Supply, Promed Durable Equipment, Quality Custom Medical Supply, Sovera Medical Supply, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs for "bed boards," which is a Non-Fee Schedule item, using Fee Schedule code E0274, which is reserved for a "Table, Overbed" reimbursable in the maximum amount of $101.85.

235.    The Retailers never provided an overbed table to any No-fault Claimant.

236.    To the extent any DME and/or orthotic device was provided, the Retailers provided inexpensive, thin pieces of foldable cardboard or other material, which they described

as "bed boards," for which the usual and customary price charged to the general public did not exceed $40.00.

237.    By submitting bills using code E0274, the Retail Owners, through their respective Retailers, materially misrepresented that they provided overbed tables, when they did not, and also materially misrepresented that the item purportedly provided was a Fee Schedule item, seeking reimbursement in amounts more than two times what would otherwise have been a permissible charge for the Non-Fee Schedule item.   Exhibit "33" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which one or more of the Retailers submitted fraudulent bills for bed boards by billing for the non-Fee Schedule DME under a Fee Schedule code.

## FEE SCHEDULE SCHEME TO DEFRAUD

**1.    Fraudulent Billing for Custom Fabricated or Custom Fit DME and/or Orthotic Devices.**

238.    The term "custom-fabricated" as used in the New York State Fee Schedule refers to any DME, orthopedic footwear, orthotics or prosthetics fabricated solely for a particular person from mainly raw materials that cannot be readily changed to conform to another person's needs.

239.    Raw materials are used to create custom-made DME, orthopedic footwear, orthotics or prosthetics based on a particular person's measurements, tracings and patterns.

240.    To bill under any Fee Schedule code reserved for custom-made DME and/or orthotic devices, a retailer is required to measure the recipient of the items and fabricate the custom-made item based on those measurements.

241.    In furtherance of the scheme to defraud, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive custom

fabricated DME and/or orthotic devices, despite the fact that to the extent anything was provided, the DME and/or orthotic devices were cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants' measurements.

242.   In addition to submitting bills for custom fabricated devices that were never provided, the Retail Owners, through their respective Retailers, routinely submitted fraudulent bills in support of expensive pre-fabricated DME and/or orthotic devices that required a fitting and adjustment to the purported Claimant's measurements, which they never provided.

243.   By way of example and not limitation, under the relevant Fee Schedule in existence at the time, the permissible charges for lumbosacral orthoses ("LSOs") range from $43.27, under code L0625 for basic, prefabricated LSOs that require a fitting and adjustment, to $1,150.00 under code L0632 for more complex LSOs that are custom fabricated.

244.   In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for LSOs, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Bento Ortho, Chapa Products, Empire State Medical Supplies, Excel Products, Infinite Ortho Products, Maxford, Milldorp, Numed Medical Supply, Pain Free Leaving, Pravel, Quality Custom Medical Supply, Solution Bridge, Sovera Medical Supply, State Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted fraudulent bills for LSOs using codes L0629 and/or L0632, which are reserved for more complex custom fabricated DME and/or orthotic devices.  Exhibit "34" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for LSOs using codes L0629 and/or L0632.

245.   By billing LSOs under codes L0629 and/or L0632, the Retail Owners, through

their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not, and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimants' measurements, tracings and patterns, which they did not.

246.     Separate and apart from billing for custom fabricated LSOs, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Chapa Products, Excel Products, First American Alliance, Forest Medical Equipment, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, Milldorp, New Utrech Services, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Pravel, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, Sigma Med Care, Solution Bridge, State Medical Supply, Sure Way NY, T & S Medical Supply, Town Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills for LSOs using codes reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, including, but not limited to, L0625, L0627, L0630, L0631, L0633, L0635 and/or L0637, notwithstanding that a fitting or adjustment was never performed. Exhibit "35" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for LSOs using codes L0625, L0627, L0630, L0631, L0633, L0635, and/or L0637.

247.     Under the relevant Fee Schedule in existence at the time, the permissible charges for knee braces range from $65.00, under code L1830, for a prefabricated knee brace that requires a fitting and adjustment, to $1,107.70, under code L1844, for more complex models that

are custom fabricated.

248.    The Retail Owners, through their respective Retailers, including Alleviation Products, Bento Ortho, Chapa Products, Excel Products, Healing Health Products, Milldorp, Pain Free Leaving, Pravel, Preferred Ortho Products, Quality Custom Medical Supply, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, and Veraso Medical Supply, routinely submitted bills to Plaintiffs seeking reimbursement for expensive custom fabricated knee braces billed under codes L1840, L1844, and/or L1846 that were never provided.  By way of example and not limitation, Exhibit "36" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for knee braces, using codes L1840, L1844, and/or L1846, which were never provided.

249.    To the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all knee braces, which were not custom made to the Claimants' measurements and for which no fitting and/or adjustment was ever performed.

250.    By billing knee braces under codes L1840, L1844, and L1846, the Retail Owners, through their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not, and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimant's measurements, tracings and patterns, which they did not.

251.    Separate and apart from billing for custom fabricated knee braces, the Retail Owners, through their respective Retailers, including Alleviation Products, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Chapa Products, Excel Products, First American

Alliance, Forest Medical Equipment, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, Milldorp, New Utrech Services, Numed Medical Supply, Pain Free Leaving, Pravel, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, Sigma Med Care, Solution Bridge, Sovera Medical Supply, State Medical Supply, Sure Way NY, T & S Medical Supply, Town Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills for knee braces using codes L1800, L1810, L1820, L1830, L1831, L1832, and/or L1845, which are reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, which was never performed. By way of example and not limitation, Exhibit "37" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for knee braces using codes L1800, L1810, L1820, L1830, L1831, L1832, and/or L1845.

252.    Under the relevant Fee Schedule in existence at the time, the permissible charges for a shoulder support range from $40.00, under code L3650, for a prefabricated shoulder support that requires a fitting and adjustment, to $935.49, under code L3673, for more complex custom fabricated DME and/or orthotic devices.

253.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for shoulder supports, the Retail Owners, through their respective Retailers, including Best Choice Medical Supply, Empire State Medical Supplies, Healing Health Products, Liberty Surgical Supplies, New Utrech Services, Numed Medical Supply, Pain Free Leaving, PPSC Medical Supply, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Solution Bridge, Sigma Med Care, Sovera Medical Supply, and State Medical Supply, routinely submitted

fraudulent bills for shoulder supports using codes L3650, L3652, L3660, and/or L3670, despite the fact that the billed for item was never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.  Exhibit "38" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for shoulder supports using codes L3650, L3652, L3660, and/or L3670.

254.    To the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all shoulder supports for which no fitting and/or adjustment was ever performed.

255.    Under the relevant Fee Schedule in existence at the time, the permissible charges for wrist supports ranged from $47.50, under code L3908, for a prefabricated wrist support that requires a fitting and adjustment, to $1,472.96, under code L3901, for more complex custom fabricated DME and/or orthotic devices.

256.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for wrist supports, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Any Medical Supply, Bento Ortho, Healing Health Products, Maxford, Pacific Surgical Supply, Pravel, Solution Bridge, and Sure Way NY, routinely submitted fraudulent bills for wrist supports that were never provided using code L3808, which is reserved for more complex custom fabricated DME and/or orthotic devices.   Exhibit "39" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for shoulder supports using code L3808.

257.    To the extent any DME and/or orthotic devices were provided, the Retail Owners,

through their respective Retailers, provided cheap, elastic, one-size-fits-all wrist supports, which were not custom made to the Claimants' measurements and for which no fittings and/or adjustments were ever performed.

258.    By billing wrist supports under code L3808, the Retail Owners, through their respective Retailers, falsely represented that they measured the No-fault Claimant who purportedly received the DME and/or orthotic device, when they did not; and that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimant's measurements, tracings and patterns, which they did not do.

259.    Separate and apart from billing for custom fabricated wrist supports, the Retail Owners, through their respective Retailers, including Best Choice Medical Supply, Chapa Products, Numed Medical Supply, Pacific Surgical Supply, Promed Durable Equipment, Quality Custom Medical Supply, Sovera Medical Supply, State Medical Supply, T & S Medical Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills for wrist supports using codes L3763, L3807, L3908, and/or L3931, which are reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment that was never performed. By way of example and not limitation, Exhibit "40" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for wrist supports using codes L3763, L3807, L3908, and/or L3931.

260.    Under the relevant Fee Schedule in existence at the time, the permissible charges for elbow supports range from $8.99 under code L3701, for basic, prefabricated supports, to $1091.24 under code L3740 for more complex supports, which include a fitting and/or adjustment.

75

261.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for elbow supports, the Retail Owners, through their respective Retailers, including Bento Ortho, Best Choice Medical Supply, Healing Health Products, Maxford, Numed Medical Supply, Promed Durable Equipment, and Quality Custom Medical Supply, routinely submitted fraudulent bills for elbow supports using codes L3700, L3710, L3760, and/or L3762, despite the fact that the billed for item was never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.   Exhibit "41" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for elbow supports using codes L3700, L3710, L3760, and/or L3762.

262.    To the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all elbow supports, for which no fitting and/or adjustment was ever performed.

263.    Under the relevant Fee Schedule in existence at the time, the permissible charges for ankle braces ranged from $8.09, under code L1901, for basic, prefabricated ankle braces that require a fitting and adjustment, to $750.00, under code L1970, for more complex items that are custom fabricated.

264.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for ankle braces, the Retail Owners, through their respective Retailers, including,  Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Excel Products, First American Alliance, Healing Health Products, Maxford, New Utrech Services, Numed Medical Supply, Pain Free Leaving, Promed Durable Equipment, Solution Bridge, State Medical Supply, and Sure Way NY, routinely

submitted fraudulent bills for ankle braces using codes L1902 and/or L1906, despite the fact that the billed for items were never provided or not provided as billed and/or provided pursuant to a predetermined course of treatment, irrespective of medical necessity. Exhibit "42" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for ankle braces using codes L1902 and/or L1906.

265.  To the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all ankle braces, for which no fitting and/or adjustment was ever performed.

**2.  Fraudulent Billing in Excess of the Fee Schedule**

266.  In contravention of 12 N.Y.C.R.R. § 442.2, which provides that the maximum permissible charge for DME is the fee payable for such equipment under the New York State Medicaid program at the time the equipment is provided, the Retail Owners, through their respective Retailers, including, but not limited to, Absolute Medical Supplies, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Empire State Medical Supplies, Healing Health Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, New Utrech Services, Pacific Surgical Supply, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, State Medical Supply, T & S Medical Supply, and Veraso Medical Supply, routinely billed for dollar amounts greater than those set forth in the Fee Schedule. Exhibit "43" in the accompanying Compendium of Exhibits is a representative sample of claims where the foregoing Retailers billed one or more Plaintiffs in amounts greater than the dollar amounts set forth in the Fee Schedule.

267.  By submitting bills to Plaintiffs for DME and/or orthotic devices in excess of the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective

Retailers, including, but not limited to, Absolute Medical Supplies, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Healing Health Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, New Utrech Services, Pacific Surgical Supply, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, State Medical Supply, T & S Medical Supply, and Veraso Medical Supply, deliberately misrepresented the amounts they were entitled to receive under the No-fault Law, to the extent that the DME and/or orthotic devices were provided at all.   By way of example and not limitation:

- The Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Any Medical Supply, Bento Ortho, Best Choice Medical Supply, Empire State Medical Supplies, Healing Health Products, MDAX, New Utrech Services, Pacific Surgical Supply, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, and State Medical Supply, submitted bills to Plaintiffs for lumbar cushions using code E0190 up to and including $130.37 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $22.04.  Exhibit "44" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for lumbar cushions in excess of the Fee Schedule amount using code E0190.

- The Retail Owners, through their respective Retailers, including Empire State Medical Supplies, Liberty Surgical Supplies, Maiga Products, Pacific Surgical Supply, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Quality Medical Supply, Ridge Medical Supplies, State Medical Supply, and Veraso Medical Supply, submitted bills to Plaintiffs for thermophores and/or electric heat pads using code E0215 in amounts up to and including $126.32 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $20.93.   Exhibit "45" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for thermophores and/or electric heat pads in excess of the Fee Schedule amount using code E0215.

- The Retail Owners, through their respective Retailers, including Any Medical Supply, MDAX, Promed Durable Equipment, T & S Medical Supply, and Veraso Medical Supply, submitted bills to Plaintiffs for bed boards using code E0274 in amounts up to and including $234.26

when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $101.85.  Exhibit "46" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for bed boards in excess of the Fee Schedule amount using code E0274.

- The Retail Owners, through their respective Retailers, including Forest Medical Equipment, Healing Health Products, Pravel, Promed Durable Equipment, and Sigma Med Care submitted bills to Plaintiffs for cervical traction units using code E0855 in amounts up to and including $1005.26 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $502.63. Exhibit "47" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for cervical traction units in excess of the Fee Schedule amount using code E0855.

- The Retail Owners, through their respective Retailers, including Any Medical Supply, Absolute Medical Supplies, Empire State Medical Supplies, Maxford, Pravel, Promed Durable Equipment, Ridge Medical Supplies, and T & S Medical Supply, submitted bills to Plaintiffs for cervical collars using code L0172 in amounts up to and including $1300 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $75.00.  Exhibit "48" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for cervical collars in excess of the Fee Schedule amount using code L0172.

- The Retail Owners, through their respective Retailers, including Best Choice Medical Supply, Promed Durable Equipment, and State Medical Supply, submitted bills to Plaintiffs for lumbar orthoses using code L0633 in amounts up to and including $530.14 when, based on the Fee Schedule, DME provided under that code is only reimbursable in the amount of $225.31.  Exhibit "49" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Defendants submitted bills for lumbar orthoses in excess of the Fee Schedule amount using code L0633.

**3.    Fraudulent Billing of Cervical Traction Units and Head Halters**

268.    The Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Bento Ortho, Chapa Products, Empire State Medical Supplies, Excel Products, First American Alliance, Forest Medical Equipment, Healing Health Products,

Infinite Ortho Products, Maxford, MDAX, Milldorp, Numed Medical Supply, Pain Free Leaving, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Ridge Medical Supplies, Sigma Med Care, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Town Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted fraudulent bills to Plaintiffs for cervical traction units either as Non-Fee Schedule or Fee Schedule items.

269.    The cervical traction units purportedly provided by the aforementioned Retailers are inexpensive replicas or knockoffs of a trademarked cervical traction unit manufactured and sold by Posture Pump, with a wholesale price that is a fraction of the cost associated with the authentic device.  By way of example and not limitation, Exhibit "50" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for a cervical traction device.

270.    The cervical traction units provided by Retailers First American Alliance and YAM Medical Supply are replicas or "knockoffs" of the Posture Pump item that was sold and distributed to the Retailers by Comfortland Medical. Inc. ("Comfortland"), under the brand name Comfortmax Cervical Hometrac.

271.    On or about August 15, 2013, Comfortland was sued for patent infringement of the Posture Pump in the matter of *Posture Pro, Inc. v. Comfortland Medical, Inc.*, 13-cv-1252(JVS)(AN) (hereinafter the "Comfortland Action"), for distributing a knockoff of the Posture Pump cervical traction unit under its Comfortmax Cervical Hometrac brand, which was of inferior quality to the Posture Pump model and which infringed upon the patent held by Posture Pump.

272.    Retailers First American Alliance and YAM Medical Supply purchased the Comfortmax unit from Comfortland and continue to supply the knockoff device and bill insurers,

80

including Plaintiffs.  By way of example and not limitation, Exhibit "51" in the accompanying Compendium of Exhibits is a representative sample of claims submitted to one or more Plaintiffs where the above listed Retailers submitted fraudulent bills for Comfortmax cervical traction devices.

273.   With respect to billing cervical traction units as Non-Fee Schedule items, the Retail Owners, through their respective Retailers, including Promed Durable Equipment, Ridge Medical Supplies, and YAM Medical Supply, routinely submitted bills to Plaintiffs for cervical traction units, using the the same phantom code E0948 for amounts ranging from $586.50 to $700.00.

274.   By submitting bills for cervical traction units using the same phantom code E0948, the Retail Owners, through their respective Retailers, including Promed Durable Equipment, Ridge Medical Supplies, and YAM Medical Supply,, sought to maximize their reimbursement by deliberately deceiving Plaintiffs into paying up to more than 11 times the maximum reimbursement rate permitted under 12 N.Y.C.R.R. § 442.2 for such items.

275.   By way of example and not limitation, to the extent the Retailers provided a cervical traction unit purportedly trademarked and/or manufactured by Posture Pump, on information and belief, the legitimate acquisition cost of such item is $65.00.

276.   Under 12 N.Y.C.R.R. § 442.2, if Defendant Retailers had provided a cervical traction unit trademarked and manufactured by Posture Pump, or comparable device, which they did not, the most that Defendants could have legitimately paid as their acquisition cost for a Posture Pump cervical traction unit would have been $65.00, and therefore, subject to a maximum reimbursement of $97.50, representing the acquisition cost, plus 50% or the usual and customary price charged to the public.  By way of example and not limitation, Exhibit "52" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or

more Plaintiffs where one or more of the Retailers submitted fraudulent bills for a cervical traction unit using the phantom code not recognized under the relevant Fee Schedule in existence at the time.

277.   With respect to billing cervical traction units as Fee Schedule items, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Bento Ortho, Chapa Products, Empire State Medical Supplies, Excel Products, First American Alliance, Forest Medical Equipment, Healing Health Products, Infinite Ortho Products, Maxford, MDAX, Milldorp, Numed Medical Supply, Pain Free Leaving, Pravel, Promed Durable Equipment, Quality Custom Medical Supply, Ridge Medical Supplies, Sigma Med Care, Solution Bridge, Sovera Medical Supply, Sure Way NY, T & S Medical Supply, Town Supply, Veraso Medical Supply, Wellmax Products, and YAM Medical Supply, routinely submitted bills for complex cervical traction units using Fee Schedule code E0855 at the maximum reimbursement rate of $502.63 or more when, to the extent anything was provided, these Retailers provided cervical traction units which should have been billed under code E0849 at the much lower reimbursement rate of $371.70.   By way of example and not limitation, Exhibit "53" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for cervical traction units under code E0855.

278.   Irrespective of whether the Retailers, in general, submitted bills for cervical traction units as Non-Fee Schedule or Fee Schedule items, to the extent anything was provided, the Retailers provided basic, inexpensive cervical traction units pursuant to a predetermined course of treatment, regardless of medical necessity.

279.   In addition to fraudulently billing for cervical traction units, the Retail Owners, through their respective Retailers, including Promed Durable Equipment, Ridge Medical

Supplies, State Medical Supply, and YAM Medical Supply, submitted bills to Plaintiffs for head halters using code E0942, which is a phantom code not recognized in the relevant Fee Schedule, in the amount of $40.00 when, to the extent any such item was even provided, it was an accessory included with the cervical traction unit and not a separate reimbursable item. By way of example and not limitation, Exhibit "54" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for head halters under code E0942.

**4.      Fraudulent Billing for DME and/or Orthotic Devices Not Provided**

280.    In furtherance of the scheme to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided.  By way of example and not limitation, the Retail Owners, through their respective Retailers, including Absolute Medical Supplies, Alleviation Products, Any Medical Supply, Bento Ortho, Chapa Products, Empire State Medical Supplies, Excel Products, Healing Health Products, Infinite Ortho Products, Liberty Surgical Supplies, Maiga Products, Maxford, MDAX, Milldorp, New Utrech Services, Numed Medical Supply, Pain Free Leaving, PPSC Medical Supply, Pravel, Preferred Ortho Products, Promed Durable Equipment, Quality Custom Medical Supply, Ridge Medical Supplies, Sigma Med Care, Solution Bridge, Sovera Medical Supply, State Medical Supply, Sure Way NY, T & S Medical Supply, Veraso Medical Supply, and YAM Medical Supply, routinely submitted bills to Plaintiffs for cervical collars under codes L0172 and L0174 in amounts up to and including $1300.00.  By way of example and not limitation, Exhibit "55" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for cervical collars under codes L0172 and L0174 in amounts ranging from $75.00 to $1300.00.

281.    Under the relevant Fee Schedule in existence at the time, the permissible charges for cervical collars range from $6.80, under code L0120 for basic flexible, foam collars, to $130.00 for semi-rigid, thermoplastic, two-piece collars with a thoracic extension.

282.    To the extent any DME and/or orthotic device was provided, the Retail Owners, through their respective Retailers, provided basic, flexible, foam collars that were not semi-rigid, thermoplastic, two-piece collars.

283.    By billing cervical collars under codes L0172 and L0174, the Retail Owners, through their respective Retailers, falsely represented that they provided semi-rigid, thermoplastic, two-piece collars, when they did not.

284.    By way of further example and not limitation, the Retail Owners, through their respective Retailers, including Alleviation Products, Chapa Products, Empire State Medical Supplies, Liberty Surgical Supplies, New Utrech Services, Numed Medical Supply, Pacific Surgical Supply, Pain Free Leaving, PPSC Medical Supply, Preferred Ortho Products, T & S Medical Supply, Veraso Medical Supply, and Wellmax Products, routinely submitted bills to Plaintiffs seeking reimbursement for lumbar cushions using codes E2611 and/or E2612 in amounts up to and including $3382.02.  Exhibit "56" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where one or more of the Retailers submitted fraudulent bills for lumbar cushions under code E2611 and/or E2612 in amounts ranging from $68.75 to $3382.02.

285.    Under the relevant Fee Schedule in existence at the time, codes E2611 and E2612 are reserved for DME satisfying the description of "General Use W/C Back Cushion" and specifically reserved for lumbar support used in connection with a wheel chair.

286.    Under the relevant Fee Schedule in existence at the time, code E2619 is reserved for "Replacement Covers for Wheelchair Seat Cushion."

287.    The Retailers did not provide to any No-fault Claimant a lumbar cushion or replacement cover used in connection with a wheelchair.

288.    None of the No-fault Claimants that received a lumbar cushion or replacement cover from one or more of the Retailers was wheelchair bound.

289.    To the extent any DME and/or orthotic device was provided, the lumbar cushions were not specialized wheelchair cushions, but rather simple back cushions for use in any chair that would otherwise be reimbursable under code E0190 at $22.04.

290.    By billing lumbar cushions under codes E2611 and/or E2612, the Retail Owners, through their respective Retailers, falsely represented that they provided specialized wheelchair cushions and/or covers, when they did not.

## MONEY LAUNDERING SCHEME

291.    Defendants knew that the money paid by insurers, in general, and Plaintiffs, in particular, to the Retailers represented the proceeds and profits of their unlawful activity.

292.    To ensure that they would ultimately receive their ill-gotten gains, the Defendants engaged in a complex check cashing and/or money laundering scheme in furtherance of the scheme to defraud.

293.    These covert cash transactions were facilitated through various clandestine arrangements among one or more of the Retail Defendants, Wholesale Defendants, check brokers (who acted as intermediaries between the check cashers and the Retail and Wholesale Defendants in order to conceal the true beneficiaries of the transactions) and check cashers.

294.    As described herein, the Defendant Retailers and Defendant Wholesalers generated significant amounts of cash through transactions with check cashers.  This cash was used to facilitate, among other things, the (i) secret cash kickback arrangements between the Defendant Retailers and Wholesale Defendants that were essential to foster the illusion that the

Retailers actually paid the inflated amounts for DME and/or orthotic devices reflected on the wholesale invoices; (ii) secret cash kickback arrangements between the Defendant Retailers and No-fault Clinics, which were necessary to induce the clinics to supply the Defendant Retailers with prescriptions for bogus DME and/or orthotic devices; and (iii) the Defendant Retailers' and Defendant Wholesalers' transactions, which were intentionally disguised as business expenses in order to evade corporate tax liabilities through false deductions and/or the under reporting of income, thereby maximizing the Defendants' profits from, and enhancing their incentives to continue, the fraudulent activities described herein.

295.    Defendants routinely presented numerous checks to check cashers that were structured in amounts slightly under the $10,000 floor that would have triggered compulsory reporting to the government.  These checks were: (i) payable to entities that maintained bank accounts, but had no apparent business or lawful purpose; (ii) payable to fictitious payees intended to conceal the true beneficiaries of the transactions; and/or (iii) presented by "brokers" who acted as intermediaries between the check cashers, Retailers and Wholesale Defendants in order to conceal the true beneficiaries of the transactions.

296.    In exchange for a nominal fee, all of the cash generated by the check cashing transactions involving the Wholesale Defendants was returned to the Retailers.  In particular, in furtherance of the scheme to defraud, to create the illusion that the Retailers paid the grossly inflated prices on the invoices provided by the Wholesale Defendants, the Retailers issued checks to the Wholesale Defendants, among others, for the full amounts reflected on the wholesale invoice(s).  The Retailers used those checks to demonstrate to Plaintiffs, and others, that they paid the false wholesale invoice amounts.

297.    In reality, on information and belief, the Wholesale Defendants converted the checks they received from the Retailers to cash and secretly returned cash to the Retailers up to

90% of the wholesale invoice amounts.

298.    Through these transactions, the Retailers were able to surreptitiously obtain cash, which in turn would be used to, among other things, pay kickbacks to the No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices, and to the Wholesale Defendants in exchange for inflated wholesale invoices, thereby maintaining a symbiotic relationship necessary to facilitate the scheme to defraud.

## DISCOVERY OF THE FRAUD

299.    To induce Plaintiffs to promptly reimburse their claims for DME and/or orthotic devices, Defendants have gone to great lengths to systematically conceal their fraud.  By way of example and not limitation:

- The Retail Owners, through their respective Retailers, routinely and deliberately (1) failed to submit wholesale invoices with their initial bill submissions, thereby concealing the amounts that the Retailers actually paid for any DME and/or orthotic devices, the manufacturer, make, model, size and quality of the goods, and the actual value of the goods in a legitimate marketplace; or (2) submitted fraudulent wholesale invoices from one or more of the Wholesale Defendants, reflecting prices far in excess of those actually paid by the Retailers to the extent necessary to support the fraudulent charges;

- With respect to Fee Schedule Items, the Retail Owners, through their respective Retailers, routinely misrepresented in the bills submitted to Plaintiffs that they provided more expensive items from the middle or top end of the Fee Schedule, rather than the inexpensive, basic items that actually were supplied;

- The Retail Owners, through their respective Retailers, submitted false delivery receipts in support of their bills that purported to demonstrate the No-fault Claimants' receipt of the DME and/or orthotic devices, when, in actuality, the delivery receipts were routinely blank at the time the No-fault Claimants signed them or they oftentimes contained forged signatures;

- The Retail Owners, through their respective Retailers, systematically failed and/or refused to provide Plaintiffs with a meaningful description of the DME and/or orthotic devices (*i.e.*, make and model) and/or additional information necessary to determine whether the charges submitted by the Retailers were legitimate.

300.     Plaintiffs are under a statutory and contractual obligation to promptly and fairly process claims within 30 days. The documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent concealment described above, were designed to and did cause Plaintiffs to justifiably rely on them. As a proximate result, Plaintiffs have incurred damages of more than $980,000.00 based upon the fraudulent bill submissions.

301.     Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiffs, Plaintiffs did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS A. DENISOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

302.     The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

303.     At all times relevant herein, Absolute Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

304.     From, in or about 2014 through the date of the filing of this Complaint, Defendant A. Denisov, one or more of the ABC Corporations 1 through 20 and one or more of the John

Does 11 through 20, knowingly conducted and participated in the affairs of the Absolute Medical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

305. At all relevant times mentioned herein, Defendant A. Denisov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Absolute Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

306. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant A. Denisov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

307. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

308.    The racketeering acts set forth herein were carried out on a continued basis for more than a one and a half year period, were related and similar and were committed as part of the ongoing scheme of Defendants A. Denisov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

309.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Absolute Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

310.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant A. Denisov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Absolute Medical Supplies enterprise based upon materially false and misleading information.

311.    Through the Absolute Medical Supplies enterprise, Defendant A. Denisov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant A. Denisov, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants A. Denisov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of

predicate acts of mail fraud, extending from the formation of the Absolute Medical Supplies enterprise through the filing of this Complaint.

312.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant A. Denisov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

313.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

314.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

315.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $2,500.00, the exact amount to be determined at trial.

316.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants A. Denisov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANTS A. DENISOV AND ABSOLUTE MEDICAL SUPPLIES**

**(Common Law Fraud)**

317.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

318.    Defendants A. Denisov and Absolute Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

319.    On information and belief, each and every bill and supporting documentation submitted by Defendants A. Denisov and Absolute Medical Supplies to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

320.    On information and belief, Defendants A. Denisov and Absolute Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Absolute Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant A. Denisov, through Absolute Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant A. Denisov, through Absolute Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

321.    The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Absolute Medical Supplies' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

322.    Defendants A. Denisov and Absolute Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

323.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants A. Denisov and Absolute Medical Supplies.

324.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Absolute Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

325.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants A.

Denisov and Absolute Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

326.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $2,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS A. DENISOV AND ABSOLUTE MEDICAL SUPPLIES**

**(Unjust Enrichment)**

327.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

328.    By reason of their wrongdoing, Defendants A. Denisov and Absolute Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

329.    Plaintiff is therefore entitled to restitution from Defendants A. Denisov and Absolute Medical Supplies in the amount by which it has been unjustly enriched.

330.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $2,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

331.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

332.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants A. Denisov and Absolute Medical Supplies.

333.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants A. Denisov and Absolute Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants A. Denisov and Absolute Medical Supplies could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant A. Denisov, through Absolute Medical Supplies, to Absolute Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Absolute Medical Supplies; and (v) knowingly

supporting the negotiation and performance of kickback agreements between A. Denisov through Absolute Medical Supplies and the No-fault Clinics.

334.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants A. Denisov and Absolute Medical Supplies to obtain fraudulently inflated payments from Plaintiff, among others.

335.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

336.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Absolute Medical Supplies in an amount to be determined at trial, but in no event less than $2,500.00.

337.    On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

338.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive

damages, plus interest, costs and other relief the Court deems just.

### FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS PINSKY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

339.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

340.    At all times relevant herein, Alleviation Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

341.    From, in or about 2012 through the date of the filing of this Complaint, Defendant Pinsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Alleviation Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

342.    At all relevant times mentioned herein, Defendant Pinsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Alleviation Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

343.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Pinsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

344.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

345.   The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Pinsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

346.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Alleviation Products continues to pursue collection on the fraudulent billing to the present day.

347.   As a part of the pattern of racketeering activity and for the purpose of executing

98

the scheme and artifice to defraud as described above, Defendant Pinsky, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Alleviation Products enterprise based upon materially false and misleading information.

348.   Through the Alleviation Products enterprise, Defendant Pinsky submitted numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous No-fault Claimants.   The bills and supporting documents that were sent by Defendant Pinsky, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Pinsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Alleviation Products enterprise through the filing of this Complaint.

349.   A sample list of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Pinsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

350.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

351.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

352.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate

Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $2,800.00, the exact amount to be determined at trial.

353.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Pinsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS PINSKY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

354.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

355.    At all times relevant herein, Chapa Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

356.    From, in or about 2012 through the date of the filing of this Complaint, Defendant John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Chapa Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

357.    At all relevant times mentioned herein, Defendant John Doe 1, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Chapa Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

358.    On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant John Doe 1 required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

359.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20 and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

360.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendant John Doe One, one or more of the ABC Corporations 1 through 20

and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

361.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Chapa Products continues to pursue collection on the fraudulent billing to the present day.

362.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant John Doe 1, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Chapa Products enterprise based upon materially false and misleading information.

363.   Through the Chapa Products enterprise, Defendant John Doe 1 submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant John Doe 1, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Chapa Products enterprise through the filing of this Complaint.

364.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant John Doe 1, in furtherance of the scheme as well as the specific misrepresentations identified for each

of the mailings.

365.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

366.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

367.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $35,000.00, the exact amount to be determined at trial.

368.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS PINSKY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

369.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

370.   At all times relevant herein, Maiga Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

371.     From, in or about 2012 through the date of the filing of this Complaint, Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Maiga Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

372.     At all relevant times mentioned herein, Defendant John Doe 2, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Maiga Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

373.     On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant John Doe 2 required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

374.     On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through

one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

375.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

376.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Maiga Products continues to pursue collection on the fraudulent billing to the present day.

377.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant John Doe 2, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Maiga Products enterprise based upon materially false and misleading information.

378.    Through the Maiga Products enterprise, Defendant John Doe 2 submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant John Doe 2, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By

virtue of those activities, Defendants John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Maiga Products enterprise through the filing of this Complaint.

379. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant John Doe 2, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

380. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

381. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

382. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $6,000.00, the exact amount to be determined at trial.

383. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS PINSKY, ALLEVIATION PRODUCTS, CHAPA PRODUCTS AND MAIGA PRODUCTS**

**(Common Law Fraud)**

384.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

385.    Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

386.    On information and belief, each and every bill and supporting documentation submitted by Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

387.    On information and belief, Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Alleviation Products, Chapa Products and Maiga Products were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Pinsky, through Alleviation Products, Chapa Products and Maiga Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Pinsky, through Alleviation Products, Chapa Products and Maiga Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

388.   The foregoing was intended to deceive and mislead Plaintiff into paying Defendants Alleviation Products, Chapa Products and Maiga Products' claims under the No-fault Law.   Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

389.   Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

390.   Plaintiff did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products.

391.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendants Alleviation Products, Chapa Products and Maiga Products' claims for No-fault insurance benefits submitted in connection therewith.

392.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

393.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $44,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS PINSKY, ALLEVIATION PRODUCTS, CHAPA PRODUCTS AND MAIGA PRODUCTS

### (Unjust Enrichment)

394.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

395.    By reason of their wrongdoing, Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

396.    Plaintiff is therefore entitled to restitution from Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products in the amount by which they have been unjustly enriched.

397.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $44,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

398.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

399.    On information and belief, one or more of the Wholesale Defendants (ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products.

400.    On information and belief, the acts taken by one or more of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent

wholesale invoices so that Defendants Pinsky and Alleviation Products could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Pinsky, through Alleviation Products, Chapa Products and Maiga Products, to Alleviation Products, Chapa Products and Maiga Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Alleviation Products, Chapa Products and Maiga Products; and (v) knowingly supporting the negotiation and performance of kickback agreements between Pinsky through Alleviation Products, Chapa Products and Maiga Products and the No-fault Clinics.

401.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 17 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Pinsky, Alleviation Products, Chapa Products and Maiga Products to obtain fraudulently inflated payments from Plaintiff, among others.

402.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

403.    On information and belief, the conduct of the Wholesale Defendants (one or more

of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through, Alleviation Products, Chapa Products and Maiga Products in an amount to be determined at trial, but in no event less than $44,000.00.

404.    On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

405.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ELEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS AKOPYAN, NISANOV, RAFAILOV, GLOBAL BEST DEAL, IG&NAT SERVICES, VZ GROUP, MEZKULA, JOHN DOE 6, ZALOGIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

406.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

407.    At all times relevant herein, Any Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

408.    From, in or about 2010 through the date of the filing of this Complaint, Defendants Akopyan, Nisanov, Rafailov, Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Vadim Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs

of the Any Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

409.    At all relevant times mentioned herein, Defendants Akopyan, Nisanov and Rafailov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Any Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

410.    On information and belief, Defendants Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Global Best Deal, IG&NAT Services, VZ Group and one or more of the ABC Corporations furnished documents that Defendants Akopyan, Nisanov and Rafailov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

411.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Mezkula, John Doe 6, Zalogin and one or

more of the John Does 11 through 20, through Global Best Deal, IG&NAT Services, VZ Group and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

412.    The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Akopyan, Nisanov, Rafailov, Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

413.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Any Medical Supply continues to pursue collection on the fraudulent billing to the present day.

414.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Akopyan, Nisanov and Rafailov, with the knowledge and intent of Defendants Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Any Medical Supply enterprise based upon materially false and misleading information.

415.    Through the Any Medical Supply enterprise, Defendants Akopyan, Nisanov and Rafailov submitted hundreds of fraudulent claim forms seeking payment for DME and/or

orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Akopyan, Nisanov and Rafailov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Akopyan, Nisanov, Rafailov, Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Any Medical Supply enterprise through the filing of this Complaint.

416.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Akopyan, Nisanov and Rafailov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

417.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

418.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

419.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $26,000.00, the exact amount to be determined at trial.

420.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Akopyan, Nisanov, Rafailov, Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John

Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWELFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS AKOPYAN, NISANOV, RAFAILOV AND ANY MEDICAL SUPPLY

### (Common Law Fraud)

421.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

422.    Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

423.    On information and belief, each and every bill and supporting documentation submitted by Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

424.    On information and belief, Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Any Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendants Akopyan, Nisanov, Rafailov, through Any Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Akopyan, Nisanov, Rafailov, through Any Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

425.   The foregoing was intended to deceive and mislead Plaintiffs into paying

Defendant Any Medical Supply's claims under the No-fault Law.   Specific examples of the

billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

426.    Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

427.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply.

428.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Any Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

429.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

430.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $26,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS AKOPYAN, NISANOV, RAFAILOV AND ANY MEDICAL SUPPLY

### (Unjust Enrichment)

431.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

432.    By reason of their wrongdoing, Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

433.    Plaintiffs are therefore entitled to restitution from Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply in the amount by which they have been unjustly enriched.

434.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $26,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS GLOBAL BEST DEAL, IG&NAT SERVICES, VZ GROUP, MEZKULA, JOHN DOE 6, ZALOGIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

435.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

436.     On information and belief, the Wholesale Defendants (Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply.

437.     On information and belief, the acts taken by the Wholesale Defendants (Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Akopyan, Nisanov, Rafailov and Any Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Akopyan, Nisanov, Rafailov, through Any Medical Supply, to Any Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Any Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Akopyan, Nisanov and Rafailov through Any Medical Supply and the No-fault Clinics.

438.     On information and belief, the conduct of the Wholesale Defendants (Global Best

Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Akopyan, Nisanov and Rafailov and Any Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

439.    On information and belief, the Wholesale Defendants (Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

440.    On information and belief, the conduct of the Wholesale Defendants (Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Any Medical Supply in an amount to be determined at trial, but in no event less than $26,000.00.

441.    On information and belief, the Wholesale Defendants' (Global Best Deal, IG&NAT Services, VZ Group, Mezkula, John Doe 6, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

442.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GERASYMENKO, BIV WHOLESALE, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

443.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

444.   At all times relevant herein, Bento Ortho was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

445.   From, in or about 2013 through the date of the filing of this Complaint, Defendants Gerasymenko, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Bento Ortho enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

446.   At all relevant times mentioned herein, Defendant Gerasymenko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Bento Ortho enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting

documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

447.    On information and belief, Defendants Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Biv Wholesale and one or more of the ABC Corporations furnished documents that Defendant Gerasymenko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

448.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 4 and one or more of the John Does 11 through 20, through Biv Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

449.    The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Gerasymenko, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

450.    On information and belief, this pattern of racketeering activity poses a specific

threat of repetition extending indefinitely into the future, inasmuch as Bento Ortho continues to pursue collection on the fraudulent billing to the present day.

451.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Gerasymenko, with the knowledge and intent of Defendants Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Bento Ortho enterprise based upon materially false and misleading information.

452.   Through the Bento Ortho enterprise, Defendant Gerasymenko submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Gerasymenko, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Gerasymenko, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Bento Ortho enterprise through the filing of this Complaint.

453.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Gerasymenko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

454.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

455.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

456.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $32,000.00, the exact amount to be determined at trial.

457.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Gerasymenko, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GERASYMENKO AND BENTO ORTHO

### (Common Law Fraud)

458.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

459.    Defendants Gerasymenko and Bento Ortho made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

460.    On information and belief, each and every bill and supporting documentation submitted by Defendants Gerasymenko and Bento Ortho to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to

defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

461.   On information and belief, Defendants Gerasymenko and Bento Ortho intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Bento Ortho was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

126

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Gerasymenko, through Bento Ortho, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Gerasymenko, through Bento Ortho, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

462.    The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Bento Ortho's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

463.    Defendants Gerasymenko and Bento Ortho knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

464.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Gerasymenko and Bento Ortho.

465.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Bento Ortho's claims for No-fault insurance benefits submitted in connection therewith.

466.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Gerasymenko and Bento Ortho evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

467.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $32,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GERASYMENKO AND BENTO ORTHO

## (Unjust Enrichment)

468.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

469.   By reason of their wrongdoing, Defendants Gerasymenko and Bento Ortho have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

470.   Plaintiff is therefore entitled to restitution from Defendants Gerasymenko and Bento Ortho in the amount by which they have been unjustly enriched.

471.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $32,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BIV WHOLESALE, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

## (Aiding and Abetting)

472.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as

though fully set forth herein.

473. On information and belief, the Wholesale Defendants (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Gerasymenko and Bento Ortho.

474. On information and belief, the acts taken by the Wholesale Defendants (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Gerasymenko and Bento Ortho purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Gerasymenko and Bento Ortho could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Gerasymenko, through Bento Ortho, to Bento Ortho to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Bento Ortho; and (v) knowingly supporting the negotiation and performance of kickback agreements between Gerasymenko through Bento Ortho and the No-fault Clinics.

475. On information and belief, the conduct of the Wholesale Defendants (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material,

129

is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Gerasymenko  and Bento Ortho to obtain fraudulently inflated payments from Plaintiff, among others.

476.    On information and belief, the Wholesale Defendants (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

477.    On information and belief, the conduct of the Wholesale Defendants (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Bento Ortho in an amount to be determined at trial, but in no event less than $32,000.00.

478.    On information and belief, the Wholesale Defendants' (Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

479.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINETEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MILERMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

480.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

481.    At all times relevant herein, Best Choice Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

482.    From, in or about 2011 through the date of the filing of this Complaint, Defendant Milerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Best Choice Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

483.    At all relevant times mentioned herein, Defendant Milerman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Best Choice Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

484.    On information and belief, one or more of the ABC Corporations 1 through 20

and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Milerman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

485.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

486.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Milerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

487.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Best Choice Medical Supply continues to pursue collection on the fraudulent billing to the present day.

488.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Milerman, with the knowledge

and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Best Choice Medical Supply enterprise based upon materially false and misleading information.

489.    Through the Best Choice Medical Supply enterprise, Defendant Milerman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Milerman, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Milerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Best Choice Medical Supply enterprise through the filing of this Complaint.

490.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Milerman in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

491.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

492.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

493.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate

Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $31,000.00, the exact amount to be determined at trial.

494.     Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Milerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## TWENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MILERMAN AND BEST CHOICE MEDICAL SUPPLY

### (Common Law Fraud)

495.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

496.     Defendants Milerman and Best Choice Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

497.     On information and belief, each and every bill and supporting documentation submitted by Defendants Milerman and Best Choice Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

498.     On information and belief, Defendants Milerman and Best Choice Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of

134

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Best Choice Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Milerman, through Best Choice Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Milerman, through Best Choice Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

499.   The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Best Choice Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the

exhibits in the accompanying Compendium of Exhibits.

500.    Defendants Milerman and Best Choice Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

501.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Milerman and Best Choice Medical Supply.

502.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Best Choice Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

503.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Milerman and Best Choice Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

504.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $31,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS MILERMAN AND BEST CHOICE MEDICAL SUPPLY

### (Unjust Enrichment)

505.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

506.    By reason of their wrongdoing, Defendants Milerman and Best Choice Medical

Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

507.    Plaintiff is therefore entitled to restitution from Defendants Milerman and Best Choice Medical Supply in the amount by which they have been unjustly enriched.

508.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $31,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

#### (Aiding and Abetting)

509.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

510.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Milerman and Best Choice Medical Supply.

511.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that

137

Defendants Milerman and Best Choice Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Milerman and Best Choice Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Milerman, through Best Choice Medical Supply, to Best Choice Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Best Choice Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Milerman through Best Choice Medical Supply and the No-fault Clinics.

512.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Milerman and Best Choice Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

513.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

514.    On information and belief, the conduct of the Wholesale Defendants (one or more

of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Best Choice Medical Supply in an amount to be determined at trial, but in no event less than $31,000.00.

515.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

516.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS LYUBRONETSKAYA, AMERICAN MOBILITY MEDICAL, AKMALOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

517.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

518.   At all times relevant herein, Empire State Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

519.   From, in or about 2010 through the date of the filing of this Complaint, Defendants Lyubronetskaya, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Empire State Medical Supplies enterprise through

139

a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

520.    At all relevant times mentioned herein, Defendant Lyubronetskaya, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Empire State Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

521.    On information and belief, Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant American Mobility Medical and one or more of the ABC Corporations furnished documents that Defendant Lyubronetskaya required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

522.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Akmalova and one or more of the John Does 11 through 20, through American Mobility Medical and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from

140

Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

523.     The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Lyubronetskaya, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

524.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Empire State Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

525.     As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Lyubronetskaya, with the knowledge and intent of Defendants American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Empire State Medical Supplies enterprise based upon materially false and misleading information.

526.     Through the Empire State Medical Supplies enterprise, Defendant Lyubronetskaya submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Lyubronetskaya, as

well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Defendants Lyubronetskaya, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Empire State Medical Supplies enterprise through the filing of this Complaint.

527.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Lyubronetskaya, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

528.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

529.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

530.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $38,000.00, the exact amount to be determined at trial.

531.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Lyubronetskaya, American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**TWENTY-FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS LYUBRONETSKAYA AND
EMPIRE STATE MEDICAL SUPPLIES**

**(Common Law Fraud)**

532.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

533.    Defendants Lyubronetskaya and Empire State Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

534.    On information and belief, each and every bill and supporting documentation submitted by Defendants Lyubronetskaya and Empire State Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

535.    On information and belief, Defendants Lyubronetskaya and Empire State Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Empire State Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Lyubronetskaya, through Empire State Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Lyubronetskaya , through Empire State Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

536. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Empire State Medical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

537.   Defendants Lyubronetskaya and Empire State Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

538.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Lyubronetskaya and Empire State Medical Supplies.

539.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Empire State Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

540.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Lyubronetskaya and Empire State Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

541.   By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS LYUBRONETSKAYA AND
### EMPIRE STATE MEDICAL SUPPLIES

### (Unjust Enrichment)

542.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as

145

though fully set forth herein.

543.    By reason of their wrongdoing, Defendants Lyubronetskaya and Empire State Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

544.    Plaintiffs are therefore entitled to restitution from Defendants Lyubronetskaya and Empire State Medical Supplies in the amount by which they have been unjustly enriched.

545.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS AMERICAN MOBILITY MEDICAL, AKMALOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

546.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

547.    On information and belief, the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Lyubronetskaya and Empire State Medical Supplies.

548.    On information and belief, the acts taken by the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Lyubronetskaya and Empire State Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Lyubronetskaya and Empire State Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Lyubronetskaya, through Empire State Medical Supplies, to Empire State Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Empire State Medical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Lyubronetskaya through Empire State Medical Supplies and the No-fault Clinics.

549.    On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Lyubronetskaya and Empire State Medical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

550.    On information and belief, the Wholesale Defendants (American Mobility

Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

551.    On information and belief, the conduct of the Wholesale Defendants (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Empire State Medical Supplies in an amount to be determined at trial, but in no event less than $38,000.00.

552.    On information and belief, the Wholesale Defendants' (American Mobility Medical, Akmalova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

553.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS HAMAMY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

554.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

148

## THE RICO ENTERPRISE

555.    At all times relevant herein, Excel Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

556.    From, in or about 2014 through the date of the filing of this Complaint, Defendant Hamamy, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Excel Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

557.    At all relevant times mentioned herein, Defendant Hamamy, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Excel Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

558.    On information and belief, Defendant Hamamy, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Hamamy required, in furtherance of the scheme to defraud, to obtain

149

payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

559.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

560.    The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Hamamy, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

561.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Excel Products continues to pursue collection on the fraudulent billing to the present day.

562.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Hamamy, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Excel Products enterprise based upon materially false and misleading information.

563.    Through the Excel Products enterprise, Defendant Hamamy submitted hundreds

of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Hamamy, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Hamamy, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Excel Products enterprise through the filing of this Complaint.

564. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Hamamy, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

565. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

566. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

567. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $7,500.00, the exact amount to be determined at trial.

568. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Hamamy, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs

of this lawsuit and reasonable attorneys' fees.

## TWENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS HAMAMY AND EXCEL PRODUCTS

### (Common Law Fraud)

569.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

570.    Defendants Hamamy and Excel Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

571.    On information and belief, each and every bill and supporting documentation submitted by Defendants Hamamy and Excel Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

572.    On information and belief, Defendants Hamamy and Excel Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Excel Products was entitled to be reimbursed under the No-fault Law;

152

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Hamamy, through Excel Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Hamamy, through Excel Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

573.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Excel Products' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

574.   Defendants Hamamy and Excel Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

575.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Hamamy and Excel Products.

576.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Excel Products' claims for No-fault insurance benefits submitted in connection therewith.

577.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Hamamy and Excel Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

578.   By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $7,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS HAMAMY AND EXCEL PRODUCTS

### (Unjust Enrichment)

579.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

580.   By reason of their wrongdoing, Defendants Hamamy and Excel Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

581.   Plaintiffs are therefore entitled to restitution from Defendants Hamamy and Excel

Products in the amount by which they have been unjustly enriched.

582.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $7,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### THIRTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

583.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

584.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Hamamy and Excel Products.

585.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Hamamy and Excel Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Hamamy and Excel Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Hamamy, through Excel Products, to Excel Products to create

the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Excel Products; and (v) knowingly supporting the negotiation and performance of kickback agreements between Hamamy through Excel Products and the No-fault Clinics.

586.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Hamamy and Excel Products to obtain fraudulently inflated payments from Plaintiffs, among others.

587.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

588.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Excel Products in an amount to be determined at trial, but in no event less than $7,500.00.

589.    On information and belief, the Wholesale Defendants' (one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

590.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### THIRTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS SONAYAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

591.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

592.    At all times relevant herein, First American Alliance was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

593.    From, in or about 2011 through the date of the filing of this Complaint, Defendant Sonayan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the First American Alliance enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

594.    At all relevant times mentioned herein, Defendant Sonayan, together with others unknown to Plaintiffs, exerted control over and directed the operations of the First American

Alliance enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

595.   On information and belief, Defendant Sonayan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Sonayan required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

596.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

597.   The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Sonayan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

598.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as First American Alliance continues to pursue collection on the fraudulent billing to the present day.

599.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Sonayan, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the First American Alliance enterprise based upon materially false and misleading information.

600.    Through the First American Alliance enterprise, Defendant Sonayan submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Sonayan, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Sonayan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the First American Alliance enterprise through the filing of this Complaint.

601.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Sonayan, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

602.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

603.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

604.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $17,000.00, the exact amount to be determined at trial.

605.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Sonayan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### THIRTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS SONAYAN AND FIRST AMERICAN ALLIANCE

### (Common Law Fraud)

606.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

607.    Defendants   Sonayan   and   First   American   Alliance   made   material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

608.    On information and belief, each and every bill and supporting documentation submitted by Defendants Sonayan and First American Alliance to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were

intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

609.    On information and belief, Defendants Sonayan and First American Alliance intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts First American Alliance was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Sonayan, through First American Alliance, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Sonayan,

through First American Alliance, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

610. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant First American Alliance's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

611. Defendants Sonayan and First American Alliance knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

612. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Sonayan and First American Alliance.

613. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant First American Alliance's claims for No-fault insurance benefits submitted in connection therewith.

614. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Sonayan and First American Alliance evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

615. By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS SONAYAN AND FIRST AMERICAN ALLIANCE

### (Unjust Enrichment)

616.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

617.    By reason of their wrongdoing, Defendants Sonayan and First American Alliance have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

618.    Plaintiffs are therefore entitled to restitution from Defendants Sonayan and First American Alliance in the amount by which they have been unjustly enriched.

619.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

620.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

621.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided

and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Sonayan and First American Alliance.

622.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Sonayan and First American Alliance purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Sonayan and First American Alliance could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Sonayan, through First American Alliance, to First American Alliance to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through First American Alliance; and (v) knowingly supporting the negotiation and performance of kickback agreements between Sonayan through First American Alliance and the No-fault Clinics.

623.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Sonayan and First American Alliance to obtain fraudulently inflated payments from Plaintiffs, among others.

624.     On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

625.     On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through First American Alliance in an amount to be determined at trial, but in no event less than $18,000.00.

626.     On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

627.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS FIRAYNER, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

628.     The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

165

**THE RICO ENTERPRISE**

629.   At all times relevant herein, Forest Medical Equipment was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

630.   From, in or about 2014 through the date of the filing of this Complaint, Defendant Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Forest Medical Equipment enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

631.   At all relevant times mentioned herein, Defendant Firayner, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Forest Medical Equipment enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Fire and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

632.   On information and belief, Defendant Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Firayner required, in furtherance of the scheme to defraud, to obtain

166

payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

633.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

634.    The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

635.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Forest Medical Equipment continues to pursue collection on the fraudulent billing to the present day.

636.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Firayner, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Forest Medical Equipment enterprise based upon materially false and misleading information.

637.    Through the Forest Medical Equipment enterprise, Defendant Firayner submitted

hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Firayner, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Forest Medical Equipment enterprise through the filing of this Complaint.

638.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Firayner, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

639.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

640.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

641.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Fire and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $4,000.00, the exact amount to be determined at trial.

642.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Firayner, one or more of the ABC Corporations 1 through 20 and one or more of the John Does

11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS FIRAYNER AND FOREST MEDICAL EQUIPMENT

## (Common Law Fraud)

643. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

644. Defendants Firayner and Forest Medical Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company for payment.

645. On information and belief, each and every bill and supporting documentation submitted by Defendants Firayner and Forest Medical Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

646. On information and belief, Defendants Firayner and Forest Medical Equipment intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Forest Medical Equipment was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Firayner, through Forest Medical Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Firayner, through Forest Medical Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

647.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Forest Medical Equipment's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

648.    Defendants Firayner and Forest Medical Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

170

649.     Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Firayner and Forest Medical Equipment.

650.     Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Forest Medical Equipment's claims for No-fault insurance benefits submitted in connection therewith.

651.     Furthermore, the far reaching pattern of fraudulent conduct by Defendants Firayner and Forest Medical Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

652.     By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS FIRAYNER AND FOREST MEDICAL EQUIPMENT

### (Unjust Enrichment)

653.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

654.     By reason of their wrongdoing, Defendants Firayner and Forest Medical Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company that are the result of unlawful

conduct and that, in equity and good conscience, they should not be permitted to keep.

655.    Plaintiffs are therefore entitled to restitution from Defendants Firayner and Forest Medical Equipment in the amount by which they have been unjustly enriched.

656.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $5000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

657.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

658.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company by Defendants Firayner and Forest Medical Equipment.

659.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that

172

Defendants Firayner and Forest Medical Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Firayner and Forest Medical Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Firayner, through Forest Medical Equipment, to Forest Medical Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Forest Medical Equipment; and (v) knowingly supporting the negotiation and performance of kickback agreements between Firayner through Forest Medical Equipment and the No-fault Clinics.

660.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Firayner and Forest Medical Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

661.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

662.    On information and belief, the conduct of the Wholesale Defendants (one or more

of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Forest Medical Equipment in an amount to be determined at trial, but in no event less than $5000.00.

663.    On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

664.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### THIRTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS KOMISARCHIK, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

665.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

666.    At all times relevant herein, Healing Health Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

667.    From, in or about 2009 through the date of the filing of this Complaint, Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Healing Health

Products enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

668.    At all relevant times mentioned herein, Defendant Komisarchik, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Healing Health Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

669.    On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Komisarchik required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

670.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

671.    The racketeering acts set forth herein were carried out on a continued basis for more than a six-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

672.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Healing Health Products continues to pursue collection on the fraudulent billing to the present day.

673.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Komisarchik, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Healing Health Products enterprise based upon materially false and misleading information.

674.    Through the Healing Health Products enterprise, Defendant Komisarchik submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Komisarchik, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of

predicate acts of mail fraud, extending from the formation of the Healing Health Products enterprise through the filing of this Complaint.

675.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Komisarchik, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

676.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

677.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

678.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $265,000.00, the exact amount to be determined at trial.

679.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**FORTIETH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KOMISARCHIK, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

680.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as

though fully set forth herein.

## THE RICO ENTERPRISE

681.   At all times relevant herein, Preferred Ortho Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

682.   From, in or about 2011 through the date of the filing of this Complaint, Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Preferred Ortho Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

683.   At all relevant times mentioned herein, Defendant Komisarchik, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Preferred Ortho Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

684.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant

Komisarchik required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

685. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

686. The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

687. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Preferred Ortho Products continues to pursue collection on the fraudulent billing to the present day.

688. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Komisarchik, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Preferred Ortho Products enterprise based upon materially false and misleading information.

179

689.    Through the Preferred Ortho Products enterprise, Defendant Komisarchik submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Komisarchik, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Preferred Ortho Products enterprise through the filing of this Complaint.

690.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Komisarchik, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

691.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

692.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

693.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $7,000.00, the exact amount to be determined at trial.

694.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Komisarchik, one or more of the ABC Corporations 1 through 20 and one or more of the John

Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS KOMISARCHIK, HEALING HEALTH PRODUCTS AND PREFERRED ORTHO PRODUCTS

### (Common Law Fraud)

695.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

696.    Defendants Komisarchik, Healing Health Products and Preferred Ortho Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

697.    On information and belief, each and every bill and supporting documentation submitted by Defendants Komisarchik, Healing Health Products and Preferred Ortho Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

698.    On information and belief, Defendants Komisarchik, Healing Health Products and Preferred Ortho Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Healing Health Products and Preferred Ortho Products were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Komisarchik, through Healing Health Products and Preferred Ortho Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Komisarchik, through Healing Health Products and Preferred Ortho Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

699.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendants Healing Health Products and Preferred Ortho Products' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

700.    Defendants Komisarchik, Healing Health Products and Preferred Ortho Products knew the foregoing material misrepresentations to be false when made and nevertheless made

these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

701.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Komisarchik, Healing Health Products and Preferred Ortho Products.

702.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendants Healing Health Products and Preferred Ortho Products' claims for No-fault insurance benefits submitted in connection therewith.

703.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Komisarchik, Healing Health Products and Preferred Ortho Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

704.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $272,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS KOMISARCHIK, HEALING HEALTH PRODUCTS AND PREFERRED ORTHO PRODUCTS

### (Unjust Enrichment)

705.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

706.    By reason of their wrongdoing, Defendants Komisarchik, Healing Health Products and Preferred Ortho Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

707.    Plaintiffs are therefore entitled to restitution from Defendants Komisarchik, Healing Health Products and Preferred Ortho Products in the amount by which they have been unjustly enriched.

708.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $272,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

709.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

710.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Komisarchik, Healing Health Products and Preferred Ortho Products.

184

711.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Komisarchik, Healing Health Products and Preferred Ortho Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Komisarchik, Healing Health Products and Preferred Ortho Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Komisarchik, through Healing Health Products and Preferred Ortho Products, to Healing Health Products and Preferred Ortho Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Healing Health Products and Preferred Ortho Products; and (v) knowingly supporting the negotiation and performance of kickback agreements between Komisarchik through Healing Health Products and Preferred Ortho Products and the No-fault Clinics.

712.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Komisarchik, Healing Health Products and Preferred Ortho Products to obtain fraudulently inflated payments from Plaintiffs, among others.

185

713. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

714. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Healing Health Products and Preferred Ortho Products in an amount to be determined at trial, but in no event less than $272,000.00.

715. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

716. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ZARUBIN, ORTIZ OMEGA, JOHN DOE 10, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

717. The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

186

## THE RICO ENTERPRISE

718.    At all times relevant herein, Infinite Ortho Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

719.    From, in or about 2011 through the date of the filing of this Complaint, Defendants Zarubin, Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Infinite Ortho Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

720.    At all relevant times mentioned herein, Defendant Zarubin, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Infinite Ortho Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

721.    On information and belief, Defendants Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Ortiz Omega and one or more of the

ABC Corporations furnished documents that Defendant Zarubin required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

722.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 10 and one or more of the John Does 11 through 20, through Ortiz Omega and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

723.    The racketeering acts set forth herein were carried out on a continued basis for more than a three-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Zarubin, Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

724.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Infinite Ortho Products continues to pursue collection on the fraudulent billing to the present day.

725.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Zarubin, with the knowledge and intent of Defendants Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to

the Infinite Ortho Products enterprise based upon materially false and misleading information.

726.   Through the Infinite Ortho Products enterprise, Defendant Zarubin submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Zarubin, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Defendants Zarubin, Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Infinite Ortho Products enterprise through the filing of this Complaint.

727.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Zarubin, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

728.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

729.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

730.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $9,000.00, the exact amount to be determined at trial.

731.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants

189

Zarubin, Ortiz Omega, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### FORTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ZARUBIN, BIV WHOLESALE, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

732.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

733.    At all times relevant herein, Pravel was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

734.    From, in or about 2013 through the date of the filing of this Complaint, Defendants Zarubin, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Pravel enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

735.    At all relevant times mentioned herein, Defendant Zarubin, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Pravel enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of

creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

736.    On information and belief, Defendants Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Biv Wholesale and one or more of the ABC Corporations furnished documents that Defendant Zarubin required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

737.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 4 and one or more of the John Does 11 through 20, through Biv Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

738.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Zarubin, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

739.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Pravel continues to pursue collection on the fraudulent billing to the present day.

740.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Zarubin, with the knowledge and intent of Defendants Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Pravel enterprise based upon materially false and misleading information.

741.    Through the Pravel enterprise, Defendant Zarubin submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Zarubin, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Zarubin, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Pravel enterprise through the filing of this Complaint.

742.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Zarubin, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

743.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

744.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

745.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $27,000.00, the exact amount to be determined at trial.

746.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Zarubin, Biv Wholesale, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**FORTY-SIXTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ZARUBIN, INFINITE ORTHO PRODUCTS AND PRAVEL**

**(Common Law Fraud)**

747.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

748.    Defendants Zarubin, Infinite Ortho Products and Pravel made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

749.    On information and belief, each and every bill and supporting documentation submitted by Defendants Zarubin, Infinite Ortho Products and Pravel to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only

were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

750. On information and belief, Defendants Zarubin, Infinite Ortho Products and Pravel intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Infinite Ortho Products and Pravel were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Zarubin, through Infinite Ortho Products and Pravel, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Zarubin, through Infinite Ortho Products and Pravel, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

751.    The foregoing was intended to deceive and mislead Plaintiff into paying Defendants Infinite Ortho Products and Pravel's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

752.    Defendants Zarubin, Infinite Ortho Products and Pravel knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

753.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Zarubin, Infinite Ortho Products and Pravel.

754.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendants Infinite Ortho Products and Pravel's claims for No-fault insurance benefits submitted in connection therewith.

755.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Zarubin, Infinite Ortho Products and Pravel evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

756.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $36,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ZARUBIN, INFINITE ORTHO PRODUCTS AND PRAVEL

### (Unjust Enrichment)

757.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

758.    By reason of their wrongdoing, Defendants Zarubin, Infinite Ortho Products and Pravel have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

759.    Plaintiff is therefore entitled to restitution from Defendants Zarubin, Infinite Ortho Products and Pravel in the amount by which they have been unjustly enriched.

760.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $36,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ORTIZ OMEGA, BIV WHOLESALE, JOHN DOE 4, JOHN DOE 10, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

761.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as

though fully set forth herein.

762.    On information and belief, the Wholesale Defendants (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Zarubin, Infinite Products and Pravel.

763.    On information and belief, the acts taken by the Wholesale Defendants (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Zarubin, Infinite Products and Pravel purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Zarubin, Infinite Products and Pravel could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Zarubin, through Infinite Products and Pravel, to Infinite Products and Pravel to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Infinite Products and Pravel; and (v) knowingly supporting the negotiation and performance of kickback agreements between Zarubin through Infinite Products and Pravel and the No-fault Clinics.

764.    On information and belief, the conduct of the Wholesale Defendants (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1

through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Zarubin, Infinite Products and Pravel to obtain fraudulently inflated payments from Plaintiff, among others.

765.    On information and belief, the Wholesale Defendants (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

766.    On information and belief, the conduct of the Wholesale Defendants (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Infinite Products and Pravel in an amount to be determined at trial, but in no event less than $36,000.00.

767.    On information and belief, the Wholesale Defendants' (Ortiz Omega, Biv Wholesale, John Doe 4, John Doe 10, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

768.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABRAMOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

769.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

770.    At all times relevant herein, Liberty Surgical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

771.    From, in or about 2011 through the date of the filing of this Complaint, Defendant Abramov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Liberty Surgical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

772.    At all relevant times mentioned herein, Defendant Abramov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Liberty Surgical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

773.    On information and belief, one or more of the ABC Corporations 1 through 20

199

and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Abramov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

774.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

775.    The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Abramov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

776.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Liberty Surgical Supplies continues to pursue collection on the fraudulent billing to the present day.

777.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Abramov, with the knowledge

200

and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Liberty Surgical Supplies enterprise based upon materially false and misleading information.

778.   Through the Liberty Surgical Supplies enterprise, Defendant Abramov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Abramov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Abramov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Liberty Surgical Supplies enterprise through the filing of this Complaint.

779.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Abramov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

780.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

781.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

782.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate

Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $3,500.00, the exact amount to be determined at trial.

783.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Abramov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABRAMOV AND LIBERTY SURGICAL SUPPLIES

### (Common Law Fraud)

784.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

785.     Defendants   Abramov   and   Liberty   Surgical   Supplies   made   material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

786.     On information and belief, each and every bill and supporting documentation submitted by Defendants Abramov and Liberty Surgical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

787.     On information and belief, Defendants Abramov and Liberty Surgical Supplies intentionally,   knowingly,   fraudulently   and   with   an   intent   to   deceive,   submitted   bills, prescriptions, wholesale invoices and other documentation that contained false representations of

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Liberty Surgical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Abramov, through Liberty Surgical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Abramov, through Liberty Surgical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

788.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Liberty Surgical Supplies' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in

the accompanying Compendium of Exhibits.

789.    Defendants Abramov and Liberty Surgical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

790.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Abramov and Liberty Surgical Supplies.

791.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Liberty Surgical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

792.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Abramov and Liberty Surgical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

793.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $3,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABRAMOV AND LIBERTY SURGICAL SUPPLIES

### (Unjust Enrichment)

794.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

204

795.    By reason of their wrongdoing, Defendants Abramov and Liberty Surgical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

796.    Plaintiffs are therefore entitled to restitution from Defendants Abramov and Liberty Surgical Supplies in the amount by which they have been unjustly enriched.

797.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $3,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

798.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

799.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Abramov and Liberty Surgical Supplies.

800.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale

invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Abramov and Liberty Surgical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Abramov and Liberty Surgical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Abramov, through Liberty Surgical Supplies, to Liberty Surgical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Liberty Surgical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Abramov through Liberty Surgical Supplies and the No-fault Clinics.

801.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Abramov and Liberty Surgical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

802.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the

fraudulent scheme.

803.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Liberty Surgical Supplies in an amount to be determined at trial, but in no event less than $3,500.00.

804.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

805.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS ESTATE OF YURIY DENISOV, IMPREZZA NYC, JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

806.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

807.   At all times relevant herein, Maxford was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

808.   From, in or about 2013 through the date of the filing of this Complaint, Defendants Estate of Yuriy Denisov, Imprezza NYC, John Doe 7, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Maxford enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

809.   At all relevant times mentioned herein, Defendant Estate of Yuriy Denisov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Maxford enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

810.   On information and belief, Defendants Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Imprezza NYC and one or more of the ABC Corporations furnished documents that Defendant Estate of Yuriy Denisov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

811.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 7 and one or more of the John Does 11 through 20, through Imprezza NYC and one or more of the ABC Corporations 1 through 20,

would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

812.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Estate of Yuriy Denisov, Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

813.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Maxford continues to pursue collection on the fraudulent billing to the present day.

814.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Estate of Yuriy Denisov, with the knowledge and intent of Defendants Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Maxford enterprise based upon materially false and misleading information.

815.    Through the Maxford enterprise, Defendant Estate of Yuriy Denisov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Estate of Yuriy Denisov, as well as the payments that Plaintiff made in response to those bills, were sent through the United States

Postal Service.  By virtue of those activities, Defendants Estate of Yuriy Denisov, Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Maxford enterprise through the filing of this Complaint.

816.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Estate of Yuriy Denisov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

817.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

818.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

819.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $11,000.00, the exact amount to be determined at trial.

820.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Estate of Yuriy Denisov, Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ESTATE OF YURIY DENISOV AND MAXFORD

### (Common Law Fraud)

821. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

822. Defendants Estate of Yuriy Denisov and Maxford made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

823. On information and belief, each and every bill and supporting documentation submitted by Defendants Estate of Yuriy Denisov and Maxford to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

824. On information and belief, Defendants Estate of Yuriy Denisov and Maxford intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Maxford was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME

and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Estate of Yuriy Denisov, through Maxford, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Estate of Yuriy Denisov, through Maxford, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

825. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Maxford's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

826. Defendants Estate of Yuriy Denisov and Maxford knew the foregoing material

212

misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

827.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Estate of Yuriy Denisov and Maxford.

828.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Maxford's claims for No-fault insurance benefits submitted in connection therewith.

829.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Estate of Yuriy Denisov and Maxford evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

830.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $11,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ESTATE OF YURIY DENISOV AND MAXFORD

### (Unjust Enrichment)

831.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

832.    By reason of their wrongdoing, Defendants Estate of Yuriy Denisov and Maxford have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity

and good conscience, they should not be permitted to keep.

833.    Plaintiffs are therefore entitled to restitution from Defendants Estate of Yuriy Denisov and Maxford in the amount by which they have been unjustly enriched.

834.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $11,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FIFTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS IMPREZZA NYC, JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

835.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

836.    On information and belief, the Wholesale Defendants (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Estate of Yuriy Denisov and Maxford.

837.    On information and belief, the acts taken by the Wholesale Defendants (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Estate of Yuriy Denisov and Maxford purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so

that Defendants Estate of Yuriy Denisov and Maxford could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Estate of Yuriy Denisov, through Maxford, to Maxford to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Maxford; and (v) knowingly supporting the negotiation and performance of kickback agreements between Estate of Yuriy Denisov through Maxford and the No-fault Clinics.

838.    On information and belief, the conduct of the Wholesale Defendants (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Estate of Yuriy Denisov and Maxford to obtain fraudulently inflated payments from Plaintiffs, among others.

839.    On information and belief, the Wholesale Defendants (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

840.    On information and belief, the conduct of the Wholesale Defendants (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon

the fraudulent charges submitted through Maxford in an amount to be determined at trial, but in no event less than $11,000.00.

841.    On information and belief, the Wholesale Defendants' (Imprezza NYC, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

842.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS URIYEL MIRZAKANDOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

843.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

844.    At all times relevant herein, MDAX was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

845.    From, in or about 2015 through the date of the filing of this Complaint, Defendants Mirzakandov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the MDAX enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by

reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

846.    At all relevant times mentioned herein, Defendant Mirzakandov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the MDAX enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

847.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendants ABC Corporations furnished documents that Defendant Mirzakandov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

848.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

849.    The racketeering acts set forth herein were carried out on a continued basis for

more than a nine-month period, were related and similar and were committed as part of the ongoing scheme of Defendants Mirzakandov, one or more of the ABC Corporations 1 through 20, and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

850.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as MDAX continues to pursue collection on the fraudulent billing to the present day.

851.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Mirzakandov, with the knowledge and intent of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the MDAX enterprise based upon materially false and misleading information.

852.   Through the MDAX enterprise, Defendant Mirzakandov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Mirzakandov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Mirzakandov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the MDAX enterprise through the filing of this Complaint.

853.   A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendant Mirzakandov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

854. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

855. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

856. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $17,000.00, the exact amount to be determined at trial.

857. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Mirzakandov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**FIFTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS URIYEL MIRZAKANDOV AND MDAX**

**(Common Law Fraud)**

858. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

859. Defendants Mirzakandov and MDAX made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance

Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company for payment.

860.   On information and belief, each and every bill and supporting documentation submitted by Defendants Mirzakandov and MDAX to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

861.   On information and belief, Defendants Mirzakandov and MDAX intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts MDAX was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Mirzakandov, through MDAX, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Mirzakandov, through MDAX, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

862.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant MDAX's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

863.    Defendants Mirzakandov and MDAX knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

864.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Mirzakandov and MDAX.

865.     Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant MDAX's claims for No-fault insurance benefits submitted in connection therewith.

866.     Furthermore, the far reaching pattern of fraudulent conduct by Defendants Mirzakandov and MDAX evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

867.     By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS URIYEL MIRZAKANDOV AND MDAX

### (Unjust Enrichment)

868.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

869.     By reason of their wrongdoing, Defendants Mirzakandov and MDAX have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

870.     Plaintiffs are therefore entitled to restitution from Defendants Mirzakandov and

MDAX in the amount by which they have been unjustly enriched.

871.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $18,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SIXTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

872.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

873.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Indemnity Company by Defendants Mirzakandov and MDAX.

874.    On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Mirzakandov and MDAX purportedly provided to No-fault Claimants; (ii)

223

knowingly providing the fraudulent wholesale invoices so that Defendants Mirzakandov and MDAX could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Mirzakandov, through MDAX, to MDAX to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through MDAX; and (v) knowingly supporting the negotiation and performance of kickback agreements between Mirzakandov through MDAX and the No-fault Clinics.

875.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Mirzakandov and MDAX to obtain fraudulently inflated payments from Plaintiffs, among others.

876.    On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

877.    On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate

Property and Casualty Insurance Company, and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Maxford in an amount to be determined at trial, but in no event less than $18,000.00.

878.     On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

879.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SIXTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS RODIONOVA, COMDEX, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

880.     The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

881.     At all times relevant herein, Milldorp was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

882.     From, in or about 2012 through the date of the filing of this Complaint, Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Milldorp enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate

acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

883.   At all relevant times mentioned herein, Defendants Rodionova, Comdex and John Doe 5, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Milldorp enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

884.   On information and belief, Defendants Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Comdex and one or more of the ABC Corporations furnished documents that Defendant Rodionova required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

885.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 5 and one or more of the John Does 11 through 20, through Comdex and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

886.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

887.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Milldorp continues to pursue collection on the fraudulent billing to the present day.

888.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Rodionova, with the knowledge and intent of Defendants Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Milldorp enterprise based upon materially false and misleading information.

889.    Through the Milldorp enterprise, Defendant Rodionova submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Rodionova, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1

through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Milldorp enterprise through the filing of this Complaint.

890.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Rodionova, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

891.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

892.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

893.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $5,000.00, the exact amount to be determined at trial.

894.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Rodionova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS RODIONOVA, COMDEX, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

895.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

896.    At all times relevant herein, Sure Way NY was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

897.    From, in or about 2013 through the date of the filing of this Complaint, Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Sure Way NY enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

898.    At all relevant times mentioned herein, Defendant Rodionova, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Sure Way NY enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

899.    On information and belief, Defendants Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant Comdex and one or more of the ABC Corporations furnished documents that Defendant Rodionova required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

900.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant John Doe 5 and one or more of the John Does 11 through 20, through Comdex and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

901.    The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

902.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Sure Way NY continues to pursue collection on the fraudulent billing to the present day.

903.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Rodionova, with the knowledge and intent of Defendants Comdex, John Doe 19, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Sure Way NY enterprise based upon materially false and misleading information.

904.    Through the Sure Way NY enterprise, Defendant Rodionova submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Rodionova, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Sure Way NY enterprise through the filing of this Complaint.

905.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Rodionova, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

906.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

907.    Each submission of a fraudulent claim constitutes a pattern of racketeering

activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

908.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

909.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Rodionova, Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### SIXTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS RODIONOVA, MILLDORP AND SUREWAY NY

### (Common Law Fraud)

910.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

911.    Defendants Rodionova, Milldorp and Sure Way NY made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

912.    On information and belief, each and every bill and supporting documentation submitted by Defendants Rodionova, Milldorp and Sure Way NY to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

913.    On information and belief, Defendants Rodionova, Milldorp and Sure Way NY intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Milldorp and Sure Way NY were entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Rodionova, through Milldorp and Sure Way NY, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated

physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Rodionova, through Milldorp and Sure Way NY, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

914.    The foregoing was intended to deceive and mislead Plaintiff into paying Defendants Milldorp and Sure Way NY's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

915.    Defendants Rodionova, Milldorp and Sure Way NY knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

916.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Rodionova, Milldorp and Sure Way NY.

917.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendants Milldorp and Sure Way NY's claims for No-fault insurance benefits submitted in connection therewith.

918.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Rodionova, Milldorp and Sure Way NY evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

919.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be

determined, but believed to be in excess of $25,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RODIONOVA, MILLDORP AND SUREWAY NY

### (Unjust Enrichment)

920.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

921.    By reason of their wrongdoing, Defendants Rodionova, Milldorp and Sure Way NY have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

922.    Plaintiff is therefore entitled to restitution from Defendants Rodionova, Milldorp and Sure Way NY in the amount by which they have been unjustly enriched.

923.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $25,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS COMDEX, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

924.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

925.    On information and belief, the Wholesale Defendants (Comdex, John Doe 5, one

235

or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Rodionova, Milldorp and Sure Way NY.

926.    On information and belief, the acts taken by the Wholesale Defendants (Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Rodionova, Milldorp and Sure Way NY purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Rodionova, Milldorp and Sure Way NY could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Rodionova, through Milldorp and Sure Way NY, to Milldorp and Sure Way NY to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Milldorp and Sure Way NY; and (v) knowingly supporting the negotiation and performance of kickback agreements between Rodionova through Milldorp and Sure Way NY and the No-fault Clinics.

927.    On information and belief, the conduct of the Wholesale Defendants (Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Rodionova, Milldorp and Sure Way NY to

obtain fraudulently inflated payments from Plaintiff, among others.

928.    On information and belief, the Wholesale Defendants (Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

929.    On information and belief, the conduct of the Wholesale Defendants (Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Milldorp and Sure Way NY in an amount to be determined at trial, but in no event less than $25,000.00.

930.    On information and belief, the Wholesale Defendants' (Comdex, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

931.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SIXTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GINDINOV, VZ GROUP, ZALOGIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

932.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

933.   At all times relevant herein, New Utrech Services was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

934.   From, in or about 2010 through the date of the filing of this Complaint, Defendants Gindinov, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the New Utrech Services enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

935.   At all relevant times mentioned herein, Defendant Gindinov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the New Utrech Services enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

936.   On information and belief, Defendants VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendant VZ Group and one or more of the ABC

Corporations furnished documents that Defendant Gindinov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

937.     On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Zalogin and one or more of the John Does 11 through 20, through VZ Group and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

938.     The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Gindinov, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

939.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as New Utrech Services continues to pursue collection on the fraudulent billing to the present day.

940.     As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Gindinov, with the knowledge and intent of Defendants VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the New Utrech

Services enterprise based upon materially false and misleading information.

941.   Through the New Utrech Services enterprise, Defendant Gindinov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Gindinov, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Defendants Gindinov, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the New Utrech Services enterprise through the filing of this Complaint.

942.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Gindinov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

943.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

944.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

945.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $16,000.00, the exact amount to be determined at trial.

946.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants

Gindinov, VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GINDINOV AND NEW UTRECH SERVICES

### (Common Law Fraud)

947.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

948.     Defendants Gindinov and New Utrech Services made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

949.     On information and belief, each and every bill and supporting documentation submitted by Defendants Gindinov and New Utrech Services to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

950.     On information and belief, Defendants Gindinov and New Utrech Services intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts New Utrech Services was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Gindinov, through New Utrech Services, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Gindinov, through New Utrech Services, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

951.   The foregoing was intended to deceive and mislead Plaintiff into paying

Defendant New Utrech Services' claims under the No-fault Law.   Specific examples of the

billing fraud alleged herein are contained inthe body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

952.    Defendants Gindinov and New Utrech Services knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

953.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Gindinov and New Utrech Services.

954.    Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant New Utrech Services' claims for No-fault insurance benefits submitted in connection therewith.

955.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Gindinov and New Utrech Services evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

956.    By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $16,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**SIXTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS GINDINOV AND NEW UTRECH SERVICES**

**(Unjust Enrichment)**

957.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

243

958.     By reason of their wrongdoing, Defendants Gindinov and New Utrech Services have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

959.     Plaintiff is therefore entitled to restitution from Defendants Gindinov and New Utrech Services in the amount by which they have been unjustly enriched.

960.     By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $16,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VZ GROUP, ZALOGIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

961.     The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

962.     On information and belief, the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Gindinov and New Utrech Services.

963.     On information and belief, the acts taken by the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the

244

DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Gindinov and New Utrech Services purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Gindinov and New Utrech Services could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Gindinov, through New Utrech Services, to New Utrech Services to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through New Utrech Services; and (v) knowingly supporting the negotiation and performance of kickback agreements between Gindinov through New Utrech Services and the No-fault Clinics.

964.    On information and belief, the conduct of the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Gindinov and New Utrech Services to obtain fraudulently inflated payments from Plaintiff, among others.

965.    On information and belief, the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

966.    On information and belief, the conduct of the Wholesale Defendants (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through New Utrech Services in an amount to be determined at trial, but in no event less than $16,000.00.

967.    On information and belief, the Wholesale Defendants' (VZ Group, Zalogin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

968.    By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SHILIMOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

969.    The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

970.    At all times relevant herein, Numed Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

971.    From, in or about 2010 through the date of the filing of this Complaint, Defendant Shilimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Numed Medical

Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

972.    At all relevant times mentioned herein, Defendant Shilimov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Numed Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

973.    On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Shilimov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

974.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

975.    The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Shilimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

976.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Numed Medical Supply continues to pursue collection on the fraudulent billing to the present day.

977.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Shilimov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Numed Medical Supply enterprise based upon materially false and misleading information.

978.    Through the Numed Medical Supply enterprise, Defendant Shilimov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Shilimov, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Shilimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate

acts of mail fraud, extending from the formation of the Numed Medical Supply enterprise through the filing of this Complaint.

979.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Shilimov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

980.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

981.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

982.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $4,500.00, the exact amount to be determined at trial.

983.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Shilimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**SEVENTY-FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SHILIMOV AND NUMED MEDICAL SUPPLY**

**(Common Law Fraud)**

984.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

249

985.    Defendants Shilimov and Numed Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

986.    On information and belief, each and every bill and supporting documentation submitted by Defendants Shilimov and Numed Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

987.    On information and belief, Defendants Shilimov and Numed Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Numed Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Shilimov, through Numed Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Shilimov, through Numed Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

988.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Numed Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

989.   Defendants Shilimov and Numed Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

990.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Shilimov and Numed Medical Supply.

991.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Numed Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

992.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants

Shilimov and Numed Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

993.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**SEVENTY-SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SHILIMOV AND NUMED MEDICAL SUPPLY**

**(Unjust Enrichment)**

994.    The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

995.    By reason of their wrongdoing, Defendants Shilimov and Numed Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

996.    Plaintiffs are therefore entitled to restitution from Defendants Shilimov and Numed Medical Supply in the amount by which they have been unjustly enriched.

997.    By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**SEVENTY-THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(Aiding and Abetting)**

998. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

999. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Shilimov and Numed Medical Supply.

1000. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Shilimov and Numed Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Shilimov and Numed Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Shilimov, through Numed Medical Supply, to Numed Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Numed Medical Supply; and (v) knowingly supporting the negotiation and

253

performance of kickback agreements between Shilimov through Numed Medical Supply and the No-fault Clinics.

1001. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Shilimov and Numed Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1002. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1003. On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Numed Medical Supply in an amount to be determined at trial, but in no event less than $5,000.00.

1004. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1005. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive

damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SHNAIDER, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

1006.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1007.   At all times relevant herein, Pacific Surgical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1008.   From, in or about 2007 through the date of the filing of this Complaint, Defendants Shnaider, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Pacific Surgical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1009.   At all relevant times mentioned herein, Defendant Shnaider, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Pacific Surgical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

255

1010.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendants Shnaider required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1011.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1012.   The racketeering acts set forth herein were carried out on a continued basis for more than a seven-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Shnaider, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1013.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Pacific Surgical Supply continues to pursue collection on the fraudulent billing to the present day.

1014.   As a part of the pattern of racketeering activity and for the purpose of executing

256

the scheme and artifice to defraud as described above, Defendant Shnaider, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Pacific Surgical Supply enterprise based upon materially false and misleading information.

1015. Through the Pacific Surgical Supply enterprise, Defendant Shnaider submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Shnaider, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Shnaider, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Pacific Surgical Supply enterprise through the filing of this Complaint.

1016. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Shnaider, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1017. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1018. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1019.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $4,500.00, the exact amount to be determined at trial.

1020.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Shnaider, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**SEVENTY-FIFTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SHNAIDER AND PACIFIC SURGICAL SUPPLY**

**(Common Law Fraud)**

1021.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1022.  Defendants   Shnaider   and   Pacific   Surgical   Supply   made   material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1023.  On information and belief, each and every bill and supporting documentation submitted by Defendants Shnaider and Pacific Surgical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1024.  On information and belief, Defendants Shnaider and Pacific Surgical Supply

258

intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Pacific Surgical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Shnaider, through Pacific Surgical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Shnaider, through Pacific Surgical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1025. The foregoing was intended to deceive and mislead Plaintiff into paying

Defendant Pacific Surgical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1026.  Defendant Shnaider and Pacific Surgical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1027.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Shnaider and Pacific Surgical Supply.

1028.  Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Pacific Surgical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1029.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Shnaider and Pacific Surgical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1030.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $4,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SHNAIDER  AND PACIFIC SURGICAL SUPPLY

### (Unjust Enrichment)

1031.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as

though fully set forth herein.

1032.   By reason of their wrongdoing, Defendants Shnaider and Pacific Surgical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1033.   Plaintiff is therefore entitled to restitution from Defendants Shnaider and Pacific Surgical Supply in the amount by which they have been unjustly enriched.

1034.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $4,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1035.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1036.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Shnaider and Pacific Surgical Supply.

1037.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale

invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Shnaider and Pacific Surgical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Shnaider and Pacific Surgical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Shnaider, through Pacific Surgical Supply, to Pacific Surgical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Pacific Surgical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Shnaider through Pacific Surgical Supply and the No-fault Clinics.

1038.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Shnaider  and Pacific Surgical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1039.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the

fraudulent scheme.

1040.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Pacific Surgical Supply in an amount to be determined at trial, but in no event less than $4,500.00.

1041.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1042.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VELNIK, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1043.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1044.   At all times relevant herein, Pain Free Leaving was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1045.   From, in or about 2013 through the date of the filing of this Complaint, Defendant Velnik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11

through 20, knowingly conducted and participated in the affairs of the Pain Free Leaving enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1046.  At all relevant times mentioned herein, Defendant Velnik, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Pain Free Leaving enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1047.  On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Velnik required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1048.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

1049.   The racketeering acts set forth herein were carried out on a continued basis for more than a two-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kraiter, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1050.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Pain Free Leaving continues to pursue collection on the fraudulent billing to the present day.

1051.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Velnik, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.   The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Pain Free Leaving enterprise based upon materially false and misleading information.

1052.   Through the Pain Free Leaving enterprise, Defendant Velnik submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Velnik, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Defendant Velnik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail

265

fraud, extending from the formation of the Pain Free Leaving enterprise through the filing of this Complaint.

1053.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Velnik, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1054.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1055.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1056.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $24,000.00, the exact amount to be determined at trial.

1057.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Velnik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**SEVENTY-NINTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS VELNIK AND PAIN FREE LEAVING**

**(Common Law Fraud)**

1058.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1059.  Defendants Velnik and Pain Free Leaving made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1060.  On information and belief, each and every bill and supporting documentation submitted by Defendants Velnik and Pain Free Leaving to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1061.  On information and belief, Defendant Velnik and Pain Free Leaving intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Pain Free Leaving was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Velnik, through Pain Free Leaving, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Velnik, through Pain Free Leaving, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1062.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Pain Free Leaving's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1063.   Defendants Velnik and Pain Free Leaving knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1064.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Velnik and Pain Free Leaving.

1065.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Pain Free Leaving's claims for No-fault insurance benefits submitted in connection therewith.

1066.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Velnik

and Pain Free Leaving evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1067.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $24,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VELNIK AND PAIN FREE LEAVING

### (Unjust Enrichment)

1068.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1069.  By reason of their wrongdoing, Defendants Velnik and Pain Free Leaving have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1070.  Plaintiffs are therefore entitled to restitution from Defendants Velnik and Pain Free Leaving in the amount by which they have been unjustly enriched.

1071.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $24,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**EIGHTY-FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND
JOHN DOES 11 THROUGH 20**

**(Aiding and Abetting)**

1072. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1073. On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Velnik and Pain Free Leaving.

1074. On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Velnik and Pain Free Leaving purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Velnik and Pain Free Leaving could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Velnik, through Pain Free Leaving, to Pain Free Leaving to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Pain Free Leaving; and (v) knowingly supporting the negotiation and performance of kickback agreements

270

between Velnik through Pain Free Leaving and the No-fault Clinics.

1075.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Velnik and Pain Free Leaving to obtain fraudulently inflated payments from Plaintiffs, among others.

1076.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1077.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Pain Free Leaving in an amount to be determined at trial, but in no event less than $24,000.00.

1078.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1079.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**EIGHTY-SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KRAITER, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

1080.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

1081.   At all times relevant herein, PPSC Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1082.   From, in or about 2008 through the date of the filing of this Complaint, Defendant Kraiter, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the PPSC Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1083.   At all relevant times mentioned herein, Defendant Kraiter, together with others unknown to Plaintiffs, exerted control over and directed the operations of the PPSC Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1084.   On information and belief, one or more of the ABC Corporations 1 through 20

272

and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Kraiter required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1085.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1086.   The racketeering acts set forth herein were carried out on a continued basis for more than a seven-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Kraiter, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1087.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as PPSC Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1088.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kraiter, with the knowledge

273

and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the PPSC Medical Supply enterprise based upon materially false and misleading information.

1089. Through the PPSC Medical Supply enterprise, Defendant Kraiter submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Kraiter, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Kraiter, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the PPSC Medical Supply enterprise through the filing of this Complaint.

1090. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kraiter, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1091. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1092. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1093. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate

Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $12,000.00, the exact amount to be determined at trial.

1094.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Kraiter, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**EIGHTY-THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KRAITER AND PPSC MEDICAL SUPPLY**

**(Common Law Fraud)**

1095.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1096.   Defendants Kraiter and PPSC Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1097.   On information and belief, each and every bill and supporting documentation submitted by Defendants Kraiter and PPSC Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1098.   On information and belief, Defendant Kraiter and PPSC Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts PPSC Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kraiter, through PPSC Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kraiter, through PPSC Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1099. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant PPSC Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in

the accompanying Compendium of Exhibits.

1100.   Defendants Kraiter and PPSC Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1101.   Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Kraiter and PPSC Medical Supply.

1102.   Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant PPSC Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1103.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kraiter and PPSC Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1104.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $12,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KRAITER AND PPSC MEDICAL SUPPLY

### (Unjust Enrichment)

1105.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1106.   By reason of their wrongdoing, Defendants Kraiter and PPSC Medical Supply

have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1107.   Plaintiff is therefore entitled to restitution from Defendants Kraiter and PPSC Medical Supply in the amount by which they have been unjustly enriched.

1108.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $12,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### EIGHTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1109.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1110.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Kraiter and PPSC Medical Supply.

1111.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that

Defendants Kraiter and PPSC Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kraiter and PPSC Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kraiter, through PPSC Medical Supply, to PPSC Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through PPSC Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kraiter through PPSC Medical Supply and the No-fault Clinics.

1112.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kraiter and PPSC Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1113.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1114.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused

Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through PPSC Medical Supply in an amount to be determined at trial, but in no event less than $12,000.00.

1115. On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1116. By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## EIGHTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KAMINSKY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1117. The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1118. At all times relevant herein, Promed Durable Equipment was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1119. From, in or about 2007 through the date of the filing of this Complaint, Defendants Kaminsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Promed Durable Equipment enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of

predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1120.  At all relevant times mentioned herein, Defendant Kaminsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Promed Durable Equipment enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1121.  On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Kaminsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1122.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1123.  The racketeering acts set forth herein were carried out on a continued basis for more than an eight-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Kaminsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1124.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Promed Durable Equipment continues to pursue collection on the fraudulent billing to the present day.

1125.  As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kaminsky, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Promed Durable Equipment enterprise based upon materially false and misleading information.

1126. Through the Promed Durable Equipment enterprise, Defendant Kaminsky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Kaminsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Kaminsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate

acts of mail fraud, extending from the formation of the Promed Durable Equipment enterprise through the filing of this Complaint.

1127.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kaminsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1128.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1129.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1130.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $130,000.00, the exact amount to be determined at trial.

1131.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Kaminsky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**EIGHTY-SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KAMINSKY AND PROMED DURABLE EQUIPMENT**

**(Common Law Fraud)**

1132.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

283

1133. Defendants Kaminsky and Promed Durable Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1134. On information and belief, each and every bill and supporting documentation submitted by Defendants Kaminsky and Promed Durable Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1135. On information and belief, Defendants Kaminsky and Promed Durable Equipment intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Promed Durable Equipment was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Kaminsky , through Promed Durable Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kaminsky, through Promed Durable Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1136.  The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Promed Durable Equipment's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1137.  Defendants Kaminsky and Promed Durable Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1138.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Kaminsky and Promed Durable Equipment.

1139.  Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Promed Durable Equipment's claims for No-fault insurance benefits submitted in connection therewith.

1140.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kaminsky and Promed Durable Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1141.   By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $130,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KAMINSKY AND PROMED DURABLE EQUIPMENT

### (Unjust Enrichment)

1142.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1143.   By reason of their wrongdoing, Defendants Kaminsky and Promed Durable Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1144.   Plaintiffs are therefore entitled to restitution from Defendants Kaminsky and Promed Durable Equipment in the amount by which they have been unjustly enriched.

1145.   By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $130,000.00,

the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1146.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1147.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Kaminsky and Promed Durable Equipment.

1148.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kaminsky and Promed Durable Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kaminsky and Promed Durable Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kaminsky, through Promed Durable Equipment, to Promed Durable Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale

costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Promed Durable Equipment; and (v) knowingly supporting the negotiation and performance of kickback agreements between Kaminsky through Promed Durable Equipment and the No-fault Clinics.

1149.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kaminsky and Promed Durable Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

1150.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1151.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Promed Durable Equipment in an amount to be determined at trial, but in no event less than $134,000.00.

1152.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles

Plaintiffs to recover punitive damages.

1153.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINETIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VERBITSKY, METRA WHOLESALE, ONE STOP WHOLESALE, JOHN DOE 8, JOHN DOE 9, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1154.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1155.   At all times relevant herein, Quality Custom Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1156.   From, in or about 2011 through the date of the filing of this Complaint, Defendants Verbitsky, Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Quality Custom Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1157.   At all relevant times mentioned herein, Defendant Verbitsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Quality Custom Medical Supply enterprise and utilized that control to conduct the pattern of racketeering

activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1158.   On information and belief, Defendants Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Metra Wholesale, One Stop Wholesale and one or more of the ABC Corporations furnished documents that Defendant Verbitsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1159.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants John Doe 8, John Doe 9 and one or more of the John Does 11 through 20, through Metra Wholesale, One Stop Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1160.   The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Verbitsky, Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John

Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1161.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Quality Custom Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1162.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Verbitsky, with the knowledge and intent of Defendants Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Quality Custom Medical Supply enterprise based upon materially false and misleading information.

1163.   Through the Quality Custom Medical Supply enterprise, Defendant Verbitsky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Verbitsky, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Verbitsky, Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Quality Custom Medical Supply enterprise through the filing of this Complaint.

1164.   A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendant Verbitsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1165.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1166.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1167.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $6,500.00, the exact amount to be determined at trial.

1168.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants Verbitsky, Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**NINETY-FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS VERBITSKY AND QUALITY CUSTOM MEDICAL SUPPLY**

**(Common Law Fraud)**

1169.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1170.   Defendants Verbitsky and Quality Custom Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff

292

Allstate Insurance Company for payment.

1171. On information and belief, each and every bill and supporting documentation submitted by Defendants Verbitsky and Quality Custom Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1172. On information and belief, Defendants Verbitsky and Quality Custom Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Quality Custom Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Verbitsky, through Quality Custom Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Verbitsky, through Quality Custom Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1173.  The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Quality Custom Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1174.  Defendants Verbitsky and Quality Custom Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1175.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Verbitsky and Quality Custom Medical Supply.

1176.  Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Quality Custom Medical Supply's claims

for No-fault insurance benefits submitted in connection therewith.

1177.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Verbitsky and Quality Custom Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1178.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $6,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS VERBITSKY AND QUALITY CUSTOM MEDICAL SUPPLY

### (Unjust Enrichment)

1179.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1180.  By reason of their wrongdoing, Defendants Verbitsky and Quality Custom Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1181.  Plaintiff is therefore entitled to restitution from Defendants Verbitsky and Quality Custom Medical Supply in the amount by which they have been unjustly enriched.

1182.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $6,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS METRA WHOLESALE, ONE STOP WHOLESALE, JOHN DOE 8, JOHN DOE 9, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1183.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1184.   On information and belief, the Wholesale Defendants (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Verbitsky and Quality Custom Medical Supply.

1185.   On information and belief, the acts taken by the Wholesale Defendants (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Verbitsky and Quality Custom Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Verbitsky and Quality Custom Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Verbitsky, through Quality Custom Medical Supply, to Quality Custom Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME

296

and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Quality Custom Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Verbitsky through Quality Custom Medical Supply and the No-fault Clinics.

1186.  On information and belief, the conduct of the Wholesale Defendants (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Verbitsky and Quality Custom Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1187.  On information and belief, the Wholesale Defendants (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1188.  On information and belief, the conduct of the Wholesale Defendants (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Quality Custom Medical Supply in an amount to be determined at trial, but in no event less than $6,500.00.

1189.  On information and belief, the Wholesale Defendants' (Metra Wholesale, One Stop Wholesale, John Doe 8, John Doe 9, one or more of the ABC Corporations 1 through 20

and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1190.  By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### NINETY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS JOHN DOE 1, GRIGOL SUPPLY, VDS MEDICAL SUPPLY, APRESYANTSI, SEMENIKHIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1191.  The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1192.  At all times relevant herein, Quality Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1193. From, in or about 2010 through the date of the filing of this Complaint, Defendants John Doe 1, Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Quality Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1194.  At all relevant times mentioned herein, Defendant John Doe 1, together with

others unknown to Plaintiffs, exerted control over and directed the operations of the Quality Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1195.   On information and belief, Defendants Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Grigol Supply, VDS Medical Supply and one or more of the ABC Corporations furnished documents that Defendant John Doe 1 required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1196.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Apresyantsi, Semenikhin and one or more of the John Does 11 through 20, through Grigol Supply and VDS Medical Supply and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1197.   The racketeering acts set forth herein were carried out on a continued basis for more than a five-year period, were related and similar and were committed as part of the ongoing

scheme of Defendants John Doe 1, Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1198.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Quality Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1199.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant John Doe 1, with the knowledge and intent of Defendants Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Quality Medical Supply enterprise based upon materially false and misleading information.

1200.   Through the Quality Medical Supply enterprise, Defendant John Doe 1 submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant John Doe 1, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants John Doe 1, Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Quality Medical Supply enterprise through the filing of this

Complaint.

1201.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant John Doe 1, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1202.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1203.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1204.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $8,000.00, the exact amount to be determined at trial.

1205.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendants John Doe 1, Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### NINETY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS JOHN DOE 1 AND QUALITY MEDICAL SUPPLY

### (Common Law Fraud)

1206.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1207.   Defendants John Doe 1 and Quality Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1208.   On information and belief, each and every bill and supporting documentation submitted by Defendants John Doe 1 and Quality Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1209.   On information and belief, Defendants John Doe 1 and Quality Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Quality Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information this necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant John Doe 1, through Quality Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant John Doe 1, through Quality Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1210. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Quality Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1211.  Defendants John Doe 1 and Quality Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1212.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants John Doe 1 and Quality Medical Supply.

1213.  Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Quality Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1214.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants John Doe 1 and Quality Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1215.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $8,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

<strong>NINETY-SIXTH CLAIM FOR RELIEF</strong>

<strong>AGAINST DEFENDANTS JOHN DOE 1 AND QUALITY MEDICAL SUPPLY</strong>

<strong>(Unjust Enrichment)</strong>

1216.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1217.  By reason of their wrongdoing, Defendants John Doe 1 and Quality Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1218.  Plaintiff is therefore entitled to restitution from Defendants John Doe 1 and Quality Medical Supply in the amount by which they have been unjustly enriched.

1219.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be

determined, but believed to be in excess of $8,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### NINETY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS GRIGOL SUPPLY, VDS MEDICAL SUPPLY, APRESYANTSI, SEMENIKHIN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1220.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1221.   On information and belief, the Wholesale Defendants (Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants John Doe 1 and Quality Medical Supply.

1222.   On information and belief, the acts taken by the Wholesale Defendants (Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin , one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants John Doe 1 and Quality Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants John Doe 1 and Quality Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant John Doe 1, through Quality Medical Supply, to Quality Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv)

knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Quality Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between John Doe 1 through Quality Medical Supply and the No-fault Clinics.

1223.  On information and belief, the conduct of the Wholesale Defendants (Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants John Doe 1 and Quality Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1224.  On information and belief, the Wholesale Defendants (Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1225.  On information and belief, the conduct of the Wholesale Defendants (Grigol Supply, VDS Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Quality Medical Supply in an amount to be determined at trial, but in no event less than $8,000.00.

1226.  On information and belief, the Wholesale Defendants' (Grigol Supply, VDS

Medical Supply, Apresyantsi, Semenikhin, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1227.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINETY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KHANIS, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

1228.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1229.   At all times relevant herein, Ridge Medical Supplies was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1230.   From, in or about 1995 through the date of the filing of this Complaint, Defendant Khanis, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Ridge Medical Supplies enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1231.   At all relevant times mentioned herein, Defendant Khanis, together with others

unknown to Plaintiffs, exerted control over and directed the operations of the Ridge Medical Supplies enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1232.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Khanis required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1233.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

1234.   The racketeering acts set forth herein were carried out on a continued basis for more than a twenty-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Khanis, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices

to defraud insurers, and, if not stopped, such acts will continue into the future.

1235.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Ridge Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

1236.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Khanis, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Ridge Medical Supplies enterprise based upon materially false and misleading information.

1237.  Through the Ridge Medical Supplies enterprise, Defendant Khanis submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Khanis, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Khanis, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Ridge Medical Supplies enterprise through the filing of this Complaint.

1238.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Khanis, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1239.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1240.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1241.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $71,000.00, the exact amount to be determined at trial.

1242.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Khanis, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### NINETY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS KHANIS AND RIDGE MEDICAL SUPPLIES

### (Common Law Fraud)

1243.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1244.   Defendants Khanis and Ridge Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1245.   On information and belief, each and every bill and supporting documentation submitted by Defendants Khanis and Ridge Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly

supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1246. On information and belief, Defendants Khanis and Ridge Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Ridge Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Khanis, through Ridge Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule;

311

and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Khanis, through Ridge Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1247.  The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Ridge Medical Supplies' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1248.  Defendants Khanis and Ridge Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1249.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Khanis and Ridge Medical Supplies.

1250.  Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Ridge Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

1251.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Khanis and Ridge Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1252.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $71,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief

the Court deems just.

## ONE HUNDREDTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KHANIS AND RIDGE MEDICAL SUPPLIES

### (Unjust Enrichment)

1253.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1254.   By reason of their wrongdoing, Defendants Khanis and Ridge Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1255.   Plaintiffs are therefore entitled to restitution from Defendants Khanis and Ridge Medical Supplies in the amount by which they have been unjustly enriched.

1256.   By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $71,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1257.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1258.   On information and belief, the Wholesale Defendants (one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Khanis and Ridge Medical Supplies.

1259.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Khanis and Ridge Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Khanis and Ridge Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Khanis, through Ridge Medical Supplies, to Ridge Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Ridge Medical Supplies; and (v) knowingly supporting the negotiation and performance of kickback agreements between Khanis through Ridge Medical Supplies and the No-fault Clinics.

1260.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Khanis and Ridge Medical Supplies to obtain fraudulently inflated

payments from Plaintiffs, among others.

1261.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1262.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Ridge Medical Supplies in an amount to be determined at trial, but in no event less than $71,000.00.

1263.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1264.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS GRIGORYAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1265.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

1266.   At all times relevant herein, Sigma Med Care was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1267.   From, in or about 2015 through the date of the filing of this Complaint, Defendant Grigoryan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Sigma Med Care enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1268.   At all relevant times mentioned herein, Defendant Grigoryan, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Sigma Med Care enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1269.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in

316

the Complaint. One or more of the ABC Corporations furnished documents that Defendant

Grigoryan required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs

for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for

medical supplies.

1270.  On information and belief, it was both foreseeable and the intended consequence

that the wholesale invoices provided by one or more of the John Does 11 through 20, through

one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent

claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1271.  The racketeering acts set forth herein were carried out on a continued basis for

more than a three-month period, were related and similar and were committed as part of the

ongoing scheme of Defendants Grigoryan, one or more of the ABC Corporations 1 through 20

and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic

devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1272.  On information and belief, this pattern of racketeering activity poses a specific

threat of repetition extending indefinitely into the future, inasmuch as Sigma Med Care continues

to pursue collection on the fraudulent billing to the present day.

1273.  As a part of the pattern of racketeering activity and for the purpose of executing

the scheme and artifice to defraud as described above, Defendant Grigoryan, with the knowledge

and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John

Does 11 through 20, caused mailings to be made through the United States Postal Service in

violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to

defraud Plaintiffs and to induce Plaintiffs to issue checks to the Sigma Med Care enterprise based

317

upon materially false and misleading information.

1274.   Through the Sigma Med Care enterprise, Defendant Grigoryan submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Grigoryan, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.   By virtue of those activities, Defendant Grigoryan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Sigma Med Care enterprise through the filing of this Complaint.

1275.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Grigoryan, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1276.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1277.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1278.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have been injured in its business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $10,000.00, the exact amount to be determined at trial.

1279.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Grigoryan, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS GRIGORYAN AND SIGMA MED CARE

### (Common Law Fraud)

1280.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1281.   Defendants Grigoryan and Sigma Med Care made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1282.   On information and belief, each and every bill and supporting documentation submitted by Defendants Grigoryan and Sigma Med Care to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1283.   On information and belief, Defendants Grigoryan and Sigma Med Care intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Sigma Med Care was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Grigoryan, through Sigma Med Care, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Grigoryan, through Sigma Med Care, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1284.  The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Sigma Med Care's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1285.  Defendants Grigoryan and Sigma Med Care knew the foregoing material

320

misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1286.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Grigoryan and Sigma Med Care.

1287.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Sigma Med Care's claims for No-fault insurance benefits submitted in connection therewith.

1288.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Grigoryan and Sigma Med Care evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1289.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $10,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GRIGORYAN AND SIGMA MED CARE

### (Unjust Enrichment)

1290.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1291.   By reason of their wrongdoing, Defendants Grigoryan and Sigma Med Care have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1292.   Plaintiffs are therefore entitled to restitution from Defendants Grigoryan and Sigma Med Care in the amount by which they have been unjustly enriched.

1293.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $10,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

#### (Aiding and Abetting)

1294.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1295.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company by Defendants Grigoryan and Sigma Med Care.

1296.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale

invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Grigoryan and Sigma Med Care purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Grigoryan and Sigma Med Care could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Grigoryan, through Sigma Med Care, to Sigma Med Care to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Sigma Med Care; and (v) knowingly supporting the negotiation and performance of kickback agreements between Grigoryan through Sigma Med Care and the No-fault Clinics.

1297.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Grigoryan and Sigma Med Care to obtain fraudulently inflated payments from Plaintiffs, among others.

1298.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1299.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Sigma Med Care in an amount to be determined at trial, but in no event less than $10,000.00.

1300.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1301.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS SOBOLEV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

1302.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1303.   At all times relevant herein, Solution Bridge was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1304.   From, in or about 2014 through the date of the filing of this Complaint, Defendant Sobolev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does

11 through 20, knowingly conducted and participated in the affairs of the Solution Bridge enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1305.   At all relevant times mentioned herein, Defendant Sobolev, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Solution Bridge enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1306.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Sobolev required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1307.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1308.   The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Sobolev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1309.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Solution Bridge continues to pursue collection on the fraudulent billing to the present day.

1310.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Sobolev, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Solution Bridge enterprise based upon materially false and misleading information.

1311.   Through the Solution Bridge enterprise, Defendant Sobolev submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant Sobolev, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Sobolev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail

fraud, extending from the formation of the Solution Bridge enterprise through the filing of this Complaint.

1312.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Sobolev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1313.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1314.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1315.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $5,000.00, the exact amount to be determined at trial.

1316.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Sobolev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SOBOLEV AND SOLUTION BRIDGE**

**(Common Law Fraud)**

1317.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1318. Defendants Sobolev and Solution Bridge made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1319. On information and belief, each and every bill and supporting documentation submitted by Defendants Sobolev and Solution Bridge to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1320. On information and belief, Defendants Sobolev and Solution Bridge intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Solution Bridge was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

328

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Sobolev, through Solution Bridge, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Sobolev, through Solution Bridge, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1321. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Solution Bridge's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1322. Defendants Sobolev and Solution Bridge knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1323. Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Sobolev and Solution Bridge.

1324. Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Solution Bridge's claims for No-fault insurance benefits submitted in connection therewith.

1325. Furthermore, the far reaching pattern of fraudulent conduct by Defendants

Sobolev and Solution Bridge evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1326.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS SOBOLEV AND SOLUTION BRIDGE**

**(Unjust Enrichment)**

1327.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1328.  By reason of their wrongdoing, Defendants Sobolev and Solution Bridge have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1329.  Plaintiff is therefore entitled to restitution from Defendants Sobolev and Solution Bridge in the amount by which they have been unjustly enriched.

1330.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1331.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1332.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Sobolev and Solution Bridge.

1333.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Sobolev and Solution Bridge purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Sobolev and Solution Bridge could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Sobolev, through Solution Bridge, to Solution Bridge to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Solution Bridge; and (v) knowingly supporting the negotiation and performance of kickback agreements between

331

Sobolev through Solution Bridge and the No-fault Clinics.

1334.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Sobolev and Solution Bridge to obtain fraudulently inflated payments from Plaintiff, among others.

1335.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1336.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Solution Bridge in an amount to be determined at trial, but in no event less than $5,000.00.

1337.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1338.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**ONE HUNDRED TENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS BILYK, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

1339.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

1340.   At all times relevant herein, Sovera Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1341.   From, in or about 2013 through the date of the filing of this Complaint, Defendant Bilyk, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Sovera Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1342.   At all relevant times mentioned herein, Defendant Bilyk, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Sovera Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1343.   On information and belief, one or more of the ABC Corporations 1 through 20

333

and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Bilyk required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1344.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
## (Racketeering Acts)

1345.   The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Bilyk, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1346.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Sovera Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1347.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Bilyk, with the knowledge and

intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Sovera Medical Supply enterprise based upon materially false and misleading information.

1348. Through the Sovera Medical Supply enterprise, Defendant Bilyk submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Bilyk, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Bilyk, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Sovera Medical Supply enterprise through the filing of this Complaint.

1349. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Bilyk, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1350. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1351. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1352. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate

Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $19,000.00, the exact amount to be determined at trial.

1353.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Bilyk, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED ELEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS BILYK AND SOVERA MEDICAL SUPPLY**

**(Common Law Fraud)**

1354.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1355.  Defendants Bilyk and Sovera Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1356.  On information and belief, each and every bill and supporting documentation submitted by Defendants Bilyk and Sovera Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1357.  On information and belief, Defendants Bilyk and Sovera Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Sovera Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Bilyk, through Sovera Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Bilyk, through Sovera Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1358.  The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Sovera Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in

the accompanying Compendium of Exhibits.

1359.  Defendants Bilyk and Sovera Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1360.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Bilyk and Sovera Medical Supply.

1361.  Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant Sovera Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1362.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Bilyk and Sovera Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1363.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $19,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED TWELFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BILYK AND SOVERA MEDICAL SUPPLY

### (Unjust Enrichment)

1364.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

338

1365.  By reason of their wrongdoing, Defendants Bilyk and Sovera Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1366.  Plaintiffs are therefore entitled to restitution from Defendants Bilyk and Sovera Medical Supply in the amount by which they have been unjustly enriched.

1367.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $19,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1368.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1369.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity Company by Defendants Bilyk and Sovera Medical Supply.

1370.  On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale

invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Bilyk and Sovera Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Bilyk and Sovera Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Bilyk, through Sovera Medical Supply, to Sovera Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Sovera Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Bilyk through Sovera Medical Supply and the No-fault Clinics.

1371.  On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Bilyk and Sovera Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1372.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1373.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Sovera Medical Supply in an amount to be determined at trial, but in no event less than $19,000.00.

1374.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1375.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED FOURTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS POVZLOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1376.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1377.   At all times relevant herein, State Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1378.   From, in or about 2012 through the date of the filing of this Complaint, Defendant Povzlov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the State Medical Supply

enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1379. At all relevant times mentioned herein, Defendant Povzlov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the State Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1380. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Povzlov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1381. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1382.   The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Povzlov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1383.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as State Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1384.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Povzlov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the State Medical Supply enterprise based upon materially false and misleading information.

1385.   Through the State Medical Supply enterprise, Defendant Povzlov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Povzlov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Povzlov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts

of mail fraud, extending from the formation of the State Medical Supply enterprise through the filing of this Complaint.

1386.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Povzlov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1387.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1388.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

<strong>Damages</strong>

1389.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in its business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $3,500.00, the exact amount to be determined at trial.

1390.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendant Povzlov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

<strong>ONE HUNDRED FIFTEENTH CLAIM FOR RELIEF</strong>

<strong>AGAINST DEFENDANTS POVZLOV AND STATE MEDICAL SUPPLY</strong>

<strong>(Common Law Fraud)</strong>

1391.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

344

1392.   Defendants Povzlov and State Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company for payment.

1393.   On information and belief, each and every bill and supporting documentation submitted by Defendants Povzlov and State Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1394.   On information and belief, Defendants Povzlov and State Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts State Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Povzlov, through State Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Povzlov, through State Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1395.   The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant State Medical Supply's claims under the No-fault Law.   Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1396.   Defendants Povzlov and State Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1397.   Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Povzlov and State Medical Supply.

1398.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid the Defendant State Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1399.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants

Povzlov and State Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1400.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $3,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED SIXTEENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS POVZLOV AND STATE MEDICAL SUPPLY**

**(Unjust Enrichment)**

1401.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1402.  By reason of their wrongdoing, Defendants Povzlov and State Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1403.  Plaintiffs are therefore entitled to restitution from Defendants Povzlov and State Medical Supply in the amount by which they have been unjustly enriched.

1404.  By reason of the foregoing, Plaintiffs Allstate Insurance Company and Allstate Indemnity have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $3,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**ONE HUNDRED SEVENTEENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND
JOHN DOES 11 THROUGH 20**

**(Aiding and Abetting)**

1405.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1406.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company and Allstate Indemnity by Defendants Povzlov and State Medical Supply.

1407.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Povzlov and State Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Povzlov and State Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Povzlov, through State Medical Supply, to State Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through State Medical Supply; and (v) knowingly supporting the negotiation and performance of

348

kickback agreements between Povzlov through State Medical Supply and the No-fault Clinics.

1408.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Povzlov and State Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1409.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1410.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiffs Allstate Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through State Medical Supply in an amount to be determined at trial, but in no event less than $3,500.00.

1411.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1412.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED EIGHTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS TKACHENKO, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1413.  The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1414.  At all times relevant herein, T & S Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1415.  From, in or about 2012 through the date of the filing of this Complaint, Defendant Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the T & S Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1416.  At all relevant times mentioned herein, Defendant Tkachenko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the T & S Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1417.  On information and belief, one or more of the ABC Corporations 1 through 20

and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Tkachenko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1418.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

1419.  The racketeering acts set forth herein were carried out on a continued basis for more than a three-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1420.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as T & S Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1421.  As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Tkachenko, with the

knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the T & S Medical Supply enterprise based upon materially false and misleading information.

1422. Through the T & S Medical Supply enterprise, Defendant Tkachenko submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Tkachenko, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the T & S Medical Supply enterprise through the filing of this Complaint.

1423. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Tkachenko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1424. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1425. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1426. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate

Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $30,000.00, the exact amount to be determined at trial.

1427.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Tkachenko, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED NINETEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS TKACHENKO AND T & S MEDICAL SUPPLY

### (Common Law Fraud)

1428.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1429.  Defendants Tkachenko and T & S Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1430.  On information and belief, each and every bill and supporting documentation submitted by Defendants Tkachenko and T & S Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1431.  On information and belief, Defendants Tkachenko and T & S Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of

material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts T & S Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Tkachenko, through T & S Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Tkachenko, through T & S Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1432. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant T & S Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in

the accompanying Compendium of Exhibits.

1433. Defendants Tkachenko and T & S Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1434. Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Tkachenko and T & S Medical Supply.

1435. Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant T & S Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1436. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Tkachenko and T & S Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1437. By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $30,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED TWENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS TKACHENKO AND T & S MEDICAL SUPPLY

### (Unjust Enrichment)

1438. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1439. By reason of their wrongdoing, Defendants Tkachenko and T & S Medical Supply

have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1440.   Plaintiff is therefore entitled to restitution from Defendants Tkachenko and T & S Medical Supply in the amount by which they have been unjustly enriched.

1441.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $30,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED TWENTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1442.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1443.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Tkachenko and T & S Medical Supply.

1444.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that

Defendants Tkachenko and T & S Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Tkachenko and T & S Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Tkachenko, through T & S Medical Supply, to T & S Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through T & S Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Tkachenko through T & S Medical Supply and the No-fault Clinics.

1445.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Tkachenko and T & S Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1446.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1447.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused

Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through T & S Medical Supply in an amount to be determined at trial, but in no event less than $30,000.00.

1448.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1449.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS IZRAYEV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

1450.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1451.   At all times relevant herein, Town Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1452.   From, in or about 2013 through the date of the filing of this Complaint, Defendant Izrayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Town Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and

Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1453. At all relevant times mentioned herein, Defendant Izrayev, together with others unknown to Plaintiff, exerted control over and directed the operations of the Town Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1454. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Izrayev required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1455. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1456. The racketeering acts set forth herein were carried out on a continued basis for

more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Izrayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1457. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Town Supply continues to pursue collection on the fraudulent billing to the present day.

1458. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Izrayev, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Town Supply enterprise based upon materially false and misleading information.

1459. Through the Town Supply enterprise, Defendant Izrayev submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Izrayev, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendant Izrayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Town Supply enterprise through the filing of this Complaint.

1460. A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendant Izrayev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1461. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1462. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1463. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $33,000.00, the exact amount to be determined at trial.

1464. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Izrayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED TWENTY-THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS IZRAYEV AND TOWN SUPPLY**

**(Common Law Fraud)**

1465. The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1466. Defendants Izrayev and Town Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1467.   On information and belief, each and every bill and supporting documentation submitted by Defendants Izrayev and Town Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1468.   On information and belief, Defendants Izrayev and Town Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Town Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed

and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Izrayev, through Town Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Izrayev, through Town Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1469.  The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Town Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1470.  Defendants Izrayev and Town Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1471.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants Izrayev and Town Supply.

1472.  Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Town Supply's claims for No-fault insurance benefits submitted in connection therewith.

1473.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Izrayev and Town Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1474.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained

compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $33,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED TWENTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS IZRAYEV AND TOWN SUPPLY

**(Unjust Enrichment)**

1475.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1476.   By reason of their wrongdoing, Defendants Izrayev and Town Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1477.   Plaintiff is therefore entitled to restitution from Defendants Izrayev and Town Supply in the amount by which they have been unjustly enriched.

1478.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $33,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-FIFTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

**(Aiding and Abetting)**

1479.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1480.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Izrayev and Town Supply.

1481.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendant Izrayev and Town Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Izrayev and Town Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Izrayev, through Town Supply, to Town Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Town Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Izrayev through Town Supply and the No-fault Clinics.

1482.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Izrayev and Town Supply to obtain fraudulently inflated payments

from Plaintiff, among others.

1483.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1484.  On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Town Supply in an amount to be determined at trial, but in no event less than $33,000.00.

1485.  On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1486.  By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS JOHN DOE 2, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1487.  The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1488.  At all times relevant herein, Veraso Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1489.  From, in or about 2013 through the date of the filing of this Complaint, Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Veraso Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1490.  At all relevant times mentioned herein, Defendant John Doe 2, together with others unknown to Plaintiff, exerted control over and directed the operations of the Veraso Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1491.  On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant John Doe 2 required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for

fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1492.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1493.   The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1494.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Veraso Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1495.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant John Doe 2, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Veraso Medical Supply enterprise based upon materially false and misleading information.

1496.   Through the Veraso Medical Supply enterprise, Defendant John Doe 2 submitted

368

hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant John Doe 2, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Veraso Medical Supply enterprise through the filing of this Complaint.

1497.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant John Doe 2, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1498.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1499.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1500.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $9,000.00, the exact amount to be determined at trial.

1501.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the

costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED TWENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS JOHN DOE 2 AND VERASO MEDICAL SUPPLY

### (Common Law Fraud)

1502.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1503.   Defendants John Doe 2 and Veraso Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1504.   On information and belief, each and every bill and supporting documentation submitted by Defendants John Doe 2 and Veraso Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1505.   On information and belief, Defendants John Doe 2 and Veraso Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Veraso Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant John Doe 2, through Veraso Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant John Doe 2, through Veraso Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1506. The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Veraso Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1507.  Defendants John Doe 2 and Veraso Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1508.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants John Doe 2 and Veraso Medical Supply.

1509.   Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Veraso Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1510.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants John Doe 2 and Veraso Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1511.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $9,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED TWENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS JOHN DOE 2 AND VERASO MEDICAL SUPPLY

### (Unjust Enrichment)

1512.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1513.   By reason of their wrongdoing, Defendants John Doe 2 and Veraso Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1514.   Plaintiff is therefore entitled to restitution from Defendants John Doe 2 and Veraso Medical Supply in the amount by which they have been unjustly enriched.

1515.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $9,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1516.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1517.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants John Doe 2 and Veraso Medical Supply.

1518.  On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants John Doe 2 and Veraso Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants John Doe 2 and Veraso Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendants John Doe 2, through Veraso Medical Supply, to Veraso Medical Supply to create the impression of an actual sale in furtherance of the money

laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Any Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between John Doe 2 through Veraso Medical Supply and the No-fault Clinics.

1519.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants John Doe 2 and Veraso Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1520.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1521.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Veraso Medical Supply in an amount to be determined at trial, but in no event less than $9,000.00.

1522.   On information and belief, the Wholesale Defendants' (one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1523.   By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1524.   The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1525.   At all times relevant herein, Wellmax Products was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1526.   From, in or about 2003 through the date of the filing of this Complaint, Defendant John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the Wellmax Products enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1527.   At all relevant times mentioned herein, Defendant John Doe 3, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Wellmax

Products enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1528.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant John Doe 3 required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1529.   On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1530.   The racketeering acts set forth herein were carried out on a continued basis for more than a one-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1531.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Wellmax Products continues to pursue collection on the fraudulent billing to the present day.

1532.  As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant John Doe 3, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the Wellmax Products enterprise based upon materially false and misleading information.

1533.  Through the Wellmax Products enterprise, Defendant John Doe 3 submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendant John Doe 3, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Wellmax Products enterprise through the filing of this Complaint.

1534.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant John Doe 3, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1535.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

1536.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1537.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $5000.00, the exact amount to be determined at trial.

1538.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Khaimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED THIRTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS JOHN DOE 3 AND WELLMAX PRODUCTS

### (Common Law Fraud)

1539.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1540.  Defendants John Doe 3 and Wellmax Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1541.  On information and belief, each and every bill and supporting documentation submitted by Defendants John Doe 3 and Wellmax Products to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were

intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1542. On information and belief, Defendants John Doe 3 and Wellmax Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Wellmax Products was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant John Doe 3, through Wellmax Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant John Doe

3, through Wellmax Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1543.   The foregoing was intended to deceive and mislead Plaintiff into paying Defendant Wellmax Products' claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1544.   Defendants John Doe 3 and Wellmax Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1545.   Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result of the acts of fraud and deception of Defendants John Doe 3 and Wellmax Products.

1546.   Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Wellmax Products' claims for No-fault insurance benefits submitted in connection therewith.

1547.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants John Doe 3 and Wellmax Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1548.   By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED THIRTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS JOHN DOE 3 AND WELLMAX PRODUCTS

### (Unjust Enrichment)

1549.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1550.  By reason of their wrongdoing, Defendants John Doe 3 and Wellmax Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1551.  Plaintiff is therefore entitled to restitution from Defendants John Doe 3 and Wellmax Products in the amount by which they have been unjustly enriched.

1552.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $5,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1553.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1554.  On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by

Defendants John Doe 3 and Wellmax Products.

1555.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants John Doe 3 and Wellmax Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants John Doe 3 and Wellmax Products could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendants John Doe 3, through Wellmax Products, to Wellmax Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through Any Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between John Doe 3 through Wellmax Products and the No-fault Clinics.

1556.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants John Doe 3 and Wellmax Products to obtain fraudulently inflated payments from Plaintiff, among others.

1557.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted

the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1558.  On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through Wellmax Products in an amount to be determined at trial, but in no event less than $5,000.00.

1559.  On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiff to recover punitive damages.

1560.  By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS KHAIMOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1561.  The allegations of paragraphs 1 through 301 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1562.  At all times relevant herein, YAM Medical Supply was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. §

1961(4), and within the meaning of 18 U.S.C. § 1962(c).

1563.   From, in or about 2003 through the date of the filing of this Complaint, Defendant Khaimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, knowingly conducted and participated in the affairs of the YAM Medical Supply enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.  Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1564.   At all relevant times mentioned herein, Defendant Khaimov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Any Medical Supply enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1565.   On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices that grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Khaimov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiff for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1566.   On information and belief, it was both foreseeable and the intended consequence

384

that the wholesale invoices provided by one or more of the John Does 11 through 20, through one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiff.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1567.   The racketeering acts set forth herein were carried out on a continued basis for more than a twelve-and-a-half-year period, were related and similar and were committed as part of the ongoing scheme of Defendant Khaimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1568.   On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as YAM Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1569.   As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Khaimov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiff and to induce Plaintiff to issue checks to the YAM Medical Supply enterprise based upon materially false and misleading information.

1570.  Through the YAM Medical Supply enterprise, Defendant Khaimov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.   The bills and supporting documents that were sent by Defendant Khaimov, as well as the payments that

Plaintiff made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendant Khaimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the YAM Medical Supply enterprise through the filing of this Complaint.

1571.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Khaimov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1572.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1573.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1574.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in its business and property and Plaintiff has been damaged in the aggregate amount presently in excess of $8,500.00, the exact amount to be determined at trial.

1575.  Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover from Defendant Khaimov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED THIRTY-FIFTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KHAIMOV AND YAM MEDICAL SUPPLY**

**(Common Law Fraud)**

1576.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1577.  Defendant Khaimov and YAM Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff Allstate Insurance Company for payment.

1578.  On information and belief, each and every bill and supporting documentation submitted by Defendants Khaimov and YAM Medical Supply to Plaintiff set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiff but constitute a grave and serious danger to the No-fault Claimants and the consumer public.

1579.  On information and belief, Defendants Khaimov and YAM Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts YAM Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff that the DME

and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

• With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiff misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

• False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

• False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that (a) the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Khaimov, through YAM Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Khaimov, Rafailov, through YAM Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiff and other insurers.

1580.  The foregoing was intended to deceive and mislead Plaintiff into paying Defendant YAM Medical Supply's claims under the No-fault Law.  Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

1581.  Defendants Khaimov and YAM Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

1582.  Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiff was led to believe existed as a result

of the acts of fraud and deception of Defendants Khaimov and YAM Medical Supply.

1583.  Had Plaintiff known of the fraudulent content of the bills, prescriptions and delivery receipts, it would not have paid the Defendant Any Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1584.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Khaimov and YAM Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

1585.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $8,500.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED THIRTY-SIXTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS KHAIMOV AND YAM MEDICAL SUPPLY**

**(Unjust Enrichment)**

1586.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1587.  By reason of their wrongdoing, Defendants Khaimov and YAM Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiff Allstate Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1588.  Plaintiff is therefore entitled to restitution from Defendants Khaimov and YAM Medical Supply in the amount by which they have been unjustly enriched.

1589.  By reason of the foregoing, Plaintiff Allstate Insurance Company has sustained

compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $8,500.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 11 THROUGH 20

### (Aiding and Abetting)

1590.   The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1591.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiff Allstate Insurance Company by Defendants Khaimov and YAM Medical Supply.

1592.   On information and belief, the acts taken by the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Khaimov and YAM Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Khaimov and YAM Medical Supply could mail fraudulent bills to Plaintiff and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Khaimov, through YAM Medical Supply, to YAM Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the

amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiff, among others, through YAM Medical Supply; and (v) knowingly supporting the negotiation and performance of kickback agreements between Khaimov through YAM Medical Supply and the No-fault Clinics.

1593.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) in furtherance of the fraudulent scheme is significant and material, is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Khaimov and YAM Medical Supply to obtain fraudulently inflated payments from Plaintiff, among others.

1594.   On information and belief, the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiff into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1595.   On information and belief, the conduct of the Wholesale Defendants (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) caused Plaintiff Allstate Insurance Company to pay money based upon the fraudulent charges submitted through YAM Medical Supply in an amount to be determined at trial, but in no event less than $8,500.00.

1596.   On information and belief, the Wholesale Defendants' (one or more of the ABC Corporations 1 through 20 and one or more of the John Does 11 through 20) extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles

Plaintiff to recover punitive damages.

1597.  By reason of the foregoing, Plaintiff is entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**ONE HUNDRED THIRTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST ALL RETAIL DEFENDANTS**

**(Declaratory Judgment under 28 U.S.C. § 2201)**

1598.  The allegations of paragraphs 1 through 301 are hereby repeated and realleged as though fully set forth herein.

1599.   At all relevant times mentioned herein, each and every bill mailed by the Retail Owners, through their respective Retailers, to Plaintiffs sought reimbursement in excess of the amounts authorized by the No-fault Law and New York State Medicaid Fee Schedule by materially misrepresenting the DME and/or orthotic devices provided, if provided at all, as well as the cost and quality of the billed for DME and/or orthotic devices.

1600.  To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which the Retailers' wholesale cost was a mere fraction of the amount they charged Plaintiffs and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of medical need.

1601.  At all times relevant herein, the Retail Defendants exploited the No-fault Law and New York State Medicaid Fee Schedule through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule purportedly provided to Claimants.

1602.  In view of the Retail Defendants submission of fraudulent bills to Plaintiffs,

392

Plaintiffs contend that the Retail Defendants have no right to receive payment for any pending bills they have submitted because:

- The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs to obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs;

- The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME and/or orthotic devices that they never supplied to No-fault Claimants.

1603. As the Retail Defendants have knowingly made the foregoing false and fraudulent misrepresentations about the DME and/or orthotic devices purportedly supplied to No-fault Claimants and the amounts they were entitled to be reimbursed, which they never supplied to No-fault Claimants, in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they were entitled to receive, it is respectfully requested that this Court issue an order declaring that the Retail Defendants are not entitled to receive payment on any pending, previously-denied and/or submitted unpaid claims and Plaintiffs, therefore, are under no obligation to pay any of Retail Defendants' No-fault claims.

1604. Plaintiffs have no adequate remedy at law.

1605. The Retail Defendants will continue to bill Plaintiffs for false and fraudulent claims for reimbursement absent a declaration by this Court that Plaintiffs have no obligation to pay the pending, previously-denied and/or submitted unpaid claims, regardless of whether such unpaid claims were ever denied, regardless of the purported dates of service.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)      Compensatory damages in an amount in excess of $980,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)     Punitive damages in such amount as the Court deems just;

iii)    Treble damages, costs and reasonable attorneys' fees on the First, Fifth, Sixth, Seventh, Eleventh, Fifteenth, Nineteenth, Twenty-Third, Twenty-Seventh, Thirty-First, Thirty-Fifth, Thirty-Ninth, Fortieth, Forty-Fourth, Forty-Fifth, Forty-Ninth, Fifty-Third, Fifty-Seventh, Sixty-First, Sixty-Second, Sixty-Sixth, Seventieth, Seventy-Fourth, Seventy-Eighth, Eighty-Second, Eighty-Sixth, Ninetieth, Ninety-Fourth, Ninety-Eighth, One Hundred Second, One Hundred Sixth, One Hundred Tenth, One Hundred Fourteenth, One Hundred Eighteenth, One Hundred Twenty-Second, One Hundred Twenty-Sixth, One Hundred Thirtieth, and One Hundred Thirty-Fourth Claims for Relief, together with prejudgment interest;

iv)     Compensatory and punitive damages on the Second, Eighth, Twelfth, Sixteenth, Twentieth, Twenty-Fourth, Twenty-Eighth, Thirty-Second, Thirty-Sixth, Forty-First, Forty-Sixth, Fiftieth, Fifty-Fourth, Fifty-Eighth, Sixty-Third, Sixty-Seventh, Seventy-First, Seventy-Fifth, Seventy-Ninth, Eighty-Third, Eighty-Seventh, Ninety-First, Ninety-Fifth, Ninety-Ninth, One Hundred Third, One Hundred Seventh, One Hundred Eleventh, One Hundred Fifteenth, One Hundred Nineteenth, One Hundred Twenty-Third, One Hundred Twenty-Seventh, One Hundred Thirty-First, and One Hundred Thirty-Fifth Claims for Relief, together with prejudgment interest;

v)      Compensatory damages on the Third, Ninth, Thirteenth, Seventeenth, Twenty-First, Twenty-Fifth, Twenty-Ninth, Thirty-Third, Thirty-Seventh, Forty-Second, Forty-Seventh,

394

Fifty-First, Fifty-Fifth, Fifty-Ninth, Sixty-Fourth, Sixty-Eighth, Seventy-Second, Seventy-Sixth, Eightieth, Eighty-Fourth, Eighty-Eighth, Ninety-Second, Ninety-Sixth, One Hundredth, One Hundred Fourth, One Hundred Eighth, One Hundred Twelfth, One Hundred Sixteenth, One Hundred Twentieth, One Hundred Twenty-Fourth, One Hundred Twenty-Eighth, One Hundred Thirty-Second, and One Hundred Thirty-Sixth Claims for Relief, together with prejudgment interest;

vi)     Compensatory and punitive damages on the Fourth, Tenth, Fourteenth, Eighteenth, Twenty-Second, Twenty-Sixth, Thirtieth, Thirty-Fourth, Thirty-Eighth, Forty-Third, Forty-Eighth, Fifty-Second, Fifty-Sixth, Sixtieth, Sixty-Fifth, Sixty-Ninth, Seventy-Third, Seventy-Seventh, Eighty-First, Eighty-Fifth, Eighty-Ninth, Ninety-Third, Ninety-Seventh, One Hundred First, One Hundred Fifth, One Hundred Ninth, One Hundred Thirteenth, One Hundred Seventeenth, One Hundred Twenty-First, One Hundred Twenty-Fifth, One Hundred Twenty-Ninth, One Hundred Thirty-Third, and One Hundred Thirty-Seventh Claims for Relief, together with prejudgment interest;

vii)    Declaratory relief on the One Hundred Thirty-Eighth Claim for Relief, declaring that Plaintiffs have no obligation to pay any No-fault claims submitted by the Retail Defendants because (1) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault Claimants and the amounts they were entitled to be reimbursed in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs; and (2) The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault

Claimants by submitting claims for DME and/or orthotic devices that they never supplied to No-fault Claimants; and

viii)    Costs, reasonable attorneys' fees and such other relief that the Court deems just and proper.

Dated: New York, New York,
       March 25, 2016

                                        Stern & Montana, LLP

                                        By: _____
                                             Robert A. Stern (RAS-1282)
                                             Sandra P. Burgos (SB-6856)
                                             James McKenney (JM-6164)
                                             Tina R. Karkera (TK-8565)
                                             Attorneys for Plaintiffs
                                             One World Financial Center
                                             30th Floor
                                             New York, New York 10281
                                             (212) 532-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

                        Plaintiffs,

     -against-

DMITREI ABRAMOV, SERGEY AKOPYAN, YULIA BILYK, ARTUR DENISOV, THE ESTATE OF YURIY DENISOV, ALEKSANDR FIRAYNER, OLEKSIY GERASYMENKO, YURIY GINDINOV, ARIS GRIGORYAN, VALERIA HAMAMY, OLGA IZRAYEV, VLADIMIR KAMINSKY, MURDAKHAY KHAIMOV, BORIS KHANIS, ZLATISLAV KOMISARCHIK, VLADISLAV KRAITER, INNA LYUBRONETSKAYA, GALINA MILERMAN, URIYEL MIRZAKANDOV, ALEKSANDR NISANOV, INNA PINSKY, VADIM POVZLOV, ELMAN RAFAILOV, TATIANA RODIONOVA, OLEG SHNAIDER, INNA SHILIMOV, BORIS SOBOLEV, GIKOR SONAYAN, MAKSYM TKACHENKO, YEFIM VELNIK, ALEXSANDR VERBITSKY, EDUARD ZARUBIN, ABSOLUTE MEDICAL SUPPLIES INC., ALLEVIATION PRODUCTS CORPORATION, ANY MEDICAL SUPPLY, INC., BENTO ORTHO INC., BEST CHOICE MEDICAL SUPPLY, INC., CHAPA PRODUCTS CORPORATION, EMPIRE STATE MEDICAL SUPPLIES, INC., EXCEL PRODUCTS INC., FIRST AMERICAN ALLIANCE, INC., FOREST MEDICAL EQUIPMENT INC., HEALING HEALTH PRODUCTS, INC., INFINITE ORTHO PRODUCTS INC., LIBERTY SURGICAL SUPPLIES INC., MAIGA PRODUCTS CORPORATION, MAXFORD INC., MDAX INC., MILLDORP INC., NEW UTRECH SERVICES, INC., NUMED MEDICAL SUPPLY, INC., PACIFIC SURGICAL SUPPLY, INC., PAIN FREE LEAVING, INC., PPSC MEDICAL SUPPLY, INC., PRAVEL INC., PREFERRED ORTHO PRODUCTS INC., PROMED DURABLE EQUIPMENT, INC., QUALITY CUSTOM MEDICAL SUPPLY, INC., QUALITY MEDICAL SUPPLY INC., RIDGE MEDICAL SUPPLIES CORP., SIGMA MED CARE INC., SOLUTION BRIDGE INC., SOVERA MEDICAL SUPPLY, CORP., STATE MEDICAL SUPPLY INC., SURE WAY NY INC., T & S MEDICAL SUPPLY CORPORATION, TOWN SUPPLY, INC., VERASO MEDICAL SUPPLY, CORP., WELLMAX PRODUCTS, CORP. AND Y.A.M. MEDICAL SUPPLY, INC., MARGARITA AKMALOVA, GRIGOL APRESYANTSI, SERGEY MEZKULA, VALERIY SEMENIKHIN, AND VADIM ZALOGIN, AMERICAN MOBILITY MEDICAL, INC., BIV WHOLESALE INC., COMDEX INC., GLOBAL BEST DEAL, INC., GRIGOL SUPPLY, INC., IG&NAT SERVICES, INC., IMPREZZA NYC INC., METRA WHOLESALE INC., ONE STOP WHOLESALE, INC., ORTIZ OMEGA CORP., VDS MEDICAL SUPPLY, INC., VZ GROUP, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

                        Defendants.

-------------------------------------------------------------------------- X

CIVIL ACTION

NO:_____

COMPLAINT

(TRIAL BY JURY DEMANDED)