STERN & MONTANA, LLP
ONE WORLD FINANCIAL CENTER
30TH FLOOR
NEW YORK, NEW YORK 10281
___

TELEPHONE: (212) 532-8100
FACSIMILE: (212) 532-7271
E-MAIL: info@stern-montana.com
www.stern-montana.com

September 26, 2016

**VIA ECF**

Honorable Ann Donnelly
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Allstate Insurance Company, et al. v. Dmitrei Abramov, et al.
           Civil Action No.: 1:16-cv-01465-AMD-VMS**

Dear Judge Donnelly:

Along with Cadwalader Wickersham & Taft, LLP, we represent Plaintiffs in the above-referenced matter and, pursuant to Rule 3(a)(i) of Your Honors' Rules, respectfully request a pre-motion conference seeking permission to file (i) a Motion to Dismiss the Counterclaims (the "Counterclaims") of Defendants Uriyel Mirzakandov and MDMX, Inc. (the "Defendants") pursuant to Fed. R. Civ. P. Rule 12(b)(6) and (ii) a Motion seeking Rule 11 sanctions with respect thereto. In the interest of judicial efficiency, Plaintiffs have combined both requests into this single letter, and as such respectfully request that the Court's page limitation for letter applications be enlarged from three pages to five pages.

By way of brief background with respect to the Counterclaim Defendants, the Complaint in this matter alleges that MDAX, which purports to be a durable medical equipment ("DME") retailer owned by Mirzakandov[1], engaged in a scheme to defraud Plaintiffs through the

---

[1] In addition to the reasons set forth herein, the Counterclaims, as asserted on behalf of Mirzakandov should be dismissed outright because he lacks standing to assert them. See e.g. *Jones v. Niagara Frontier Transportation Authority*, 836 F.2d 731, 736 (2d Cir. 1987), *cert. denied*, 488 U.S. 825 (1988) ("A shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation); *Leung v. Law*, 387 F. Supp. 2d 105, 122-3 (E.D.N.Y. 2005) (a shareholder does not have standing to bring an individual action seeking redress for injury to the corporation because the injury to the shareholder is derivative).

Cont/d…

STERN & MONTANA, LLP

Hon. Ann Donnelly
September 25, 2016
Page 2

submission of hundreds of fraudulent insurance claims for DME and orthotic devices to Plaintiffs for reimbursement under New York State's No Fault Law.[2] The Complaint seeks compensatory damages, as well as a declaration that Allstate is under no obligation to pay any of MDAX's claims due to its fraudulent billing practices. With respect to many of those outstanding claims, Allstate, in accordance with its statutory and contractual rights, sought additional verification to review the claims from MDAX seeking, among other items, wholesale invoices reflecting the purchase of the billed for DME.[3] Under the No-Fault Law, once a claim is submitted for reimbursement to an insurer, such as Plaintiffs, the insurer may request "any additional verification required… to establish proof of claim."  *See* 11 NYCRR § 65–3.5(b). *Nyack Hospital v. General Motors Acceptance Corp.*, 8 N.Y.3d 294, 299, 832 N.Y.S.2d 880, 864 N.E.2d 1279 (2007). Now, in what can only be considered retaliation for Plaintiffs' well-plead Complaint, Defendants have filed counterclaims alleging that by merely exercising their right to seek additional verification under the No-Fault law, Plaintiffs have somehow engaged in predicate acts pursuant to the RICO statute. Such inappropriate use of the RICO statute needs to be halted.

The crux of Defendants' Counterclaims are that Plaintiffs, in *processing* MDAX's claims for No-Fault benefits, improperly requested additional verification seeking the wholesale invoices for fee-scheduled items. Defendants further allege that since MDAX submitted bills for fee scheduled items, Plaintiffs are not entitled to seek verification relating to its purported wholesalers and, in doing so, Defendants maintain that they violated the Hobbs Act, 18 U.S.C. § 1951, as it relates to trade secrets and the Economic Espionage Act ("EEA") 18 U.S.C. § 1832(a)(1) as it relates to extortion, with both violations constituting the predicate acts for their alleged RICO claims. Without any basis, Defendants allege that Plaintiffs requested the wholesale invoices for the fee-scheduled items in order to limit reimbursement to MDAX's actual cost, as opposed to reimbursing at the fee-schedule rate. As set forth below, these claims are both implausible and subject to Rule 11 sanctions.

---

[2] In the matter of *Allstate Insurance Company et al. v. Lev Batsiyan, et al*. (1:05-cv-05933-SJ-VVP) (a No-fault recovery action brought by Allstate against, among others, various professional corporations billing under the No-fault Law that were alleged to be involved in a massive scheme to defraud), the court addressed equally meritless counterclaims against Allstate. There, in addition to dismissing counterclaims, which included RICO claims; under 18 U.S.C. § 1962(c) and (d); common law fraud; deceptive consumer practices under New York General Business Law §349; defamation;, a civil rights violation under 42 U.S.C. § 1983; and prima facie tort, the court dismissed the claims brought on behalf of the individual owner a professional corporation because he had no injury independent of the corporation and, therefore, lacked standing to sue. *See* (ECF No. 203). Such should be the case here as well.

[3] During the relevant time period, "[t]he maximum permissible charge for the purchase of [DME], medical/surgical supplies, and orthotic and prosthetic appliances [was] the fee payable for such equipment and supplies under the New York State Medicaid program Fee Schedule at the time such equipment and supplies [were] provided. Notwithstanding the Fee Schedule, insurers have an absolute right to seek any additional verification that they believe is reasonable in order to validate the claim.

Cont/d…

STERN & MONTANA, LLP

Hon. Ann Donnelly
September 25, 2016
Page 3

It is well-settled that "factual allegations [in a complaint] must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, (2007) (allegations of a Complaint must be plausible on their face); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) (pursuant to Rule 12(b)(6), a court "evaluates the legal viability of the allegations therein."). Here, Defendants' claims fall woefully short of passing the *Twombly* plausibility test and must be dismissed.

As a threshold matter, and incurably fatal to MDAX's Counterclaims, it is black letter law that allegations that an insurer improperly denied or delayed insurance reimbursement under a contract cannot give rise to a RICO claim. *See e.g. Greenspan v. Allstate Ins. Co.,* 937 F. Supp. 288, 291 (S.D.N.Y.1996) (plaintiffs' claim that defendant engaged in practices designed to deny or delay reimbursement for properly submitted medical claims does not support an independent fraud claim); *Alexander v. Geico Ins. Co.,* 35 A.D.3d 989, 990, 826 N.Y.S.2d 777 (3rd Dept.2006) (holding that no independent tort claim existed for the plaintiff's claim that the defendant failed to provide her with continued no-fault benefits); *Bono v. Monarch Life Ins. Co.,* No. 05–CV–2815, 2006 WL 839412, at * 3 (W.D.N.Y. Mar.27, 2006) (dismissing plaintiff's cause of action against the defendant-insurer for fraudulent claims handling on the basis that under New York law, an insurance claimant cannot convert a breach of contract claim into a tort claim by alleging that the insurer handled the claim fraudulently); *Chiropractic Neurodiagnostic, P.C. v. Allstate Ins. Co.*, No. 08-CV-2319 SJF/AKT, 2009 WL 210866, at *5–6 (E.D.N.Y. Jan. 26, 2009) (same); *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York,* No. 07-CV-1471 (RRM) (LB), 2009 WL 928718, at *4 (E.D.N.Y. Mar. 31, 2009) (dismissing provider's RICO claims against defendant insurer for purportedly unreasonable requests for verification and claim denials as those allegations sound in contract). *Chamberlin v. Hartford Fin. Servs. Inc.*, No. 05 CIV. 2650 (AKH), 2005 WL 2007894, at *3 (S.D.N.Y. Aug. 19, 2005) (dismissing provider's RICO claim against insurer for failure to pay no-fault benefits, where "the facts alleged demonstrate that the Defendants have not fulfilled their obligations under a contract-express or implied-to Plaintiffs. . . . New York [no-fault] law provides complete remedies for insureds and their assignees, such as Plaintiffs, who believe that their claims have been improperly denied.").

At bar, by asserting that Plaintiffs' requests for additional verification somehow constitutes RICO predicates, Defendants completely ignore that the No-Fault Law and implementing regulations, as well as the mandatory contacts of insurance between the parties, as prescribed by the Department of Insurance, specifically provide that Allstate may request any verification it reasonably requires for an applicant to establish proof of claim.[4] In particular, "a request for a manufacturers invoice documenting the cost of the medical equipment [on the Fee Schedule] or supplies and proof of payment for the medical equipment or supplies is eminently

---

[4] Whether a particular request for additional verification was reasonable is a determination that an arbitrator or court would make in the contact of a simple breach of contract claim brought by the applicant.

Cont/d…

STERN & MONTANA, LLP

Hon. Ann Donnelly
September 25, 2016
Page 4

reasonable." *Custom Orthotics Limited V. Government Employees Insurance Company*, 25 Misc. 3d 545, 883 NYS 2d 884 (Civil Ct. Queens County 2009). In that regard, the only actual act of Allstate alleged within the Counterclaims is the act of Allstate seeking its contractual and regulatory right to additional verification of No-fault claims. There are no misstatements alleged. There are no nefarious actions alleged. There are no communications extraneous to the contract alleged. Simply put, there is nothing alleged other that MDAX's dissatisfaction with Allstate exercising its right to request additional verification. To the extent that MDAX believes that Allstate was not entitled to the requested information, the No-Fault Law provides it with the exclusive right to have its claim, sounding in breach of contract, to be resolved in court or arbitration. *See* Ins. Law 5106(b). Mere disagreement with an insurer's right to request certain additional verification does not, however, transform an ordinary breach of contract claim into claims under RICO. Demonstrative of the fact that Defendants claim is nothing more than a breach of contract claim dressed up as RICO violations is that the damages that the Counterclaim Defendants seek ($300,000.00) is the exact amount that they allege is owed under the relevant No-Fault contracts of insurance.

Moreover, to the extent that Defendants allege that Plaintiffs requested the wholesale invoices "to use in its attempt to force the Counterclaim Suppliers to accept reimbursement at cost," (Counterclaim ¶7), Defendants posit an implausible motive and theory for recovery. Since MDAX billed for fee-scheduled items – items for which the reimbursement rate is dictated by law, Plaintiffs could not seek to reimburse MDAX (or any other DME provider) at a lesser rate once it verified that the billed for items were in fact provided to the claimants and were what they purported to be. Indeed, because they cannot, Defendants' counterclaims do not include a single allegation that, once in possession of a wholesale invoice, Plaintiffs sought reimbursement at a rate less than what was required under the Fee Schedule for any particular item provided to a claimant. It is equally implausible for Defendants to allege that Plaintiffs sought the wholesale invoice because they did "not want to pay this profit spread[5], but instead limit reimbursement to the Counterclaim Suppliers' cost." Counterclaim ¶ 17.

Under Defendants' illogical theory, Plaintiffs sought to limit reimbursement to eliminate any profit to MDAX. Again, there is not a single allegation in the counterclaim that Plaintiffs ever engaged in such conduct. Moreover, since the amount of reimbursement for fee scheduled items is set forth in the Fee Schedule, it is absurd for Defendants to allege that Plaintiffs sought to deprive Defendants of any profit when Plaintiffs are required by regulation to reimburse DME providers at the Fee Scheduled amount for any particular item actually provided to claimants. There being no rational explanation for Defendants' allegations, the only rationally is a nefarious one – Defendants do not want to disclose what they actually purchased and have that compared to what they billed Plaintiffs for. Defendants are attempting to use the RICO statute as a sword to make Plaintiffs back away from their legally allowable request. This Court should not permit such improper use of the RICO statute and judicial process.

---

[5] The difference between the Fee Schedule and wholesale invoice amounts.

Cont/d…

STERN & MONTANA, LLP

Hon. Ann Donnelly
September 25, 2016
Page 5

  Moreover, even if a RICO claim could lie under these circumstances, which it could not, the Counterclaims additionally fail to state a RICO predicate act of extortion under both the Hobbs Act and the EEA.[6] With respect to the Hobbs Act, there is no actual deprivation of property alleged; MDAX does not allege a single instance where Allstate attempted to obtain MDAX's consent to accept lower rates for DME, because such instances do not exist; there is no allegation that Allstate knowingly and willfully created or instilled fear (or that Allstate knew of an existing fear) in MDAX; and there is no plausible economic fear alleged, Indeed, it is wholly implausible to accept as true that Allstate instilled fear in MDAX simply by following the statutory and contractually permissible No-Fault claims process. Similarly, under no tortured interpretation of the EEA could Allstate's statutory and contractually permissible request for additional verification be considered an attempt to take a trade secret "without authorization" as required by the EEA. The No-fault law expressly authorizes Allstate to seek additional verification and that includes requesting wholesale invoices to verify the claim submission. *See Pulte Homes, Inc. v. Laborers' Intern. Union of North Am.*, 648 F.3d 295, 303 (6th Cir. 2011) (interpreting the phrase "without authorization" according to its plain meaning and finding that the question thus turned on whether a defendant had "any right" to engage in the activity purportedly prohibited). Because the No-Fault law expressly provides permission to obtain wholesale invoices, which includes, among other things, the product description, quantity purchased and pricing, for the purpose of verifying the claim, Allstate has a right and legal authorization to ask for it.[7]

  Finally, due to, among other things, the reasons set forth herein, Defendants should be subject to Rue 11 sanctions for the filing of the Counterclaims. The Second Circuit has held that a violation of Rule 11 is triggered in either of two situations: when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law. *Eastway Constr. Corp. v. City of New York* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 69 L.Ed.2d 226 (1987); *see also O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 705 (2d Cir.1990). The Court in *Eastway* concluded that Rule 11 sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." *Eastway,* 762 F.2d at 254. As set forth herein, such is the case at bar. Moreover, Defendants' obvious purpose in filing the Counterclaims—to scare Allstate and derail the lawfully prescribed claims process – is plainly improper.

---

[6] The Counterclaims' RICO allegations are deficient for many other reasons which will be set forth in Plaintiffs' Motion. For example, the Counterclaims do not delineate a RICO enterprise; no RICO person is described; no list of purported predicate acts are given; no RICO damages are described; no participation any enterprise is alleged. The absence of any one of the foregoing would be fatal to Defendants' counterclaims. The absence of them all, combined with the other infirmities set forth herein, is sanctionable.

[7] In addition, that Allstate attempted or conspired to engage in theft of trade secrets is simply not plausible. There is no allegation that plausibly alleges that Allstate intended to do anything to convert the trade secret to its own benefit, nor could there be. Allstate is in the insurance business, not the DME business.

Cont/d…

STERN & MONTANA, LLP

Hon. Ann Donnelly
September 25, 2016
Page 6

                                         Respectfully submitted,

                                         Stern & Montana, LLP

                                         By: _____/s Daniel Marvin_____
                                                Daniel S. Marvin (DM-7106)

cc:      All Counsel (via E-filing)

1440637_6.doc