**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**ALLSTATE INSURANCE COMPANY,** *et al.*,

                                       **Plaintiffs,**

            -against-

**DMITREI ABRAMOV,** *et al.*,

                                 **Defendants.**

---

1:16-CV-01465 (AMD)(VMS)

 

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR RULE 11
SANCTIONS BY DEFENDANTS MDAX, INC. AND URIYEL MIRZAKANDOV**

 

| | |
|---|---|
| **STERN & MONTANA, LLP**<br>**ATTORNEYS FOR PLAINTIFFS**<br>**ONE WORLD FINANCIAL CENTER**<br>**30TH FLOOR**<br>**NEW YORK, NEW YORK 10281**<br>**TELEPHONE NO.: (212) 532-8100** | **CADWALADER, WICKERSHAM &**<br>**TAFT LLP**<br>**ATTORNEYS FOR PLAINTIFFS**<br>**ONE WORLD FINANCIAL CENTER**<br>**NEW YORK, NEW YORK 10281**<br>**TELEPHONE NO.: (212) 504-6000** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION .................................................................................................................. 1

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ......................................................................................................................... 3

    I.      RULE 11 STANDARDS .......................................................................... 3

    II.     DEFENDANTS FILED THE MOTION FOR IMPROPER
         PURPOSES IN VIOLATION OF RULE 11. ............................................... 6

    III.    DEFENDANTS FAIL TO MEET THE BASIC REQUIREMENTS
         FOR PROVING A RULE 11 VIOLATION OR FOR IMPOSING
         SANCTIONS. .......................................................................................... 9

         A.  Defendants Have Not and Cannot Meet Their Burden of
             Proving that the Challenged Allegations Are False and Utterly
             Lacking in Support………………………………………………...............9

         B.  Rule 11 Merely Requires Reasonable Inquiry Under the
             Circumstances…………………………………………...………………...........11

    IV.    PLAINTIFFS CONDUCTED A THOROUGH PRE-FILING
         INQUIRY INTO THE ALLEGATIONS, AND ALL
         ALLEGATIONS ARE SUPPORTED OR WILL BE
         SUPPORTED UPON THE OPPORTUNITY FOR DISCOVERY ........................ 12

         A.  Defendants Fail to Disprove the Allegations Regarding
             Generic Prescriptions and Delivery Receipts…………………………………...12

         B.  Defendants Fail to Disprove the Allegation Regarding
             MDAX's Purpose …………………………………………………….………...15

         C.  Defendants Fail to Disprove the Allegation Regarding a Fraudulent Protocol of
             Prescribing a Standard Battery of DME Regardless of Patient
             Need…………………………………………………………………….……...16

         D.  Defendants Fail to Disprove the Scheme to Defraud
             Allegations with Respect to Wholesaler Invoices and Kickbacks…...................19

V.      PLAINTIFFS ARE ENTITLED TO REASONABLE EXPENSES,
        INCLUDING ATTORNEY'S FEES, INCURRED IN OPPOSING
        THE BASELESS MOTION ........................................................................................ 25

CONCLUSION ........................................................................................................................ 26

## **TABLE OF AUTHORITIES**

**Cases**

*Abdelhamid v. Altria Grp., Inc.*,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007) ........................................................ 5

*Allstate Ins. Co. v. Abutova*,
    No. 13-CV-03494 (ARR) (LB) (E.D.N.Y. 2013) ...................................... 22

*Allstate Ins. Co. v. Afanasyev*,
    No. 12-CV-2423 (JBW) (CLP) (E.D.N.Y. 2012) ..................................... 22

*Allstate Ins. Co. v. Khaimov*,
    No. 11-CV-2391 (JG)(JMA)(E.D.N.Y. 2011) .......................................... 22

*Allstate Ins. Co. v. Yadgarov*,
    No. 11-CV-6187 (MKB) (RLM) (E.D.N.Y. 2011) ............................... 22-24

*Archie Comic Publications, Inc. v. Decarlo*,
    No. 00-CIV-5686 (LAK), 2000 WL 1731341 (S.D.N.Y. Nov. 21, 2000) ................... 25

*Brown v. Artus*,
    647 F. Supp. 2d 190 (N.D.N.Y. 2009) ..................................................... 9

*Calloway v. Marvel Entm't Grp.*,
    854 F.2d 1452 (2d Cir. 1988) ................................................................. 5

*Chipanno v. Champion Int'l Corp.*,
    702 F.2d 827 (9th Cir. 1983) ................................................................. 7

*Dome Patent L.P. v. Permeable Technologies, Inc.*,
    190 F.R.D. 88 (W.D.N.Y. 1999) ............................................................ 4

*Eastway Const. Corp. v. City of N.Y.*,
    762 F.2d 243 (2d Cir. 1985) ............................................................. 5, 11

*Greenberg v. Chrust*,
    297 F. Supp. 2d 699 (S.D.N.Y. 2004) .................................................... 4

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
    No. 00-CIV-1115 (LAK), 2000 WL 528633 (S.D.N.Y. May 2, 2000) ........................ 24

*Harter v. Iowa Grain Co.*,
    202 F.3d 273(Table), 1999 WL 754333 (7th Cir. 1998) ......................... 10, 25

*Hochberg v. Howlett*,
   No. 92-CIV-1822 (RPP), 1993 WL 33367 (S.D.N.Y. Feb. 4, 1993).............................. 5

*In re Air Disaster at Lockerbie, Scotland, On Dec. 21, 1988*,
   144 F.R.D. 613 (E.D.N.Y. 1992)................................................................. 6, 9

*Jacques v. DiMarzio, Inc.*,
   216 F. Supp. 2d 139 (E.D.N.Y. 2002) ............................................................ 5

*Kiobel v. Millson*,
   592 F.3d 78 (2d Cir. 2010) ................................................................... 4, 10

*Kropelnicki v. Siegel*,
   290 F.3d 118 (2d Cir. 2002) ..................................................................... 5

*Murchison v. Kirby*,
   27 F.R.D. 14 (S.D.N.Y. 1961) ............................................................10, 11, 25

*Navarro–Ayala v. Hernandez–Colon*,
   3 F.3d 464 (1st Cir. 1993) ...................................................................... 10

*Farino v. Advest, Inc.*,
   111 F.R.D. 345 (E.D.N.Y. 1986) ................................................................. 25

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986) ..............................................................4, 11, 24

*Perez v. Posse Comitatus*,
   373 F.3d 321 (2d Cir. 2004) .....................................................................11

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
   719 F. Supp. 2d 766 (S.D. Tex. 2010)............................................................. 8

*Rates Tech. Inc. v. Mediatrix Telecom, Inc.*,
   No. 05- CV-2755 (JS) (AKT), 2007 WL 2021905 (E.D.N.Y. Mar. 16, 2007)....... passim

*Rodick v. City of Schenectady*,
   1 F.3d 1341 (2d Cir. 1993) .................................................................... 6, 25

*Rounseville v. Zahl*,
   13 F.3d 625 (2d Cir. 1994) ......................................................................11

*Safe-Strap Co. v. Koala Corp.*,
   270 F. Supp. 2d 407 (S.D.N.Y. 2003) ...................................................... passim

iv

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
   No. 03-CV-1851 (NGG), 2007 WL 1026411, (E.D.N.Y. Mar. 30, 2007)............5, 11

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003) ..................................................................3-5

*United States v. Afanasyev*,
   No. 10-CR-459(SJ) (E.D.N.Y.) ................................................................ 22

*United States v. Allstate Ins. Co.*,
   No. 12-CV-1015 (WMS) (JJM), 2014 WL 10748104 (W.D.N.Y. Oct. 16, 2014) .... 4, 16

*United States v. Ladanov*,
   No. 10-CR-472(SJ) (E.D.N.Y.) ................................................................ 22

*United States v. Price*,
   577 F. Supp. 1103 (D.N.J. 1983).............................................................. 8

*United States v. Shturman*,
   No. 10-CR-460(SJ) (E.D.N.Y.) ................................................................ 22

*United States v. Vetukh*,
   No. 10-CR-458(RRM) (E.D.N.Y.) ............................................................ 22

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*,
   315 F. Supp. 2d 623 (D.N.J. 2004) ................................................... 4, 7, 16

## **Rules**

Fed. R. Civ. P. 8 .................................................................................... 8

Fed. R. Civ. P. 11 ......................................................................... passim

Fed. R. Civ. P. 11(b)(3) ................................................................. passim

Fed. R. Civ. P. 11(c)(2)............................................................... 1, 24

Fed. R. Civ. P. 11(c)(4)...............................................................11

Fed. R. Civ. P. 12 .................................................................................. 8

Fed. R. Civ. P. 12(b)(6) ....................................................................... 8

Fed. R. Civ. P. 26–37 ........................................................................... 8

Fed. R. Civ. P. 56................................................................................. 8

**<u>Regulations</u>**

12 N.Y.C.R.R. § 442.2 ...................................................................................................... 17

## INTRODUCTION

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, and Allstate Property and Casualty Insurance Company ("Plaintiffs" or "Allstate"), and their counsel, Stern & Montana, LLP ("Stern & Montana") and Cadwalader, Wickersham, & Taft, LLP ("Cadwalader") respectfully submit this memorandum of law in opposition to the motion by Defendants MDAX, Inc. ("MDAX") and Uriyel Mirzakandov ("Mirzakandov") (collectively, "Defendants") for sanctions against Allstate and its counsel ("the Motion") pursuant to Fed. R. Civ. P. 11 ("the Rule" or "Rule 11"). Plaintiffs respectfully submit Defendants' Motion is legally and factually baseless, and this Court should deny the Motion in its entirety and award Plaintiffs their reasonable expenses, including attorney's fees, incurred in opposing the Motion, pursuant to Fed. R. Civ. P. 11(c)(2).

## PRELIMINARY STATEMENT

Defendants' Motion is the latest in a series of baseless, vexatious filings, grounded in revenge and retaliation rather than fact and law.  Indeed, the Motion to set forth even the most basic elements required for Rule 11 relief. In particular, after Defendants filed patently frivolous Counterclaims in this matter, Plaintiffs sought permission to file a Motion to Dismiss the Counterclaims, which this Court granted, as well as expressed their intention to seek Rule 11 sanctions against Defendants for filing the frivolous pleadings.[1] In a sheer act of retribution, without proper foundation and in complete disregard for the well-settled law regarding Rule 11 Motions, Defendants responded by filing the instant Motion. As explained below, Defendants' Motion is legally and factually baseless and must be denied in its entirety. Moreover, because the

---

[1] *See* ECF Nos. 185 (Defendants' Answer and Counterclaims), 217 (Allstate Request for Pre-Motion Conference); 220 (Defendants' Response to Request for Pre-Motion Conference), Order Dated 10/14/2016 (Granting Pre-Motion Conference); Minute Entry 11/7/2016 (Granting Leave to File Motion to Dismiss).

Motion is plainly contradicted by facts and evidence which are in Defendants' possession—and of which Defendants were explicitly made aware prior to filing of the Motion—it is, in fact, so egregiously baseless that it constitutes a Rule 11 violation itself, warranting the imposition of sanctions upon Defendants and their counsel.

As an initial matter, it is well-settled that Rule 11 is not to be used as an end-run to disposition on the merits; nor is it a shortcut to obtain discovery early. In this respect, Defendants' Motion is a patently improper attempt to extort early discovery and test the merits of the case. Furthermore, Defendants have entirely failed to meet their burden of proving any Rule 11 violation, which requires showing: (1) the challenged allegations are false; (2) the allegations were utterly lacking in support at the time they were made; and (3) counsel failed to conduct a reasonable pre-filing inquiry under the circumstances.

First, in purported support of the Motion, Defendants submit little more than the self-serving Declaration of Defendant Uriyel Mirzakandov (the "Mirzakandov Declaration") which simply denies the allegations in the First Amended Complaint (hereinafter "Amended Complaint"), and is *per se* insufficient as a matter of law to demonstrate a Rule 11 violation. In addition, the Mirzakandov Declaration contains misstatements which are easily disproved by documentary evidence which is submitted herewith.  Second, the Mirzakandov Declaration fails to address, let alone disprove, many of the allegations that Defendants challenge by way of the Motion. Third, Defendants fail to prove that Plaintiffs did not conduct a reasonable inquiry under the circumstances; to the contrary, Defendants were well aware of such inquiry by virtue of correspondence from counsel for Allstate preceding the filing of the Motion.  In that regard and as set forth herein, Plaintiffs conducted a manifestly reasonable inquiry prior to filing the Complaint, including but not limited to, review of the claim documentation submitted by

Defendants to Plaintiffs, review of Examination Under Oath ("EUO") testimony of claimants to whom MDAX purportedly supplied durable medical equipment ("DME"), and analysis of similar fraudulent schemes by other DME wholesalers and retailers with whom Defendants were affiliated and/or by whom Defendants were previously employed.  All of the foregoing provided ample support for the challenged allegations and/or provided a reasonable basis for the allegations.  What is more, Defendants challenge only eight (8) allegations in a complaint that has over three hundred (300), and the basis for each challenged allegation argued by the Defendants is simply wrong and is directly contradicted by evidence in Defendants' possession and/or knowledge.  At bottom, Defendants' Motion amounts to nothing more than denial of the eight allegations with which they disagree, something they have already done in the Answer to the Amended Complaint.

Thus, Defendants have failed to provide any basis for the imposition of any sanctions— let alone the extraordinary remedy of striking the pleadings, which the Second Circuit has repeatedly admonished is a sanction of last resort. Defendants' insistence on filing this baseless Motion despite having been provided explicit evidence of its frivolity underscores the true motive for the filing—harassment and the abuse of Rule 11 as an end-run to disposition on the merits. For all of these reasons, as explained further below, Plaintiffs respectfully submit the instant Motion must be denied and expenses awarded to Plaintiffs.

## ARGUMENT

### I.  RULE 11 STANDARDS

A party alleging violations of Rule 11(b)(3) must prove: (1) the challenged allegations are false; (2) the allegations were utterly lacking in support at the time they were made; and (3) the attorney failed to conduct a reasonable pre-filing inquiry under the circumstances. *Storey v. Cello*

*Holdings, L.L.C.*, 347 F.3d 370, 390 (2d Cir. 2003); *see also Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) ("[a] statement of fact [violates the Rule] only when the 'particular allegation is utterly lacking in support.'"(quoting *Storey*, 347 F.3d at 390)); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 412 (S.D.N.Y. 2003) ("Courts typically look for statements which rise to the level of direct falsehoods before [finding a violation].")). This is because Rule 11 expressly allows for factual allegations that "have evidentiary support, *or*, if specifically so identified,[2] will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1279 (2d Cir. 1986) ("A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed. . . "[I]t is extremely unlikely that before formal discovery any citizen would or could be in possession of such information . . . ."); *Dome Patent L.P. v. Permeable Technologies, Inc.*, 190 F.R.D. 88, 92 (W.D.N.Y. 1999) (Plaintiff's lack of certain facts relevant to the claim "is attributable to the difficulty, if not impossibility, of [Plaintiff] obtaining that information without discovery."). This is particularly applicable in fraud cases, where "many of the facts necessary to demonstrate fraud [are] located within the exclusive control of [defendant] . . . and [defendant]'s associates." *Greenberg v. Chrust*, 297 F. Supp. 2d 699 (S.D.N.Y. 2004); *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 629–30 (D.N.J. 2004) ("It is in the nature of fraud cases that the scienter element will ordinarily be difficult to establish. This does not make the pressing of the claim itself a sanctionable activity. . . .").

---

[2] In this context, "the phrase 'specifically so identified' refers to allegations 'upon information and belief.'" *United States v. Allstate Ins. Co.*, No. 12-CV-1015 (WMS) (JJM), 2014 WL 10748104, at *5 (W.D.N.Y. Oct. 16, 2014) (citing 2 James Moore et al., Moore's Federal Practice, § 8.04[4] (3d ed. 2014)), *report and recommendation adopted sub nom. United States v. Allstate Ins. Co.*, No. 12-CV-1015, 2016 WL 463732 (W.D.N.Y. Feb. 8, 2016).

The standard for attorney compliance with Rule 11 is one of objective reasonableness under the circumstances.[3]   Pursuant to Rule 11:

> By presenting to the court a pleading. . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3). Notably, Rule 11 does not "require that each attorney conduct exhaustive discovery," *Sci. Components Corp.*, No. 03-CV-1851 (NGG), 2007 WL 1026411 at *5, (E.D.N.Y. Mar. 30, 2007), nor "drive down every avenue of inquiry. Inquiry into the facts of a case need only be reasonable under the circumstances." *Hochberg v. Howlett*, No. 92-CIV-1822 (RPP), 1993 WL 33367, at *2 (S.D.N.Y. Feb. 4, 1993) (quotations omitted). The question is simply "whether a reasonable inquiry would have led an objective attorney to conclude that [the challenged claims] clearly lacked evidentiary support." *Sci. Components Corp.*, 2007 WL 1026411, at *3 (quotations omitted); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002). Thus, "[c]ourts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Eastway Const. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985); *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007). Where there is a modicum of plausible evidence to support a reasonable belief that an allegation is true, there is no Rule violation. *See Storey*, 347 F.3d at 390 (reversing district court's imposition of Rule 11 sanctions,

---

[3] Although Defendants' Motion requests sanctions against both Allstate and its counsel, this brief only addresses the standards applicable to attorneys under Rule 11, because liability of a non-signatory represented party requires a higher showing than that for attorneys.  Therefore, as Defendants' Motion does not meet the attorney liability threshold, it follows that the Motion similarly fails with respect to Allstate. *See Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1474 (2d Cir. 1988), *rev'd in part on other grounds sub nom. Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989) ("a party represented by an attorney should not be sanctioned for papers signed by the attorney unless the party had *actual knowledge* that filing the paper constituted wrongful conduct, *e.g.*, the paper made false statements or was filed for an improper purpose.")*Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139, 143 n.4 (E.D.N.Y. 2002).

where the challenged statement, "as tenuous as it [was], [was] not utterly lacking in support." (quotations omitted)); *Rodick v. City of Schenectady*, 1 F.3d 1341, 1343 (2d Cir. 1993) (reversing district court's imposition of Rule 11 sanctions, where "[a]lthough the[] contentions did not pan out, they were not so quixotic as to warrant sanctions."); *In re Air Disaster at Lockerbie, Scotland, On Dec. 21, 1988*, 144 F.R.D. 613, 617 (E.D.N.Y. 1992) ("Parties and their attorneys . . . are entitled to base their complaints . . . on statements of witnesses, reports of their investigators and hearsay reports and statements of others until such time, if ever, as they are satisfied that [such evidence is] not competent or [is] otherwise untrustworthy.").

Crucially, a Rule 11 analysis "does not judge the merits of an action. Rather[,] . . . the court determines a collateral issue: whether the attorney has abused the judicial process." *Rates Tech. Inc. v. Mediatrix Telecom, Inc.*, No. 05- CV-2755 (JS) (AKT), 2007 WL 2021905, at *3 (E.D.N.Y. Mar. 16, 2007) (citations and quotations omitted), *report and recommendation adopted*, No. CV-05-2755 (JS) (AKT), 2007 WL 1987787 (E.D.N.Y. June 29, 2007). For this reason, "[t]he Second Circuit has repeatedly held [that] a Rule 11 dismissal is drastic—the harshest sanction and penalty available to the district court—and should be imposed 'only in extreme circumstances.'" *Id.* at *4. Indeed, "a Rule 11 motion is not a proper substitute for a motion to dismiss or a summary judgment motion." *Id.* at *6. Based on the foregoing precepts of law, it is respectfully submitted that the Motion is patently improper, deficient, and should be denied in its entirety and reasonable attorneys' fees and expenses be awarded to Plaintiffs.

## II. DEFENDANTS FILED THE MOTION FOR IMPROPER PURPOSES IN VIOLATION OF RULE 11

Defendants' Motion is an absolute abuse of Rule 11 because: (1) it serves as a substitute for a motion to dismiss by asking the Court to strike allegations that Defendants deny, and contending that the Amended Complaint falls apart upon such striking; and (2) it serves as a

6

discovery device by challenging the veracity of eight (8) cherry-picked statements ("the challenged allegations") out of over 300 paragraphs in an extensively detailed and factually specific Amended Complaint, and tacitly demanding that Plaintiffs lay bare their evidence for these claims pre-discovery.  Time and again, courts have rejected parties' attempts to use the court's Rule 11 sanction power for such improper purposes. The result here should be no different. Fed. R. Civ. P. 11(b)(1) (motion must "not be[] presented for any improper purpose").

It is axiomatic that "a Rule 11 motion is not a proper substitute for a motion to dismiss or a summary judgment motion." *Rates Tech. Inc.*, 2007 WL 2021905, at *6; *see also Safe-Strap Co.*, 270 F. Supp. 2d at 416 ("a party cannot invoke Rule 11 to secure that . . . category of relief on the merits."); *Wartsila NSD N. Am., Inc.*, 315 F. Supp. 2d at 629–30 ("[T]he Court is extremely reluctant to review the legal sufficiency of [the] complaint on a Rule 11 motion. Such analysis is properly reserved for a motion on the merits."). Nor is Rule 11 an avenue for forcing disclosure of the opposing party's evidence in advance of the prescribed discovery process:

> The rule is not a discovery device. It is not to be used to require plaintiff to offer proof of his case through supplemented Rule 11 certificates before discovery. . . . Requiring supplementary certificates under Rule 11 improperly exposes plaintiff to the risk of adverse judgment without the safeguards of Rule 56.

*Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 831 (9th Cir. 1983) (citations omitted); *see also* Fed. R. Civ. P. (11)(b) advisory committee's note to 1993 amendment ("Rule 11 motions should not be made or threatened for minor, inconsequential violations . . . . They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings . . . Nor should Rule 11 motions be prepared to . . . intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise

protected by the attorney-client privilege or the work-product doctrine."); *U.S. v. Price*, 577 F. Supp. 1103, 1108 (D.N.J. 1983) ("Rule 11 . . . was not promulgated . . . as a means of compelling lawyers to compile all of their evidence prior to signing and filing a complaint."). "Rule 11 addresses what a party . . . knows at the time of filing, not what it chooses to include in those filings . . . Rule 11 does not require the plaintiff to assemble or disclose its facts in advance of the normal discovery process."

In the instant case, Defendants' Motion is a transparent attempt to obtain early discovery and/or test the sufficiency of the Amended Complaint by challenging allegations that Defendants know have factual support.[4] By moving this Court to essentially strike the Complaint, thereby forcing Plaintiffs to reveal underlying bases supporting the challenged allegations, Defendants plainly abuse the Rule 11 mechanism in lieu of following the prescribed methods for discovery and dispositive motion practice established by the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 8, 12, 26–37, 56. Defendants' Motion, offered in direct contravention to the purpose and function of Rule 11, is particularly egregious in light of Defendants' election to file an Answer, and not a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Having declined to pursue a proper dismissal on the merits, Defendants attempt to back-door such a remedy through the use of a Rule 11 motion supported by nothing more than a self-serving declaration and three exhibits which hardly relate to, let alone disprove, the challenged allegations. In accordance with well-settled case law, this Court must bar Defendants' impermissible attempt to leapfrog the entire litigation process via a bare-bones Rule 11 motion, and deny the Motion in its entirety. *See Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d at 419 (declining to dismiss Complaint on pre-discovery Rule 11 motion); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 7801

---

[4] In fact, documentary evidence for many of the challenged allegations is already in Defendants' possession, as explained further in Section IV, *infra*.

(S.D. Tex. 2010)(declining to require Plaintiffs to disclose evidence in opposition to pre-discovery Rule 11 motion).

### III. DEFENDANTS FAIL TO MEET THE BASIC REQUIREMENTS FOR PROVING A RULE 11 VIOLATION OR FOR IMPOSING SANCTIONS

Defendants' Motion, supported by a mere three-page, self-vindicating declaration from Defendant Mirzakandov which is deficient on its face, does nothing more than deny eight allegations in the Amended Complaint with which Defendants obviously disagree, falling woefully short of Defendants' high burden of proof on the motion. Defendants do not raise any evidence showing the allegations are false or that Plaintiffs failed to conduct a reasonable inquiry into the allegations. In short, the motion fails to prove that any violation of Rule 11 has occurred, necessarily precluding the imposition of any sanctions upon Plaintiffs.

#### A. Defendants Have Not and Cannot Meet Their Burden of Proving that the Challenged Allegations Are False and Utterly Lacking in Support

Defendants' Motion completely fails to show that any of the challenged allegations are false or lack support.  It is supported only by Defendant Mirzakandov's own, self-serving denials of wrongdoing that are patently insufficient to prove a violation, let alone justify any sanctions. Defendants' position is essentially that a simple denial of a miniscule portion of a complaint's allegations should warrant a Rule 11 dismissal; this is a blatantly absurd argument that no court has countenanced.

In moving for sanctions for a purported violation of Rule 11(b)(3), the burden is on the moving party to not only "establish that a statement was false[,]" but also that it was utterly without support at the time the pleading was filed. *Brown v. Artus*, 647 F. Supp. 2d 190, 206 (N.D.N.Y. 2009); *see also, In re Air Disaster at Lockerbie,* 144 F.R.D. at 617 (denying sanctions where movant failed to definitively establish falsehood). In fact, "even if [a] statement was

literally false," as long it was reasonably grounded, the Rule has not been violated. [5] *Kiobel*, 592 F.3d at 82–83 ("Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." (quoting *Navarro–Ayala v. Hernandez–Colon*, 3 F.3d 464, 467 (1st Cir. 1993))). In that regard, "self-vindicating and essentially unsupported assertions of [party] affidavits" are *per se* deficient for proving a violation. *Harter v. Iowa Grain Co.*, 202 F.3d 273(Table), 1999 WL 754333 at *5 (7th Cir. 1998) (Defendant's affidavit disclaiming agency relationship was insufficient to prove complete absence of factual basis for agency claim, because "partisan affidavits are hardly conclusive."). Indeed, where a defendant seeking sanctions for purportedly false pleadings "relies upon . . . [it]s own version of various matters, much of which is in denial of the Plaintiff's charges and is of an argumentative, rather than a factual, nature," that defendant fails to meet the high burden required for establishing a Rule violation. *Murchison v. Kirby*, 27 F.R.D. 14 (S.D.N.Y. 1961).

Here, Defendants single out as the basis for their sanctions motion eight factual allegations out of a Complaint over 300 paragraphs long, which gives extensive detail about the nature, operation, and mechanics of the scheme to defraud alleged therein, as well as numerous exhibits and predicate act tables in support of the claims. Defendants offer absolutely nothing in the way of concrete, evidentiary support conclusively establishing the falsity of the challenged statements, as they must under the case law, let alone that such statements were utterly lacking in support. Instead, the entire basis for Defendants' motion is a self-serving declaration simply refuting the challenged allegations and appending unrelated and irrelevant paperwork in purported support of Defendants' claims. In fact, as discussed below in Point IV, to the extent Defendants' exhibits do relate to the challenged allegations, they actually support them.

---

[5] For this reason, the party opposing Rule 11 sanctions "need not prove the truth of [the] accusation, only that it was not utterly lacking in support." *Kiobel*, 592 F.3d at 82.

Defendants' Motion is thus deficient on its face under the case law.[6] *See, e.g., Murchison v. Kirby*, 27 F.R.D. 14 (S.D.N.Y. 1961).

If this Court were to accept Defendants' argument that a simple declaration disputing the allegations of the Complaint were sufficient to prove a violation of Rule 11(b)(3), and warrant the ultimate sanction of striking the pleadings, then no litigation would ever proceed to discovery. Fortunately, the Federal Rules of Civil Procedure and the extensive, controlling case-law in this Circuit militate against such an illogical result. Under the stringent standards established by well-settled case law for the imposition of Rule 11 sanctions, Defendants have failed to meet their burden of proving a Rule 11 violation, and the Motion must be denied.

### B.  Rule 11 Merely Requires Reasonable Inquiry Under the Circumstances

It is incontrovertible that Plaintiffs conducted a reasonable inquiry into the challenged allegations. As the Second Circuit has stated time and again, "[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri*, 803 F.2d at 1275. Indeed, as long as "the available circumstantial evidence could plausibly support the inference that" the allegations are true, reasonable inquiry is satisfied, and sanctions are inappropriate. *Rounseville v. Zahl*, 13 F.3d 625, 633 (2d Cir. 1994) (affirming trial court's denial of sanctions).

---

[6] In addition to failing to prove a violation of the Rule, Defendants' manifestly fail to show entitlement to the ultimate sanction of striking the pleadings. The imposition of sanctions pursuant to Rule 11(c)(1) is discretionary, not mandatory, and "must be limited to what suffices to deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4); *see also Perez v. Posse Comitatus*, 373 F.3d 321, 323–25 (2d Cir. 2004). To that end, "the Second Circuit has urged District Courts to limit imposition of sanctions to cases in which the pleading party 'manipulate[s] the federal court system for ends inimicable [sic] to those for which it was created.'" *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-CV-1851 (NGG), 2007 WL 1026411, at *3 (E.D.N.Y. Mar. 30, 2007) (quoting *Eastway Const. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)). Further, "[t]he Second Circuit has repeatedly held [that] a Rule 11 dismissal is drastic—the harshest sanction and penalty available to the district court—and should be imposed 'only in extreme circumstances.'" *Rates Tech. Inc.*, 2007 WL 2021905, at *4; *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d at 419 ("[D]ismissal is rarely an appropriate sanction under Rule 11. . . . [Dismissal] via Rule 11 would . . . allow [Defendant] to receive all the benefits of a summary judgment despite the fact that [Defendant] chose to bypass the strictures associated with the summary judgment procedure.").

In the instant case, Defendants fail to even allege, let alone prove, that Plaintiffs failed to conduct a reasonable inquiry under the circumstances. To the contrary, as Defendants are well aware, Plaintiffs conducted a reasonable inquiry prior to filing the Complaint, which included, but was not limited to: review of claim documentation submitted by Defendants to Plaintiffs, review of EUO testimony of claimants to whom MDAX purportedly supplied DME, and analysis of fraudulent schemes perpetrated by other DME wholesalers and retailers with whom Defendants were affiliated and/or by whom Defendants were previously employed. Rule 11 requires no more. Defendants' Motion, constituting little more than a denial of the allegations, falls woefully short of showing any failure to reasonably inquire, and must be denied.

## IV. PLAINTIFFS CONDUCTED A THOROUGH PRE-FILING INQUIRY INTO THE ALLEGATIONS, AND ALL ALLEGATIONS ARE SUPPORTED OR WILL BE SUPPORTED UPON THE OPPORTUNITY FOR DISCOVERY[7]

In the instant case, each of the challenged allegations were the product of reasonable inquiry by Plaintiffs, and are supported by evidence already in Plaintiffs' possession, or will likely have evidentiary support after an opportunity for further investigation or discovery. Defendants' Motion, supported by little more than the self-vindicating affidavit of Defendant Mirzakandov, constitutes a mere denial of the allegations and categorically fails to meet the most basic burden of showing that the allegations where false, let alone a reasonable inquiry was not conducted.  Accordingly, the Motion must be denied.

### A. Defendants Fail to Disprove the Allegations Regarding Generic Prescriptions and Delivery Receipts

Defendants challenge the following two paragraphs of the Complaint:

---

[7]   To the extent any evidence or argument submitted herein may be interpreted as relating to, containing, or constituting confidential and/or privileged information, including information protected as attorney work product or by virtue of the attorney-client privilege, Plaintiffs expressly reserve and do not waive these privileges, and any disclosure of such information is unintentional.

i.   ¶193. By submitting a generic, non-descript *prescription*, devoid of any detail, in support of their claims for reimbursement, the Retailers were provided the means through which they misrepresented the nature, quality and cost of the DME and/or orthotic devices allegedly provided.

ii.  ¶196. In every instance, in furtherance of the scheme to defraud alleged herein, the *delivery receipts* describe the DME and/or orthotic devices in the same generic, non-descript manner as the prescriptions, claim forms, and wholesale invoices submitted by the Retailers in support of their claims for reimbursement.

Amended Compl., ECF No. 5 ¶¶ 193, 196 (emphasis added). In response to paragraph 193, MDAX's owner and president, Uriyel Mirzakandov, claims in his Declaration that all of the prescriptions received by MDAX contain "detailed and specific . . . information," including "the date of accident, diagnosis and current condition(s) of patient, specific treatment(s) needed (with medical codes and specific dates of treatment)." Mirzakandov Dec. ¶¶ 3–5. In purported support of this claim, MDAX submits Exhibit "A" to the Mirzakandov Declaration: a *single* sample NF-3 No-fault claim form, dated September 2015, apparently submitted by MDAX to Plaintiffs. Mirzakandov, despite years of experience in the DME business and billing No-fault insurers for reimbursement, incomprehensibly claims that all prescriptions provided to MDAX were filled out "using the same standard form" as the NF-3 in Exhibit "A." This statement is categorically false and impossible on its face. The NF-3 Form, also titled, "Verification of Treatment by Attending Physician or Other Provider of Health Insurance," *is not a prescription form written by a treating physician for a patient*, which is what paragraph 193 addresses. Rather, it is a form generated by MDAX itself, in order to get reimbursement from Plaintiffs for DME purportedly supplied to a claimant. The NF-3 form is entirely separate and unrelated *to prescriptions* written by treating physicians and presented *to* the defendant Retailers, as described in paragraph 193 of the Complaint. Moreover, even the NF-3 form in Defendants' Exhibit "A" uses precisely the generic DME terms referred to in the Complaint, to wit, "Bed Board," "LSO-Lumbar Support,"

13

etc., that is mirrored in the generic descriptions of the DME in the prescriptions that MDAX submits to Plaintiffs as part of its "proof of claim." Thus, this "evidence" (1) does not even properly address the challenged allegation, which is specifically about the generic terms used in prescription forms provided by doctors, and (2) to the indirect extent it does address the claim, it actually supports it, because the DME described in NF-3 uses the same generic and non-descript terms for the DME as the prescriptions– i.e., Bed Board," "LSO-Lumbar Support," etc., and is entirely devoid of manufacturer, make, model, or price information, making it impossible for Allstate to determine the nature and quality of the DME purportedly provided.  *See* Marvin Dec. Exhibit "D."  Therefore, Defendants fail entirely to disprove paragraph 193, falling short of their burden, and the Motion to strike this paragraph must be denied.

In response to paragraph 196, the Mirzakandov Declaration claims that all of the packing slips and invoices received by MDAX from its wholesalers contained the "specific make, model, and manufacturer of DME," (Mirzakandov Dec. ¶¶ 6–8), and submits in purported support Exhibit "B" to the Mirzakandov Declaration: four packing slips/invoices from wholesalers Comfortland Medical Inc. and Complete Medical Supplies Inc. However, the packing slips/invoices in Defense Exhibit "B" are not the *delivery receipts* that Defendants generate when delivering DME *to the claimants* and submit to Plaintiffs in support of their proof of claim, which are the subject of paragraph 196.  Simply put, the sets of documents are entirely different. Thus, by submitting irrelevant paperwork and failing to even deny the heart of the allegation, Defendants fail to address, let alone disprove paragraph 196, and the Motion to strike this paragraph must be denied.

Defendants' misdirection with regard to paragraphs 193 and 196 of the Complaint can perhaps be best explained by the fact that they are fully aware that the allegations in those

paragraphs are true. In fact, concrete documentary evidence in Defendants' own possession conclusively supports these allegations. Annexed as Exhibit "D" to the Declaration of Daniel S. Marvin in Support of Plaintiffs' Opposition ("Marvin Declaration") are prescription forms, delivery receipts, and bills submitted by MDAX to Plaintiffs, containing the precise generic DME descriptions referred to in the paragraphs 193 and 196 of the Complaint. As these are MDAX documents that MDAX generated and mailed to Plaintiffs, MDAX should know this, but inexplicably or deliberately misdescribes the documents in its declaration in support of the Motion. Further demonstrating Defendants' abuse of the Rule 11 mechanism, and the blatantly frivolous nature of this Motion, is the fact that these documents were recently and specifically provided to Defendants in Plaintiffs' Letter Response to Defendants' Notice of Rule 11 Motion, annexed to the Marvin Declaration as Exhibit "C." That Defendants were provided with documentary proof of these allegations nearly a week before this Motion was filed, which was in their own possession in the first place, and yet, insisted on filing the instant motion, proves without a doubt that the Motion is not only deficient, but was filed for improper purpose, without factual foundation and with Defendants' actual knowledge of the falsity of their allegations.

**B. Defendants Fail to Disprove the Allegation Regarding MDAX's Purpose**

Defendants challenge the following paragraph of the Complaint:

   i.   ¶40. On information and belief, the Retailers and Wholesalers alike were created for the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

Amended Compl., ECF No. 5 ¶ 40. The entirety of MDAX's support for its challenge to paragraph 40 is a self-serving denial of the allegation. Mirzakandov Dec. ¶15 ("Mdax is a legitimate DME supply business formed for the sole purpose of providing retail sales of DME."). This is *per se* insufficient, and the Court may deny the Motion on that basis alone. Furthermore,

15

Defendants disregard that the allegation in paragraph 40 is made "on information and belief", which expressly provides that it "will likely have evidentiary support *after* a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added); *see also United States v. Allstate Ins. Co.*, No. 12-CV-1015 (WMS) (JJM), 2014 WL 10748104, at *5 (W.D.N.Y. Oct. 16, 2014) (citing 2 JAMES  MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 8.04[4] (3d ed. 2014)), *report and recommendation adopted sub nom. United States Hayes v. Allstate Ins. Co.*, No. 12-CV-1015, 2016 WL 463732 (W.D.N.Y. Feb. 8, 2016). On this basis, Defendants' motion to strike this paragraph pre-discovery is also patently improper.

Moreover, "[i]t is in the nature of fraud cases that the scienter element will ordinarily be difficult to establish. This does not make the pressing of the claim itself a sanctionable activity. . . ." *Wartsila NSD N. Am., Inc.*, 315 F. Supp. 2d at 629–30.  Again, Defendants fail in any way to disprove the truth of the allegation, let alone to negate any reasonable basis for asserting it, which is all that Rule 11 requires of the filing party. To the contrary, the timeline of fraudulent billing conducted by MDAX (and described in the Amended Complaint as a whole), which dates to its very inception, provides a strong inference that MDAX was created for the express purpose of defrauding insurance companies, in general, and Plaintiffs, in particular.  In that regard, MDAX was incorporated on or about March 4, 2015, and began submitting fraudulent claims for DME to Plaintiffs as early as April 7, 2015.  By way of example and not limitation, MDAX purchased Comfortmax Cervical Hometrac brand cervical traction units, model number CV-100, from wholesaler Comfortland Medical. *See* Defendants' Exhibit "B," a packing slip from Comfortland Medical to MDAX indicating the purchase of 150 CV-100s.  In 2013, Noridian Healthcare Solutions, LLC ("Noridian"), a government contractor authorized to provide pricing, data and coding analysis for DME distributed by Retailers, designated E1399 as

16

the proper CPT billing code for the CV-100, removing billing code E0855 as an acceptable billing code for the CV-100. *See* Noridian Code Determination & Effective Date, annexed to the Marvin Declaration as Exhibit "E." For billing under the Fee Schedule, E1399 is the code given for miscellaneous items that are, in relevant part, limited to reimbursement of the DME Retailers' acquisition cost plus 50%. *See* 12 N.Y.C.R.R. § 442.2. On information and belief, the CV-100s have a wholesale price that is a mere fraction of the price billed by MDAX and has a permissible reimbursement amount of hundreds of dollars below amount MDAX charges. Despite the foregoing, MDAX, since its inception in 2015, two years after the code change, has at all times fraudulently billed for such units under CPT code E0855, charging an amount of $502.63 per unit. Therefore, MDAX has consistently fraudulently billed Plaintiffs for cervical traction units provided to claimants in the amount of $502.63 per unit using the incorrect billing code. Significantly, as with the previously addressed allegations, the evidence in support of Complaint paragraph 40 was provided to Defendants in Plaintiffs' Letter Response to Defendants' Notice of Rule 11 Motion, providing further evidence that Defendants were fully aware of the baselessness of the Motion, and filed it anyway in clear violation of the Rule. [8]

### C. Defendants Fail to Disprove the Allegation Regarding a Fraudulent Protocol of Prescribing a Standard Battery of DME Regardless of Patient Need

Defendants challenge the following paragraph of the Complaint:

i.   ¶188. Regardless of whether a No-fault Claimant was seen by a doctor on the date of the initial office visit at any of the unnamed No-fault Clinics operating in the New York metropolitan area, a No-fault Claimant's initial office consultation would automatically trigger a series of internal practices and procedures in which the No-fault Clinics, in exchange for kickbacks and/or other financial

---

[8]  While the example cited above supplies more than enough support for a reasonable basis for the allegation, numerous other examples of fraudulent billing exist and helped form the basis. Without laying bare every shred of evidence of fraudulent billing, Defendants were also provided with samples of claimant EUO testimony where the claimants, among other things, denied receiving billed for DME, or received the DME in a paper shopping bag, or were not told how to use the DME. *See* Marvin Decl. at Exhibit "C." Clearly, given the foregoing, a sufficient basis for the allegation exists and/or Plaintiffs had a basis to believe that evidentiary support would exist after a reasonable opportunity for further investigation or discovery.

compensation agreements with the Retailers and through their medical doctors and/or chiropractors, would issue a prescription for a standard battery of DME and/or orthotic devices, pursuant to a standard protocol or predetermined course of treatment and regardless of whether such items were medically necessary.

Amended Compl., ECF No. 5 ¶ 188. Once again, the entirety of Defendants' challenge to paragraph 188 is a self-serving denial of one small element of the allegation, while failing to address the true meaning of the allegation. Mirzakandov Dec. ¶14 ("Neither I, nor Mdax, has ever made a kickback payment to a medical provider or a wholesaler). First, as discussed above, Mirzakandov's bare-bones denial is *per se* insufficient to prove the falsity of the challenged allegation, and the Motion may be denied on that basis alone. Second, even if the Mirzakandov Declaration were persuasive—which it categorically is not—Mirzakandov's simple denial of ever having paid a kickback still fails entirely to address, let alone disprove, the heart of the allegation—to wit, the fraudulent protocol approach to patient treatment with respect to doctors prescribing the same or substantially similar battery of DME regardless of patient need. Moreover, the allegation itself specifically notes the fraudulent protocol was implemented "in exchange for kickbacks *and/or* other financial compensation agreements," meaning that an absence of kickbacks does not even disprove the small portion of the allegation Defendants do address. Amended Compl., ECF No. 5 ¶40 (emphasis added). Yet again, Defendants attempt to obfuscate the issue by focusing on one portion of the allegation and intentionally dodging the overall gravamen of the statement. These transparent tactics must be taken for what they are: a bad-faith attempt to harass Plaintiffs by way of improper use of the Rule 11 mechanism without so much as a colorable basis for Defendants' arguments.

In that regard, Plaintiffs, in forming a reasonable basis for alleging the existence of a protocol approach to DME prescription, reasonably relied on claim documentation provided to Plaintiffs by Defendants themselves. By way of example, and not limitation, annexed to the

18

Marvin Declaration as Exhibit "F" is a representative sample of bills submitted by MDAX to Plaintiffs for three separate claimants, two of whom were treated on the same day, receiving the identical battery of no less than five DME.  This provision of identical combinations of large numbers of DME to unrelated patients in a short time period is ample evidence to reasonably infer the existence of a fraudulent protocol. Moreover, Defendants were provided with this evidence in Plaintiffs' Letter Response to Defendants' Notice of Rule 11 Motion, proving further that this Motion was patently baseless when filed. Additionally, as noted in Section IV.D below, there was ample support for a reasonable belief that MDAX was paying kickbacks in accordance with the scheme to defraud as alleged in the Amended Complaint.

### D. Defendants Fail to Disprove the Scheme to Defraud Allegations with Respect to Wholesaler Invoices and Kickbacks

Defendants challenge the following paragraphs of the Complaint:

i.   ¶201. The wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices when they were actually provided.

ii.  ¶202. In furtherance of the scheme to defraud alleged herein, each of the wholesale invoices provided by the Wholesale Defendants to the Retailers intentionally omitted the make, model, or manufacturer of the DME and/or orthotic devices reflected in the invoice, thereby ensuring that the nature and quality of the item that was supposedly provided could not be verified based on the wholesale invoice alone.

iii. ¶204: On information and belief, the wholesale invoices were provided to the Retailers to camouflage the conversion of the Retailers' checks payable to the Wholesale Defendants to cash at check cashing establishments.

iv.  ¶205: On information and belief, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice. The Wholesale Defendants would then convert the checks to cash through check cashing establishments, or by other means, and would return a substantial portion of the money to the Retailers, keeping a portion of the profits of the scheme for themselves.

19

As an initial matter, Defendants attempt to further deceive this Court by selecting isolated portions of the overall allegations, taken deliberately out of context to create a false narrative. For example, although Defendants cherry-picked these allegations regarding inflated wholesaler invoices as unfounded, they failed to address paragraph 303 of the Complaint, which states:

> The Retail Owners, through their respective Retailers, routinely and deliberately (1) failed to submit wholesale invoices with their initial bill submissions, thereby concealing the amounts that the Retailers actually paid for any DME and/or orthotic devices, the manufacturer, make, model, size and quality of the goods, and the actual value of the goods in a legitimate marketplace; *or* (2) submitted fraudulent wholesale invoices from one or more of the Wholesale Defendants, reflecting prices far in excess of those actually paid by the Retailers to the extent necessary to support the fraudulent charges; . . . .

Amended Compl., ECF No. 5 ¶ 303 (emphasis added). In that regard, it is indisputable that Defendants refused to submit wholesale invoices with their initial bill submissions, and continued to refuse upon further requests by Plaintiffs for verification. A representative sample of correspondence between MDAX and Plaintiffs, wherein MDAX refused to provide wholesaler invoices requested by Plaintiffs in order to verify claims, is annexed to the Marvin Declaration as Exhibit "G."  Moreover, to the extent any invoices were provided, by Defendants' own admission, the price information was withheld. *See* Defs.' Br. 4 ("There is no basis to allege this against the Mdax Defendants as the Mdax Defendants have not provided Plaintiffs with any price information for fee-scheduled DME."). Furthermore, one of the challenged paragraphs plainly states that the checks were converted by check-cashing "or other means," which implicitly includes conversion by depositing checks into bank accounts. Amended Compl., ECF No. 5 ¶ 205. Thus, Defendants' argument that they only wrote checks directly to the wholesalers instead of to "cash," and that the wholesaler checks were deposited into wholesaler bank accounts, even if true (which is not remotely established by simply attaching copies of two checks, per Defendants' Exhibit "C"), does nothing to disprove Defendants' involvement in a

20

kickback scheme where the Complaint clearly alleges the kickback scheme involved the conversion of checks issued to the Wholesale Defendants by other means and not just conversion at check-cashing facilities.

Furthermore, there is also sufficient evidence upon which Plaintiffs relied in forming a reasonable belief that the allegations in paragraphs 201–205 of the Complaint are true with respect to Defendants. This evidence is twofold: first, the scheme to defraud alleged against MDAX is consistent with, and substantially similar to, schemes to defraud conducted by other DME retailers who have been specifically identified in prior litigations, several of whom are connected to MDAX via common wholesalers and parallel patterns of DME distribution and billing.  In that regard, as outlined in great detail in the sworn affidavit of Semion Grafman in the matter of *State Farm Mutual Automobile Insurance Company v. Grafman et al.*, No.1:04-CV-02609 (NG) (SMG) (E.D.N.Y.), ECF No. 365-2, annexed to the Marvin Declaration as Exhibit "H," the manner in which kickbacks between DME Retailers and Wholesalers are paid includes the manner in which Plaintiffs have alleged the scheme against MDAX.  As set forth in the affidavit, Semion Grafman was the owner of a DME wholesaler that paid kickbacks to fraudulent DME retailers and identified his numerous customers, including YAM Medical Supply, Inc., who is a defendant in this action.   Consistent with the allegations in this action, the Grafman Affidavit details the mechanics of the scheme to defraud with respect to DME wholesaler invoices and the kickback scheme, including the wholesalers' use of invoices reflecting inflated prices of 10-20 times the true cost of the DME. Exh. "H", Grafman Aff. ¶ 3.  It also specifically notes that (1) the fraudulent wholesalers would sometimes deliberately create invoices reflecting certain brands or types of DME, which were not the same as the DME supplied to retailers, if any were supplied at all; and (2) one of the ways in which wholesalers converted retailers'

checks to cash was to deposit the check with one of the fraudulent wholesalers' shell company bank accounts, specifically so that the retailer could claim to have made a legitimate payment if challenged by an insurer. Exh. "H", Grafman Aff. ¶¶ 4,7. The affidavit also makes clear that numerous other wholesalers engaged in the same or similar scheme. Exh. "H", Grafman Aff. ¶ 9.

Indeed, one of the retailers named in the Grafman Affidavit as participating in the scheme to defraud described therein is YAM Medical Supply. Exh. "H", Grafman Aff. Exh. "B." As alleged in the Complaint, YAM Medical Supply, MDAX, and other Retailers fraudulently bill for many of the same items, and bill for them in the same manner. On information and belief, YAM Medical Supply and MDAX also purchase the same DME from the same wholesalers.  In that regard, it is manifestly reasonable, particularly in cases of fraud where the scope of the fraud and kickback scheme would be peculiarly within MDAX's knowledge, to believe that MDAX is engaged in the same scheme to defraud as specifically described with respect to a retailer with whom MDAX shares a parallel pattern of prescriptions, delivery, acquisition and billing of DME.

The scheme to defraud alleged in the Complaint is common and typical of those executed by other DME providers. In the past six years, Allstate has filed at least four DME lawsuits in this Court against hundreds of DME retailers,[9] wholesalers and their respective owners in which the mechanics of the scheme included the same components alleged here. Moreover, in recent years, the United States Attorney's Office for the Southern District of New York has prosecuted and convicted scores of the same or similar DME providers involved in money laundering.[10] Plaintiffs have ample reason to believe that Defendants, whose own alleged scheme to defraud

---

[9]  *See Allstate Ins. Co. v. Abutova*, No. 13-CV-03494 (ARR) (LB) (E.D.N.Y. 2013); *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423 (JBW) (CLP) (E.D.N.Y. 2012); *Allstate Ins. Co. v. Khaimov*, No. 11-CV-2391 (JG)(JMA)(E.D.N.Y. 2011); *Yadgarov*, No. 11-CV-6187 (MKB) (RLM) (E.D.N.Y. 2011).

[10]  *See United States of America v. Aleksandr Afanasyev, et al.*, 10-CR-459(SJ); *United States of America v. Igor Ladanov, et al.*, 10-CR-472(SJ); *United States of America v. Igor Vetukh, et al.*, 10-CR-458(RRM); and *United States of America v. Igor Shturman, et al.*, 10-CR-460(SJ).

bears all of the hallmarks of similarly prosecuted schemes, facilitated the fraud through money laundering. The fact that Defendants refused to produce such documents in response to requests for additional verification to demonstrate otherwise suggests an effort to conceal information relative to the alleged money laundering. Defendants should not be permitted to, on the hand, use as a sword the filing of a sanctions motion, supported by naked, self-serving denials and, on the other, as a shield to prevent Plaintiffs from obtaining discovery relative to the very facts that Defendants deliberately withheld at the claims verification stage and is now seeking to avoid in litigation through its groundless Motion.

Second, Defendant Uriyel Mirzakandov is a former employee, and likely the undisclosed true owner of another DME retailer, Quest Supply, Inc. ("Quest"), which has been sued by multiple insurers[11] for engaging in the same or substantially the same scheme to defraud as alleged in the instant case, and has made purchases from fraudulent DME wholesalers that operate in the same or substantially the same method as described in the Complaint. Although the corporate paperwork for Quest lists Michail Rubinov as the owner, and Defendant Mirzakandov has claimed to be a mere orthotic fitter employed by Quest, bank records and other documents indicate that Defendant Mirzakhandov may have been the undisclosed true owner of Quest, as he signed the checks written on behalf of Quest to fraudulent wholesalers for the alleged purchase of DME, as well as Quest's W-9 forms. As alleged in the *Yadgarov* Complaint, No. 1:11-CV-06187 (PKC) (VMS), <u>ECF</u> No. 1, one of the fraudulent wholesalers used by Quest, which provided inflated invoices pursuant to the scheme to defraud as alleged in the Complaint and as described in the Grafman Affidavit, was VZ Group.  VZ Group has supplied DME to some of the

---

[11] *See, e.g., Yadgarov, et al.*, No. 1:11-CV-06187 (PKC) (VMS) (E.D.N.Y.); *Government Employees Ins. Co , et al v. Active Care Medical Supply Corp., et al.* No. 1:12-CV-05632 (SLT) (JO) (E.D.N.Y.).

same retailers identified in the Grafman Affidavit, including Wiolla Medical Supply, Inc.,[12] as well as many other retailers who have been sued for engaging in the same or substantially similar schemes to defraud.  Annexed as Exhibit "I" to the Marvin Declaration is a representative sample of documents signed by Mirzakandov on behalf of Quest, along with an invoice from VZ Group to Quest, reflecting fraudulently inflated pricing.

As the Second Circuit has noted, "[a] plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed." *Oliveri*, 803 F.2d at 1279. Even if a plaintiff, at the time of filing, is "not in possession of facts that would support the allegations," as long as he "was not in possession of facts that would negate the claim, and he was familiar with many similar claims against the same agency, some of them successful after trial, some of them settled," then Rule 11 has been satisfied, and no sanctions should issue. *Id.* This is particularly true when "it is extremely unlikely that before formal discovery any citizen would or could be in possession of such information." *Id.* In light of all of the above, there is ample circumstantial evidence from which Plaintiffs formed a reasonable belief as to Defendants' use of fraudulent wholesaler invoices and participation in a kickback scheme, as described in the challenged portions of the Complaint.  Moreover, it is patently clear that Plaintiffs have conducted a reasonable, if not extensive, inquiry into the basis of the allegations, complying with Rule 11. Accordingly, Defendants' motion to strike paragraphs 201, 202, 204, and 205 should be denied.[13]

---

[12]  Wiolla Medical Supply, Inc. was sued for DME fraud in *Allstate Ins. Co. et al. v. Yadgarov, et al.*, 1:11-cv-06187-PKC-VMS.

[13]  While Plaintiffs urge this Court to deny Defendants' Motion as frivolous on its face—particularly in light of the extensive evidence of Defendants' abuse the Rule 11 discussed herein—Plaintiffs request, in the alternative, a deferral on the Motion until the case has been disposed, or upon a complete development of the fact record.  In that regard, while "[t]he time when sanctions are to be imposed rests in the discretion of the trial judge . . ., it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation . . . ." Fed R. Civ. P. 11 advisory committee's note to 1983 amendment. "The reason for [deferral] is plain—collateral litigation regarding sanctions distracts the court and the parties from focusing on the merits. . . ." *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, No. 00-CIV-1115 (LAK), 2000 WL 528633, at *1

## V. PLAINTIFFS ARE ENTITLED TO REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES, INCURRED IN OPPOSING THE BASELESS MOTION

"The filing of a motion for sanctions is itself subject to the requirements of the [R]ule and can lead to sanctions." Fed. R. Civ. P. advisory committee's note to 1993 amendment. Accordingly, the court hearing a Rule 11 motion "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). The party opposing the motion need not comply with the ordinary procedural requirements of the Rule. *See Safe-Strap Co.*, 270 F. Supp. 2d at 421 (S.D.N.Y. 2003). Here, Defendants' attempt to nit-pick inconsequential portions of eight allegations in an Amended Complaint over 300 paragraphs long, and to further demand the harshest sanction available—striking the pleadings— is a transparent attempt to use Rule 11 as an end-run around proper discovery and dispositive motion practice, in contravention to the repeated pronouncements of the courts of this Circuit. *Rates Tech. Inc.*, 2007 WL 2021905, at *6. Defendants' use of a self-serving declaration, offering little more than flat denials of the allegations, and in many instances failing to address the challenged allegations at all, is so patently deficient as to be offered in bad-faith. *Harter*, 1999 WL 754333 at *5; *Murchison*, 27 F.R.D. at 14. Further, Defendants' assertions in opposition to the challenged allegations are directly contradicted by documentary evidence generated by Defendants themselves, clearly indicating actual knowledge of the falsehood of their own statements, as well as an abject failure to conduct a reasonable inquiry therein. *See* Section IV, *supra*; *see also Farino v. Advest, Inc.*, 111 F.R.D. 345, 349 (E.D.N.Y. 1986). Thus, Defendants' Motion has clearly and unequivocally crossed over from "merely losing" into "losing and sanctionable." *Rodick*, 1 F.3d at 1350, and Plaintiffs respectfully request the award of reasonable expenses, including attorney's fees incurred in opposing this frivolous Motion.

(S.D.N.Y. May 2, 2000); *see also Archie Comic Publications, Inc. v. Decarlo*, No. 00 CIV. 5686 LAK, 2000 WL 1731341, at *1 (S.D.N.Y. Nov. 21, 2000).

25

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court (1) deny Defendants' Motion for Rule 11 sanctions in its entirety; (2) award Plaintiffs' reasonable costs, including attorney's fees, incurred in opposing this motion; and (3) apply the above sanctions upon Defendants individually and their counsel, for their knowing submission of patently false and baseless arguments to this Court, their failure to conduct objectively reasonable inquiry prior to the filing of the Motion, and their bad-faith attempt to use Rule 11 in contravention to its intended purpose, as a method of harassing Plaintiffs and attempting to force early disclosure and test the sufficiency of the pleadings.

Dated: New York, New York
       December 12, 2016

**STERN & MONTANA, LLP**

    /s/ James A. McKenney
Robert A. Stern, Esq. (RAS-1282)
Daniel S, Marvin, Esq. (DM-7106)
James A. McKenney, Esq. (JM-6164)
Attorneys for Plaintiffs
One World Financial Center
30th Floor
New York, NY 10281
(212) 532-8100

**CADWALADER, WICKERSHAM & TAFT LLP**

William J. Natbony, Esq. (WN-5507)
Attorneys for Plaintiffs
One World Financial Center
New York, NY 10281
(212) 504-6531

26