**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  AUG 0 1 2017  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

ALLSTATE INSURANCE CO,. *et al.*,

                        Plaintiff,

    – against –

DMITREI ABRAMOV, *et al.*,

                       Defendants.

-------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

16 Civ. 1465 (AMD) (VMS)

**ANN M. DONNELLY**, District Judge.

## INTRODUCTION

On March 25, 2016, plaintiffs, Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, and Allstate Property and Casualty Insurance Company ("Allstate"), filed the underlying complaint against several defendants, including the defendant-counterclaimant, MDax, Inc. ("MDax" or "counterclaimant"). (Compl., ECF 1; Am. Compl., ECF 5.) MDax filed this counterclaim on September 9, 2016, alleging that the plaintiffs violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by engaging in extortion and theft of trade secrets. (Counterclaim, ECF 185 at 10-11.)[1] The plaintiffs moved to dismiss the counterclaim. For the reasons that follow, that motion is granted and the counterclaim is dismissed.

---

[1] All citations to the parties' briefs and moving papers refer to the pages as they are numbered by the Electronic Case Filing ("ECF") system.

## BACKGROUND[2]

### New York's No Fault Insurance Scheme

In 1973, the New York State Legislature instituted a no-fault insurance scheme in order "to create a simple, efficient system that would provide prompt compensation to accident victims without regard to fault, and in that way reduce costs for both courts and insureds." *State Farm Mut. Auto. Ins. Co. v. Mallela,* 372 F.3d 500, 503 (2d Cir. 2004) (citing *Med. Soc'y of State v. Serio*, 100 N.Y.2d 854, 860, 800 N.E.2d 728 (2003)).  The Comprehensive Motor Vehicle Insurance Reparations Act (the "Act"), N.Y. Ins. Law §§ 5101 *et seq.*, "permits injured parties to recover benefits from insurers for 'basic economic loss'—including medical expenses—that arise out of the use or operation of a covered motor vehicle." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 281 (E.D.N.Y. 2013) (quoting N.Y. Ins. Law § 5102).

Pursuant to the Act and its implementing regulations, a claimant may assign a claim for no-fault benefits to a healthcare provider, which then seeks reimbursement from insurance companies. 11 N.Y.C.R.R. § 65–3.11. An insurance company may request "any additional verification required…to establish proof of claim" before reimbursing the healthcare provider. 11 N.Y.C.R.R. § 65–3.5(b). Once the insurer receives proof of claim, it has 30 days to pay or deny the reimbursement request. 11 N.Y.C.R.R. § 65–3.8. If the insurer denies the claim, the healthcare provider may sue the insurer for breach of contract in state court or through arbitration. N.Y. Ins. Law § 5106(b).

---

[2] For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

**The Underlying Complaint**

Allstate is an insurer that participates in New York's no-fault program.  (Am. Compl.

ECF 5 ¶ 54.) MDax is a healthcare provider that submits reimbursement requests to Allstate as

part of that program. (Counterclaim, ECF 185 ¶ 10.)  Specifically, MDax buys durable medical

equipment ("DME") from wholesalers, provides DME to individuals injured in car accidents,

and then submits reimbursement claims to Allstate. (*Id.*) Insurers reimburse DME providers

according to a prescribed fee schedule. 12 N.Y.C.R.R. § 442.2(a).

 On March 25, 2016, Allstate filed the underlying complaint alleging that several

healthcare providers, including MDax, submitted fraudulent insurance claims for DME by

"pass[ing] off cheaper, lower quality DME as more expensive, higher quality items" in order to

receive reimbursements that exceed the value of the DME. (Pl. Mot. to Dismiss Counterclaim,

ECF 267-1, at 13.) The alleged fraud operated as follows: a DME retailer entered into an

agreement with a DME wholesaler and a medical clinic; the clinic prescribed the use of DME—

regardless of medical necessity—in exchange for a kickback; the wholesaler provided the retailer

with discounted DME, or no DME at all. (Am. Compl., ECF 5 ¶¶ 3-7.) The retailers allegedly

issued checks for the inflated amounts, and submitted those checks to the plaintiff insurers as

proof of payment, while the wholesalers "secretly returned to the Retailers up to approximately

98% of the wholesale invoice amounts." (*Id.* ¶ 7.)

 The plaintiffs allege that the defendant-counterclaimant violated RICO, 18 U.S.C. §

1962(c), by submitting fraudulent claims, constituting "a continuous series of predicate acts of

mail fraud" and resulting in $17,000 in damages, (*Id.* ¶¶ 876, 880)  and engaged in common law

3

fraud and unjust enrichment, such that the plaintiffs are entitled to $18,000 in compensatory damages. (*Id.* ¶¶ 882-895.)

**The Counterclaim**

On September 9, 2016, MDax filed this counterclaim alleging that Allstate has withheld payment on several of MDax's claims for reimbursement because MDax refused to disclose information about the wholesale price of its DME. (Counterclaim, ECF 185 at 4-16.) MDax contends that Allstate has "no legal right" to review its wholesale invoices, (*Id.* ¶ 7) and that Allstate's request for this information constitutes two forms of racketeering: extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and attempting to obtain trade secrets "without authorization," in violation of 18 U.S.C. § 1832. (*Id.* ¶¶ 32-54.)

While MDax concedes that insurance companies have the right to investigate and verify reimbursement claims, it argues that Allstate is acting in bad faith and does not actually need the requested information. According to MDax, Allstate is withholding insurance payments and pursuing the underlying lawsuit to force MDax to turn over its wholesale invoices so that Allstate can maximize its own profits.  Since the reimbursement rate for DMEs is subject to a fixed fee schedule, MDax argues, the difference between the wholesale price and the fee schedule price of DMEs "merely establishes [MDax's] profit on the DME transaction, not the authenticity of the DME supplied." (*Id.* ¶ 8; *see also id.* ¶¶ 7-11.) MDax claims that Allstate wants its wholesale invoices so that it may "reduce the DME fee schedule so that all future reimbursements are at a lower/reduced rate…allowing Allstate to retain a larger share of the money it makes on New York's no-fault insurance premiums." (*Id.* ¶ 36.) MDax maintains that it "vigorously negotiate[s]" to get particular wholesale prices, and that the price information is

4

protected as trade secrets (*Id.* ¶ 44); thus, MDax claims, Allstate cannot force it to turn over the price information by threatening economic loss.

In its opposition brief, MDax also alleges that Allstate has refused to agree to keep MDax's wholesale price information confidential. (Counterclaimant Opp. Br. at 5-6; *see also* Counterclaimant's Sur-Reply, ECF 277, ex 1.) Allstate responds that the parties "have agreed, in the context of this action, to enter into a stipulation to keep certain records confidential," and that Allstate has proposed a confidentiality order to that end. (Pl. Reply, ECF 273 at 8, n. 2.) Nevertheless, MDax is concerned that Allstate will share the disputed information "as part of the no-fault claims process, outside of this litigation." (Counterclaimant Sur-Reply, ECF 277 Ex. 1, at 2.)

Based on the foregoing, MDax alleges that Allstate has engaged in a "pattern of racketeering activity," including extortion and theft of trade secrets, in violation of RICO, 18 U.S.C. § 1962(d). (Count I). In addition to a jury trial and injunctive relief, the counterclaimant seeks a declaration that Allstate owes MDax $300,000 for the unpaid insurance claims. (Count II).

Of course, a party to a lawsuit is entitled to defend itself vigorously, and to make arguments and propose legal theories even where the proof is not especially compelling. And under the liberal pleading standards set forth in Rule 8, the complaint need only include a "short and plain statement of the claim showing that pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  However, claiming that a party commits extortion and violates the RICO statute merely by filing a lawsuit –particularly when the suit has a basis in law and in fact—comes very close to

5

the frivolous and could perhaps have been denied summarily.[3] Nevertheless, giving the
defendant the benefit of every conceivable doubt, I analyze the claim as follows.

## DISCUSSION

### I.     Standard of Review

The Court evaluates a motion to dismiss a counterclaim according to the same standard as
a motion to dismiss a complaint. *Capitelli v. Riverhouse Grill, Inc.*, No. 15 Civ. 2638 (ADS)
(ARL), 2015 WL 9413102 (E.D.N.Y. Dec. 21, 2015). To survive such a motion, a complaint
must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.
v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173
L.Ed.2d 868 (2009). Courts are particularly mindful of the relevant pleading standards "in the
context of a civil RICO claim, the assertion of which often has 'an almost inevitable stigmatizing
effect on those named as defendants.'" *Curtis & Assocs., P.C. v. Law Offices of David M.
Bushman, Esq.*, 758 F. Supp. 2d 153, 166 (E.D.N.Y. 2010) (quoting *World Wrestling Entm't, Inc.
v. Jakks Pac., Inc.,* 530 F.Supp.2d 486, 495–96 (S.D.N.Y. 2007)), *aff'd sub nom. Curtis v. Law
Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011).

"Determining whether a complaint states a plausible claim for relief will ... be a context-
specific task that requires the reviewing court to draw on its judicial experience and common
sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950).

---

[3] On December 16, 2016, the Court denied the defendant's equally dubious motion for sanctions.

Nevertheless, pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

Under limited circumstances, a court may consider extraneous documents without converting a motion to dismiss into a motion for summary judgment. Permissible extraneous materials include those that are "integral to the complaint," meaning that the plaintiff relied on them when drafting the complaint. *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006). Generally, documents that fall into this category are "contract[s] or other legal document[s] containing obligations upon which the plaintiff's complaint stands or falls…" *Id.* at 157. Additionally, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (citing *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998)).

II.     The Counterclaimant Has Not Stated a Claim Regarding RICO Violations

"A plaintiff asserting RICO Enterprise violations under 18 U.S.C. § 1962(c) must allege: '(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly … participates in (6) an enterprise (7) the activities of which affect interstate commerce or foreign commerce.'" *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07 Civ. 1471 RRM/LB, 2009 WL 928718, at *3 (E.D.N.Y. Mar. 31, 2009) (quoting *W. Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir. 1990) (internal quotation marks omitted)). "The requirements for RICO … conspiracy charges under § 1962(d) are less demanding: A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense,

7

but it suffices that [she has adopted] the goal of furthering or facilitating the criminal endeavor.'"
*Id.* (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)).

The counterclaimant alleges that the plaintiffs are each "persons" who, by filing this action, have "formed a conspiracy" to engage in a pattern of racketeering activity that includes extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and theft of trade secrets, in violation of 18 U.S.C. § 1832. (Counterclaim, ECF 185 ¶¶ 55-56.) According to the counterclaimant, the plaintiffs' "agreement violates 18 U.S.C. § 1962(c)," therefore "each Allstate entity has violated 18 U.S.C. § 1962(d)." (*Id.* ¶ 57.) For the reasons discussed below, the counterclaimant has not plausibly alleged that the plaintiffs engaged in racketeering activity.

### a.   The Counterclaimant Has Not Stated a RICO Claim Based on Extortion

To allege a RICO claim based on predicate violations of the Hobbs Act, a claimant must demonstrate that the alleged extorter "(1) induced [the claimant], with [the claimant's] consent, to part with property, (2) through the wrongful use of actual or threatened force, violence or fear (including fear of economic loss), (3) in such a way as to adversely [a]ffect interstate commerce." *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992). Thus, MDax must allege that Allstate induced MDax to turn over its property with consent, through the wrongful use of actual or threatened force.

As to the second element, a RICO claimant may establish a "fear of economic loss" by showing that the claimant's noncompliance with the alleged RICO violator's demands "would result in preclusion from or diminished opportunity for some existing or potential economic

8

benefit.'" *DeFalco v. Bernas*, 244 F.3d 286, 313–14 (2d Cir. 2001); *see also United States v. Brecht*, 540 F.2d 45, 52 (2d Cir. 1976) (jury was properly charged that they could find the required element of fear in case where refusal to pay a kickback would result in the loss of a contract), *overruled on other grounds by Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). To establish "[t]he element of wrongfulness," a RICO claimant must show (1) that the alleged extorter lacks a "plausible claim of entitlement to the property demanded," (2) that the alleged extorter lacks "a good faith belief of entitlement" to the property demanded, (3) that there is no "nexus between the threat and the claim of right," or (4) that the alleged extorter has engaged in "inherently wrongful conduct." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 579 (S.D.N.Y. 2014) (citing *United States v. Jackson*, 180 F.3d 55, 70-71 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir. 1999)). Courts evaluate extortion claims under the "lenient pleading standards of Federal Rule of Civil Procedure 8(a)." *McLaughlin*, 962 F.2d at 194.

MDax argues that Allstate engaged in attempted extortion by refusing to pay the disputed insurance claims and filing the underlying lawsuit, thereby causing MDax to fear that it would suffer economic loss if it did not turn over the requested documents. Allstate responds that it is entitled to the wholesale pricing information that MDax refuses to disclose. I find that MDax has not stated any facts to support its allegation that Allstate engaged in any "wrongful" conduct that would constitute extortion under the Hobbs Act.

As the plaintiffs observe, New York State Insurance Law and its implementing regulations allow insurers to request "any additional verification required…to establish proof of claim" before reimbursing a healthcare provider, such as MDax. 11 N.Y.C.R.R. § 65–3.5(b). "[A] claim for extortion does not lie when the [alleged extorter] had a good faith claim of right to

9

the [property] sought." *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 392 (S.D.N.Y. 2000)

(citations omitted), *aff'd sub nom. Kashelkar v. Ruben & Rothman*, 1 F. App'x 7 (2d Cir. 2001);

*see also Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 12 (1st Cir. 2007) ("'[E]conomic fear is

wrongful under the Hobbs Act only if the [claimant] had a pre-existing statutory right to be free

from the defendant's demand' for the property.") (citation omitted).

Allstate claims that it has withheld payment for MDax's insurance claims because it

needs the disputed information in order to verify those claims; accordingly, there is a "nexus

between the threat and the claim of right." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 579

(S.D.N.Y. 2014). MDax argues that its wholesale pricing information is "private" and

"irrelevant," and that Allstate actions constitute "bad faith requests for discovery."

(Counterclaimant Opp. Br., ECF 272, at 11, 9.) To support this argument, MDax cites one case

in which an "arbitrator…ruled that wholesale cost information need not be produced by a DME

retailer to the insurer as part of the claim verification process," (Counterclaimant Opp. Br., ECF

272, at 14), and one inapposite case that involved an insurer's request for a bill of particulars that

was unduly burdensome and arguably irrelevant to the claims at issue. *Metro Radiological*

*Imaging P.C. v. State Farm Mut. Auto. Ins. Co.*, 790 N.Y.S. 2d 373, 383 (Civ. Ct. Queens Cnty.

2005) (burdensome demands included "questions regarding the employment history of a patient

assignor for the past 10 years" and "a recitation of every medical article, journal, and textbook

ever read by a health care provider.")

Allstate responds by citing several arbitration decisions in which courts and tribunals held

that wholesale price information is, in fact, relevant to an insurer's verification of a DME

reimbursement claim. (Pl. Reply Br., ECF 273, at 11, n. 6; Declaration of Daniel S. Marvin

("Marvin Decl."), ECF 273-1, Ex. C.)[4]  These decisions show that it is proper—and certainly not

extortionate—for an insurance company to request wholesale price information. Aside from

insisting that the information is irrelevant, MDax points to nothing that suggests that Allstate

does not have a "plausible claim" or "good faith belief" that it is entitled to the information.

*Donziger*, 974 F. Supp. 2d at 579.

Indeed, MDax's sole theory is that Allstate's true intent is to use the information to

reduce the fees that it pays MDax. But Allstate reimburses MDax for DME according to a fee

schedule regulated by New York Insurance Law; MDax's speculation that Allstate could

nevertheless use MDax's wholesale price information to lower reimbursement rates makes no

sense. In light of the no-fault scheme, and MDax's failure to allege any facts to support its

argument that Allstate intends to impose a fee reduction, MDax's allegations regarding Allstate's

intended fraud are conclusory and implausible, and cannot survive a motion to dismiss. *See, e.g.*,

*Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) ("[A]ssertions lack[ing] any

factual foundation…are merely conclusory allegations 'masquerading as factual conclusions,'

which are insufficient to defeat a motion to dismiss.").

Likewise, Allstate's institution of the underlying lawsuit does not amount to extortion.

Several circuits "have held that the act of filing a lawsuit, even one which is frivolous, does not

by itself constitute an act of 'extortion' under the Hobbs Act, 18 U.S.C. § 1951(b)(2), and

therefore cannot constitute a predicate act under RICO." *Content Extraction & Transmission*

---

[4] The counterclaimant argues that these decisions are irrelevant because they do not address circumstances in which the insurer refuses to keep the wholesale price information confidential. (Counterclaimant's Sur-Reply, ECF 277, Ex. 1 at 2.) Nevertheless, the Court considers these decisions for the proposition that insurers may consider wholesale price information as part of the claim verification process.

*LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349, n.2 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119, 193 L. Ed. 2d 208 (2015) (citing *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088 (11th Cir. 2004)). This is for good reason; "[t]reating meritless litigation as a form of extortion punishable under RICO would substantially chill even valid court petitioning, as it could subject almost any unsuccessful lawsuit or set of lawsuits to a colorable claim of a RICO violation." *Id.* (citing *Deck*, 349 F. 3d at 1258.) Thus, the counterclaimant has not adequately pleaded that Allstate engaged in the wrongful use of actual or threatened force, violence or fear by filing the underlying complaint.

Construing the allegations in the light most favorable to the counterclaimant, Allstate's denial of insurance payments gives rise, at most, to a claim for breach of contract. "Claims based on failure to perform under a contract, however, do not state a claim for fraud." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York*, No. 07 Civ. 1471 (RRM) (LB), 2009 WL 928718, at *4 (E.D.N.Y. Mar. 31, 2009) (quoting *Great Earth Int'l Franchising Corp. v. Milks Dev.,* 311 F.Supp.2d 419, 428 (S.D.N.Y. 2004)). "[A] plaintiff is not allowed to 'dress-up' a breach-of-contract claim as a fraud claim," *Id.* (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994)), and "RICO was not enacted for the purpose of providing a Federal forum for nearly every conceivable contract action under State law." *Id.* (quoting *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 399-400 (S.D.N.Y. 2000)).

If MDax genuinely wishes to contest Allstate's denial of its reimbursement requests, it may pursue its dispute under state law, which "provides complete remedies for insureds and their assignees…who believe that their claims have been improperly denied." *Chamberlin v. Hartford Fin. Servs. Inc.*, No. 05 Civ. 2650 (AKH), 2005 WL 2007894, at *3 (S.D.N.Y. Aug. 19, 2005)

(citing N.Y. Ins. Law §§ 5102 and 5108; 11 N.Y. C.R.R. §§ 65-3.9 and 65-2.10). "Under the No-Fault Law, a health care provider challenging the denial or reduction of a[] claim may file either a Personal Injury Protection lawsuit or may commence arbitration against an insurer." *Id.* (citing N.Y. Ins. Law § 5106; 11 N.Y. C.R.R. §§ 65-3.9 and 65-3.10).

MDax's response—that it "would have gladly arbitrated its reimbursement claims pursuant to the no fault statute, but Allstate filed [the underlying complaint], and pursuant to Rule 13(a), MDax must pursue all claims against Allstate in the same action" (Counterclaimant's Opp. Br., ECF 272, at 7)—is meritless. Rule 13(a) requires MDax to assert counterclaims that arise out of the same transaction as Allstate's underlying claim; Rule 13(a) does not require MDax to fashion its contract dispute as a RICO lawsuit. By acknowledging that its claims fall within the purview of the no fault statute, MDax concedes what is apparent: that there is no plausible or genuine allegation that Allstate engaged in racketeering activity.

Finally, MDax argues that Allstate has refused to keep MDax's wholesale price information confidential, which supposedly "hints at a desire to use [the wholesale price information] to harm MDax." (*Id.* at 14.) "MDax infers from Allstate's actions an implicit threat to use the wholesale price information to its detriment" by accusing MDax of fraud based on its profit margin, or "turning the information over to state insurance regulators" who might investigate MDax of fraud. (*Id.* at 6.)[5] MDax did not raise this issue in its counterclaim, but asserts that it is a "reasonable inference based on the allegations." (*Id.* at 6, n. 2.) Aside from the

---

[5] The Court understands MDax's argument to be that if Allstate shared the price information with insurance regulators, MDax would need to expend resources to defend against what it claims would be meritless fraud allegations. If however, as MDax argues, its profit margins are not probative of fraud, it is unclear why the price information would prompt a regulatory investigation at all.

obvious procedural defect with this argument, it is also baseless. Allstate represents that it has

agreed to keep the wholesale price information confidential in the context of this litigation. (Pl.

Reply Br., ECF 273, at 8, n. 2.) In any event, even a refusal "to keep the wholesale DME price

information confidential during the no-fault claims process," (Counterclaimant's Sur-Reply, ECF

277-1, at 2)—which MDax describes as a "hint[]" at an "implicit threat"—is not extortion.

(Counterclaimant Opp. Br., ECF 272, at 10, 2.)

     The question before this Court is not whether Allstate is entitled to the requested

documents, but rather whether MDax has stated a claim of extortion. I find that it has not.

     b. <u>The Counterclaimant Has Not Stated a RICO Claim Based on Theft of Trade Secrets</u>

Under 18 U.S.C. § 1832 (a),

> Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly--(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; (4) attempts to commit any offense described in paragraphs (1) through (3); or (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

As discussed above, New York insurance law authorizes insurance companies to request additional information before reimbursing healthcare providers for services rendered. 11 N.Y.C.R.R. § 65–3.5(b). Accordingly, MDax has not alleged that Allstate acted "without authorization," and thus has failed to state a claim under 18 U.S.C. § 1832 (a).

## CONCLUSION

For the reasons stated above, and finding that amendment would be futile, the counterclaim is dismissed with prejudice.

SO ORDERED.


Dated: Brooklyn, New York
       August ⅃, 2017


                                        S/ AMD
                                        _____
                                        ANN M. DONNELLY
                                        United States District Judge