# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

120 BROADWAY, SUITE 1010
NEW YORK, NY 10271
212-825-1212

James A. McKenney
Phone: 646-870-1742
Fax:    646-233-1916
jmckenney@morrisonmahoney.com

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

CONNECTICUT
HARTFORD
STAMFORD

ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER

NEW JERSEY
PARSIPPANY

NEW YORK
NEW YORK

RHODE ISLAND
PROVIDENCE

November 13, 2017

The Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:    Allstate Insurance Company, et al. v. Dmitrei Abramov, et al.
        Docket No. 1:16-CV-01465 (AMD) (SJB)**

Dear Judge Bulsara:

We represent Plaintiffs in the above-referenced matter, and respectfully submit this letter in opposition to non-party Multi LVR LLC's ("Multi LVR") November 6, 2017 Motion to Quash or in the alternative for a Protective Order (the "Motion"). *See* ECF No. 298. For the reasons discussed below, it is respectfully submitted that the Motion should be denied.

By way of background, the Amended Complaint ("Complaint") in this matter alleges that MDAX, Inc. ("MDAX"), which purports to be a durable medical equipment ("DME") retailer owned by Uriyel Mirzakandov ("Mirzakandov"), engaged in a scheme to defraud Plaintiffs through the submission of hundreds of fraudulent insurance claims by, *inter alia*, passing off cheaper, lower quality DME as more expensive, higher quality items, and seeking and receiving reimbursement that they were never entitled to receive, far in excess of the payment formulas of the No-fault Law. *See* ECF No. 5 (Amended Complaint) at ¶¶ 1-20. As part of the scheme to defraud, MDAX and other Retailers engaged in complex money laundering activities designed to, *inter alia*, generate funds to pay kickbacks and/or other financial compensation to No-fault Clinics and/or DME wholesalers who facilitated the fraudulent billing. *Id.* at ¶¶ 2, 5-8, 15-16.  During discovery, Plaintiffs identified $54,000 that was transferred by MDAX to a TD Bank account in Multi LVR, LLC's name, which, as explained below, is an entity that has no online presence, no apparent storefront or business address, and no connection to the DME business. Plaintiffs issued a subpoena to TD bank for Multi LVR's bank records, and Defendant's Motion followed.

As an initial matter, Multi LVR's motion is premature and should be rejected.  The Court's Individual Practices, as well as the Local Rules, require a good faith attempt to resolve discovery disputes prior to making a motion.  *See* Rule III.B, Individual Practices of Magistrate Judge Sanket

Hon. Judge Bulsara
November 13, 2017
Page 2

J. Bulsara; *see also* Local Rule 37.3 (requiring the attorneys to confer in good faith to resolve discovery disputes). "Failure to comply with this requirement . . . will result in the denial of the motion." Rule III.B, Individual Practices. Contrary to this requirement, Multi LVR never contacted Plaintiffs' counsel to discuss the subpoena, nor do the moving papers indicate, let alone certify, that such an attempt was made. For that reason alone, the motion should be denied.[1]

Notwithstanding Multi LVR's disregard for this Court's procedure, its papers provide no reason to quash the subpoena. In that regard, Multi LVR's entire argument is premised on the claim that the bank records are privileged and private, and irrelevant to the scheme to defraud alleged in the Complaint. First, Multi LVR does not have a privacy interest in the bank records as information contained in bank records is neither confidential nor "private" information that may be shielded from discovery. *See United States v. Miller*, 425 U.S. 435, 440-42 (1976) (finding that bank customers, having voluntarily turned over bank records such as deposit slips and cancelled checks to the bank, have no proprietary or possessory interest in those records). Thus, when Multi LVR, as a bank customer, opened and maintained its account with TD Bank, it inherently assumed the risk that the financial institution might disclose the records to a third-party. *Id.* at 443; *see also Norkin v. Hoey*, 181 A.D.2d 248, 251-52, 586 N.Y.S.2d 926, 928-29 (1st Dep't 1992) (motion to quash subpoena denied as bank customers have no proprietary interest in bank's records).[2]

Second, even if a privacy interest does exist, Multi LVR has not shown that the subpoena is burdensome or provided any good cause for the protective order it seeks. The party seeking to quash the subpoena "bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Neogenix Oncology, Inc. v. Gordon*, 2017 WL 1207558, at *8 (E.D.N.Y. 2017) (citations omitted). "[C]onclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Id.* Moreover, a protective order may only issue when the moving party demonstrates good cause, and to establish such good cause, a particularized demonstration of fact, as distinguished from stereotyped and conclusory statements, is required. *In re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.1987) (internal quotation marks and citations omitted). Here, Multi LVR has not met its burden. Any production of bank records falls solely on TD Bank, not Multi LVR, and therefore Multi LVR cannot claim any undue burden or oppression as a result of the production. Further, any claim that the records are irrelevant is (a) wrong; and (b) insufficient to prevent disclosure. *See e.g. S.E.C. v Federated Alliance Group, Inc.*, 93-CV-0895E(F), 1994 WL 661056 (W.D.N.Y. Nov. 9, 1994) (denying a protective order concerning subpoenaed bank records where the movants weren't seeking "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," but solely because they did not believe the records were relevant). In this regard, it is axiomatic in cases such as these—setting forth insurance fraud and money laundering schemes, and containing allegations of illegal kickbacks—that bank records are relevant and discoverable. Indeed, Plaintiffs are entitled to the subpoenaed bank records in order

---

[1] In addition, the motion is improperly made. Rule III.B of Your Honor's Individual Practices requires that "[l]itigants shall make discovery motions by letter motion." Ignoring this rule, Multi LVR made the motion on notice, with a memorandum of law and supporting affidavits. In compliance with Rule III.B, Plaintiffs are responding with this letter. As Rule III.B does not provide for reply, it is respectfully requested that any reply, if filed, be rejected.

[2] Notwithstanding the lack of a privacy interest over the bank records, any concern about confidentiality of such records is ameliorated by the confidentiality agreement the parties have entered into in this matter, which provides, among other things, that bank records obtained from non-parties in this action are confidential.

Hon. Judge Bulsara
November 13, 2017
Page 3

to assist in determining, among other things, (i) entities that are used as clearinghouses for all monies received by MDAX; (ii) where all monies paid to MDAX are funneled to be used to pay the kickbacks alleged in the Complaint; (iii) the names of any individuals which may have profited from MDAX's fraudulent scheme; and (iv) the extent to which money received by entities such as Multi LVR was used in furtherance of the scheme to defraud. *See, e.g., Allstate Ins. Co. v. Afanasyev*, 12 CV 2423 (JBW), ECF No. 406 (E.D.N.Y. Jan. 17, 2014) (ordering production of subpoenaed non-party bank records to assist the investigation of a money laundering scheme connected to DME fraud); *State Farm Mut. Auto. Ins. Co. v. McGee*, No. 10 CV 3848, 2012 WL 8281725, at *2-3 (E.D.N.Y. Feb. 21, 2012) (finding tax and bank records relevant to demonstrate, *inter alia*, the percentage of profits received by various parties); *State Farm Mut. Auto. Ins. Co. v. Tabakman*, No. 06 CV 2896, 2008 WL 4527731, at *2 (E.D.N.Y. Oct. 3, 2008) (denying non-parties' motion to quash a subpoena seeking bank records where plaintiffs sought "evidence of payments among and between parties which permits an inference that a kickback has occurred.").

Here, Multi LVR claims that the $54,000 transferred from and returned to MDAX was a loan between two brothers (Uriyel Mirzakandov and Roshel Mirzakandov) for a real estate investment that occurred after the time MDAX ceased operations. In support, it provides only vague and non-specific affidavits from the brothers, purportedly confirming the arrangement. However, several facts belie this self-serving explanation. First, neither Mirzakandov brother identifies the purported real estate investment for which the money was loaned.[3] Second, Mirzakandov's affidavit omits that MDAX has been and continues to this very day to collect hundreds of thousands of dollars from insurance companies for the DME it purportedly supplied. Third, the handwriting on the two checks—from MDAX and Multi LVR—appears to be remarkably similar and actually written by Uriyel Mirzakandov. *See* Exh."A." Fourth, and perhaps most importantly, the address for Multi LVR is the same as the corporate process address for MDAX, and several other entities that do not appear to have a website, store front or connection to MDAX's business, yet MDAX transferred over $375,000 to these entities between September 2015 and September 2016. Notably, each of the following businesses, in addition to MDAX and Multi LVR, lists 139-09 84 Dr. #1A, Briarwood, NY 11435 as its DOS Process address: BNR Supplies Inc. (a purported supply company), Best Esthetic Services Inc. (a purported beauty salon/shop), and Briarwood Consulting Services (a purported consulting company). The 139-09 84 Dr. address is a residential address, *see* Exh "B," Google Street View Image, and business addresses for each entity cannot be found. Moreover, throughout discovery, MDAX has never identified any services provided by these entities. It is implausible and would require the suspension of reason to conclude that these supposedly unrelated businesses, all of which have no digital footprint that suggests they are legitimate concerns, operating out of the same residential address, and receiving substantial sums of money from a DME company, are not being used in furtherance of the scheme to defraud alleged in the Complaint. Considering the intra-family transactions between MDAX and Multi LVR in which Multi LVR only offers a conclusory affidavit devoid of any evidence supporting the legitimacy of the payments it received, at the very least, considering the allegations of money laundering and kickbacks in this action, the bank records to these suspicious payees are relevant and material to Plaintiffs' claims.

---

[3] Further, the brothers fail to mention that MDAX previously issued a check to Roshel Mirzakandov, dated August 31, 2015, in the amount of $30,000.

Hon. Judge Bulsara
November 13, 2017
Page 4

  In view of the foregoing, it is respectfully submitted that Plaintiffs are entitled to the bank records that are relevant and material to the money laundering and kickback allegations in the Complaint to determine how the profits of MDAX were used in furtherance of the scheme. Accordingly, Plaintiffs request that the motion to quash be denied.

  Thank you for your consideration in this regard.

            Respectfully submitted,

            Morrison Mahoney, LLP


            By:  /s/ James A. McKenney
              James A. McKenney

JM/ad

Encl.

cc: All Counsel (Via ECF)