```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
ALLSTATE, et al.,             :  16-cv-01465-AMD-SJB
         Plaintiffs,          :
                              :
   - versus -                 :  U.S. Courthouse
                              :  Brooklyn, New York
                              :
ABRAMOV, et al.,              :  December 5, 2017
         Defendants           :
------------------------------X

       TRANSCRIPT OF CIVIL CAUSE FOR PROCEEDINGS
         BEFORE THE HONORABLE SANKET J. BULSARA
            UNITED STATES MAGISTRATE JUDGE
```

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff**:        **Matthew J. Conroy, Esq.**
                              Schwartz Law, P.C.
                              666 Old Country Road
                              9th Floor
                              Garden City, NY 11530


**For the Defendant**:        **James A. McKenny, Esq.**
                              Morrison Mahoney LLP
                              120 Broadway
                              Suite 1010
                              New York, NY 10271




**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              laferrara44@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

                              Proceedings                           2

1               THE COURT:  We're here in 16-cv-1465, Allstate
2    Insurance Co., et al., v. Abramov, et al., for a motion
3    hearing.
4               Will the parties state their names for the
5    record, please?
6               MR. CONROY:  Good afternoon, your Honor.
7               For the moving party, Multi LVR LLC, Matthew
8    Conroy, Schwartz Law, Garden City, New York.
9               MR. MCKENNY:  James McKenny from Morrison
10   Mahoney for all plaintiffs.
11              THE COURT:  Okay.  So I've read the motion
12   papers and the cases cited therein.  Have the parties
13   been able to resolve this without me ruling?
14              MR. CONROY   We spoke prior to coming in, your
15   Honor, limiting --
16              THE COURT:  Do you want me to give you five
17   minutes to work it out before I rule and one side is
18   unhappy and one side is happy?  I give parties an
19   opportunity under discovery dispute where it's not clear
20   to me that prior to the motion being filed that there was
21   sufficient negotiation that -- and there is at least some
22   offer of compromise referred to in the moving papers and
23   I recognize that there's also -- you know, that's an
24   opening offer and -- et cetera.
25              But it's far better for the parties to work it

3

Proceedings

1 out amongst themselves rather than having me rule because
2 I am asked to rule basically on a yes or no or up or down
3 fashion and someone is going to leave unhappy and
4 frankly, that's not probably towards the ends of justice
5 in terms of what needs to get accomplished vis-a-vis the
6 case.
7         MR. MCKENNY:  I think it will only -- if I
8 could just have two minutes.
9         THE COURT:  Yes.  Take as much time as you
10 want.
11         MR. MCKENNY:  Well, I think only two minutes
12 because I have a feeling I know where this -- we might
13 not be able to come to a total resolution.
14         THE COURT:  Okay.  Go ahead.
15 (Off the record.)
16 (Attorneys microphones not turned on.)
17         MR. MCKENNY:  At this point, I think we're
18 going to proceed.  I don't think we're going to --
19         THE COURT:  Okay.
20         MR. MCKENNY:  -- to come to an agreement.
21         THE COURT:  Okay.  What's the nature of the
22 confidentiality or protective order that's in place in
23 the case?  There's a reference in your papers that it
24 would be covered by some measure of confidentiality,
25 although --

Proceedings 4

1  MR. MCKENNY: Yes. We're going to submitting
2 that to your Honor soon. We only have -- we mentioned
3 this at the status conference last time. The only reason
4 we had held off was because the parties were engaged in
5 settlement negotiations and while that's still ongoing,
6 is to keep advancing.
7  We had executed a confidentiality agreement. I
8 have signed it, MDAX had signed it. MDAX had another
9 counsel, a Mr. Howard Foster, (indiscernible), he had
10 asserted certain counterclaims on behalf of MDAX. Those
11 counterclaims were dismissed and I have been informed by
12 their other counsel and law office of Gary Tsirelman,
13 that Mr. Foster is going to be dropping out.
14  So the original agreement that was signed had
15 Mr. Foster's signature line. So we have to re-execute
16 with removing him and --
17  THE COURT: I understand.
18  MR. MCKENNY: -- submit it but that agreement
19 makes any and all financial records, bank records,
20 whether from the parties or nonparties, will remain
21 confidential parties. They were remain confidential. At
22 the end of the case, if those records would be destroyed,
23 they can only be submitted to the Court and redacted
24 pursuant to, you know, the federal redaction rules.
25  And other than that, they cannot be shared with

Proceedings

5

1 anyone outside of the litigants in this case and/or their
2 experts or defenders that they hire but not with anyone
3 else.
4       THE COURT:  Okay.  And the complaint seeks
5 information -- sorry, the complaint was filed in March of
6 '16, is that correct?
7       MR. MCKENNY:  Correct, your Honor.
8       THE COURT:  The subpoena seeks information from
9 2015 to the present.
10       MR. MCKENNY:  Correct.
11       THE COURT:  Why is that?
12       MR. MCKENNY:  So MDAX is a durable medical
13 equipment retailer and for a while, according to the
14 affidavit that was submitted in connection with function,
15 I am going to say about 2015 to about mid-2015, they were
16 actively dispensing durable medical equipment to
17 patients.
18       The affidavit says that they have since stopped
19 doing that and MDAX I still an active corporation listed
20 with the New York Department of State and MDAX is still
21 actively seeking to collect on insurance claims that it
22 had submitted to various insurers for (indiscernible)
23 patients.  Even today, it is still attempting to collect
24 and receiving payment in some cases, get an arbitration
25 award or at a judgment with (indiscernible).

6

Proceedings

1         THE COURT:  And not to cut you off, so that's
2 basically a way of saying that although the complaint was
3 filed in March of '16, and there were various
4 itemizations, I believe attached to the complaint, that
5 is not the full sum of what are the universe of claims
6 for which -- that are the subject of this action that if
7 it went to a jury trial, for instance, and you put in
8 proof that post-dates the complaint, and simply seek an
9 appropriate amendment that the pleading should confer to
10 -- should conform to proof, is that correct?
11         MR. CONROY:  That's correct, your Honor.
12         MR. MCKENNY:  I am a non-party but if I
13 represented the defendant in this case, I would strongly
14 object to that.  Any payments made by the plaintiff after
15 the filing date are going to fail under theories of fraud
16 or civil RICO because there's no reasonable reliance.  To
17 the extent that they're making payments on claims that
18 they're losing an arbitration pursuant to judgments, you
19 know -- there has to be reasonable reliance on the
20 information submitted upon which they have made a claim.
21         THE COURT:  Well, you don't represent the
22 defendant, the defendants aren't here and you didn't make
23 that argument but I understand your position.
24         MR. MCKENNY:  For this motion's purpose, the
25 reason I bring that up is because the theory asserted in

7

Proceedings

1 the complaint is that there is a money laundering
2 kickback scheme where the retail DME suppliers are
3 receiving money, reducing it to cash in one form or
4 another in paying it either to runners or to managers or
5 to MD clinics in return for referring patients.
6     What we provided the Court was factual evidence
7 that this defendant stopped seeing patients and stopped
8 operating the DME company in June of 2016. The fact that
9 they continued to collect money in arbitration and
10 litigation --
11     THE COURT: I see.
12     MR. MCKENNY: -- it breaks the cycle of what
13 they're claiming to be this money laundering ring. So to
14 the extent that they're seeking information from my non-
15 party company about what went on between the party
16 defendant and my non-party client, after June of 2016,
17 what difference could it possibly make?
18     THE COURT: Any response? Go ahead.
19     MR. CONROY: But that is the proceeds of the
20 fraud. There was those monies that are being collected
21 are for durable medical equipment that was issued during
22 the time period that MDAX was active. To the extent that
23 money is being funneled and being paid out of MDAX to
24 entities at an address that has at least four separate
25 businesses located at it that having nothing to do with

```
                                                                   8
                            Proceedings
 1   the durable medical equipment industry, they -- I submit
 2   that the proceeds of the fraud are being funneled out and
 3   laundered through these entities and then out of -- and
 4   the reason why I want to see those records is that money
 5   will be going out of those entities to the participants
 6   in the scheme.
 7             THE COURT:  And I presume that from MDAX,
 8   you've sought financial records.
 9             MR. CONROY:  We have.
10             MR. MCKENNY:  Sought and received.
11             MR. CONROY:  We have not.  They have made no
12   production to date.  That's the subject of an upcoming
13   motion to compel.  If the parties do not -- are unable to
14   resolve --
15             MR. MCKENNY:  I gave you records.
16             THE COURT:  Hold on.
17             MR. MCKENNY:  I'm sorry.
18             THE COURT:  This is not an opportunity for you
19   to have --
20             MR. MCKENNY:  I'm sorry.
21             THE COURT:  -- a, you know -- and frankly --
22   okay.  Is there anything that either side would like to
23   say that's not in the papers?
24             MR. MCKENNY:  I would just point out, your
25   Honor, that obviously the bank records of the defendants
```

1 tell a lot of the story and I obviously don't know
2 whether or not the plaintiffs have gotten the bank
3 records from all these party defendants or not.  I had
4 assumed that they did because how else are we being
5 subpoenaed but, you know, the information that can be
6 gleaned from MDAX's bank records of money going out and
7 money coming in, obviously that's entirely relevant to
8 their claims but beyond the check of money going out and
9 the same amount coming back in, you know, my client has
10 no interest in this litigation.  They have no connection
11 with Allstate.
12        It's  -- it's owned by the brother of the owner
13 of MDAX.  It seems onerously incredibly broad that two
14 years of our financial records be produced for Allstate
15 because of the existence of two checks.
16        MR. CONROY:  If I may?
17        THE COURT:  Sure.  Either side can say whatever
18 they --
19        MR. CONROY:  The only additional thing that I
20 would add outside of the papers is this is not the only
21 entity that has been recovered -- MDAX is not the only
22 entity that has been uncovered, that is shipping money
23 out to the same parties.  There is another entity called
24 3D Orthotics that was supplying another defendant in this
25 case with DME, purportedly on papers supplying the

1  defendant and they're -- upon review of their records,
2  there are also checks (indiscernible) -- checks going
3  from the retailer to this wholesaler, 3D Orthotics, out
4  to Multi LDR, out to BNR, Best (indiscernible) Services,
5  (indiscernible) Gold and Platinum and K-Line Media (ph.).
6  Both MDAX and the other entity, other retailers in that
7  we have sued in this action, are funneling money out to
8  these businesses, most of which are in fact the exact
9  same address and most of which have no digital presence,
10 no office.
11          THE COURT:  And look, I know you make those
12 points.
13          MR. CONROY:  Yes.
14          THE COURT:  You know, to me, you know, that may
15 go to the ultimate merits about the legitimacy of these
16 transfers and it may help but it doesn't necessarily,
17 outside of this particular third-party, provide reasons
18 why, you know, this particular third-party has to give
19 over records, right?
20          I mean it may be relevant to MDAX's liability.
21 It may be relevant to the third-party subpoenas and to
22 those other third-party entities that you may be
23 subpoenaing which are at the same address and have the
24 same, you know, MO or whatever, but as to Multi LVR LLC,
25 all I have before me is the subpoena to TD Bank for their

Proceedings

11

1 records, is that right? It's not for these other
2 entities and he's only here representing Multi LVR LLC.
3       MR. CONROY: Absolutely, your Honor. My only
4 point is in a money laundering scheme, one of the goals
5 of the money laundering scheme is to take the funds,
6 funnel them out in a way that you generate cash and one
7 of the many ways that that is done is by funneling money
8 out to dummy corporations, corporations that don't have
9 anything but a paper presence and have no obvious
10 existence, other than on papers and that's what I submit
11 is going on here.
12       And that many of the defendants in this case
13 are funneling money out to entities that only have a
14 paper presence and given confidentiality and that these
15 records will remain in this litigation and the money
16 laundering allegations in the complaint, respectfully I
17 submit that (indiscernible) Multi LVR, that those records
18 -- the limited number of records that we're getting from
19 TD Bank, so there's no burden on Multi LVR, we're getting
20 it from TD Bank and we're not asking Mr. Conway's clients
21 to do anything (indiscernible) those records are relevant
22 to the money laundering allegations in the complaint.
23       THE COURT: All right. Anything else, Mr.
24 Conway?
25       MR. CONROY: That's all, your Honor.

                                                                12
                            Proceedings

1            THE COURT:  Okay.  So I am ready to rule.  In
2    this case, plaintiff Allstate Insurance Company served a
3    Rule 45 subpoena on nonparty TD Bank, NA, seeking various
4    documents and account records of Multi LVR LLC from 2015
5    to the present.  Multi LVR LLC has moved to quash and in
6    the alternative, limiting the production of bank records
7    to 2015 -- for the period of 2015 to June 2015.  Multi
8    LVR LLC is not a defendant in the case.
9            Plaintiffs response is multi-fold.  First, that
10   Multi LVR failed to meet and confer as required by the
11   Court's individual practices and improperly filed a
12   motion not a letter brief.  And the Court -- and
13   furthermore that the documents are not privileged and are
14   subject to confidentiality in any event.
15           Notwithstanding all of that, the Court still
16   has to evaluate in the context of the motion whether the
17   discovery sought complies with the Rule 45.  Rule 45
18   requires the Court to quash the subpoena if it creates an
19   undue burden.
20           First, the motion failed to comply with this
21   Court's individual practice and as an independent basis
22   to deny the motion.
23           Second, Multi LVR's privacy argument is without
24   merit.  There is or will be a protective order in place
25   in the case that will protect any confidentiality

13

Proceedings

1   required for the records and the parties can workout any
2   additional protections beyond the standard protective
3   order that the Court would enter as a means of further
4   protecting the documents.
5           Third, the burden arguments are without merit.
6   There's no attempt to argue that producing the documents
7   is costly or time consuming or otherwise cannot be
8   managed outside a reasonable time or with limited --
9   without expenditure of large amounts of money.
10          In addition, the subpoena is directed towards
11  TD Bank, not towards Multi LVR.  But burden is not
12  limited to time and expense but includes whether the
13  subpoena is over broad and seeks plainly irrelevant
14  material.  That is not the case.
15          Although Multi LVR argues that it's only
16  engaged in transactions involving real estate or gold,
17  plaintiff have established that Multi LVR receive monies
18  from defendant MDAX and have alleged that the two
19  entities share the same address.
20          The declaration that Mr. Mirzakandov supplies
21  hurts, does not help, the motion to quash.  He states in
22  paragraph 4 that Multi LVR, LLC received monies from MDAX
23  for the purposes of use in a real estate transaction.  So
24  that the company only engages in real estate transactions
25  is therefore not a shield to the subpoena since the

                                                                14
Proceedings

1  monies went from MDAX to Multi LVR, LLC for the purposes
2  in such a transaction.
3           The declaration also suggests that the
4  limitation through June 16 is not sufficient.  The
5  declaration provides or suggests that there was at least
6  a relevant transaction in October of 2016.  The
7  plaintiffs, however, at this point have not explained why
8  the period should be much longer than that.  They do talk
9  about in their papers, $375,000 in transfers but these
10 appear to be transfers between MDAX and entities other
11 than Multi LVR.  That doesn't bear on the present motion.
12          The subpoena should be limited to 2015 and 2016
13 for their entirety for the documents requested in the
14 subpoena.  Should MDAX records suggest that there were
15 other transfers to Multi LVR after the end of 2016 that
16 are relevant and bear on this litigation, they can renew
17 their subpoena by filing another subpoena to TD Bank and
18 then we can revisit a subsequent motion to quash.  Okay?
19          MR. CONROY:  Thank you, your Honor.
20          THE COURT:  Well, thank you both. I appreciate
21 the nice back and forth between all of you.
22          Is there anything else at this time on this?
23          MR. MCKENNY:  We appreciate your attention this
24 late in the day.
25          THE COURT:  Happy to.  That's what we're here

                                                                    15
                            Proceedings

1    for.  And I appreciate you, even though you weren't able
2    to do -- trying to work it out prior to this.
3              Well, have a nice day.
4              MR. CONROY:  Thank you.
5              MR. MCKENNY:  Have a good holiday.
6                   (Matter concluded)
7                        -o0o-

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **30th** day of **September**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.