UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE NEW JERSEY INSURANCE COMPANY,
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,
                                        Plaintiffs,

       -against-                                  **REPORT AND**
                                                                    **RECOMMENDATION**
                                                                      16-CV-1465-AMD-SJB

DMITREI ABRAMOV,
BORIS KHANIS,
INNA LYUBRONETSKAYA,
OLEG SHNAIDER,
EMPIRE STATE MEDICAL SUPPLIES, INC.,
LIBERTY SURGICAL SUPPLIES INC.,
PACIFIC SURGICAL SUPPLY, INC.,
QUALITY MEDICAL SUPPLY INC.,
RIDGE MEDICAL SUPPLIES CORP.,
MARGARITA AKMALOVA,
GRIGOL APRESYANTSI,
SERGEY MEZKULA,
VALERIY SEMENIKHIN,
VADIM ZALOGIN,
AMERICAN MOBILITY MEDICAL, INC.,
BIV WHOLESALE INC.,
COMDEX INC.,
GLOBAL BEST DEAL, INC.,
GRIGOL SUPPLY, INC.,
IG&NAT SERVICES, INC.,
IMPREZZA NYC INC.,
METRA WHOLESALE INC.,
ORTIZ OMEGA CORP.,
VDS MEDICAL SUPPLY, INC.,
VZ GROUP, INC.,
                                        Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

       Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance

Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, and

Allstate Property and Casualty Insurance Company (collectively "Allstate") commenced

this action on March 25, 2016 alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, § 1962(c), and § 1964(c); and common law fraud and unjust enrichment under New York common law. (Compl. dated Mar. 25, 2016, Dkt. No. 1). Allstate filed an Amended Complaint on May 9, 2016, maintaining the same causes of action and adding additional Defendants. (Am. Compl. dated May 9, 2016, Dkt. No. 5 ("Am. Compl.")). Of the 88 Defendants in the Amended Complaint, 25 did not appear and the Clerk of Court entered a default against them. (Clerk's Entries of Default, Dkt. Nos. 187-193, 195-201, 209-213, 294-296, 307-310 ("Entries of Default")).[1] On May 22, 2018, Allstate filed a motion for default judgment, (Mot. for Default J., Dkt. No. 322 ("Allstate Mot.")), which the Honorable Ann M. Donnelly referred to the undersigned for report and recommendation. For the reasons described below, the Court respectfully recommends that the motion be denied without prejudice to renewal due to defects in service.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Allstate Plaintiffs are Illinois corporations that provide automobile insurance coverage within the State of New York. (Am. Compl. ¶¶ 49-54). Defendants are corporations and their owners alleged to be involved in a series of complex parallel schemes intended to defraud Allstate through New York's No-fault insurance system. (*Id.* ¶ 1).[2] Allstate alleges "that Defendants stole from [it] through the submission of

---

[1] The 25 does not include three additional Defendants against whom default was entered but who later settled with Allstate. (*See* Clerk's Entries of Default, Dkt. Nos. 194, 202, 293). Allstate dismissed the claims against these Defendants, (*see* Stipulations of Dismissal, Dkt. Nos. 284, 318), and the Clerk should be directed to vacate the default against them.

[2] This system requires Allstate to pay for "health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor

thousands of false and/or fraudulent insurance claims for durable medical equipment ('DME') and/or orthotic devices." (*Id.* ¶ 2).³ Defendants billed Allstate for medical equipment that was "never provided, not provided as billed or, if provided, [was] of inferior quality relative to what was represented in the bills submitted to [Allstate] to have been provided and/or [was] otherwise medically unnecessary." (*Id.* ¶ 23).

The Amended Complaint alleges that Defendants operated at least 38 schemes that were used to defraud Allstate. Each purported scheme involved a Retailer(s) of medical equipment and Retail Owner(s), a Wholesaler(s) of medical equipment and Wholesale Owner(s), and a medical clinic(s) that billed Allstate for medical services performed under the New York No-fault system.⁴ Defendants can be categorized into four groups based on their roles in these schemes: (1) retail corporations ("Retailers");⁵ (2) owners of retail corporations ("Retail Owners");⁶ (3) wholesale corporations

---

vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York." (Am. Compl. ¶ 162).

³ "Durable medical equipment" refers to medical supplies prescribed to patients for at-home use, such as cervical pillows, circulating pumps, infrared heat lamps, massagers, and whirlpools. (*Id.* ¶ 2). "Orthotic devices" refers to medical devices that "are used to support a weak or deformed body member or to restrict or eliminate movement," such as braces or cervical collars. (*Id.*). For the sake of simplicity, the Court generally refers to both of these as "medical equipment."

⁴ The medical clinics are not parties in this action.

⁵ The defaulting Retailers are Empire State Medical Supplies, Inc. ("Empire State Medical"), Liberty Surgical Supplies Inc. ("Liberty Surgical"), Pacific Surgical Supply, Inc. ("Pacific Surgical"), Quality Medical Supply Inc. ("Quality Medical"), and Ridge Medical Supplies Corp. ("Ridge Medical").

⁶ The defaulting Retail Owners are Dmitrei Abramov ("Abramov"), Boris Khanis ("Khanis"), Inna Lyubronetskaya ("Lyubronetskaya"), and Oleg Shnaider ("Shanider").

3

("Wholesalers");[7] and (4) owners of wholesale corporations ("Wholesale Owners").[8] The schemes generally operated as follows: medical clinics would prescribe patients with large amounts of unnecessary medical equipment, which Retailers would provide to patients. (*Id.* ¶ 5). Retailers, through their Owners, would contact Wholesalers, who would issue invoices for medical equipment they never actually provided (or sell Retailers inexpensive equipment and provide them with invoices grossly inflating the prices). (*Id.* ¶ 6). Retailers would then issue checks to Wholesalers according to the inflated invoice amount, and Wholesalers would cash the checks and return a portion of the money to Retailers, who would then give a portion to the medical clinics as a kickback. (*Id.* ¶¶ 7-8). Retailers would then bill Allstate according to the inflated invoices. (*Id.* ¶ 9).

Although these schemes were generally parallel rather than intertwined,[9] Allstate alleges they were so similar that they must trace back to a common origin. (*See* Am. Compl. ¶¶ 185-186; *see also id.* ¶ 14 ("Defendants collectively utilized a common fraudulent blueprint as a business plan, sharing common documentation, using the

---

[7] The defaulting Wholesalers are American Mobility Medical, Inc. ("American Mobility"), BIV Wholesale Inc. ("BIV Wholesale"), Comdex Inc. ("Comdex"), Global Best Deal, Inc. ("Global Best Deal"), Grigol Supply, Inc. ("Grigol Supply"), IG&NAT Services, Inc. ("IG&NAT Services), Imprezza NYC Inc. ("Imprezza"), Metra Wholesale Inc. ("Metra Wholesale"), Ortiz Omega Corp. ("Ortiz Omega"), VDS Medical Supply, Inc. ("VDS Medical"), and VZ Group, Inc. ("VZ Group").

[8] The defaulting Wholesale Owners are Margarita Akmalova ("Akmalova"), Grigol Apresyantsi ("Apresyantsi"), Sergey Mezkula ("Mezkula"), Valeriy Semenikhin ("Semenikhin"), and Vadim Zalogin ("Zalogin").

[9] A few of the schemes do involve overlapping parties. In relevant part, VZ Group and its owner, Zalogin, are alleged to be involved in two different RICO schemes. (*See* Am. Compl. ¶¶ 395, 958). The same is true for BIV Wholesale, (*see id.* ¶¶ 432, 721), and Comdex, (*see id.* ¶¶ 906, 921).

same fraudulent billing codes, making the same misrepresentations, and engaging in virtually identical patterns of fraud that was not the product of happenstance, but instead evidence of related fraudulent billing schemes that trace back to a common genesis and framework.")).

Allstate's Amended Complaint alleges violations of RICO as well as fraud and unjust enrichment under New York law, (*id.* ¶ 45), and seeks damages in excess of $980,000, in addition to treble damages and prejudgment interest for the RICO violations. (*Id.* at 401). The Amended Complaint also seeks a Declaratory Judgment under 28 U.S.C. § 2201 against Retailers and Retail Owners relieving Allstate of the "obligation to pay the pending, previously-denied and/or submitted unpaid claims . . . regardless of the purported dates of service." (*Id.* ¶¶ 1622-1629).

Allstate served the Corporate Defendants with the Summons and Amended Complaint through New York's Secretary of State and the Individual Defendants at their places of business, by affixing the documents to the door and also mailing them. (*See* Summonses Returned Executed, Dkt. Nos. 18, 20-21, 25-26, 28-29, 31, 35, 40-41, 48-49, 57, 59, 90, 92-98).[10] The 25 Defendants subject to the motion for default judgment failed to appear or otherwise respond to the Complaint, and the Clerk of Court entered default as to each one on various dates ranging from September of 2016 to January of 2018. (*See* Entries of Default).[11] All other Defendants have settled. (Mem. of Law, attached as Ex. 3 to Allstate Mot., Dkt. No. 322 ("Allstate Mem.") at 4).

---

[10] There are two exceptions: Individual Defendants Shnaider and Zalogin were served personally outside the state of New York. (Summonses Returned Executed, Dkt. Nos. 75, 78).

[11] The Clerk of Court entered default against Semenikhin twice, (Clerk's Entries of Default, Dkt. Nos. 200, 212), but this is of no practical consequence.

Allstate filed a motion for default judgment on May 22, 2018. (*See* Allstate Mot.). The motion seeks specific monetary damages as to each defaulting Defendant, with members of each scheme jointly and severally liable for RICO damages. (Proposed Judgment, attached as Ex. 1 to Decl. of James McKenney ("McKenney Decl."), Dkt. No. 322 ("Proposed J.") at 2-5). The motion also seeks the same declaratory judgment as requested in the Complaint, but only against the Retailers. (*See id.* at 5). The motion and supporting papers were mailed to Corporate and Individual Defendants at their last known addresses. (Aff. of Service, attached as Ex. 7 to Allstate Mot., Dkt. No. 322 ("Mot. Service Aff.")). Allstate subsequently filed eight declarations stating the motion papers were returned undeliverable as to Defendants Lyubronetskaya, Mezkula, Apresyantsi, Empire State Medical, Ortiz Omega, Global Best Deal, Imprezza, and Grigol Supply. (Declarations of Mailing, Dkt. Nos. 323-330).

On May 23, 2018, the Honorable Ann M. Donnelly referred the motion to the undersigned for report and recommendation. For the reasons stated below, the Court respectfully recommends the motion be denied without prejudice.

## DISCUSSION

"[A] motion for default judgment will not be granted unless the party making that motion adheres to certain local and individual rules." *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 13, 2015). Service of the motion on non-appearing defendants is of particular importance, because "mailing notice of such an application is conducive to both fairness and efficiency[.]" Committee Note, Loc. Civ. R. 55.2; *see Transatlantic Auto Grp., Inc. v. Unitrans-Pra Co.*, No. 08-CV-5070, 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011) (noting the local rules relating to default provide more protection for non-appearing defendants than the

6

Federal Rules of Civil Procedure to promote fairness and efficiency), *report and recommendation adopted*, 2011 WL 4543838 (Sept. 29, 2011). Service of the motion for default judgment was deficient with respect to the Individual Defendants and Corporate Defendant Pacific Surgical.

Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)[.]" Loc. Civ. R. 55.2(c). The Complaint and Summons were served on the Individual Defendants at their business addresses; the motion and supporting papers were mailed to Individual Defendants at those same business addresses. (*Compare* Mot. Service Aff., *with* Am. Compl. ¶¶ 100, 106, 121, 132, 135-136, 142).[12] That is impermissible under Local Rule 55.2(c). While service of the Complaint at a business address is sufficient for an individual defendant, when the plaintiff seeks default against that individual, the motion for default judgment must be served at the person's last known residence. By using the business address to serve the motion, Allstate failed to comply with this requirement.

Mailing the motion to the business addresses may explain why some of the mailed motion papers, three of which pertain to Individual Defendants, were returned as undeliverable. (*See* Declarations of Mailing, Dkt. Nos. 326-327, 329). In any event,

---

[12] Individual Defendants Shnaider and Zalogin were mailed the motion papers to the addresses where they were personally served with the Summons and Complaint. (*See* Mot. Service Aff.; Summonses Returned Executed, Dkt. Nos. 75, 78). These addresses are not, as far as the Court knows, the addresses of any Corporate Defendants; however, Allstate has provided no information on whether these were residential or business addresses. The Court has concluded, in the absence of any indication that Allstate understood Rule 55.2 as applied to individuals, that Shnaider and Zalogin were *not* served with the motion papers at their homes.

failure to comply with Local Rule 55.2 warrants denial of the motion for default judgment. *See, e.g., Lin v. Quality Woods, Inc.*, No. 17-CV-3043, 2019 U.S. Dist. LEXIS 14239, at *19-20 (E.D.N.Y. Jan. 28, 2019) (report and recommendation) ("As for the Individual Defendants, Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be 'mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)[.]' The motion was mailed to 1340 Metropolitan Avenue, which is clearly a business address, not their residential address. . . . [F]ailure to comply with local rules warrants denial of the motion for default judgment.") (citation omitted); *Bhagwat*, 2015 WL 13738456, at *1 (denying default judgment motion against individuals in part for "fail[ure] to include . . . proof of mailing that this motion was served upon defaultees' last known mailing address").

As to the Corporate Defendants, Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought . . . [at] the last known business address of such party (if a person other than an individual)." Loc. Civ. R. 55.2(c). Allstate generally complied with this rule, as the addresses for most Corporate Defendants match those alleged in the Amended Complaint and those listed on the Secretary of State's website. (*Compare* Mot. Service Aff., *with* Am. Compl. ¶¶ 100, 106, 120-121, 133-139, 141-142, *and* Dep't of State, Div. of Corps., State Records & UCC, *Corp. & Bus. Entity Database Searches*, https://www.dos.ny.gov/corps (last visited Feb. 21, 2019)).[13] However, this is not the

---

[13] "The Court can and does take judicial notice of information from the New York Secretary of State's website." *See J & J Sports Prods., Inc. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 17-CV-4171, 2018 WL 4378166, at *1 n.3 (E.D.N.Y. Apr. 09, 2018) (citing *Tate v. YRC Worldwide, Inc.*, No. 08-CV-7, 2008 WL 1138316, at *2 (E.D.N.Y. Sept. 23, 2008)).

case for Defendant Pacific Surgical.[14] Pacific Surgical was served with the motion papers at 1901 Avenue U, Brooklyn, NY 11229, (Mot. Service Aff.), but the Amended Complaint lists its principal place of business at 1811 Stillwell Avenue, Brooklyn, NY 11223, (Am. Compl. ¶ 113). The Secretary of State's website has two corporations listed with similar names: Pacific Surgical Supply, Inc. and Pacific Surgical Supply New York Inc. *See* Dep't of State, Div. of Corps., State Records & UCC, *supra*. The registered address for Pacific Surgical Supply, Inc. is 1901 Avenue U, Brooklyn, NY 11229, where the motion papers were mailed, and the registered address for Pacific Surgical Supply New York Inc. is 1811 Stillwell Avenue, Brooklyn, NY 11223, which the Amended Complaint lists as its principal place of business. *Id.* Although these corporations could be related, they have different associated individuals and they are both listed as "active" on the Secretary of State's website; in fact, both were registered with the Secretary of State before this action began, making it unlikely that one corporation is the successor to the other. (*Compare id.* (indicating Pacific Surgical Supply, Inc. was registered on December 3, 2007 and Pacific Surgical Supply New York Inc. was registered on April 17, 2013), *with* Compl. (commencing this action on March 25, 2016)).

It is therefore unclear to the Court whether Pacific Surgical was served at its last known business address. This confusion alone warrants denial of the motion. *See, e.g.*, *Augustin v. Apex Fin. Mgmt.*, No. 14-CV-182, 2015 WL 5657368, at *3 (E.D.N.Y. July

---

[14] Defendant VZ Group was also served with the motion papers at an address other than the one in the Amended Complaint. (*Compare* Mot. Service Aff. (stating the motion papers were mailed to 2753 Harway Avenue, Brooklyn, NY 11214), *with* Am. Compl. ¶ 143 (stating the principal place of business is 1816 Gravesend Road, Brooklyn, NY 11232)). However, the Secretary of State's website indicates that 2753 Harway Avenue is the current address for VZ Group. *See* Dep't of State, Div. of Corps., State Records & UCC, *supra*.

9

27, 2015) ("[I]t is not clear that these documents were mailed to Apex at the last known business address of such party. Plaintiff's failure to comply with Local Civil Rule 55.2 alone warrants denial of the motion, without prejudice to renew with an affidavit demonstrating proper service.") (quotations and citations omitted) (collecting cases), *report and recommendation adopted*, 2015 WL 7430008 (Nov. 23, 2015); *Transatlantic Auto Grp.*, 2011 WL 4543877, at *19 (denying default judgment motion in part because, "compounding the due process concern of adequate notice, neither party has indicated whether their motions for default judgment were ever served upon [non-appearing corporate defendant]"). The Court respectfully recommends that, in any renewed motion for default judgment, Allstate be directed to clarify the last known business address of Pacific Surgical.

\*            \*            \*

The complex nature of this case, given the number of Defendants and their relationships with each other, cautions against deciding the motion for default judgment as to some Defendants and not others. In other words, the Court should not decide the default judgment motion with respect to the few defaulting Defendants who were properly served with the motion papers. Should the Court decide the motion as to the defaulting Defendants who were properly served, the Court would have to decide damages twice, once now and again with any renewed motion. The need to conserve judicial resources counsels against such a result.

There is also the possibility—however remote—that one or more of the defaulting Defendants will appear to contest the allegations against them once they are served properly with the motion papers. And if a Defendant were to contest default judgment and settle or resolve its claims, doing so would invalidate—or render inconsistent—any

10

damages calculation made now. That is because any remaining and defaulting Defendants are entitled to a set-off based on the amount recovered from appearing parties.[15] S*ee, e.g.*, *Farberware, Inc. v. Groben*, No. 89-CV-6240, 1991 WL 123964, at \*6 (S.D.N.Y. July 3, 1991) ("[A]ssessment of [RICO] damages would be premature. If both parties were found liable, necessarily their liability would be joint and several since they are alleged to have acted together to bring about a single injury—the monetary loss to plaintiff from its overpayment to Globe. In these circumstances, the amount of damages that plaintiff could recover from Globe and Groben should not differ. Since Globe has not been held in default, the assessment of damages against Groben under RICO based on this alleged scheme should await the outcome of plaintiff's claim against Globe, in order to avoid the entry of inconsistent damage awards."). As a result, the Court should decide the default judgment as to all parties at the same time.

Therefore, because 10 of the 25 defaulting Defendants were not served properly with the motion for default judgment, the motion should be denied in its entirety without prejudice to renewal.

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that the motion for default judgment be denied without prejudice and that, in any renewed motion, Allstate be directed to demonstrate that the service issues identified in this Report and

---

[15] "In RICO cases, when a plaintiff settles with one defendant, the non-settling defendants are entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the non-settling defendants as long as both the settlement and judgment represent common damages. . . . The set-off is not an affirmative defense." *Allstate Ins. Co. v. Polack*, No. 08-CV-565, 2012 WL 4489282, at \*7 (E.D.N.Y. Sept. 12, 2012) (quotations omitted), *report and recommendation adopted*, 2012 WL 4490775 (Sept. 28, 2012).

Recommendation have been corrected and that none of its mailings have been returned as undeliverable. The Court also recommends that the default entered against the three settling Defendants be vacated. *See supra*, note 1.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.") (quotations omitted).

Allstate is directed to serve a copy of this Report and Recommendation on each defaulting Defendant and file proof of such service on the record.

                                        SO ORDERED.

                                        */s/ Sanket J. Bulsara February 21, 2019*
                                        SANKET J. BULSARA
                                        United States Magistrate Judge

Brooklyn, New York