**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY,** *et al.*, | |
| **Plaintiffs,** | |
| -against- | **16-CV-1465** |
| **DMITREI ABRAMOV,** *et al.*, | **(AMD) (SJB)** |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55 AGAINST DEFENDANTS DMITREI ABRAMOV, BORIS KHANIS, INNA LYUBRONETSKAYA, OLEG SHNAIDER, EMPIRE STATE MEDICAL SUPPLIES, INC., LIBERTY SURGICAL SUPPLIES, INC., PACIFIC SURGICAL SUPPLY, INC., QUALITY MEDICAL SUPPLY, INC., RIDGE MEDICAL SUPPLIES CORP., GRIGOL APRESYANTSI, SERGEY MEZKULA, VALERIY SEMENIKHIN, VADIM ZALOGIN, BIV WHOLESALE, INC., COMDEX, INC, GLOBAL BEST DEAL, INC., GRIGOL SUPPLY, INC, IG&NAT SERVICES, INC., IMPREZZA NYC, INC., METRA WHOLESALE, INC., ORTIZ OMEGA CORP, VDS MEDICAL SUPPLY, INC., AND VZ GROUP, INC.**

**MORRISON MAHONEY LLP**

**WALL STREET PLAZA**
**88 PINE STREET, SUITE 1900**
**NEW YORK, NEW YORK 10005**
**TEL: (212) 825-1212**
**FAX: (212)**

*ATTORNEYS FOR PLAINTIFFS*
*ALLSTATE INSURANCE COMPANY, ET AL.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 5

STANDARD OF REVIEW ............................................................................................... 10

ARGUMENT ................................................................................................................... 14

I.    THE DEFAULTED DEFENDANTS HAVE FAILED TO PLEAD OR OTHERWISE
DEFEND AGAINST THE ACTION ............................................................................... 14

II.   BY VIRTUE OF THEIR NON-APPEARANCE, DEFAULTED DEFENDANTS
HAVE ADMITTED THE FACTUAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT. ....... 15

  A.   The Defaults were Willful .................................................................................. 15

  B.   The Defaulted Defendants Do Not Have Any Meritorious Defenses ............................ 17

  C.   Plaintiffs Will Suffer Substantial Prejudice if A Default Judgment Is Not Entered
  Against the Defaulted Defendants ............................................................................ 18

III.  THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF ................................. 20

  A.   Plaintiffs' Complaint States Valid Claims for Relief with respect to Plaintiffs'
  RICO Claims .......................................................................................................... 20

    i.     RICO Person. .......................................................................................... 21
    ii.    RICO Enterprise ....................................................................................... 23
    iii.   Pattern of Racketeering Activities ............................................................... 24
    iv.    Participation in the Racketeering Activities .................................................. 30
    v.     The Acts Alleged in the Complaint Affect Interstate Commerce ...................... 31

  B.   Plaintiffs' Complaint States Valid Common Law Fraud Claims. ................................ 32

  C.   Plaintiffs' Complaint States Valid Unjust Enrichment Claims for Relief. .................... 37

IV.   PLAINTIFFS ARE ENTITLED TO TREBLE DAMAGES ............................................. 38

  A.   Defaulted Defendants Are Jointly And Severally Liable. ........................................... 39

  B.   Plaintiffs Are Entitled To Treble Damages Under The Civil Rico Statute. ................... 40

V.    PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST ON THEIR
CLAIMS ........................................................................................................................ 41

VI.   PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT .............................. 42

CONCLUSION ................................................................................................................ 46

## TABLE OF AUTHORITIES

### Cases

*Abdou-Khadra v. Mahshie*,
　　4 F.3d 1071 (2d Cir. 1993). ......................................................................... 39, 40

*Abramovich v. Oliva*,
　　11 CV 1755 ERK SMG, 2012 WL 3597444 (E.D.N.Y. Aug. 20, 2012). ............................ 25

*Action S.A. v. Marc Rich & Co., Inc.*,
　　951 F.2d 504 (2d Cir.1991). ........................................................................ 39

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*,
　　04-CV-2934 ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005). .......................... 25, 34, 35

*Allstate Ins. Co. v. Abutova*,
　　No. 13 CV 3494 (ARR) (LB), 2017 WL 1185222 (E.D.N.Y. Feb. 15, 2017), *report*
　　*and recommendation adopted*, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017). .............. *passim*

*Allstate Ins. Co. v. Afanasyev*,
　　No. 12-CV-2423-JBW-CLP, 2016 WL 1156769 (E.D.N.Y. Feb. 11, 2016),
　　*report and recommendation adopted* 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016). ...........11

*Allstate Ins. Co. v. Aminov*,
　　No. 11-CV-2391 (MKB), 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014). ........................ *passim*

*Allstate Ins. Co. v. Bogoraz*,
　　10-CV-5286 SJF ETB, 2012 WL 1655552 (E.D.N.Y. May 9, 2012). ........................... 16, 18

*Allstate Ins. Co. v. Halima*,
　　06-CV-1316 DLI SMG, 2009 WL 750199 (E.D.N.Y. Mar. 19, 2009). ............................... 35

*Allstate Ins. Co. v. Howell*,
　　No. 09-CV-4660(RJD) (VVP), 2013 WL 5447152 (E.D.N.Y. Sept. 30, 2013). .............. 24, 40

*Allstate Ins. Co. v. Kumar*,
　　No. 10-CV-8166, 2013 WL 2395748 (S.D.N.Y. Jun. 3, 2013). ............................................ 39

*Allstate Ins. Co. v. Lyons*,
　　843 F. Supp. 2d 358 (E.D.N.Y. 2012). ................................................................ 23

*Allstate Ins. Co. v. Nazarov*,
　　No. 11 CV 6187 PKC VMS, 2015 WL 5774459 (E.D.N.Y. Sept. 30, 2015). ............... *passim*

*Allstate Ins. Co. v. Rozenberg*,
　　590 F. Supp. 2d 384 (E.D.N.Y. 2008). .............................................................. 30

*Allstate Ins. Co. v. Smirnov*,
   12-CV-1246 CBA, 2013 WL 5407224 (E.D.N.Y. Aug. 21, 2013). .......................... 25, 39, 40

*Allstate Ins. Co. v. Valley Physical Med.& Rehab., P.C.*,
   05-CV-5934 DRH MLO, 2009 WL 3245388 (E.D.N.Y. Sept. 30, 2009). ...................... 21, 30

*AW Indus., Inc. v. Sleep Well Mattress, Inc.*,
   07-CV-3969 SLT JMA, 2009 WL 485186 (E.D.N.Y. Feb. 26, 2009) ................................... 13

*Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc.*,
   972 N.Y.S.2d 458 (N.Y. Sup. Ct. 2013). ................................................................................ 35

*Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal
   Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*,
   12-CV-3363 KAM VMS, 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014). ................................ 12

*Bounty Fresh, LLC v. J N.Y. Produce, Inc.*,
   12-CV-2415 FB JO, 2014 WL 1010833 (E.D.N.Y. Mar. 14, 2014). ................................... 20

*Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*,
   15 CV 0080 (AMD) (CLP), 2017 WL 4326562 (E.D.N.Y. Sept. 11, 2017),
   r*eport and recommendation adopted*, 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017) ...........11

*Buffalo Laborers Welfare Fund v. Elliott*,
   No. 04-CV-516S, 2008 WL 907385 (W.D.N.Y. Mar. 31, 2008). ........................................... 17

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
   508 U.S. 831 (1993) ................................................................................................................. 42

*Cazarez v. Atl. Farm & Food Inc.*,
   No. 15-CV-2666-CBA-RML, 2017 WL 3701687 (E.D.N.Y. May 31, 2017), *report
   and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017). ............... 10, 20

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ............................................................................................................ 22, 24

*Circuito Cerrado, Inc. v. Morgalo Corp.*,
   10-CV-3338 JS AKT, 2011 WL 3919411 (E.D.N.Y. July 29, 2011), *report and
   recommendation adopted*, 2011 WL 3919679 (E.D.N.Y. Sept. 7, 2011). .............................. 13

*Conte v. Newsday, Inc.*,
   703 F. Supp. 2d 126 (E.D.N.Y. 2010). .................................................................................... 29

*Cummings v. HCHC, Inc.*,
   No. CV-17-3907 (BMC), 2017 WL 4162306 (E.D.N.Y. Sept. 19, 2017) ............................. 13

*DeFalco v. Vernas*,
   244 F.2d 286 (2d Cir. 2001). ....................................................................................... 21, 30, 31

*Div. 1181 Amalg. Transit Union-N.Y. Employees Pension Fund v. D & A Bus Co., Inc.*,
270 F. Supp. 3d 593 (E.D.N.Y. 2017). ...................................................................11

*Dolan v. Fairbanks Capital Corp.*,
930 F. Supp. 2d 396 (E.D.N.Y. 2013). ................................................................. 20

*E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*,
241 F.3d 154 (2d Cir. 2001). .............................................................................. 43

*Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken*,
CV 11-46 JS AKT, 2012 WL 194075 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken Arch. Wood*,
2012 WL 832452 (E.D.N.Y. Mar. 12, 2012). ......................................................... 18

*Feel Better Kids, Inc. v. Kids in Need, Inc.*,
06-CV-0023 DRH AKT, 2012 WL 4483000 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012). ..................... 16, 19

*Ferri v. Berkowitz*,
678 F. Supp. 2d 66 (E.D.N.Y. 2009). .................................................................... 26

*Finkel v. Robco Elec. Corp.*,
11-CV-2353 NGG RLM, 2011 WL 3204603, (E.D.N.Y. July 27, 2011) ...........................11

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009). ...............................................................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004). ......................................................................... 24, 26

*Fustok v. ContiCommodity Servs. Inc.*,
873 F.2d 38 (2d Cir.1989). ............................................................................... 39

*Gesualdi v. Magnolia Pro Trucking Inc.*,
11-CV-4082 ADS AKT, 2012 WL 4036119, (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom. Gesualdi v. Magnolia PRO Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012). ............................................................. 15

*Gesualdi v. Reid*,
198 F. Supp. 3d 211 (E.D.N.Y. 2016), *motion for relief from judgment denied sub nom. Gesualdi v. J.H. Reid, Gen. Contractor*,
No. 14-CV-4212(ADS) (GRB), 2017 WL 752157 (E.D.N.Y. Feb. 27, 2017). ............... 13, 20

*Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd.*,
  10-CV-5611 JG JMA, 2012 WL 1427796 (E.D.N.Y. Apr. 6, 2012), *report and
  recommendation adopted,* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012).....................*passim*

*Gov't Employees. Ins. Co. v. Active Care*,
  2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015). ..................................................... 44

*Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*,
  12-CV-4295(NG)(JO), 2013 WL 5131057 (E.D.N.Y. Sept. 12, 2013)...........................11, 23

*Gov't Employees Ins. Co. v. Damien*,
  10-CV-5409 SLT JMA, 2011 WL 5976071 (E.D.N.Y. Nov. 3, 2011), *report and
  recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010). ................ 16, 18, 19

*Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*,
  No. 13-CV-4966 MKB SMG, 2015 WL 5692875 (E.D.N.Y. Sept. 4, 2015), *report
  and recommendation adopted sub nom. Gov't Employees Ins. Co. v. Zemlyansky*,
  2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015) ...................................................... 24

*Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*,
  11-CV-4261 ARR RER, 2013 WL 764735 (E.D.N.Y. Feb. 8, 2013), *report and
  recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013). .................. 41, 42, 45

*Gov't Employees Ins. Co. v. Li-Elle Serv., Inc.*,
  12-CV-2157 KAM VMS, 2013 WL 829302 (E.D.N.Y. Feb. 11, 2013), *report and
  recommendation adopted as modified*, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013). ...... 19, 42

*Gov't Employees Ins. Co. v. Simakovsky*,
  No. 14 CIV 3775 KAM SMG, 2015 WL 5821407 (E.D.N.Y. Oct. 5, 2015) ...................... 24

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)................................................................................. 25, 27, 28

*Hemmerdinger Corp. v. Ruocco*,
  12-CV-2650 WFK VMS, 2013 WL 5516194 (E.D.N.Y. Oct. 7, 2013). ............................... 26

*In re Crazy Eddie Sec. Litig.*,
  948 F. Supp. 1154 (E.D.N.Y. 1996). ..................................................................... 41

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*,
  879 F. Supp. 2d 243 (E.D.N.Y. 2012) ................................................................... 23

*Luna v. Gon Way Constr., Inc.*,
  16 Civ. 1411 (ARR) (VMS), 2017 WL 835321 (E.D.N.Y. Feb. 14, 2017), *report
  and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017). ............. 12, 15, 18

v

*Mack Fin. Servs. v. Poczatek,*
    CV 10-3799 JS AKT, 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011), *report and*
    *recommendation adopted in part,* 10-CV-3799 JS ETB, 2011 WL 4628692
    (E.D.N.Y. Sept. 30, 2011). ........................................................................................ 17

*Mahoney v. Amekk Corp.,*
    No. 14 civ 4131 (ENV)(VMS), 2016 WL 6585810 (E.D.N.Y. Sept. 30, 2016),
    *report and recommendation adopted,* 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). ............ 17

*Md. Cas. Co. v. Rosen,*
    445 F.2d 1012 (2d Cir. 1971). .............................................................................. 43

*Mejia v. United States,*
    862 F. Supp. 2d 263 (E.D.N.Y. 2012). .................................................................. 31

*Merrill Lynch & Co. Inc.,*
    500 F.3d 171 (2d.Cir. 2007). ................................................................................ 35

*Metromedia Co. v. Fugazy,*
    983 F.2d 350 (2d Cir. 1992). ................................................................................ 26

*NAP, Inc. v. Shuttletex, Inc.,*
    112 F. Supp. 2d 369 (S.D.N.Y. 2000). ................................................................. 43

*Olin Corp. v. Consol. Aluminum Corp.,*
    5 F.3d 10 (2d Cir. 1993). ...................................................................................... 42

*Orion Pictures Corp. v. Showtime Networks, Inc.,*
    4 F.3d 1095 (2d Cir. 1993). .................................................................................. 43

*Pecarsky v. Galaxiworld.com Ltd.,*
    249 F.3d 167 (2d Cir. 2001). ................................................................................ 12

*Pennsylvania Manufacturers Indem. Co. v. Citywide Transit, Inc.,*
    No. 16-CV-3842-KAM-CLP, 2017 WL 2992531 (E.D.N.Y. June 26, 2017), *report*
    *and recommendation adopted,* 2017 WL 2992099 (E.D.N.Y. July 13, 2017). ................10, 11

*Philip Morris USA Inc. v. A & V Minimarket, Inc.,*
    592 F. Supp. 2d 669 (S.D.N.Y. 2009). .................................................................11

*Phillips 66 Co. v. TNT Petroleum, Inc.,*
    No. 15-CV-5938 (DRH) (SIL), 2017 WL 765884 (E.D.N.Y. Feb. 2, 2017), *report*
    *and recommendation adopted,* 2017 WL 758498 (E.D.N.Y. Feb. 27, 2017),
    *corrected and superseded,* 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017). ........................ 12, 18

*Pieper v. Benerin, LLC,*
    12-CV-3999 ADS AKT, 2013 WL 4506164 (E.D.N.Y. Aug. 22, 2013). ............................. 27

*Premium Sports Inc. v. Alzate*,
    10-CV-1982-CBA, 2011 WL 1240558 (E.D.N.Y. Feb. 25, 2011), *report and
    recommendation adopted as modified*, 2011 WL 1258511
    (E.D.N.Y. Mar. 30, 2011) ..................................................................................... 11

*S.E.C. v. McNulty*,
    137 F.3d 732 (2d Cir. 1998) ............................................................................... 12, 15

*SKS Constructors, Inc. v. Drinkwine*,
    458 F. Supp. 2d 68 (E.D.N.Y. 2006) ........................................................................ 27

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ..................................................................................... 27

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
    09-CV-2990 JS, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010),
    *aff'd*, 409 F. App'x 453 (2d Cir. 2011) ................................................................... 41

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
    2009 WL 10449036 (E.D.N.Y. Dec. 30, 2009) ......................................................... 45

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
    409 F. App'x 453 (2d Cir. 2011) .............................................................................. 12

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C.*,
    04-CV-5045 ILG, 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) ........................... 25, 35

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    655 F. Supp. 2d 212 (E.D.N.Y. 2009) ................................................................. *passim*

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) ................................................................... 33, 35

*State Farm Mut. Auto. Ins. Co. v. Rabiner*,
    749 F. Supp. 2d 94 (E.D.N.Y. 2010) ......................................................................... 37

*Steinberg v. Sherman*,
    07-CV-1001 WHP, 2008 WL 1968297 (S.D.N.Y. May 2, 2008) ............................. 41

*Sunny Farms Landfill LLC v. Rail Sols., LLC*,
    CV 15-5988 (ADS)(AKT), 2017 WL 4011137 (E.D.N.Y. Aug. 24, 2017), *report
    and recommendation adopted*, 2017 WL 4011242 (E.D.N.Y. Sept. 11, 2017) ..................... 12

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt.
    Cooperation, Pension & Welfare Funds v. C. Downing Enterprises LLC*,
    No. 14-CV-323 ADS AKT, 2015 WL 1042481 (E.D.N.Y. Mar. 10, 2015) ........................ 17

*Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Impr. & Safety Funds v. Tri State Constr. & Masonry Corp.*,
No. 15-CV-6686(RJD)(RER), 2017 WL 2559126 (E.D.N.Y. June 13, 2017) ...................... 13

*United Air Lines, Inc. v. United Airways, Ltd.*,
09-CV-4743 KAM JMA, 2013 WL 1290930 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013). ................ 16, 18, 19

*United States v. Applins*,
673 F.3d 59 (2d Cir. 2011). ............................................................................................ 23

*United States v. Aulicino*,
44 F.3d 1102 (2d Cir. 1995). ........................................................................................... 27

*United States v. Bortnovsky*,
879 F.2d 30 (2d Cir. 1989). ............................................................................................ 25

*United States v. Busacca*,
936 F.2d 232 (6th Cir. 1991). ......................................................................................... 27

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008). ........................................................................................... 31

*United States v. O'Connor*,
910 F.2d 1466 (7th Cir. 1990). ....................................................................................... 27

*United States v. RW Prof. Leasing Servs. Corp.*,
452 F. Supp. 2d 159 (E.D.N.Y. 2006) ............................................................................ 33

*United States v. Silverman*,
No. 15-CV-22 (DRH) (SIL), 2017 WL 745732 (E.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 744573 (E.D.N.Y. Feb. 24, 2017). ............................ 15

*United States v. Williams*,
11-CV-3593 NGG RLM, 2012 WL 170106 (E.D.N.Y. Jan. 19, 2012) .............................. 11

*Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*,
196 F. Supp. 2d 378 (S.D.N.Y. 2002). ........................................................................... 43

*W & D Imports, Inc. v. Lia*,
11-CV-4144 SJF ETB, 2013 WL 1750892 (E.D.N.Y. Apr. 22, 2013), *aff'd*, 13-1983-CV, 2014 WL 1465383 (2d Cir. Apr. 16, 2014). ......................................... 27

*Wood v. Inc. Vill. of Patchogue of New York*,
311 F. Supp. 2d 344 (E.D.N.Y. 2004). ........................................................................... 22

**Statutes**

18 U.S.C. § 1341 ............................................................................................................ 24, 26

18 U.S.C. § 1961 ......................................................................................................... 21, 23, 24

18 U.S.C. § 1962 ............................................................................................................ 20, 21

18 U.S.C. § 1964 .................................................................................................................... 5

18 U.S.C. § 1964 .................................................................................................... 5, 20, 40

28 U.S.C. § 2201 .................................................................................................................. 42

N.Y. Ins. Law § 403 ............................................................................................................ 36

N.Y. Ins. Law § 5101 ............................................................................................................ 6

**Rules**

Fed. R. Civ. P. 4 .................................................................................................................. 14

Fed. R. Civ. P. 55 ...................................................................................................... *passim*

Loc. Civ. R. 55.1 .................................................................................................................. 1

Loc. Civ. R. 55.2 .................................................................................................................. 1

N.Y. C.P.L.R. § 5001 .......................................................................................................... 42

**Regulations**

12 N.Y.C.R.R. § 442.2 .......................................................................................................... 6

## INTRODUCTION

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, and Allstate Property and Casualty Insurance Company ("Plaintiffs") respectfully submit this memorandum of law in support of their renewed motion (the "Second Motion" or the "Motion") for entry of default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rules 55.1 and 55.2 of the Local Civil Rules for the Southern and Eastern Districts of New York (the "Local Rules") against Defendants Dmitrei Abramov ("Abramov"), Boris Khanis ("Khanis"), Inna Lyubronetskaya ("Lyubronetskaya"), Oleg Shnaider ("Shnaider"), (the "Defaulted Retail Owners"); Empire State Medical Supplies, Inc. ("Empire State Medical Supplies"), Liberty Surgical Supplies, Inc. ("Liberty Surgical Supplies"), Pacific Surgical Supply, Inc. ("Pacific Surgical Supply"), Quality Medical Supply, Inc. ("Quality Medical Supply"), Ridge Medical Supplies Corp. ("Ridge Medical Supplies") (the "Defaulted Retailers," and with the Defaulted Retail Owners, the "Defaulted Retail Defendants"); Grigol Apresyantsi ("Apresyantsi"), Sergey Mezkula ("Mezkula"), Valeriy Semenikhin ("Semenikhin"), Vadim Zalogin ("Zalogin") (the "Defaulted Wholesale Owners"); Biv Wholesale, Inc. ("Biv Wholesale"), Comdex, Inc. ("Comdex"), Global Best Deal, Inc. ("Global Best Deal"), Grigol Supply, Inc. ("Grigol Supply"), IG&NAT Services, Inc. ("IG&NAT Services"), Imprezza NYC, Inc. ("Imprezza NYC"), Metra Wholesale, Inc. ("Metra Wholesale"), Ortiz Omega Corp. ("Ortiz Omega"), VDS Medical Supply, Inc. (VDS Medical Supply"), and VZ Group, Inc. ("VZ Group") (the "Defaulted Wholesalers," and with the Defaulted Wholesale Owners, the "Defaulted Wholesale Defendants," and with the

Defaulted Retail Defendants, the "Defaulted Defendants")[1] for their failure to answer or otherwise defend against the above captioned action.

## PRELIMINARY STATEMENT

Notwithstanding that Plaintiffs' First Amended Complaint (hereinafter "Complaint") in the instant matter was served upon all of the Defaulted Defendants nearly three (3) years ago,[2] they all have defaulted and remain in default.  In light of these individuals' and entities' failure to appear, answer or defend against this action, and for the reasons that follow, it is respectfully submitted that default judgment should be entered here against all Defaulted Defendants.

As a threshold matter, this Second Motion is being filed in response to the Court's denial of Plaintiffs' First Motion in which the Court raised questions relating to proof of proper service of the First Motion upon certain Defendants in the manner specified in the Local Rules and subsequently denied it without prejudice to renewal.   Through this Second Motion, it is respectfully submitted that Plaintiffs have addressed those concerns and have demonstrated that this Motion has been properly served at the last known residential or business address of each Defaulted Defendant.  *See* McKenney Decl. ¶¶ 52-61.  Accordingly, Plaintiffs submit that default judgment is appropriate   in light of such Defendants' willful default, without any meritorious defense and when Plaintiffs would suffer prejudice if a default judgment were not granted.

First, there is no doubt that the Defaulted Defendants' defaults were willful.  In the Second Circuit, when a defendant fails to respond to a properly served summons and complaint, as is the

---

[1] Plaintiffs' previous motion for default judgment (the "First Motion") also included as Defaulted Defendants Margarita Akmalova ("Akmalova") and American Mobility Medical, Inc. ("American Mobility"), but they have been excluded here in view of existing unsatisfied judgments against them exceeding $500,000, as well as extreme difficulty in locating a serviceable recent residential address for Akmalova.  *See* McKenney Decl. ¶ 2, n. 3.

[2]. Plaintiffs filed the Complaint on May 9, 2016. *See* Civil Docket Sheet No. 5. A copy of the Complaint is annexed to the McKenney Declaration ("McKenney Decl.") as Exhibit "2." The last of the Defaulted Defendants were served on or about July 15, 2016. *See* Civil Docket Sheet No. 93. Copies of the Affidavits of Service upon each Defaulted Defendant are annexed to the McKenney Decl. as Exhibits "3" through "27."

case here, such conduct is deemed willful for the purposes of default judgment.  Second, as a matter of law, when no answer is served, a meritorious defense cannot be established.  Third, because Plaintiffs have expended considerable resources in this matter, including but not limited to moving to serve Defaulted Defendants Abramov, Akmalova, Apresyantsi, Khanis, Lyubronetskaya, Mezkula, and Semenikhin by alternative means, effectuating such service, seeking Clerks' Entries of Default, as well as filing the instant Motion, whose denial would leave Plaintiffs without recourse to seek the relief sought in the Complaint, the substantial prejudice that Plaintiffs would suffer if default judgment is not entered against the Defaulted Defendants is apparent.

Moreover, given that by virtue of Defaulted Defendants' failure to appear in this action, Plaintiffs' allegations as set forth in the Complaint must be accepted as true, and because the Complaint sets forth detailed allegations establishing the Defaulted Defendants' liability, it is respectfully submitted that the only real issue before the Court is the amount of damages owed to Plaintiffs.  In that regard, as more fully set forth in the accompanying Declarations of James A. McKenney, Esq. (the "McKenney Declaration") and Michael Bruno (the "Bruno Declaration"), Plaintiffs are entitled to receive treble damages, jointly and severally, from the Defaulted Defendants for their violations under the RICO statute, as well as compensatory damages and pre-judgment interest.  The chart below sets forth the damages owed to Plaintiffs by the Defaulted Defendants, which amounts were calculated in a manner consistent with the modern view of courts in the Second Circuit that permits plaintiffs to treble RICO damages and pursuant to New York State law, which allows for recovery of pre-judgment interest. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request that default judgment be entered against the

Defaulted Defendants in the following amounts, a breakdown of which is set forth in Exhibit "71" to the McKenney Declaration:

| Defaulted Defendant | Retailer Enterprise(s) | Total Judgment Sought |
|---|---|---|
| Dmitrei Abramov | Liberty Surgical Supplies | $68,291.26 |
| Grigol Apresyantsi | Quality Medical Supply | $95,404.97 |
| Boris Khanis | Ridge Medical Supplies | $713,415.69 |
| Inna Lyubronetskaya | Empire State Medical Supplies | $263,000.17 |
| Sergey Mezkula | Any Medical Supply | $191,426.58 |
| Oleg Shnaider | Pacific Surgical Supply | $28,336.56 |
| Valeriy Semenikhin | Quality Medical Supply | $95,404.97 |
| Vadim Zalogin | Any Medical Supply | $275,695.66 |
| | New Utrech | |
| Biv Wholesale | Bento Ortho Inc. | $250,055.36 |
| | Pravel, Inc. | |
| Comdex | Milldorp Inc. | $260,308.25 |
| | Sureway NY Inc. | |
| Empire State Medical Supplies | N/A | $115,002.43 |
| Global Best Deal | Any Medical Supply | $191,426.58 |
| Grigol Supply | Quality Medical Supply | $95,404.97 |
| IG&NAT Services | Any Medical Supply | $191,426.58 |
| Imprezza NYC | Maxford | $249,603.80 |
| Liberty Surgical Supplies | N/A | $29,808.18 |
| Metra Wholesale | Quality Custom Medical Supply | $50,650.82 |
| Ortiz Omega Corp | Infinite Ortho Products | $107,497.62 |
| Pacific Surgical Supply | N/A | $11,895.12 |
| Quality Medical Supply | N/A | $42,026.73 |

| Ridge Medical Supplies | N/A | $328,794.07 |
|---|---|---|
| VDS Medical Supply | Quality Medical Supply | $95,404.97 |
| VZ Group | Any Medical Supply | $275,695.66 |
| | New Utrech Services Inc. | |

Similarly, in light of the default of Defaulted Retail Defendants Empire State Medical Supplies, Liberty Surgical Supplies, Dmitrei Abramov, Pacific Surgical Supply, Shnaider, Quality Medical Supply, Semenikhin, Ridge Medical Supplies and Boris Khanis, and the fact that the allegations in Complaint must be accepted as true, it is respectfully submitted that Plaintiffs' Complaint clearly establishes the existence of an actual case or controversy between Plaintiffs and the Defaulted Retail Defendants about the fraudulent billing for DME and orthotic devices that allegedly have been provided to Plaintiffs' insureds. Therefore, because the Defaulted Retail Defendants and are deemed to have admitted these allegations, Plaintiffs are entitled to a declaration that they are not obligated to pay the Defaulted Retail Defendants pending and /or unpaid fraudulent claims.

## FACTUAL BACKGROUND

Plaintiffs commenced this action on March 25, 2016, *see* Civil Docket Sheet No. 1, and subsequently filed their First Amended Complaint on March 9, 2016, alleging, *inter alia,* significant violations of R.I.C.O. (18 U.S.C. § 1964(c) by, among others, the Defaulted Defendants. As of the date of this filing, Plaintiffs have settled with each of the active Defendants in this matter, leaving only the Defaulted Defendants, which are the subject of this application.

The Complaint alleges, among other things, that the owners of numerous DME and orthotic device retail supply companies (generally referred to as the "Retail Owners")—including Defaulted Retail Owners Abramov, Khanis, Lyubronetskaya, and Shnaider—through their retail

DME companies (generally referred to as the "Retailers")—including Defaulted Retailers Empire State Medical Supplies, Liberty Surgical Supplies, Pacific Surgical Supply, Quality Medical Supply, and Ridge Medical Supplies Corp.—participated in the mechanics and execution of massive parallel schemes to defraud in which the Retail Owners, through the Retailers, mailed thousands of fraudulent insurance claims for DME and orthotic devices to Plaintiffs for reimbursement pursuant to the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, N.Y. Ins. Law § 5101 *et seq.* (popularly known as the "No-fault Law"). *See* Exh. "2" at ¶¶ 1-2, 17, 43, 100, 106, 119, 121, 507, 512–13, 522, 759, 764–65, 773–74, 1033, 1038-39, 1048, 1218, 1223–24, 1232–33, 1255, 1260–61, and 1269–70. The Retail Owners and Retailers are collectively referred to herein as the "Retail Defendants."

As described in the Complaint, the Retailer Owners, through the Retailers, exploited the No-fault system by billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed, or if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided, and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices.[3] *See* Exh. "2" at ¶¶ 16, 18, 23, 39, 48, 170, 172, 187, 192, 215, 217, 231–35, 244, 255–57, 266–67, 282–92.

As set forth within the body of the Complaint, as well as in its numerous exhibits and tables setting forth a representative sample of predicate acts, the Retail Owners, through the Retailers, exploited and abused the No-fault Law through various fraudulent billing practices in which they

---

3. DME generally refers to equipment and/or supplies used for a medical purpose by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools. *See* Exh. "2" at ¶ 2. Orthotic devices generally refer to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes. Such items include, but are not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces. *Id.*

engaged in a pattern and practice of billing for medically unnecessary DME and/or orthotic devices purportedly provided to claimants pursuant to a kickback scheme through which medical clinics provided fraudulent prescriptions which allowed the Retail Owners, through the Retail Defendants, to bill Plaintiffs and other insurers pursuant to a predetermined protocol, irrespective of need. *Id.* at ¶¶ 3, 5–6, 15–16, 172, 174, 185, and 188–92. In addition, the Retailer Owners, through the Retailers, routinely submitted bills and supporting documentation to Plaintiffs that misrepresented that: (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retail Owners, through the Retailers, were utilizing phantom codes for which there was no published fee schedule; (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items was the lesser of their acquisition costs, plus 50% or the usual and customary price charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Retailers' bills corresponded with the equipment purportedly provided.[4] Exh. "2" at ¶¶ 31, 33-34, 169, 214, 219–28, 230–31, 235, and 239 and Compl. Exhs. 2, 8–16, 20–25, and 27–31.

Furthermore, the Retail Owners, through the Retailers, also routinely submitted fraudulent bills to Plaintiffs in support of claims for (i) expensive custom fabricated DME and/or orthotic devices, despite the fact that to the extent anything was provided, the DME and/or orthotic devices were cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants'

---

4. The New York State Medicaid program has established limits on the maximum permissible charges for, among other things, DME and/or orthotic devices. These limits are listed on the New York State Medicaid DME Services Fee Schedule (hereinafter the "Fee Schedule"). During the relevant time period in the Complaint, "the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided [(the "Fee Schedule Items")]…." *See* 12 N.Y.C.R.R. § 442.2. For items for which the NYS Medicaid program has not established a fee payable for the specific item (the "Non-Fee Schedule Items"), the NYS Workers' Compensation Board regulation provides that the fee payable shall be the lesser of: the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or the usual and customary price charged to the general public. 12 N.Y.C.R.R. § 442.2(a).

measurements; (ii) expensive custom-fitted DME and/or orthotic devices, such as lumbar sacral orthosis ("LSOs") as well as knee, wrist, elbow and shoulder braces that were never provided; (iii) expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed; and (iv) reimbursement of DME and/or orthotic devices in excess of the relevant Fee Schedule in existence at the time. *See, e.g., id.* at ¶¶ 217, 240, 243-44, 246, 248, 253, 255, 266-67, 269–71, 278– 282, and 286; Compl. Exhs. 6-7, 20–25, 27–31, 34–39, 41–46, 48, 50, 52–56. Each of those bills materially misrepresented the nature, cost and quality of the DME and/or orthotic device purportedly provided, to the extent the items were provided at all. *Id.* at ¶¶ 16, 36–37, 42, 170, 172, 174, 193, 207, 228–30, 522, 774, 1048, 1233, 1270, 1623, and 1625.

In addition, in furtherance of the scheme to defraud, one or more of the Retailers also entered into agreements with one or more of Defaulted Defendants Akmalova, Apresyantsi, Mezkula, Semenikhin, and Zalogin (collectively the "Wholesale Owners"), through their respective corporations American Mobility Medical, Biv Wholesale, Comdex, Global Best Deal, Grigol Supply, IG&NAT Services, Imprezza NYC, Metra Wholesale, Ortiz Omega, VDS Medical Supply, and VZ Group (collectively the "Wholesalers"), through which these Wholesalers supplied the invoices that certain Retailers used to document inflated and outrageous wholesale costs for the DME and/or orthotic devices, for which they submitted bills to, and were paid by, Plaintiffs.[5] *Id.* at ¶¶ 6, 9, 132–39, 141–43, 174–78, 185, 198-99, 397, 434, 508, 708, 723, 908, 923, 960, 1209, 1219. The Wholesale Owners and Wholesalers are collectively referred to herein as the "Wholesale Defendants."

---

5. With specific regard to the Defaulted Wholesalers, the Complaint alleges that: American Mobility Medical supplied Empire State Medical Supplies; Grigol Supply supplied Quality Medical Supply; VDS Medical Supply supplied Quality Medical Supply; Global Best Deal supplied Any Medical Supply, Inc.; IG&NAT Services supplied Any Medical Supply, Inc.; VZ Group supplied Any Medical Supply, Inc. and New Utrech Services, Inc.; Biv Wholesale supplied Bento Ortho Inc. and Pravel Inc.; Ortiz Omega Corp supplied Infinite Ortho Products Inc.; Imprezza NYC, Inc. supplied Maxford Inc.; Comdex, Inc. supplied Milldorp Inc. and Sure Way NY Inc.; and Metra Wholesale supplied Quality Custom Medical Supply, Inc. *See* Exhibit "2" at ¶¶ 132-43.

As alleged in the Complaint, the Wholesale Defendants (and No-fault Clinics) provided the means through which the Defaulted Defendants were able to execute their scheme to defraud. *Id*. at ¶¶ 176, 178, 193, 208, 425, 462, 751, 862, 951, 988, 1210, and 1247. Importantly, the fraudulent wholesale invoices were provided with the knowledge that they would be submitted to insurers, in general, and Plaintiffs in particular, to obtain reimbursement under the No-fault Law in excess of the actual cost of the DME and/or orthotic devices purportedly provided. *Id*. at ¶¶ 175-77, 179, 182, and 209.

Specifically, to the extent the Retailers provided any DME and/or orthotic devices to No-fault claimants, the DME and/or orthotic devices were inexpensive items that were materially misrepresented in the wholesale invoices to be much higher in cost than the actual items provided by the Wholesale Defendants. *Id*. at ¶¶ 6, 174–76, and 198–200. In that regard, the wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices that were actually provided to the Claimants. *Id*. at ¶¶ 6 and 201. In other instances, the DME and/or orthotic devices reflected in the wholesale invoices that were purportedly provided by the Wholesale Defendants to the Retailers were, in fact, never actually provided to the Retailers; rather, the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create the illusion of a sale. *Id*. at ¶¶ 6 and 203.

In return for the inflated and/or illusory invoices, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice. *Id*. at ¶¶ 7, 176, 204–05, and 298. The Wholesale Defendants would then convert the checks to cash through check cashing establishments, or by other means, and would return the majority of the money to the Retailers while keeping a portion of the profits of the scheme for themselves. *Id*. at ¶¶ 7, 172, 176,

204-06, and 294–98. With the assistance of the Wholesale Defendants, the Retail Owners, through the Retailers, were able to submit thousands of fraudulent insurance claims to Plaintiffs for reimbursement under the No-fault Law; claims that Plaintiffs would not have otherwise paid had they known of their fraudulent nature. *Id.* at ¶¶ 4-7, 167, 415, 452, 526, 741, 778, 852, 941, 978, 1052, 1200 1237 , 1274 , and 1607.

## **STANDARD OF REVIEW**

Rule 55(a) of the F.R.C.P. provides for entry of a default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Rule 55 sets forth a two-step process that first requires the entry of default by the Clerk of Court, and then entry of a default judgment, which is the final action in the case. *See Allstate Ins. Co. v. Abutova*, No. 13 CV 3494 (ARR)(LB), 2017 WL 1185222, at *3 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017); *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834, at *4 (E.D.N.Y. Feb. 7, 2014) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). After a default has been entered against a party, if the party fails to appear or otherwise move to set aside the default judgment pursuant to Fed. R. Civ. P. 55(c), a default judgment may be entered pursuant to Fed. R. Civ. P. 55(b). *Abutova,* 2017 WL 1185222, at *3; *Aminov,* 2014 WL 527834, at *4. Furthermore, when a default is entered, the defaulting party's failure to defend constitutes an admission of all well-pleaded factual allegations set forth in the complaint. *See Pennsylvania Manufacturers Indem. Co. v. Citywide Transit, Inc.*, No. 16-CV-3842-KAM-CLP, 2017 WL 2992531, at *5 (E.D.N.Y. June 26, 2017) (*citing Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)), *report and recommendation adopted*, 2017 WL 2992099 (E.D.N.Y. July 13, 2017); *Cazarez v. Atl. Farm & Food Inc.,* No. 15-CV-2666-CBA-RML, 2017 WL 3701687, at *2 (E.D.N.Y. May 31, 2017) (*citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report*

*and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017); *Allstate Ins. Co. v. Afanasyev*, No. 12-CV-2423-JBW-CLP, 2016 WL 1156769, at *6 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted* 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016); Gov't Employees Ins. Co. v. AMD Chiropractic, P.C., 12-CV-4295(NG)(JO), 2013 WL 5131057, at *3 (E.D.N.Y. Sept. 12, 2013); *United States v. Williams,* 11-CV-3593 NGG RLM, 2012 WL 170106, at *1-2 (E.D.N.Y. Jan. 19, 2012); *Finkel v. Robco Elec. Corp.,* 11-CV-2353 NGG RLM, 2011 WL 3204603, at *2 (E.D.N.Y. July 27, 2011); *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Philip Morris USA Inc. v. A & V Minimarket, Inc.*, 592 F. Supp. 2d 669, 672 (S.D.N.Y. 2009) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993)). Moreover, the Court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including (1) "whether the grounds for default are clearly established," *Pennsylvania Manufacturers Indem. Co.*, 2017 WL 2992531, at *4; *Premium Sports Inc. v. Alzate*, 10-CV-1982-CBA, 2011 WL 1240558 (E.D.N.Y. Feb. 25, 2011), *report and recommendation adopted as modified*, CV-10-1982 CBA, 2011 WL 1258511 (E.D.N.Y. Mar. 30, 2011), (2) "whether the claims were pleaded in the Complaint thereby placing the defendants on notice," *id.* (citing Fed. R. Civ. P. 55(c)), and (3) "the amount of money potentially involved…." *id.*  (citing *Garcia v. Badyna*, No. 13 CV 4021, 2014 WL 4728287, at *4 (E.D.N.Y. Sept. 23, 2014)). *See also Bricklayers Ins. & Welfare Fund v. Vinza Concrete, Inc.*, 15 CV 0080 (AMD) (CLP), 2017 WL 4326562, at *4 (E.D.N.Y. Sept. 11, 2017), r*eport and recommendation adopted*, 2017 WL 4296729 (E.D.N.Y. Sept. 26, 2017).

In that regard, in determining whether to grant a default judgment, the Court may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *See Div. 1181 Amalg. Transit Union-N.Y. Employees Pension Fund v. D & A Bus Co., Inc.,* 270 F. Supp. 3d 593,

2017 WL 4043325, at *1 (E.D.N.Y. 2017)   (citing *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007)) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See State Farm Mut. Auto. Ins. Co. v. Cohan,* 409 F. App'x 453, 455 (2d Cir. 2011) (*citing Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are: (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Sunny Farms Landfill LLC v. Rail Sols.*, LLC, CV 15-5988 (ADS)(AKT), 2017 WL 4011137, at *4 (E.D.N.Y. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4011242 (E.D.N.Y. Sept. 11, 2017); *Luna v. Gon Way Constr., Inc.*, 16 Civ. 1411 (ARR) (VMS), 2017 WL 835321, at *4 (E.D.N.Y. Feb. 14, 2017), *report and recommendation adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017); *Phillips 66 Co. v. TNT Petroleum, Inc.*, No. 15-CV-5938 (DRH) (SIL), 2017 WL 765884, at *3 (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, 2017 WL 758498 (E.D.N.Y. Feb. 27, 2017), *order corrected and superseded*, 2017 WL 902533 (E.D.N.Y. Mar. 2, 2017) (with respect to awarded PJI); *Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, 12-CV-3363 KAM VMS, 2014 WL 674098 (E.D.N.Y. Feb. 3, 2014) (citing *Swarna v. Al–Awadi,* 622 F.3d 123, 142 (2d Cir. 2010)); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Applying the foregoing three factors to the present case, Plaintiffs respectfully submit that default judgment should be entered against the Defaulted Defendants.

With respect to damages, the movant must prove that the damages sought relate to and flow from the injuries pleaded. *See Gesualdi v. Reid,* 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016)*, motion for relief from judgment denied sub nom. Gesualdi v. J.H. Reid, Gen. Contractor,* No. 14-CV-4212(ADS)(GRB), 2017 WL 752157 (E.D.N.Y. Feb. 27, 2017); *Circuito Cerrado, Inc. v. Morgalo Corp.*, 10-CV-3338 JS AKT, 2011 WL 3919411, at *4 (E.D.N.Y. July 29, 2011), *report and recommendation adopted*, 2011 WL 3919679 (E.D.N.Y. Sept. 7, 2011). The moving party need only prove "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Circuito Cerrado, Inc.*, 2011 WL 3919411, at *4; (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 159 (2d Cir. 1992)); *see Gesualdi,* 198 F. Supp. 3d at 218. Moreover, the "moving party is entitled to all reasonable inferences from the evidence it offers. *Circuito Cerrado, Inc.*, 2011 WL 3919411, at *4 (citing *Au Bon Pain Corp.*, 653 F.2d at 64.).

In some cases, the Court may find it appropriate to conduct a hearing in order to determine the amount of damages. *Id.* However, the Second Circuit has long held that a hearing is not required where there is a basis for the damages sought such as detailed affidavits and/or other documentary evidence. *See Cummings v. HCHC, Inc.*, No. CV-17-3907 (BMC), 2017 WL 4162306, at *1 (E.D.N.Y. Sept. 19, 2017) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)); *AW Indus., Inc. v. Sleep Well Mattress, Inc.*, 07-CV-3969 SLT JMA, 2009 WL 485186, at *3 (E.D.N.Y. Feb. 26, 2009)(same); *see also Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. Tri State Constr. & Masonry Corp.,* No. 15-CV-6686(RJD)(RER), 2017 WL 2559126, at *3 (E.D.N.Y. June 13, 2017); *Koszkos v. Janton Indus., Inc.*, No. 15-CV-1700 (SJ) (JO), 2016 WL 4444329, at *2 (E.D.N.Y. Aug. 3, 2016) (citing Action S.A., 951 F.2d

at 508.), *report and recommendation adopted sub nom. Koszkos v. Janton Indus.*, No. 15 CV 1700 (SJ) (JO), 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016)

## ARGUMENT

## I.
## THE DEFAULTED DEFENDANTS HAVE FAILED TO PLEAD OR OTHERWISE DEFEND AGAINST THE ACTION

As noted above, Rule 55(a) of the F.R.C.P. provides for the entry of default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may issue a default judgment. In the present case, notwithstanding that the Complaint in the instant matter was served upon the last of the Defaulted Defendants months ago, *see* Docket No. 93, they all have failed to either appear, answer, or defend against the action.

As indicated in the affidavits of service annexed to the McKenney Declaration as Exhibits "3" through "27," and the Clerk's Certificates of Default/Docket Entries annexed as Exhibits "28" through "52," Plaintiffs served all of the corporate Defaulted Defendants in accordance with F.R.C.P. 4(h) by serving copies of the Complaint upon a person and/or authorized agent of each corporate Defaulted Defendant. Similarly, Plaintiffs served all of the individual Defaulted Defendants in accordance with F.R.C.P. 4(e) by one or more of the following methods: serving a copy of the Complaint upon the individual Defaulted Defendant personally; leaving a copy at the individual's dwelling or usual place of abode with a person of suitable age and discretion; leaving a copy with a person authorized to accept service on behalf of the individual; affixing a true copy to the individual's door and mailing a copy to the individual's last known address; or serving the individual via publication pursuant to court order and in accordance with relevant state law and procedures. *See* McKenney Decl. ¶¶ 24-32; Exhs. "3" through "27."

14

As required by the Local Rules of the Eastern District of New York, Plaintiffs requested that the Clerk of the Court enter a notation of default, certifying that that the Defaulted Defendants had not filed an answer or otherwise defended against the Complaint, which the Clerk of the Court did. By obtaining the entry of default, *see* McKenney Decl. Exhs. "28" through "52, Plaintiffs satisfied the first of the two-step process required for their application for a default judgment against the Defaulted Defendants.

## II.
## BY VIRTUE OF THEIR NON-APPEARANCE, DEFAULTED DEFENDANTS HAVE ADMITTED THE FACTUAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT.

As noted, in determining whether to grant a default judgment, the Court should consider (1) whether the defendant's default was willful, (2) whether defendant has a meritorious defense to plaintiff's claims, and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. When applying the foregoing three factors to the matter at bar, it is respectfully submitted that default judgment should be entered against the Defaulted Defendants.

### A.  The Defaults were Willful

First, there is no doubt that Defendants' defaults were willful. The Second Circuit has interpreted "willfulness" in the context of a default as conduct that is more than merely negligent or careless, *McNulty,* 137 F.3d at 738, and when, as here, defendants are properly served with a summons and complaint and fail to respond, their conduct is deemed willful for the purposes of default judgment. *See, e.g., Luna*, 2017 WL 835321, at *4; (defendant's failure to respond to the complaint sufficiently shows willfulness); *Gesualdi v. Magnolia Pro Trucking Inc.*, 11-CV-4082 ADS AKT, 2012 WL 4036119, at *3 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom. Gesualdi v. Magnolia PRO Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012) (same) (citation omitted); *see also United States v. Silverman*, No. 15-CV-22 (DRH)

(SIL), 2017 WL 745732, at *3-4 (E.D.N.Y. Feb. 3, 2017), *report and recommendation adopted*, 2017 WL 744573 (E.D.N.Y. Feb. 24, 2017) (unexcused or unexplained failure to answer complaint will itself demonstrate willfulness) (citations omitted); *Feel Better Kids, Inc. v. Kids in Need, Inc.*, 06-CV-0023 DRH AKT, 2012 WL 4483000, at *4 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 06-CV-0023 DRH AKT, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) (unexplained failure to answer complaint typically sufficient to demonstrate willfulness) (citations omitted); *Gov't Employees Ins. Co. v. Damien*, 10-CV-5409 SLT JMA, 2011 WL 5976071, at *3 (E.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010) (proper service of summons and complaint coupled with failure to respond supports a conclusion that default was willful); *United Air Lines, Inc. v. United Airways, Ltd*, 09-CV-4743 KAM JMA, 2013 WL 1290930, at *5 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013) (although plaintiff properly served complaint on defendants, they continually failed to appear and therefore defaulted willfully).

As indicated in Section I, *supra*, each Defaulted Defendant was properly served and therefore, there can be no dispute that they willfully failed to respond to the Complaint by failing to answer it or by abandoning any defense to the action. *See Allstate Ins. Co. v. Nazarov*, No. 11 CV 6187 PKC VMS, 2015 WL 5774459, at *8 (E.D.N.Y. Sept. 30, 2015); (failure to answer or respond in any way to properly served pleadings establishes willfulness of default); *Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd.*, 10-CV-5611 JG JMA, 2012 WL 1427796, at *3 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted,* 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (where the defaulting defendants were properly served with a copy of the summons and complaint and have failed to respond, that failure supports a conclusion that the default was willful); *Allstate Ins. Co. v. Bogoraz*, 10-CV-5286 SJF ETB, 2012 WL 1655552, at *4 (E.D.N.Y.

16

May 9, 2012) (willful conduct found where party was aware of case for over one year but took virtually no steps to defend himself against action, failed to file or serve an answer to complaint, failed to oppose entry of default, failed to appear at court conferences, and failed to monitor progress of case); *Buffalo Laborers Welfare Fund v. Elliott*, No. 04-CV-516S, 2008 WL 907385, at *3 (W.D.N.Y. Mar. 31, 2008) (concluding that where defendant answered but then failed to respond to discovery, comply with court orders, maintain contact with counsel, retain new counsel, or to in any way contact opposing counsel or the Court or participate in any other aspect of this case, defendant had consciously abandoned his defense of the matter and such actions were willful, justifying the striking of his answer and the entry of default against him).

## B.  The Defaulted Defendants Do Not Have Any Meritorious Defenses

The second factor for the Court to consider in determining if default judgment is appropriate is whether the Defendants have a meritorious defense. In that regard, when a defendant fails to answer the complaint, a meritorious defense cannot be established. *See, e.g.*, *Mahoney v. Amekk Corp.*, No. 14 civ 4131 (ENV)(VMS), 2016 WL 6585810, at *6 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) ("Defendants cannot establish a meritorious defense since, by failing to appear in this action, they are unable to present any evidence regarding a defense."); Nazarov, 2015 WL 5774459, at *9 (same); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. C. Downing Enterprises LLC*, No. 14-CV-323 ADS AKT, 2015 WL 1042481, at *6 (E.D.N.Y. Mar. 10, 2015) (where no answer is filed, "a court is unable to make a determination as to whether the defendant has a meritorious defense to the plaintiff's allegations, which weighs in favor of granting a default judgment"); *Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken*, CV 11-46 JS AKT, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), *report and*

recommendation adopted sub nom. *Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken Arch. Wood*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012) (same); *Mack Fin. Servs. v. Poczatek*, CV 10-3799 JS AKT, 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, 10-CV-3799 JS ETB, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) (same); *United Air Lines, Inc.,* 2013 WL 1290930, at *5 (same); *see also Infinity Health Prods.,* 2012 WL 1427796, at *3 (default judgment appropriate when defaulting defendants failed to present any defense); *Damien*, 2011 WL 5976071, at *3 (same). As noted herein, there is no question that the Defaulted Defendants were all properly served with the Complaint, and their failures to serve Answers establishes their lack of a meritorious defense for the purposes of default judgment.

### C. Plaintiffs Will Suffer Substantial Prejudice if A Default Judgment Is Not Entered Against the Defaulted Defendants

Third, Plaintiffs will suffer substantial prejudice if a default judgment is not entered against the Defaulted Defendants. As a threshold matter, since Plaintiffs have established that Defaulted Defendants' defaults were willful, and that Defaulted Defendants do not have any meritorious defenses, a strong showing of prejudice is not necessary. *See Bogoraz*, 2012 WL 1655552, at *6 (citing *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244 (2d Cir.1994)). In any event, notwithstanding the low threshold for a showing of prejudice that Plaintiffs are required to meet, the facts demonstrate that Plaintiffs would indeed suffer substantial prejudice if default judgment were not entered against the Defaulted Defendants.

If the Court were to deny Plaintiffs' application for Default Judgment, Plaintiffs would be without recourse to seek the relief sought in the Complaint, as there are no additional steps available to secure relief in this Court. *See, e.g., D & A Bus Co., Inc.*, 2017 WL 4043325 (finding prejudice where ignoring default would leave "no additional steps available to secure relief in this

Court") (citation omitted); *Nazarov*, 2015 WL 5774459, at *8 (same); *Luna*, 2017 WL 835321, at *4; *Phillips 66 Co.*, 2017 WL 765884, at *5; *United Air Lines, Inc.*, 2013 WL 1290930, at *5 (finding prejudice where the denial of a default judgment motion would leave plaintiffs without any additional recourse to secure relief in through the Court.); *Feel Better Kids, Inc.*, 2012 WL 4483000, at *10 (same); *see also Gov't Employees Ins. Co. v. Li-Elle Serv., Inc.*, 12-CV-2157 KAM VMS, 2013 WL 829302, at *4 (E.D.N.Y. Feb. 11, 2013), *report and recommendation adopted as modified*, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013) ("[I]n light of the defaulting Defendant' failure to respond and Plaintiffs' efforts to prosecute its case, ignoring the default would certainly prejudice Plaintiffs"). Indeed, in light of the Defaulted Defendants' failure to respond, requiring Plaintiffs to take any additional steps prior to a determination on the merits would be unfairly prejudicial to Plaintiffs. *See Damien*, 2011 WL 5976071, at *3 (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02–CV–9044, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003)).

Moreover, because Plaintiffs have expended considerable resources litigating this matter, including but not limited to serving a defendant by seeking leave from the Court to serve their Complaint by alternative means and completing such service, seeking and obtaining Clerks Entries of Default, as well as filing the instant application against the Defaulted Defendants, and because Plaintiffs would be without recourse to seek the relief sought in the Complaint if the instant application were denied, the substantial prejudice which Plaintiffs would suffer if default judgment is not entered against the Defaulted Defendants is not in doubt. Thus, it is respectfully submitted that the only issue left for the Court to consider is whether the Complaint sets forth viable Claims for Relief against the Defaulted Defendants. In that regard, as set forth herein, the Complaint's well-pled allegations establish that Plaintiffs are entitled to Default Judgment on the Complaint's RICO, common law fraud and unjust enrichment Claims for Relief.

## III.
## THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF

Having established that the Defaulting Defendants' defaults were willful, that they do not have any meritorious defenses, and that Plaintiffs would be prejudiced if the instant motion were denied, the Court must determine if Plaintiffs' allegations as set forth in the Complaint state valid claims. *See Cazarez*, 2017 WL 3701687, at *2 ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.")(citation omitted); *Gesualdi*, 198 F.Supp.3d at 217 ("[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action"); *Bounty Fresh, LLC v. J N.Y. Produce, Inc.*, 12-CV-2415 FB JO, 2014 WL 1010833, at *2 (E.D.N.Y. Mar. 14, 2014) (citing *Finkel*, 577 F.3d at 84) (same)). It is respectfully submitted that they do.

### A.  Plaintiffs' Complaint States Valid Claims for Relief with respect to Plaintiffs' RICO Claims.

With respect to the Complaint's Tenth, Fourteenth, Twenty-Second, Forty-Third, Forty-Fourth, Forty-Eighth, Fifty-Sixth, Sixty-Fourth, Sixty-Fifth, Sixty-Ninth, Seventy-Seventh, Ninety-Third, Ninety-Seventh, and One-Hundred-and-First Claims for Relief, Section 1964(c) of the RICO statute prescribes a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In other words, a substantive RICO violation requires a plaintiff to show: "(1) a violation of the statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Abutova*, 2017 WL 1185222, at *4 (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted)); *Aminov*, 2014 WL 527834, at *4 (same); *Dolan v. Fairbanks Capital Corp.*, 930 F. Supp. 2d 396, 408 (E.D.N.Y. 2013) (quoting

20

*DeFalco v. Vernas*, 244 F.2d 286, 305 (2d Cir. 2001)). In order to satisfy the first prong of this analysis, a violation of the statute, a plaintiff must show "(i) conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity." *DeFalco*, 244 F.2d at 306 (quoting *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495 (1985)). The Second Circuit has further held that a RICO plaintiff establishes a violation of 18 U.S.C. § 1962(c) if it shows "(i) that the defendant (ii) through the commission of two or more acts (iii) constituting a 'pattern'(iv) of 'racketeering activity' (v) directly or indirectly invest[ed] in, or maintain[ed] an interest in, or participate[d] in (vi) an 'enterprise' (vii) the activities of which affect[ed] interstate or foreign commerce." *Abutova*, 2017 WL 1185222, at *4 (citing *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,* 661 F. Supp. 2d 218, 244 (E.D.N.Y. 2009), *aff'd sub nom. RxUSA Wholesale Inc. v. Alcon Labs.,* 391 Fed.Appx. 59 (2d Cir. 2010) (citation omitted)) ; *Nazarov*, 2015 WL 5774459, at * 10; *Aminov*, 2014 WL 527834, at *4 (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see also Allstate Ins. Co. v. Valley Physical Med.& Rehab., P.C.,* 05-CV-5934 DRH MLO, 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009) (noting elements in context of No-fault billing fraud case.); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2009) (same). As indicated below, the Complaint clearly sets forth valid Claims for Relief on its RICO Claims for Relief with respect to all Defaulted Defendants named therein.

### i.  RICO Person.

Plaintiffs' Complaint alleges that each of the Defaulted Retail Owners and Defaulted Wholesale Defendants are RICO "persons" and therefore subject to liability for violations of the RICO statute. A RICO person is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The courts have determined that in a cause of action under 18 U.S.C. § 1962(c), the "person" and the "enterprise" may not be one and the same entity; it is permissible, however, that the RICO person also be one of a number of members of the RICO

enterprise. *See Wood v. Inc. Vill. of Patchogue of New York*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) (citing *Cullen v. Margiotta*, 811 F.2d 698, 730 (2d Cir.1987) *cert. denied*, 483 U.S. 1021 (1987)). Here, Plaintiffs have clearly satisfied the RICO pleading requirements with respect to the Defaulted Defendants as named "persons." As identified in the Complaint, with respect to Counts Ten, Fourteen, Twenty-Two, Forty-Three, Forty-Four, Forty-Eight, Fifty-Six, Sixty-Four, Sixty-Five, Sixty-Nine, Seventy-Seven, Ninety-Three, Ninety-Seven, and One-Hundred-and-One, each Defaulted Retail Owner and Defaulted Wholesale Defendant is an "individual or entity capable of holding a legal or beneficial interest in property," thereby satisfying the definition and pleading requirements of a RICO "person" as that term has been defined in the federal statute. Moreover, the Defaulted Retail Owners and Defaulted Wholesale Defendants are entities separate and distinct from the RICO enterprises alleged in the Complaint, thereby satisfying the pleading requirements of a RICO "person."

In that regard, in the seminal case of *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), the Supreme Court held that in order for a plaintiff to satisfy the person-enterprise distinctness requirement, the RICO statute requires no more than a *formal legal distinction* between the RICO person and the RICO enterprise, and where, as here, the enterprises alleged are corporations, the RICO person/enterprise distinction requirement is satisfied simply by naming, as RICO persons, the individuals who engage in or conduct a pattern of racketeering activity through the corporate enterprise. *See Abutova,* 2017 WL 1185222, at *4 (citing *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163)( "To satisfy this distinction, plaintiffs need only show a 'formal legal distinction' between the individual defendants and the RICO enterprise."); *Aminov*, 2014 WL 527834, at *5, n.9 (requirement satisfied where plaintiff "adequately explained specifically how the individual defaulting defendants, independent of the enterprise corporations, perpetuated a

fraud through the various entity defaulting defendants") (citing *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163)).

Indeed, in light of *King* and its progeny, courts within this District have uniformly found actionable substantive RICO claims in cases where a corporation is alleged as the RICO enterprise and the corporation's owners, employees and/or agents are alleged as the RICO defendants who engaged in a pattern of fraudulent No-fault billing. *See, e.g., Abutova,* 2017 WL 1185222, at *4; *Aminov,* 2014 WL 527834, at *5, n.9; *Nazarov,* 2015 WL 5774459, at *11-12; *AMD Chiropractic, P.C.,* 2013 WL 5131057, at *6; *see also Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 274-75 (E.D.N.Y. 2012) ("RICO's distinctness rule is satisfied 'when a corporate employee [the RICO defendant] unlawfully conducts the affairs of the corporation" alleged to constitute the RICO enterprise'") (quoting *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 166)).

### ii.    RICO Enterprise

The RICO statute defines an "enterprise" as "an individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Second Circuit has explained that a "RICO enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that various associations function as a continuing unit." *United States v. Applins*, 673 F.3d 59, 73 (2d Cir. 2011) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see also Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367-68 (E.D.N.Y. 2012) ("[a]lthough the [RICO] statute does not define the outer boundaries of what constitutes an enterprise, it is clear that partnerships, corporations, and 'other legal entit[ies],' as well as associations-in-fact, may be RICO enterprises").

Here, the Complaint plainly includes well-pled allegations of the existence of RICO enterprises. The Complaint alleges that the Retailers described in the Complaint's RICO Claims

for Relief are corporate entities through which the Defaulted Defendants engaged in patterns of racketeering activity. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 173 (2d Cir. 2004) (finding enterprise requirement most easily satisfied when alleged enterprise is formal legal entity.); *see also Gov't Employees Ins. Co. v. Simakovsky,* No. 14 CIV. 3775 KAM SMG, 2015 WL 5821407, at *8 (E.D.N.Y. Oct. 5, 2015) (citing *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F.Supp.2d 243, 274 (E.D.N.Y. 2012) (citation omitted) (finding enterprise requirement met with respect to legal entities through which owners engaged in a pattern of No-fault insurance fraud); *Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*, No. 13-CV-4966 MKB SMG, 2015 WL 5692875, at *7 (E.D.N.Y. Sept. 4, 2015)), *report and recommendation adopted sub nom. Gov't Employees Ins. Co. v. Zemlyansky*, , 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015) (same); *See also, Cedric Kushner Promotions, Ltd.,* 533 U.S. at 164 (employee who conducts affairs of corporation through illegal acts comes within RICO statue). With respect to the RICO counts in the Complaint, each count properly alleges that the Retailers are legal entity enterprises that are separate from the defendants named in that cause of action

### iii.   Pattern of Racketeering Activities

Plaintiffs have also sufficiently pled facts demonstrating a pattern of racketeering activity, which, as noted above, is a requirement of a private RICO action. "Racketeering activity" is defined to include mail fraud, 18 U.S.C. § 1961(1), and a "pattern of racketeering activity" is defined as two or more acts of racketeering activity that occur within 10 years of one another, 18 U.S.C. § 1961(5); *see Allstate Ins. Co. v. Howell*, No. 09-CV-4660(RJD)(VVP), 2013 WL 5447152, at *5 (E.D.N.Y. Sept. 30, 2013) (federal mail fraud statute proscribes "use [of] the mails in the execution of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises'") (quoting 18 U.S.C. § 1341(a)). As this Court explained in *State Farm Mut. Auto. Ins. Co. v. CPT Med. Svcs., P.C.*, in order to prove

mail fraud, a plaintiff must allege: (1) the existence of a scheme to defraud involving money or property; (2) the use of the mails or wires in furtherance of the scheme;[6] and (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme. 04-CV-5045 ILG, 2008 WL 4146190, at *11 (E.D.N.Y. Sept. 5, 2008) (citations omitted). In addition to the minimum number of two acts that must be pled to establish a mail fraud pattern, plaintiff must also establish that these "predicate acts" are "related," and that they amount to or pose a threat of continued criminal activity, as it is "*continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (quoting S. Rep. No. 91–617, 158 (1969)).

Moreover, it is not necessary that the particular defendant have created or sent the mailing in question, so long as the defendant "'acted with knowledge that the use of the mails will follow in the ordinary course of business,' or that 'such use can reasonably be foreseen, even though not actually intended.'" *Abramovich v. Oliva*, 11 CV 1755 ERK SMG, 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012) (*quoting United States v. Tocco,* 135 F.3d 116, 124 (2d Cir.1998) (citation omitted)). Insurance fraud schemes, by their very nature, involve the mailing of fraudulent insurance claims and the receipt by mail of the proceeds of those claims. Accordingly, in cases involving insurance fraud schemes, such as the ones described in the Complaint, the use of the mails is invariably found to be foreseeable. *See, e.g., Allstate Ins. Co. v. Smirnov*, 12-CV-1246 CBA, 2013 WL 5407224, at *6 (E.D.N.Y. Aug. 21, 2013); *Abramovich, 2*012 WL 3597444, at *10; see also *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989) (collecting cases from First, Sixth, Seventh and Eighth Circuits wherein courts construed mail fraud statute in context of

---

6. This Court has further explained that in order to show that a defendant used the mails in furtherance of a scheme to defraud, a plaintiff must show: 1) that the defendants caused the mailing or use of the wires, namely that they must have acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can reasonably be foreseen, even though not actually intended, and 2) that the mailing . . . was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme. *CPT Med. Services*, 2008 WL 4146190, at *11 (citing *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 04-CV-2934 ERK, 2005 WL 3710370, at *10 (E.D.N.Y. Feb. 22, 2005)).

schemes to defraud insurance companies). Applying these principles to the instant Complaint, it is indisputable that the Defaulting Defendants' mail fraud, as pleaded by Plaintiffs, constitutes a pattern of racketeering activity as defined by the RICO statute. *See Aminov*, 2014 WL 527834, at *5 ("[b]y mailing multiple fraudulent claims [for insurance reimbursement], the defaulting defendants violated the federal mail fraud statute, 18 U.S.C. § 1341, therefore satisfying the two predicate acts necessary for a pattern of racketeering under RICO").

In order to satisfy the "continuity" prong, it must be demonstrated that either (1) the predicate acts occurred over a substantial period of time ("closed-ended" continuity), or (2) the acts establish a threat of continued racketeering activity in the future ("open-ended" continuity). *See Hemmerdinger Corp. v. Ruocco*, 12-CV-2650 WFK VMS, 2013 WL 5516194, at *12 (E.D.N.Y. Oct. 7, 2013) ("Closed ended continuity refers to 'a closed period of repeated conduct,' whereas open-ended continuity refers to 'past conduct that by its nature projects into the future with a threat of repetition.'" (quoting *H.J., Inc.*, 492 U.S. at 241-42)). With respect to closed-ended continuity, the Second Circuit has held that predicate acts occurring over a period of two or more years (as is the case with the enterprises alleged in the Complaint) certainly satisfy the temporal requirements of closed-ended continuity. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (series of predicate acts extending over two-year period constitutes closed-ended pattern).[7] A plaintiff seeking to establish "open-ended continuity," on the other hand, "need not [] show[] that predicate acts were engaged in over an extended period of time . . . . [i]nstead, [a] plaintiff must show that there was a threat of continuity criminal activity 'extending indefinitely into the future.'" *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 74 (E.D.N.Y. 2009) (quoting *H.J., Inc.*,

---

[7] While "continuity is primarily a temporal concept," the Second Circuit has also explained that courts should consider "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes . . . ." *First Capital Asset Mgmt.*, 385 F.3d at 181 (quoting *DeFalco*, 244 F.3d at 321)).

492 U.S. at 242-43). Open-ended continuity "exists where a defendant's 'predicate acts represent an ongoing way of conducting [the defendant's] business.'" *Pieper v. Benerin, LLC*, 12-CV-3999 ADS AKT, 2013 WL 4506164, at *8 (E.D.N.Y. Aug. 22, 2013) (quoting *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 406 (S.D.N.Y. 2013)). Under an open-ended scheme, predicate acts committed over even very short periods of time may be sufficient to form a RICO pattern where the acts pose a threat of continuing criminal activity. *See H.J. Inc.*, 492 U.S. at 241-43; *see also United States v. Aulicino*, 44 F.3d 1102, 1110-14 (2d Cir. 1995) (pattern established through acts occurring over period of some three-and-and-a-half months); *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) (predicate acts committed over two-month period); *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990) (same). Moreover, where, as here, the purpose of the alleged enterprises is "primarily or inherently unlawful," courts will presume that the requisite threat of continuing criminal activity exists. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242-43 (2d Cir. 1999)).

Moreover, even where the alleged RICO enterprise is not inherently unlawful, a plaintiff may establish the threat of continued criminality, and thus open-ended continuity, by showing that the "predicate acts are the only way in which the business operated." *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (open-ended continuity adequately pleaded where defendants' home improvement company allegedly only functioned through fraudulent documents and activities); *cf. W & D Imports, Inc. v. Lia*, 11-CV-4144 SJF ETB, 2013 WL 1750892, at *7 (E.D.N.Y. Apr. 22, 2013) *aff'd*, 13-1983-CV, 2014 WL 1465383 (2d Cir. Apr. 16, 2014) (open-ended continuity not established where plaintiffs failed to adequately allege car dealership defendants' predicate acts were "regular way of conducting their business"). Plaintiffs

respectfully submit that they have adequately pleaded the existence of open-ended continuity by alleging that the Defendants' RICO enterprises were primarily or inherently unlawful, and/or that such enterprises only functioned by perpetrating the fraudulent schemes alleged in the Complaint.

Further, to satisfy the "relationship" prong of the mail fraud pattern requirement, it must be shown that the predicate acts involve the same or similar purpose, results, participants, victims, and methods of commission or are otherwise interrelated by distinguishing characteristics. *See H.J. Inc.*, 492 U.S. at 240. In the present case, the Complaint alleges that the Defaulted Retail Owners and Defaulted Wholesale Defendants engaged in a pattern of racketeering activity, participating in and conducting the affairs of the enterprises set forth in each RICO cause of action, the purpose of which was to defraud Plaintiffs into paying fraudulent bills submitted for DME and/or orthotic devices. The Defaulted Retail Owners and the Wholesale Defendants' participation in the alleged racketeering activity included thousands of acts of mail fraud on behalf of the retailer enterprises.[8] These Defendants' activities satisfy the continuity requirements of the mail fraud scheme because they occurred over a substantial period of time and/or pose a certain threat to continue into the future if not halted by civil or criminal prosecution.

Moreover, through the numerous specific examples set forth within the body of the Complaint and in the Exhibits and Predicate Act tables annexed thereto, Plaintiffs have shown that:

- The duration of the enterprises alleged relative to Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants, spanned periods of time from three to fifteen years at the time the Complaint was filed;[9]

---

8. The Complaint specifically alleges that each Retailer is a separate enterprise and sets forth separate representative patterns of racketeering activity with respect to each.

9. Specifically, as alleged in the Complaint, the duration of the enterprises for the RICO claims for relief are as follows: Tenth: six (6) year period; Fourteenth: three (3) year period; Twenty-Second: six (6) year period; Forty-Third: five (5) year period; Forty-Fourth: three (3) year period; Forty-Eighth: five (5) year period; Fifty-Sixth: three (3) year period; Sixty-Fourth: four (4) year period; Sixty-Fifth: three (3) year period; Sixty-Ninth: six (6) year period; Seventy-Seventh: nine (9) year period; Ninety-Third: five (5) year period; Ninety-Seventh: six (6) year period; and One-Hundred-and-First: fifteen (15) year period.

28

- On specified dates, Abramov, Khanis, Lyubronetskaya, and Shnaider, through the Retailers they owned and controlled, mailed to Plaintiffs hundreds of false, fictitious, forged and otherwise fraudulent bills for DME and/or orthotic devices;

- The use of the mails in furtherance of Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants' schemes was a foreseeable and intended consequence of the schemes to defraud because these defendants knew that the schemes involved the submission of fraudulent insurance claims and the fraudulent procurement of insurance monies;

- Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants' schemes constituted continued criminal activity and poses a threat of continued criminal activity in the future;

- Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants' criminal conduct involved the same purpose, results, participants, victims and methods of commission;

- Such conduct was knowingly designed to mislead Plaintiffs into believing that the DME and/or orthotic devices were actually and appropriately supplied; and

- Such conduct did indeed mislead Plaintiffs into so believing and resulted in damage to Plaintiffs inasmuch as they paid the fraudulent insurance claims.

*See* Exhibit "2" at ¶¶ 36, 393–407, 430–444, 504–18, 704–33, 756–70, 830–44, 904–33, 956–70, 1030–1044, 1178–92, 1215–29, and 1252–66.

With regard to the Wholesale Defendants in particular, the Complaint alleges that the Wholesale Defendants participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, along with fraudulent wholesale invoices which grossly inflated the purported cost of the DME and/or orthotic devices to facilitate the fraudulent billing. *Id.* at ¶¶ 176, 397, 434, 508, 708, 834, 908, 960, 1182, and 1219. They did so in exchange for some of the profits of the scheme and with the express knowledge and intent that the medical equipment and documentation they provided were to be used as part of the scheme to submit fraudulent insurance claims to Plaintiffs. *Id.* at ¶¶ 175-79 and 182.

Indeed, as alleged in the Complaint, as a result of all of the Defaulted Defendants' activities, the knowing misrepresentations and/or active concealment of the nature, quality and legitimate cost of items purportedly supplied to No-fault Claimants in the facially valid insurance bills and supporting documentation submitted to Plaintiffs led directly to Plaintiffs' injury: the payment of substantial sums in fraudulent claims. *See Valley Physical Med. & Rehab., P.C.,* 2009 WL 3245388, at *5 (payment of purportedly bogus claims was "foreseeable and natural consequence" of Defendants' predicate acts) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008)).

### iv.   Participation in the Racketeering Activities.

As courts in this Circuit have recognized, "[t]he Supreme Court has interpreted the phrase 'to participate ... in the conduct of [the] enterprise's affairs' to mean participation in the operation or management of the enterprise." *DeFalco*, 244 F.3d at 309 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs, but a defendant's role need not be the primary or even a formal one. *See Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 391 (E.D.N.Y. 2008) ("[t]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility [for the enterprise's affairs], just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise . . . .") (quoting *Reves*, 507 U.S. at 179) (internal citation and quotation marks omitted); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010) ("[t]hough the Second Circuit has described the 'operation or management' test as establishing a 'relatively low hurdle for plaintiff[ ] to clear' at the pleading stage, 'the RICO defendant must have played *some* part in directing the enterprise's affairs'") (quoting *First Capital Asset Mgmt. Inc.*, 385 F.3d at 176) (internal citation and quotation marks omitted).

Plaintiffs' Complaint clearly sets forth that Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants participated in the scheme to defraud. Indeed, Abramov, Khanis, Lyubronetskaya, and Shnaider, are alleged to be the masterminds of the scheme, entering into agreements and kickback relationships with one or more of the Wholesale Defendants and others to obtain the necessary equipment and fraudulent documents to enable the Retailer corporate enterprises to submit fraudulent insurance claims for reimbursement under the No-fault Law. The Wholesale Defendants are alleged to have provided the cheap and/or low quality equipment and the false invoices, inflating the actual costs of the equipment, that one or more of the Retail Owners, through one or more of the Retailers, used to support the fraudulent bills submitted to Plaintiffs, which grossly misrepresented the amounts the Retailers were entitled to receive in reimbursement. Moreover, as part of the money laundering scheme, the Wholesale Defendants are alleged to have converted checks received from one or more of the Retailers as purported payment for the DME and/or orthotic devices allegedly supplied to cash at check cashing establishments, or by other means, and returned the majority of the money to one or more of the Retailers while keeping a portion of the profits of the scheme for themselves. All of the foregoing allegations in the Complaint, taken as true, clearly satisfy the participation element of the RICO claim.

### v.     The Acts Alleged in the Complaint Affect Interstate Commerce.

Finally, it is well settled that a plaintiff need only show a *de minimis* effect on interstate commerce in order to support a RICO claim. *See United States v. Mejia,* 545 F.3d 179, 203 (2d Cir. 2008); *DeFalco*, 244 F.3d at 309. It is the enterprise, not the individual defendant, that must engage in or affect interstate commerce. *See Mejia v. United States*, 862 F. Supp. 2d 263, 280 (E.D.N.Y. 2012) ("[a]ny conduct by the charged racketeering enterprise 'having even a *de minimis* effect on interstate commerce suffices' to meet this requirement") (quoting *Mejia,* 545 F.3d at 203). Here, Plaintiffs allege that the Retailers, the enterprises in each RICO count, engaged in a scheme

to submit fraudulent medical claims to, and affected the business of, Plaintiffs, national insurance companies, and Illinois corporations, with their principal place of business in Northbrook, Illinois. These alleged facts are sufficient to provide the required interstate nexus. *See Grafman*, 655 F. Supp. 2d at 229-30.

### B.  Plaintiffs' Complaint States Valid Common Law Fraud Claims.

Under New York law, a plaintiff alleging fraud must state five elements: (i) a material misrepresentation; (ii) made by a defendant knowing that it was false when made; (iii) with the intent to defraud; (iv) upon which plaintiff reasonably relies; and (v) which causes plaintiff injury. *See Aminov*, 2014 WL 527834, at *5 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *Grafman*, 655 F. Supp. 2d at 220 (citations omitted). Given the facts averred in the Complaint, to which the Retailer and Retailer Owner defendants have admitted by reason of their default, Plaintiffs respectfully submit that the Complaint's allegations set forth all of the elements of a common law fraud claim.[10]

First, as set forth in Section III(A), *supra,* the Complaint, Predicate Act tables and Exhibits describe in detail the nature of the fraudulent misrepresentations that Defaulted Defendant Retailer Owners, through the Retailers, made to Plaintiffs. In that regard, the Complaint specifically alleges that Retailer Owners, through the Retailers, routinely submitted bills to Plaintiffs for reimbursement that fraudulently misrepresented that: certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retailers were utilizing phantom codes for which there was no published fee schedule, the charges reflected

---

10. The common law fraud claims are asserted only against the Defaulted Retail Defendants. Specifically, the Twenty-Third claim for relief is asserted against Lyubronetskaya and Empire State Medical Supplies; the Forty-Ninth claim for relief is asserted against, Abramov and Liberty Surgical Supplies; the Seventy-Eighth claim for relief is asserted against, Shnaider and Pacific Surgical Supply; the Ninety-Eighth claim for relief is asserted against Quality Medical Supply; and the One Hundred Second claim for relief is asserted against Khanis and Ridge Medical Supplies.

on the bills submitted by the Retailers for Non-Fee Schedule items was the lesser of their acquisition costs or the usual and customary price charged to the general public; and/or that the Fee Schedule codes and descriptions contained in the bills submitted by the Retailers corresponded with the equipment purportedly provided. *See, e.g.,* Exh. "2" at ¶¶ 519–28 (Empire State Medical Supplies), 771–80 (Liberty Surgical Supplies) and Compl. Exh. 2.

Second, the allegations in the Complaint demonstrate that the Defaulted Defendant Retail Owners and Retailers possessed the requisite intent to deceive. It is well-established that a defendant's intent to deceive, also known as scienter, may be shown by pleading facts that "give rise to a strong inference of fraudulent intent." *See Infinity Health Prods.*, 2012 WL 1427796, at *5 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) ("strong inference of fraud" may be established by alleging facts that constitute strong evidence of conscious misbehavior)). Courts in this Circuit have held that "[w]hen it is clear that a scheme, viewed broadly, is necessarily going to injure, it can be presumed that the schemer had the requisite intent to defraud." *United States v. RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d 159, 173 (E.D.N.Y. 2006) (quoting *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 220 (2d Cir. 2000) (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970)). Moreover, the requisite strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 236-37 (E.D.N.Y. 2008) (quoting *Lerner*, 459 F.3d at 291 (citation omitted); *see also RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d at 173 (courts should "look at the entire circumstances of defendant's conduct as an indication of the requisite criminal intent") (quoting *United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999)).

33

Here, Plaintiffs' Complaint alleges facts that establish that Defendants Abramov, Khanis, Lyubronetskaya, and Shnaider submitted fraudulent bills through their Retail DME corporations and had sufficient motive and opportunity to commit fraud, and the Complaint further alleges sufficient circumstantial evidence of their conscious or reckless behavior. Indeed, the submission of fraudulent bills to the Plaintiff-insurers that grossly overstate the amounts Defaulted Defendant Retailers Empire State Medical Supplies, Liberty Surgical Supplies, Pacific Surgical Supply, Quality Medical Supply, and Ridge Medical Supplies were entitled to receive under the No-fault Law through, *inter alia*, (a) the use of phantom codes, misrepresenting the acquisition cost or usual and customary price of the items they allegedly supplied; or (b) choosing codes that do not in any way correspond to the substantially cheaper item actually supplied (i.e., upcoding), if supplied at all, clearly demonstrate that these Defendants, mailed the bills to Plaintiffs with the specific intent to defraud Plaintiffs. Moreover, the allegations of concealment, generating and obtaining (from the Wholesale Defendants and No-fault Clinics) false and generic documentation of the DME and/or orthotic device to prevent the insurers from determining the nature and quality of the devices allegedly supplied when attempting to verify the charges in the fraudulent bills, and deliberately misrepresenting the codes and amounts of the DME and/or orthotic devices in the bills, while engaging in a complex kickback scheme with their conspirators (the Wholesale Defendants and No-fault Clinics), provide sufficient circumstantial evidence of these Defendants' conscious and/or reckless behavior. *See, e.g., Aminov*, 2014 WL 527834, at *5 (plaintiffs sufficiently alleged common law fraud claim where complaint similarly described No-fault scheme involving DMEs and/or orthotic devices); *Infinity Health Prods.*, 2012 WL 1427796, at *5 (E.D.N.Y. Apr. 6, 2012) (same); *Olmecs Med. Supply,* 2005 WL 3710370, at *14 (same).

34

Third, the Complaint's fraud allegations more than sufficiently set forth Plaintiffs' reliance. New York law provides that, when the misrepresentations are exclusively within the other party's knowledge, the wronged party may "rely on them without further investigation or sleuthing." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181-82 (2d.Cir. 2007) (citing *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (Hand, J.)); *see also Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc.*, 972 N.Y.S.2d 458, 466 (N.Y. Sup. Ct. 2013) ("plaintiff does not have the same duty to investigate when the misrepresentations relate to matter peculiarly within the knowledge of the defrauding party"). Moreover, Courts within this Circuit have uniformly found that No-fault insurers are entitled to rely upon facially valid documents submitted by healthcare providers, particularly in instances similar to the case at bar where the defendants actively conceal the validity of the insurance claims and misrepresent their entitlement to reimbursement under the No-fault Law. *See, e.g., Aminov*, 2014 WL 527834, at *6 ("[plaintiff insurers] reasonably relied on the accuracy of these claim forms because they paid the defendants more than $2.1 million"); *Grafman*, 655 F. Supp. 2d at 221; *Allstate Ins. Co. v. Halima,* 06-CV-1316 DLI SMG, 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009*)* (insurer entitled to rely on facially valid insurance claims); *Liguori,* 589 F. Supp. 2d at 238 (reliance sufficiently stated by allegations of false representations in facially valid claims); *CPT Medical Servs., P.C.,* 2008 WL 4146190, at *13; *Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *14.

Here, the Complaint alleges that Abramov, through Liberty Surgical Supplies; Khanis, through Ridge Medical Supplies; Lyubronetskaya, through Empire State Medical Supplies; Shnaider, through Pacific Surgical Supply; and Quality Medical Supply, submitted facially valid insurance claims that they verified by signing the claim form prescribed by the New York State Department of Financial Services (known as a "Verification of Treatment by Attending Physician

or Other Provider of Health Service" or "NYS form NF-3") or a substantially similar form in which they falsely attested to validity of the charges therein. Indeed, pursuant to Section § 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Retailers contained the following warning at the foot of the page:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an   application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime."

Thus, these defendants knew that every claim form they signed and submitted to Plaintiffs was in fact verified as a true and accurate statement of the charges therein and their entitlement to reimbursement, and that the inclusion of any false information was a fraudulent insurance act, which was a crime. As noted above, the defendants intentionally misrepresented the codes, prices and DME and/or orthotic devices purportedly supplied in their bills and included false documentation to justify and induce payment from the insurers for their inflated claims for reimbursement pursuant to a complex scheme to defraud the No-fault claims process. Given the lengths these defendants went to commit and conceal their fraud, Plaintiffs justifiably relied on these submissions and the supporting documentation – wholesale invoices, delivery receipts and prescriptions – submitted along with them, when issuing payment.

Lastly, the final element of a claim of common law fraud requires that the plaintiff demonstrate that the fraudulent misrepresentation directly and proximately caused plaintiff injury. *See Aminov*, 2014 WL 527834, at *6 ("[plaintiff insurers] suffered an injury because they issued payments on behalf of their no-fault clients for procedures and prescriptions that were unnecessary or never provided"); *Grafman*, 655 F. Supp. 2d at 220-21. The Complaint and papers submitted in support of the instant motion clearly show that Plaintiffs suffered injury, in the form of loss of

funds, as a direct and proximate result of the Retail Owners, through the Retailers, fraudulent misrepresentations. But for these Defendants' acts of submitting fraudulent bills containing material misrepresentations, Plaintiffs would not have paid the no-fault automobile insurance claims. Indeed, based solely on these Defendants' intentional deception and concealment of material facts in this regard, upon which Plaintiffs justifiably relied, these Defendants defrauded Plaintiffs into paying millions of dollars in bogus medical bills. In view of the foregoing, it is respectfully submitted that the facts alleged in the Complaint establish the merits of Plaintiffs' common law fraud claim. *See Aminov*, 2014 WL 527834, at *6 (plaintiffs adequately pled common law fraud as against defaulting defendants); *Infinity Health Prods.* 2012 WL 1427796, at *5-6.

### C. Plaintiffs' Complaint States Valid Unjust Enrichment Claims for Relief.

Under New York law, recovery for unjust enrichment requires establishing that: (1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution. *See Aminov*, 2014 WL 527834, at *7 ("the defaulted defendants should not be rewarded for engaging in a scheme to fraudulently bill [plaintiff] through the guise of filling prescriptions for [plaintiff's] no-fault claimants") (citing *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010)); *see also State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) ("Unjust enrichment is an equitable principle, an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money . . . under such circumstances that in equity and good conscience he ought not to retain it.") (quoting *Mfrs. Hanover Trust Co. v. Chem. Bank,* 559 N.Y.S.2d 704, 707 (1st Dep't 1990)).

Plaintiffs' Complaint alleges that Abramov, through Liberty Surgical Supplies; Khanis, through Ridge Medical Supplies; Lyubronetskaya, through Empire State Medical Supplies; Shnaider, through Pacific Surgical Supply; and Quality Medical Supply, received monies that they

were not entitled to receive as a direct result of their fraudulent claim submissions. Moreover, Abramov, through Liberty Surgical Supplies; Khanis, through Ridge Medical Supplies; Lyubronetskaya, through Empire State Medical Supplies; Shnaider, through Pacific Surgical Supply; and Quality Medical Supply, "set up elaborate schemes to siphon money out of a statutory scheme designed for the public good[,]" and it is clear that "equity and good conscience require restitution." *Infinity Health Prods. Ltd.*, 2012 WL 1427796, at *6. As such, Plaintiffs respectfully submit that they have sufficiently alleged that the Defaulted Retail Defendants have been unjustly enriched.

## IV.
## PLAINTIFFS ARE ENTITLED TO TREBLE DAMAGES

Having established that Plaintiffs' Complaint sufficiently states a valid cause of action with respect to its RICO, Common Law Fraud and Unjust Enrichment Claims, and that Plaintiffs are entitled to Default Judgment because the Defaulted Defendants' default was willful, there are no meritorious defenses, and to hold otherwise would substantially prejudice Plaintiffs given the circumstances of this case, the only remaining issue for the Court's determination involves the calculation of damages. In that regard, because Allstate has pled sufficient facts to establish, as a matter of law, defendants' liability, the Court may determine damages based the submission of supporting affidavits. *See Aminov*, 2014 WL 527834, at *7 (finding that because plaintiff-insurer Allstate has pled sufficient facts to establish, as a matter of law, defendants' liability as to RICO and common law fraud arising from a No-fault scheme, the court may determine damages based on the affidavits filed by Allstate) (*quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir.1997) ("We have held that, under Rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.")); *see also Fustok v. ContiCommodity Servs.*

*Inc.,* 873 F.2d 38, 40 (2d Cir.1989) (holding that a court "may, but need not" hold a hearing as to damages and "may rely on detailed affidavits or documentary evidence" to establish the appropriate damages to award); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir.1991) ("[Rule 55(b)(2) ] does not require the district judge conduct a hearing.... [W]e have upheld an award of damages where 'the district court relied upon detailed affidavits and documentary evidence.'") (quoting *Fustok,* 873 F.2d at 40). Here, in support of their claim for damages, Plaintiffs have submitted the Bruno Declaration, which establishes the amounts paid by Plaintiffs to Defendants, as well as spreadsheets itemizing each payment made by Plaintiffs to the relevant Retailer enterprise in which the Defaulted Defendants are alleged to have participated. Each spreadsheet sets forth the total amounts paid by each Plaintiff to the Retailer enterprise. *See* McKenney Decl. ¶ 44; Exhs. "56" through "69." A table summarizing the damages paid by Plaintiffs to each enterprise relevant to this application is attached as Exhibit "71." As indicated in Plaintiffs' February 15, 2019 letter to the Court (*see* ECF No. 332), while there have been a number of settlements in this action, only one settlement with any party affects the judgment sought here against the Defendant Defendants: specifically the 10th Claim for Relief, for RICO damages attributable to the "Any Medical Supply, Inc." enterprise. Accordingly, Plaintiffs have deducted the cash proceeds of that settlement ($5,000.00) from the judgment sought on the 10th Claim for Relief as against Defaulted Defendants Mezkula, Zalogin, Global Best Deal, and IG&NAT Services. *See* Exh. "71" (reflecting $5,000.00 set-off).

### A.  Defaulted Defendants Are Jointly And Severally Liable.

As a threshold matter, under Plaintiffs' RICO Causes of Action, the Defaulted Retail Owners and Defaulted Wholesale Defendants are jointly and severally liable for all damages incurred by Plaintiffs relating to the RICO Claims for Relief in which they are named.  *See Allstate Ins. Co. v. Kumar*, No. 10-CV-8166, 2013 WL 2395748, at *3 (S.D.N.Y. Jun. 3, 2013) (citing

*Abdou-Khadra v. Mahshie*, 4 F.3d 1071, 1074 n.1 (2d Cir. 1993); *Smirnov*, 2013 WL 5407224, at *15 ("Treble damages and joint and several liability are properly imposed under RICO"). The Defaulted Defendants that are named as defendants in each RICO count must be held jointly and severally liable for all of the fraudulent billing submitted by each enterprise and Plaintiffs should be awarded treble damages in amounts referenced in Exhibit "71."

   **B.  Plaintiffs Are Entitled To Treble Damages Under The Civil Rico Statute.**

   Plaintiffs are seeking a judgment for treble damages on their RICO claims against Abramov, Khanis, Lyubronetskaya, Shnaider, and the Wholesale Defendants. For the Court's convenience, in support of this application, Plaintiffs have included Exhibits "56" through "69" to the McKenney Declaration, which are copies of spreadsheets itemizing each payment made by Plaintiffs to relevant Retailer enterprises in which Defendants Abramov, Khanis, Lyubronetskaya, Shnaider and/or the Wholesale Defendants are alleged to have participated, along with the Bruno Declaration which further details the amounts paid by Plaintiffs and explains how the damages were calculated.

   Pursuant to the RICO statute, Plaintiffs are entitled to treble damages on their RICO claims for relief. *See* 18 U.S.C. § 1964(c) (person injured by RICO violation may sue for "threefold the damages he sustains"); *Smirnov*, 2013 WL 5407224, at *15 ("Treble damages and joint and several liability are properly imposed under RICO"). Treble damages are even appropriate in the case of default. *See Howell*, 2013 WL 5447152, at *7. Consistent with the foregoing, Plaintiffs are seeking judgments on their RICO claims against each defendant included in the chart annexed to the McKenney Declaration as Exhibit "71" in amounts which reflect treble damages for each of the relevant RICO claims asserted against them. In determining the amount of damages, Plaintiffs identified the compensatory damages paid to each Retailer enterprise that resulted from payments made for reimbursement of fraudulent No-fault claims which the Retailers were not entitled

receive and trebled them. As such, the chart in Exhibit "71" sets forth, the compensatory damages attributable to each Defaulted Defendant and the trebled amount pursuant to the RICO statute.

**V.**

**PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST ON THEIR CLAIMS**

Plaintiffs are entitled to pre-judgment interest on their claims. *See Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 11-CV-4261 ARR RER, 2013 WL 764735, at \*8-9 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 11-CV-4261 ARR RER, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013) (awarding prejudgment interest on common law claims); *Infinity Health Prods.*, 2012 WL 1427796, at \*10 (awarding pre-judgment interest on RICO (before trebling), fraud and unjust enrichment claims); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 09-CV-2990 JS, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010) *aff'd*, 409 F. App'x 453 (2d Cir. 2011) (awarding prejudgment interest on common law fraud and unjust enrichment claims); *Steinberg v. Sherman*, 07-CV-1001 WHP, 2008 WL 1968297 (S.D.N.Y. May 2, 2008) ("Causes of action such as . . . unjust enrichment qualify for the recovery of prejudgment interest . . . ."). This Court has recognized that a complete recovery necessarily requires the component of prejudgment interest. *See In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) ("The primary purpose for awarding pre-judgment interest is to compensate a plaintiff for the loss of the use of money.") (citations omitted). In the case of Plaintiffs' RICO claims, where the statute is silent as to prejudgment interest, this Court has held that such an award lies within "the sound discretion of the district court." *Aminov*, 2014 WL 527834, at \*9 (citing *ClassicStar Mare Lease Litig.*, 727 F.3d 473, 495 (6th Cir. 2013); *see also Abdou-Khadra*, 4 F.3d at 1084 ("Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such interest.").

New York law provides for prejudgment interest on damages, computed from the "earliest ascertainable date the cause of action existed or upon all of the damages from a single reasonable intermediate date" at the non-compoundable rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5001; *IAV Med. Supply, Inc.*, 2013 WL 764735 at * 8-9; *Infinity Health Prods.*, 2012 WL 1427796 at *10; *see also Aminov*, 2014 WL 527834, at *9 (district court sitting in New York may use New York statutory rate of prejudgment interest where governing federal statute silent as to such awards) (citing *Donogue v. MIRACOR Diag.*, 00 CIV 6696 JGK RLE, 2002 WL 233188, at *4 (S.D.N.Y. Feb. 11, 2002)). Here, in light of the substantial number and amount of fraudulent insurance claims Plaintiffs have paid, resulting in Plaintiffs' loss of the use of the funds, Plaintiffs respectfully request that interest be calculated from the first day of the year following the date of Plaintiffs' first payment to the relevant Retailer's enterprise.[11] Calculating interest in this manner produces an interest amount that is less than the total amount of interest Plaintiffs may seek under New York State law, but is easier for the Court to calculate and has been adopted by courts within this district. *See, e.g.*, *Aminov*, 2014 WL 527834, at *9; *IAV Med. Supply, Inc.*, 2013 WL 764735, at *8-9 (utilizing "first day of the year" methodology); I*nfinity Health Prods.* 2012 WL 1427796, at *10-12 (same); *see also Li-Elle Serv.*, 2013 WL 829302, at *11-12 (same). Interest calculations for the relevant Retailer enterprises are annexed to the McKenney Declaration as Exhibit "70."

## VI.
## PLAINTIFFS ARE ENTITLED TO A DECLARATORY JUDGMENT

A party seeking a declaratory judgment from a district court must show the existence of an "actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S. Ct. 1967, 124 L.Ed. 2d 1 (1993); 28 U.S.C. § 2201(a). An "actual controversy" is "real and substantial

---

11. For convenience, pre-judgment interest was calculated for purposes of the First Motion up to May 1, 2018.  In connection with this Second Motion, Plaintiffs are calculating interest based on the same time periods used in making the First Motion, and are not seeking any additional interest that otherwise might have accrued since May of 2018.

. . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (internal citations omitted).

Declaratory relief is appropriate where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings. *See Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971); *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154, 177 (2d Cir. 2001). A court has broad discretion to decide whether to render a declaratory judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1100 (2d Cir. 1993). In deciding whether a plaintiff has stated a claim for declaratory relief, a federal court applies the state substantive law of the forum in which it sits. *See NAP, Inc. v. Shuttletex, Inc.*, 112 F. Supp. 2d 369, 372 (S.D.N.Y. 2000); *see also Universal Acupuncture Pain Services v. State Farm Mut. Auto Ins. Co.*, 196 F. Supp. 2d 378, 385 (S.D.N.Y. 2002).

Plaintiffs' Complaint clearly establishes the existence of an actual case or controversy between Plaintiffs and the Retail Defendants regarding fraudulent billing for DME and orthotic devices that allegedly have been provided to Plaintiffs' insureds. By way of example and not limitation, the Complaint sets forth numerous examples of the Retailer Defendants fraudulently billed Plaintiffs for DME and/or orthotics that were not in the Fee Schedule by (i) utilizing phantom codes for devices for which there was no published fee schedule; (ii) charging Plaintiffs more than the lesser of their true acquisition costs, plus 50% or the usual and customary price charged to the general public; and/or (iii) utilized Fee Schedule codes and descriptions which did not correspond with the equipment purportedly provided. Exh. "2" at ¶¶ 214, 219–21, 224–28, 230–31, 235, and 239 and Compl. Exhs. 2, 8, 10–15, 20, 24, 29. The Complaint also sets forth numerous examples

of the Retailer Defendants' fraudulently billing Plaintiffs for DME and/or orthotics that were in

the Fee Schedule by utilizing Fee Schedule codes (i) for expensive custom fabricated devices,

despite the fact that to the extent anything was provided, the devices were cheap, elastic, one-size-

fits-all items that were not custom fabricated to the Claimants' measurements; (ii) for expensive

custom-fitted DME and/or orthotic devices, such as lumbar sacral orthosis ("LSOs") as well as

knee, wrist, elbow and shoulder braces that were never provided; (iii) for expensive DME and/or

orthotic devices that required a fitting and/or adjustment that they never performed; and (iv)

reimbursement of DME and/or orthotic devices in excess of the relevant Fee Schedule in existence

at the time. *See, e.g., id*. at ¶¶ 217, 240, 243-44, 246, 248, 253, 255, 269–71, 278– 282, and 286

and Compl. Exhs. 6-7, 20, 24, 29, 34-35, 37–38, 43–45, 48 50, 52–56.  As a result, Plaintiffs'

request for declaratory relief is based upon this pervasive, fraudulent scheme whereby the Retail

Defendants continue to seek payment for bills containing:

> (i) false and fraudulent misrepresentations submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault Claimants and the amounts they were entitled to be reimbursed in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs; and

> (ii) false and fraudulent misrepresentations submitted to Plaintiffs about DME and/or orthotic devices purportedly supplied to No-fault Claimants by submitting claims for DME and/or orthotic devices they never supplied to No-fault Claimants.

*See id.* at ¶¶ 1626-27.  The relief sought will clearly resolve the issue of the Defaulted Retail

Defendants' fraudulent bills and terminate the controversy with respect to at least $183,200.00 in

pending and/or unpaid claims.  *See* Bruno Decl. ¶ 6.  Because the Defaulted Retail Defendants are

deemed to have admitted the allegations in the Complaint, Plaintiffs are entitled to a declaration

that they are not obligated to pay these pending and/or unpaid fraudulent claims.

Courts in this district have granted declaratory relief in numerous cases where the defendants were involved in similar schemes to defraud insurers for charges that are not permissible under the No-fault laws. *See, e.g., Gov't Employees. Ins. Co. v. Active Care*, 2015 WL 7281630 (E.D.N.Y. Nov. 16, 2015) (granting declaratory relief to insurer relating to unpaid outstanding claims submitted by defendant pursuant to a DME fraudulent scheme); *Gov't Employees. Ins. Co. v. Infinity Health Products, Ltd.*, 2012 WL 1427796 (E.D.N.Y. April 6, 2012) adopted by *Gov't Employees. Ins. Co. v. Infinity Health Products, Ltd.*, 2012 WL 1432213 (E.D.N.Y. April 25, 2012) (granting declaratory relief to insurance company regarding fraudulent DME claims submitted by defendants which were pending in state court proceedings); *Gov't Employees. Ins. Co. v. IAV Medical Supply, Inc.*, 2013 WL 764735 (E.D.N.Y. Feb. 8, 2013) adopted by *Gov't Employees. Ins. Co. v. IAV Medical Supply, Inc.*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013) (granting declaratory judgment to insurer regarding fraudulent pending DME claims submitted by defendants); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 WL 10449036 (E.D.N.Y. Dec. 30, 2009) (granting declaratory relief to insurer relating to unpaid claims).

Accordingly, Plaintiffs' Complaint sets forth all of the requisite elements to establish a proper claim for a declaratory judgment in the context of this matter, and the requested declaration should be granted.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Motion should be granted, and that the Proposed Judgment attached to the McKenney Declaration as Exhibit "1" should be entered.

Dated:  New York, New York
        April 19, 2019

                                 **MORRISON MAHONEY LLP**


                                 By:  ___/s/ James McKenney_____
                                      Robert A. Stern, Esq.
                                      James A. McKenney, Esq.
                                      Lee Pinzow, Esq.

                                      Wall Street Plaza
                                      88 Pine Street, Suite 1900
                                      New York, New York 10005
                                      Tel:    (212) 825-1212
                                      Fax:    (212) 825-1313

                                      *Attorneys for Plaintiffs*