UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,

**Plaintiffs,**

-against-

DMITREI ABRAMOV, SERGEY AKOPYAN, YULIA BILYK, MAIGA BORISEVICA, ALEXANDER CHERNYSHEV, ARTUR DENISOV, INDIVIDUALLY AND AS THE ADMINISTRATOR OF THE ESTATE OF YURIY DENISOV, ALEKSANDR FIRAYNER, OLEKSIY GERASYMENKO, YURIY GINDINOV, ARIS GRIGORYAN, VALERIA HAMAMY, OLGA IZRAYEV, VLADIMIR KAMINSKY, MURDAKHAY KHAIMOV, BORIS KHANIS, ZLATISLAV KOMISARCHIK, VLADISLAV KRAITER, INNA LYUBRONETSKAYA, GALINA MILERMAN, URIYEL MIRZAKANDOV, ALEKSANDR NISANOV, INNA PINSKY, VADIM POVZLOV, ELMAN RAFAILOV, TATIANA RODIONOVA, OLEG SHNAIDER, INNA SHILIMOV, BORIS SOBOLEV, GIKOR SONAYAN, MAKSYM TKACHENKO, YEFIM VELNIK, ALEXSANDR VERBITSKY, EDUARD ZARUBIN, ABSOLUTE MEDICAL SUPPLIES INC., ALLEVIATION PRODUCTS CORPORATION, ANY MEDICAL SUPPLY, INC., BENTO ORTHO INC., BEST CHOICE MEDICAL SUPPLY, INC., CHAPA PRODUCTS CORPORATION, EMPIRE STATE MEDICAL SUPPLIES, INC., EXCEL PRODUCTS INC., FIRST AMERICAN ALLIANCE, INC., FOREST MEDICAL EQUIPMENT, INC., HEALING HEALTH PRODUCTS, INC., INFINITE ORTHO PRODUCTS INC., LIBERTY SURGICAL SUPPLIES INC., MAIGA PRODUCTS CORPORATION, MAXFORD INC., MDAX INC., MILLDORP INC., NEW UTRECH SERVICES, INC., NUMED MEDICAL SUPPLY, INC., PACIFIC SURGICAL SUPPLY, INC., PAIN FREE LEAVING, INC., PPSC MEDICAL SUPPLY, INC., PRAVEL INC., PREFERRED ORTHO PRODUCTS INC., PROMED DURABLE EQUIPMENT, INC., QUALITY CUSTOM MEDICAL SUPPLY, INC., QUALITY MEDICAL SUPPLY INC., RIDGE MEDICAL SUPPLIES CORP., SIGMA MED CARE INC., SOLUTION BRIDGE INC., SOVERA MEDICAL SUPPLY, CORP., STATE MEDICAL SUPPLY INC., SURE WAY NY INC., T & S MEDICAL SUPPLY CORPORATION, TOWN SUPPLY, INC., VERASO MEDICAL SUPPLY, CORP., WELLMAX PRODUCTS, CORP. AND Y.A.M. MEDICAL SUPPLY, INC., MARGARITA AKMALOVA, GRIGOL APRESYANTSI, SERGEY MEZKULA, VALERIY SEMENIKHIN, AND VADIM ZALOGIN, AMERICAN MOBILITY MEDICAL, INC., BIV WHOLESALE INC., COMDEX INC., GLOBAL BEST DEAL, INC., GRIGOL SUPPLY, INC., IG&NAT SERVICES, INC., IMPREZZA NYC INC., METRA WHOLESALE INC., ONE STOP WHOLESALE, INC., ORTIZ OMEGA CORP., VDS MEDICAL SUPPLY, INC., VZ GROUP, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

**Defendants.**

16-CV-1465 (AMD) (SJB)

DECLARATION OF JAMES A. MCKENNEY IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 55

James A. McKenney declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a Partner with the firm of Morrison Mahoney LLP, attorneys for Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, and, Allstate Property and Casualty Insurance ("Plaintiffs" or, collectively, "Allstate")[1] in the above-entitled action, and I am fully familiar with all the facts and circumstances in this matter.

2.      I submit this declaration pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "Federal Rules") and Rule 55.2 of the Local Civil Rules of the Southern and Eastern Districts of New York (the "Local Rules") in support of Plaintiffs' second motion (the "Second Motion")[2] for the entry of a default judgment against Defendants Dmitrei Abramov ("Abramov"), Boris Khanis ("Khanis"), Inna Lyubronetskaya ("Lyubronetskaya"), Oleg Shnaider ("Shnaider"), (the "Defaulted Retail Owners"); Empire State Medical Supplies, Inc. ("Empire State Medical Supplies"), Liberty Surgical Supplies, Inc. ("Liberty Surgical Supplies"), Pacific Surgical Supply, Inc. ("Pacific Surgical Supply"), Quality Medical Supply, Inc. ("Quality Medical Supply"), Ridge Medical Supplies Corp. ("Ridge Medical Supplies") (the "Defaulted Retailers," and with the Defaulted Retail Owners, the "Defaulted Retail Defendants"); Grigol Apresyantsi ("Apresyantsi"), Sergey Mezkula ("Mezkula"), Valeriy Semenikhin ("Semenikhin"), Vadim Zalogin ("Zalogin") (the "Defaulted Wholesale Owners"); Biv Wholesale, Inc. ("Biv Wholesale"), Comdex, Inc. ("Comdex"), Global Best Deal, Inc. ("Global Best Deal"), Grigol Supply, Inc. ("Grigol Supply"), IG&NAT Services, Inc. ("IG&NAT Services"), Imprezza NYC, Inc. ("Imprezza NYC"), Metra

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Plaintiffs' accompanying Memorandum of Law.

[2] Plaintiffs make this Second Motion in accordance with Judge Bulsara's February 21, 2019 Report & Recommendation (the "R&R") concluding that, *inter alia*, a similar motion for default judgment (the "First Motion") should be denied without prejudice, and directing Plaintiffs to address potential issues with service or proof thereof in any renewed motion. *See* ECF No. 333, at pp. 11-12; L. Civ. R. 55.2(c). Plaintiffs entered no objection, and the R&R was adopted by the Court's March 13, 2019 Memorandum Decision and Order. *See* ECF No. 334, at p. 2. The service issues raised by the Court are addressed in paragraphs 52 through 61 below.

Wholesale, Inc. ("Metra Wholesale"), Ortiz Omega Corp. ("Ortiz Omega"), VDS Medical Supply, Inc. (VDS Medical Supply"), and VZ Group, Inc. ("VZ Group") (the "Defaulted Wholesalers," and with the Defaulted Wholesale Owners, the "Defaulted Wholesale Defendants," and with the Defaulted Retail Defendants, the "Defaulted Defendants")[3] for their failure to answer or otherwise appear in the above-captioned action.  A copy of a proposed default judgment is annexed hereto as Exhibit "1."

## BACKGROUND

3.    Plaintiffs commenced this action on March 25, 2016, *see* ECF No. 1, and subsequently filed their First Amended Complaint on May 9, 2016, alleging, *inter alia,* significant violations of the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c) and 1964(c).  *See* ECF No. 5.   A copy of the First Amended Complaint (hereinafter "Complaint") is annexed hereto as Exhibit "2."

4.    As of the date of this filing, Plaintiffs have settled with all Defendants in this matter, leaving only the Defaulted Defendants who are the subject of this application.  *See* Stipulations of Dismissal and related Orders at ECF Nos. 153–57, 206–208, 218, 224, 227–35, 240, 252, 262, 284, 286, 291, 305, 315, and 318.

5.    The Complaint alleges, among other things, that the owners of numerous durable medical equipment ("DME") and orthotic device retail supply companies (generally referred to as the "Retail Owners"), including Defaulted Retail Owners Abramov, Khanis, Lyubronetskaya, and Schnaider, through their retail DME companies (generally referred to as the "Retailers"), including Defaulted Retailers Empire State Medical Supplies, Liberty Surgical Supplies, Pacific Surgical

---

[3] The First Motion also included as Defaulted Defendants Margarita Akmalova ("Akmalova") and American Mobility Medical, Inc. ("American Mobility").  However, in view of two unpaid judgments already obtained against these Defendants in original amounts totaling $567,264.24, as well as Plaintiffs' inability – despite exhaustive searches – to locate a presently serviceable residential address for Akmalova, Plaintiffs have decided not to pursue a third judgment against them through this Second Motion.  *See Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187 (PKC) (E.D.N.Y. Oct. 2, 2015), ECF No. 466 (money judgment of $9,621.24 as to Akmalova and American Mobility); *Allstate Ins. Co. v. Abutova*, No. 13-CV-3494 (ARR) (E.D.N.Y. Apr. 18, 2017), ECF No. 394 (judgment of $557,643.00).

Supply, Quality Medical Supply, and Ridge Medical Supplies, participated in the mechanics and execution of massive parallel schemes to defraud in which the Retail Owners, through the Retailers, mailed hundreds of fraudulent insurance claims for DME and orthotic devices to Plaintiffs for reimbursement pursuant to the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, N.Y. Ins. L. §§ 5101, *et seq.* (popularly known as the "No-fault Law"). *See* Exh. "2" at ¶¶ 2, 100, 106, 113, 119, 121, 507, 513, 522, 759, 765, 773, 1033, 1039, 1048 1218, 1224, 1232, 1255, 1261, and 1269.  The Retail Owners and Retailers are collectively referred to herein as the "Retail Defendants."

6.     Under the No-fault Law, Plaintiffs are required to pay for, *inter alia*, necessary health service expenses that are incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians ("Claimants") and arise from the use or operation of such motor vehicles in the State of New York.  *See* N.Y. Ins. L. § 5103(a).  Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their services.  *See* 11 N.Y.C.R.R. § 65-3.11.  As described in the Complaint, the Retailer Owners, through the Retailers, exploited and continue to exploit this system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed, or if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided, and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices.  *See* Exh. "2" at ¶ 23.

7.     DME generally refers to equipment and/or supplies used for a medical purpose by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools.  *Id.* at ¶ 2.

8.     Orthotic devices generally refer to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes. Such items include, but are not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces. *Id.*

9.     The New York State Medicaid program has established limits on the maximum permissible charges for, among other things, DME and/or orthotic devices. These limits are listed on the New York State Medicaid DME Services Fee Schedule (the "Fee Schedule"). During the relevant time period in the Complaint, "the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided [("Fee Schedule Items")]." *See* 12 N.Y.C.R.R. § 442.2.

10.    With respect to DME and/or medical supplies for which the New York State Medicaid program has not established a fee payable for the specific item ( "Non-Fee Schedule Items"), the New York State Workers' Compensation Board regulation provides that the fee payable shall be the lesser of:

> (1) the acquisition cost (i.e. the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or
>
> (2) the usual and customary price charged to the general public.

12 N.Y.C.R.R § 442.2(a).

11.    As set forth within the body of the Complaint, as well as in its numerous Exhibits and tables setting forth a representative sample of predicate acts, the Retail Owners, through the Retailers, abused the No-Fault Law through various fraudulent billing practices, including routinely submitting bills and supporting documentation to Plaintiffs that misrepresented that: (i)

certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retail Owners, through the Retailers, were utilizing phantom codes for which there was no published fee schedule;  (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items was the lesser of their acquisition costs, plus 50% or the usual and customary price charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Retailers' bills corresponded with the equipment purportedly provided.  *See* Exh. "2" at ¶¶ 19, 31, 34, 169, 214, 219-24, 228, 235, and 239; Compl. Exhs. 2, 8, 10-15, 18, 24, 29, 32, and 33.

12.     In addition, the Retail Owners, through the Retailers, also routinely submitted fraudulent bills to Plaintiffs in support of claims for (i) expensive custom-fitted DME and/or orthotic devices, such as lumbar sacral orthoses ("LSOs") as well as knee, wrist, elbow and shoulder braces that were never provided; (ii) expensive DME and/or orthotic devices that required fittings and/or adjustments that were never performed; and (iii) reimbursement of DME and/or orthotic devices in excess of the relevant fee schedule in existence at the time.  *See, e.g.,* Exh. "2" at ¶¶ 217, 240, 243-44, 246, 248, 253, 255, 266, 268-270, 279, 281-82, and 286 and Compl. Exhs. 6-7, 20, 24, 29, 34-35, 37-38, 42-45, 48, and 50, 52-56.   Each of those bills materially misrepresented the nature, cost and quality of the DME and/or orthotic device purportedly provided, to the extent the items were provided at all.  *Id*. at ¶¶ 36, 172, 174, 176, 187, 207, 522, 774, 1233, and 1270.

13.     As alleged in the Complaint, the schemes in which the Defaulted Defendants participated are related and similar, stemming from a common blueprint.  Exh. "2" at ¶¶ 14, 16, 19, 21, 42, 172, and 186.

14.     In that regard, the Defaulted Defendants devised, and carried out, fundamentally identical schemes to fraudulently bill Plaintiffs in the manner described above for expensive DME and/or orthotic devices that were never provided, or if provided, were inexpensive items of inferior

6

quality that cost a fraction of the amounts that the Retailers materially misrepresented in the fraudulent insurance claims they submitted to Plaintiffs.  *Id.* at ¶¶ 17, 170, 172, and 192; Compl. Exh. 1.

15.     As part of the scheme, in exchange for kickbacks and/or other financial compensation agreements with the Retailers, several No-fault Clinics operating in the New York metropolitan area, through their medical doctors and/or chiropractors, who are not named as defendants in the Complaint, provided the Retailers with prescriptions for DME and/or orthotic devices pursuant to a standard protocol or predetermined course of treatment. Exh. "2" at ¶¶ 3, 5, 15 174, 185, 188-89, and 192.  At the No-fault Clinics, a No-fault Claimant's initial office consultation would automatically trigger a series of internal practices and procedures in which the No-fault Clinics would issue a prescription for a standard battery of DME and/or orthotic devices, irrespective of the Claimant's actual medical needs.  *Id.* at ¶¶ 23, 185, and 188-89.

16.     Often, the No-fault Clinics directed their associated physicians, chiropractors and/or other providers to prescribe DME and/or orthotic devices that are not included in the Fee Schedule, such as bed boards, car seats, EMS Units, infrared heat lamps, hot/cold packs, massagers and whirlpools; and to ensure that the prescriptions issued for these items were generic and non-descript, meaning that they were to omit any detailed description of the items to be supplied to the No-fault Claimants.  *Id.* at ¶¶ 190 and 192.  In addition to prescribing Non-Fee Schedule Items, the No-fault Clinics routinely provided the Retailers with generic, non-descript prescriptions for certain Fee Schedule Items, such as back braces, knee braces, shoulder braces, ankle braces, elbow supports, cervical traction units, cervical collars, lumbar cushions and thermophores, which the Retailers then used in support of their claims for reimbursement at a higher rate for expensive DME that the Retailers never provided.  *Id.* at ¶¶ 192-93.  The prescriptions were never given to the No-fault Claimants.  Instead, they were given directly to the Retailers to eliminate the possibility that the No-fault Claimant(s) would fill the prescription(s) with a legitimate retailer of

DME and/or orthotic devices.  *Id.* at ¶ 191.

17.     In furtherance of the scheme to defraud alleged in the Complaint, in addition to the agreements and/or kickback relationships entered into with the No-fault Clinics, one or more of the Retailers also entered into agreements with one or more owners DME and orthotic device wholesale supply companies (generally referred to as the "Wholesale Owners"), including Defaulted Wholesale Owners Apresyantsi, Mezkula, Semenikhin, and Zalogin, through their respective corporations (generally referred to as "Wholesalers"), including Defaulted Wholesalers Biv Wholesale, Comdex, Global Best Deal, Grigol Supply, IG&NAT Services, Imprezza NYC, Metra Wholesale, Ortiz Omega, VDS Medical Supply, and VZ Group, whereby these Wholesalers supplied the Retailers with invoices that were used to document inflated and outrageous wholesale costs for the DME and/or orthotic devices the Retailers allegedly purchased, which the Retailers then submitted to Plaintiffs as part of their proof of claim.  *Id.* at ¶¶ 6, 9, 174-176, 185, and 198-99.  The Wholesale Owners and Wholesalers are collectively referred to herein as the "Wholesale Defendants."

18.     The wholesale invoices provided by the Wholesale Defendants to the Retailers included artificial prices that exceeded the actual wholesale price of the DME and/or orthotic devices reflected therein.  *Id.* at ¶¶ 6, 9, 174-176, and 198-99. To the extent the Retailers provided any DME and/or orthotic devices to No-fault Claimants, the DME and/or orthotic devices were inexpensive items that were materially misrepresented in the wholesale invoices to be much higher in cost than the actual items received from the Wholesale Defendants.  *Id.* at ¶¶ 6, 174-76, and 198-200.

19.     In that regard, the wholesale invoices provided by the Wholesale Defendants to the Retailers reflected grossly inflated prices, upwards of 10 to 20 times the actual prices that the Retailers paid for the DME and/or orthotic devices that were actually provided to the Claimants. *Id.* at ¶¶ 6 and 201. Further, each of the wholesale invoices provided by the Wholesale Defendants

to the Retailers intentionally omitted the make, model and manufacturer of the DME and/or orthotic devices reflected in the invoice, thereby ensuring that the nature and quality of the item that was supposedly provided could not be verified based on the wholesale invoice alone.  *Id*. at ¶¶ 10, 175-76, 180, and 202.  In other instances, the DME and/or orthotic devices reflected in the wholesale invoices that were purportedly provided by the Wholesale Defendants to the Retailers were, in fact, never provided to the Retailers; rather, the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create the illusion of a sale.  *Id*. at ¶¶ 6 and 203.

20.     In return for the inflated and/or illusory invoices, the Retailers would issue checks to the Wholesale Defendants for the full amount of the inflated wholesale invoice.  *Id*. at ¶¶ 7, 176, 204-05, and 298.  The Wholesale Defendants would then convert the checks to cash through check cashing establishments, or by other means, and would return the majority of the money to the Retailers while keeping a portion of the profits of the scheme for themselves.  *Id*. at ¶¶ 7, 172, 176, 204-05, and 294-99.

21.     With the generic prescriptions and inflated invoices in hand, the Retailers routinely submitted the generic prescriptions and inflated invoices to Plaintiffs in support of their fraudulent insurance claims for reimbursement, along with claim forms and delivery receipts that materially misrepresented the nature, quality and cost of the DME and/or orthotic devices that were purportedly provided to No-fault Claimants.  *Id*. at ¶¶ 5, 9, 42, 185, 197-99, 207, 210 and 213.

22.     In that regard and for their part in the scheme, the Wholesale Defendants (and No-fault Clinics) provided the means through which the Defendants were able to execute their scheme to defraud.  *Id*. at ¶¶ 176, 178, 182, and 193.  The fraudulent wholesale invoices and prescriptions were provided with the knowledge that they would be submitted to insurers in general, and Plaintiffs in particular, to obtain reimbursement under the No-fault Law in excess of the actual cost of the DME and/or orthotic devices purportedly provided.  *Id*. at ¶¶ 175-77, 179-180, 182, and 209-10.

23.     In sum, as alleged in the Complaint, the Retailers' bills routinely sought the maximum possible amount of reimbursement under the No-fault Law for expensive DME and/or orthotic devices that  were never actually provided, or not provided as billed and/or if provided, provided pursuant to a predetermined course of treatment, without regard to medical necessity.  *Id*. at ¶¶ 36, 47, 170-71, 174, 185, 210, 246, 255, 266, 268, and 276.   The bills intentionally omitted the make, model and manufacturer of the DME and/or orthotic devices purportedly provided to No-fault Claimants in order to conceal the fact that the DME and/or orthotic devices actually provided were inexpensive and of poor quality, to the extent they were provided at all.  *Id*. at ¶¶ 9-10, 16, 36-37, 172, 174-76, 202, 207, 212, 224, 228, 301, 522, 774, 1233, and 1270.  With the assistance of the Wholesale Defendants and the No-fault Clinics, the Retail Owners, through the Retailers, were able to submit hundreds of fraudulent insurance claims to Plaintiffs for reimbursement under the No-fault Law; claims that Plaintiffs would not have otherwise paid had they known of their fraudulent nature.  *Id.* at ¶¶ 4-6, 167, 526, 778, 1237, and 1274.

## DEFAULT BY DEFENDANTS IN THIS ACTION

24.     On or about June 1, 2016, pursuant to Fed. R. Civ. P. 4(h), Plaintiffs served their Complaint upon Defaulted Defendant Biv Wholesale.  A copy of the affidavit of service (ECF No. 18) is annexed hereto as Exhibit "3."

25.     On or about June 2, 2016, pursuant to Fed. R. Civ. P. 4(h), Plaintiffs served their Complaint upon Defaulted Defendants Empire State Medical Supplies and Liberty Surgical Supplies.  A copy of the affidavits of service (ECF Nos. 21 and 31, respectively) are annexed hereto as Exhibits "4" and "5."

26.     On or about June 3, 3016, pursuant to Fed. R. Civ. P. 4(h), Plaintiffs served their Complaint upon Defaulted Defendants Pacific Surgical Supply, Quality Medical Supply and Ridge Medical Supplies.  A copy of the affidavits of service (ECF Nos. 41, 48, and 49 respectively) are annexed hereto as Exhibits "6" through "8."

27.     On or about June 6, 2016, pursuant to Fed. R. Civ. P. 4(h), Plaintiffs served their Complaint upon Defaulted Defendants Comdex, Global Best Deal, Grigol Supply, IG&NAT Services, Imprezza NYC, Metra Wholesale, Ortiz Omega, VDS Medical Supply, and VZ Group, and upon Defendant American Mobility. Copies of the affidavits of service (ECF Nos. 20, 25, 26, 28, 29, 35, 40, 57, 59, and 90, respectively) are annexed hereto as Exhibits "9" through "18."

28.     On or about June 8, 2016, pursuant to Fed. R. Civ. P. 4(e) Plaintiffs served their Complaint upon Defaulted Defendants Shnaider and Zalogin.  A copy of the affidavit of service (ECF Nos. 75 and 78) is annexed hereto as Exhibits "19" and "20."

29.     Pursuant to Fed. R. Civ. P. 4(e), on or about July 6, 2016, Plaintiffs served their Complaint upon Defaulted Defendant Boris Khanis ("Khanis") by affixing a copy of same to the door of Khanis' actual place of business, and, on or about July 7, 2016, by sending a copy of the same by first class mail to Khanis' actual place of business.  Copies of the affidavits of service (ECF No. 95) are annexed hereto as Exhibit "21."

30.     Pursuant to Fed. R. Civ. P. 4(e), on or about July 7, 2016, , Plaintiffs served their Complaint upon Defaulted Defendants Apresyantsi and Semenikhin by affixing copies of the same to the door of their respective actual places of business, and, on or about July 8, 2016, sending copies of the same by first class mail to their respective actual places of business.  Copies of the affidavits of service (ECF Nos. 94 and 98) are annexed hereto as Exhibit "22" and "23."

31.     Pursuant to Fed. R. Civ. P. 4(e), on or about July 7, 2011, Plaintiffs served their Complaint upon Defaulted Defendants Abramov, Lyubronetskaya and Mezkula by affixing copies of the same to the door of their respective actual places of business, and, on or about July 11, 2016, sending copies of the same by first class mail to their respective actual places of business.  Copies of the affidavits of service (ECF Nos. 92, 96, and 97) are annexed hereto as Exhibits "24" through "26."

32.     Pursuant to Fed. R. Civ. P. 4(e), on or about July 11, 2016,  Plaintiffs served their Complaint upon Defendant Akmalova by affixing a copy of same to the door of Akmalova's actual place of business, and, on or about July 15, 2016, sending a copy of the same by first class mail to Akmalova's actual place of business.  A copy of the affidavit of service (ECF No. 93) is annexed hereto as Exhibit "27."

33.     Pursuant to Fed. R. Civ. P. 12, the Defaulted Defendants were required to serve an answer or otherwise appear within twenty-one (21) days of service of the Complaint.

34.     At the time of this motion, the Defaulted Defendants have either failed to answer or otherwise move with respect to the Complaint or have failed to appear or otherwise defend against the action.

35.     On or about September 16, 2016, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulted Defendants Biv Wholesale, Comdex, Global Best Deal, Grigol Supply, IG&NAT Services, Imprezza NYC, Metra Wholesale, VZ Group, Liberty Surgical Supplies, Quality Medical Supply, Ridge Medical Supplies, Khanis, Semenikhin,[4] and Lyubronetskaya had not filed answers or otherwise moved with respect to the Complaint and noted their default.  Copies of the Clerk's Certificates of Entry of Default (ECF Nos. 187-93, 195-201) relating to each of the aforementioned Defaulted Defendants are annexed hereto as Exhibits "28" through "41."

36.     On or about September 22, 2016, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulted Defendants VDS Medical Supply, Empire State Medical Supplies, and Ortiz Omega Corp, as well as Defendant American Mobility, had not filed answers or otherwise moved with respect to the Complaint and noted their default.  Copies

---

[4] The Clerk of the United States District Court, Eastern District of New York filed a second Certificate of Default against Defaulted Defendant Semenikhin on or about September 22, 2016, a copy of which (ECF No. 212) is included along with the original September 16th Certificate in Exhibit "40" hereto.

of the Clerk's Certificates of Entry of Default (ECF Nos. 209-211, 213) relating to each of the aforementioned Defaulted Defendants are annexed hereto as Exhibits "43" through "45."

37.     On or about November 3, 2017, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulted Defendants Pacific Surgical Supply, Shnaider, and Zalogin had not filed answers or otherwise moved with respect to the Complaint and noted their default.  Copies of the Clerk's Certificates of Entry of Default (ECF Nos. 294-296) relating to each of the aforementioned Defaulted Defendants are annexed hereto as Exhibits "46" through "48."

38.     On or about January 2, 2018, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulted Defendants Mezkula and Abramov, as well as Defendant Akmalova, had not filed answers or otherwise moved with respect to the Complaint and noted their default.  Copies of the Clerk's Certificates of Entry of Default (ECF Nos. 307, 309) relating to each of the aforementioned Defaulted Defendants are annexed hereto as Exhibits "49" through "51."

39.     On or about January 3, 2018, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulted Defendant Apresyantsi has not filed an answer or otherwise moved with respect to the Complaint and noted his default.  A copy of the Clerk's Certificate of Entry of Default (ECF No. 310) relating to the aforementioned Defaulted Defendant is annexed hereto as Exhibit "52."

40.     By failing to answer the Complaint or otherwise defend against the action, the Defaulted Defendants have conceded the allegations relating to Plaintiffs' claims.  Thus, there are no material questions of fact at issue and, coupled with the proper service in this action, a default judgment is appropriate.  *See Briarpatch, Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp. 2d 1, 3 (S.D.N.Y. 2007).  Further, as noted in the accompanying memorandum of law, in light of the default, all of the allegations in the Complaint must be accepted as true.  *See Finkel v. Romanowicz,*

577 F.3d 79, 84 (2d Cir. 2009), *United States v. Williams,* 11-CV-3593 NGG RLM, 2012 WL 170106 (E.D.N.Y. Jan. 19, 2012); *Finkel v. Robco Elec. Corp.,* 11-CV-2353 NGG RLM, 2011 WL 3204603 (E.D.N.Y. July 27, 2011); *Phillip Morris USA, Inc. v. A & V Minimarket, Inc.,* 592 F. Supp. 2d 569, 672 (S.D.N.Y. 2009) (*citing Cotton v. Slone*, 4 F.3d 176, 181 (2nd Cir. 1993)). Therefore, accepting Plaintiffs' allegations as true, it is respectfully submitted that this Court must grant Plaintiffs' application for default judgment in the amount specified below.

## **RELIEF SOUGHT**

41.     As noted above, Plaintiffs have settled with, have discontinued their claims against, or are in litigation with all Defendants, except the Defaulted Defendants, and except Defendants Akmalova and American Mobility.

42.     All claims against the Defaulted Defendants are identified in the table attached hereto as Exhibit "53."[5] Specifically, Plaintiffs are seeking an entry of judgment against the Defaulted Defendants on the Claims for Relief under the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), which allege violations under 18 U.S.C. §1962(c), as identified in the table attached hereto as Exhibit "54."  Plaintiffs are also seeking an entry of judgment against the Defaulted Defendants on common law claims sounding in fraud and unjust enrichment, each of which are identified in the table attached hereto as Exhibit "55."  Finally, Plaintiffs seek a judgment declaring that Plaintiffs have no obligation to pay any No-fault claims submitted by the Retail Defendants because (1) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault Claimants and the amounts they were entitled to be reimbursed in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain

---

[5] Compared with the First Motion, the Exhibits to the Second Motion have been revised, where appropriate, to reflect that no judgment is sought as to Defendants Akmalova and American Mobility.  Notwithstanding, certain Exhibits retain information concerning Akmalova and American Mobility where relevant to this Second Motion

reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs; and (2) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to No-fault Claimants by submitting claims for DME and/or orthotic devices that they never supplied to No-fault Claimants.

43.     As set forth in the accompanying Declaration of Michael Bruno, the total damages Plaintiffs have incurred in connection with the fraudulent insurance claims underlying this action that pertain to each Defaulted Defendant are contained in spreadsheets prepared by counsel containing information extracted from summaries of payments made on claims for reimbursement under the No-fault Law, maintained in the ordinary course of business, which are included as exhibits to this Declaration.  In that regard, the damages for Plaintiffs' RICO counts are calculated based on the payments made to the applicable Retailer enterprise in which the Defaulted Defendants participated.  Similarly, the damages for Plaintiffs' common law claim are calculated based on the amounts paid to the Retailer Defendant(s).  Thus, attached hereto as Exhibits "56" through "69" are spreadsheets prepared by counsel based on information maintained by Allstate in its ordinary course of business, itemizing each payment made by Plaintiffs to the relevant Retailer enterprise in which the Defaulted Defendants are alleged to have participated.  As set forth in the accompanying Declaration of Michael Bruno, Michael Bruno compared the spreadsheets in Exhibits "56" through "69" to the payment summaries maintained by Allstate and confirmed that the information is true and correct.  The amounts reflected therein form the basis of the judgments sought against the Defaulted Defendants.

44.     As explained in the accompanying memorandum of law, Plaintiffs are entitled to treble damages under their RICO claims and the defendants named in all claims for relief are jointly and severally liable for the amounts set forth therein.

45.     In addition, Plaintiffs are also seeking pre-judgment interest on their claims.  As set forth in Plaintiffs' memorandum of law, interest is calculated from the first day of the year following the date of Plaintiffs' payments to the relevant Retailer enterprise.  Calculating interest in this manner produces an interest amount that is less than the total amount of interest Plaintiffs may seek under New York State law, but has been adopted by several courts within this District in similar cases.  *See Govt. Employees Ins. Co. v Infinity Health Products, Ltd.*, 10-CV-5611 JG JMA, 2012 WL 1427796, at *10-12 (E.D.N.Y. Apr. 6, 2012) *report and recommendation adopted,* 10-CV-5611 JG JMA, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012); *Gov't Employees Ins. Co. v. Li-Elle Serv., Inc.*, 12CV2157 KAM VMS, 2013 WL 829302 (E.D.N.Y. Feb. 11, 2013) *report and recommendation adopted as modified*, 12-CV-2157 KAM VMS, 2013 WL 829274 (E.D.N.Y. Mar. 6, 2013); *Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 11-CV-4261 ARR RER, 2013 WL 764735, at * 8-10 (E.D.N.Y. Feb. 8, 2013) *report and recommendation adopted*, 11-CV-4261 ARR RER, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013).

46.     Plaintiffs also respectfully reserve their right to seek attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

47.     Accordingly, the damages demanded from each of the Defaulted Defendants is calculated and set forth in the following exhibits to this Declaration: (a) Exhibit "70," which sets forth the interest calculations for the Retailer enterprises that are the subject of this application; and (b) Exhibit "71," which sets forth the damages sought against each Defaulted Defendant, trebled where appropriate on Plaintiffs' RICO claims, the prejudgment interest, and the total judgment sought against each Defaulted Defendant.  In instances where the Defaulted Defendant is liable to Plaintiffs for damages pursuant to the RICO and common law claims for relief, the judgment amount listed in Exhibit "71" against that defendant is the RICO damage amount inclusive of any interest to which Plaintiffs are entitled as this amount is higher than the common law claim damage amount inclusive of any interest.  By way of example, Defaulted Defendant

16

Khanis is liable to Plaintiffs on the One Hundred First Claim for Relief sounding in RICO and the One Hundred Second and One Hundred Third Claims for Relief sounding in fraud and unjust enrichment, but the judgment amount sought against Defaulted Defendant Khanis is $713,415.69, the damages on the RICO claim.  Moreover, where the Defaulted Defendant is liable to Plaintiffs on multiple RICO claims for relief, the judgment amount sought is the sum of those claims.  By way of example, Defaulted Defendant Biv Wholesale is liable to Plaintiffs on the Fourteenth and the Forty-Fourth RICO Claims for Relief, involving different enterprises and different schemes to defraud.  Therefore, the judgment sought against Biv Wholesale is $250,055.36, the sum of the damages on the Fourteenth and the Forty-Fourth RICO Claims for Relief.

48.     Finally, because the Defaulted Retail Defendants Empire State Medical Supplies, Liberty Surgical Supplies, Dmitrei Abramov, Pacific Surgical Supply, Oleg Shnaider, Quality Medical Supply, Valeriy Semenikhin, Ridge Medical Supplies and Boris Khanis are deemed to have admitted the allegations in the Complaint, Plaintiffs are entitled to a declaration that they are not obligated to pay pending and/or unpaid No-fault claims from the Defaulted Retail Defendants.

49.     As of March 22, 2019, there were 18 active lawsuits, as well as two pending arbitrations, in which the Default Retailer Defendants seek payments from Allstate for DME.  A spreadsheet describing each of these lawsuits and AAA matters is annexed hereto as Exhibit "77."

50.     Moreover, as set forth in the Declaration of Michael Bruno, a sampling of the fraudulent insurance claims underlying this action that pertain to each Defaulted Retail Defendant is contained in spreadsheets prepared by counsel containing information extracted from summaries of claims for reimbursement under the No-fault Law, maintained in the ordinary course of business, which are included as exhibits to this declaration.  Thus, attached hereto as Exhibits "72" through "76" are spreadsheets prepared by counsel based on information maintained by Allstate in its ordinary course of business, itemizing each claim for reimbursement for DME made by the relevant Default Retail Defendant to Plaintiffs.  As set forth in the accompanying Declaration of

Michael Bruno, Michael Bruno compared the spreadsheets in Exhibits "72" through "76" to the claim summaries maintained by Allstate and confirmed that the information is true and correct.

51.     As further set forth in the Declaration of Michael Bruno, upon review of the billing and payment summaries maintained by Allstate in the ordinary course of business, Mr. Bruno determined that there are in excess of $183,200.00 in unpaid claims that remain in dispute.

## DENIAL OF FIRST MOTION, LEAVE TO RENEW, AND
## SERVICE PURSUANT TO LOCAL CIVIL RULE 55.2(c)

52.     As noted previously, *see* n. 2, *supra*, the Court denied Plaintiffs' First Motion with leave to renew, finding several issues with the service of the First Motion pursuant to Local Rule 55.2(c).  *See* ECF No. 333, at pp. 11-12.  As set forth herein, Plaintiffs respectfully submit that the concerns raised by the Court have been remedied.

53.     By way of brief background, Plaintiffs had served the First Motion upon, *inter alia*, the eight individual Defaulted Defendants at issue in this Second Motion (the "Individual Defendants"),[6] effecting service upon six of them – namely Abramov, Apresyantsi, Khanis, Lyubronetskaya, Mezkula, and Semenikhin –at the address approved by the Court for service of the Amended Summons and First Amended Complaint (*see* ECF Nos. 5, 7) (the "Summons").[7]

54.     At the time Plaintiffs were attempting service of the Summons, Plaintiffs had initially been unable, despite diligent efforts, to effect service of the Summons in a manner authorized by the Federal Rules or applicable state law; and therefore, Plaintiffs applied to the Court for permission to serve these six Defendants by alternative means.  *See* ECF No. 64 (the "Summons Motion"); Fed. R. Civ. P. 4; C.P.L.R. § 308.  As explained in the Summons Motion,

---

[6] The Defaulted Defendants which are not natural persons are referred to herein as the "Corporate Defendants."

[7] The remaining two Individual Defendants at issue in this Second Motion, Shnaider and Zalogin, had been served with the Summons by personal delivery at their last known residential address, and Plaintiffs mailed a copy of the First Motion to the same address.  However, because the First Motion "provided no information on whether these [are] residential or business addresses," the Court concluded that mailing to their homes had not been proven.  *See* ECF No. 333, at p. 7 n. 12.

Plaintiffs investigated numerous public records and other sources to find the last known residential addresses for each of these six Individual Defendants.  *See* ECF No. 64, at p. 2 ( addresses obtained from "various computer database searches," including without limitation "Westlaw, Pacer.gov, Whitepages.com, Facebook.com, LinkedIn.com, and/or general Google.com searches"). However, the process server reported that although service had been attempted as to each of these Defendants at these respective addresses, apparent tenants or neighbors encountered at that address told the process server that the respective Defendant was unknown at such address.  *See id*.

55.     Unable to effectuate service at the last known residential addresses for each of these six Individual Defendants, Plaintiffs sought and were granted leave to serve each by mail at the only other addresses known at that time to be used by the Individual Defendants: the addresses of the respective Corporate Defendants of which they are known to be principals.  *See* June 22, 2016 Order (granting Summons Motion in part).

56.     At the time of the First Motion, Plaintiffs had not learned of any new residential addresses known to be used by the six Individual Defendants served in accordance with the Summons Motion.  Accordingly, Plaintiffs mailed the First Motion to these Individual Defendants at the addresses approved for service of the Summons by the Court's June 22, 2016 Order.  In light of the now-adopted R&R and the Court's finding that service of the First Motion should have been made upon the Individual Defendants by mail to their last known residential addresses, instead of the address at which the Summons was served, Plaintiffs have served the Second Motion upon all of the Individual Defendants at their last known residential addresses.  Plaintiffs' counsel located such addresses using all means reasonably available to them, including without limitation public land, lien, and other such state, local, or county filings, federal and state court records and case information, WestLaw reports and records, and general Google and other searches of the Internet and social media.  In that regard, the bases for Plaintiffs' belief that service has been made at the last known residential address for each Individual Defendant are set forth below.

- Individual Defendant Abramov's last known residence is a condominium unit located at 3901 Nostrand Avenue, Apt. 1F, Brooklyn, New York 11235-2121 ("3901 Nostrand") and leased under the name of his spouse or close associate Anastasiya Nesterenko a/k/a Abramov, as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "78": (i) a People Finder Household-Centric Record, provided by Thomson Reuters Legal and obtained by Plaintiffs' counsel at WestLaw.com, showing residence of Defendant "Dmitrei E. Abramov" at 3901 Nostrand, which is described as a "Multi-Family Dwelling," along with apparent spouse or close associate Anastasiya Abramov; (ii) UCC-1 financing statement recorded on December 5, 2012 in the City Register of the City of New York naming, *inter alia*, Anastasiya Nesterenko as a debtor thereunder, and specifying as collateral all of her interest as a lessee under a certain Proprietary Lease with respect to 3901 Nostrand; and (iii) a Google Maps image captured in June of 2018, showing an apparent residential building at 3901 Nostrand.

- Individual Defendant Apresyantsi's last known residence is located at 1479 Dahill Road, Suite A4, Brooklyn, New York 11235-4804 ("1479 Dahill"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "79": (i) NYS Department of State Entity Information printout listing Apresyantsi and 1479 Dahill as DOS Process address for Corporate Defendant Grigol Supply; (ii) NYC Department of Finance Property Tax Bill and Quarterly Statement describing building at 1479 Dahill as "Residential, More Than 10 Units"; and (iii) Google Maps street view image captured in August of 2018, showing an apparent residential building at 1479 Dahill.[8]

- Individual Defendant Khanis' last known residence is located at 727 Ocean View Avenue, Apt. A4, Brooklyn, New York 11235-6331 ("727 Ocean View"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "80": (i) a Unit Deed dated October 16, 2007 by which Khanis and his non-party spouse acquired 727 Ocean View; (ii) a February 1, 2019 NYC Department of Finance Property Tax Bill and Quarterly Statement addressed to Khanis and his non-party spouse as owners, listing 727 Ocean View as Khanis' mailing address, and describing building as "Residential, More Than 10 Units"; and (iii) a Google Maps street view image captured in June of 2018, showing an apparent residential building at 727 Ocean View.

- Individual Defendant Lyubronetskaya's last known residence is located at 2775 East 12th Street, #626, Brooklyn, New York 11229-5215 ("2775 East 12th"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "81": (i) the Affidavit of Service filed by plaintiffs in *GEICO, et al. v. Shah, M.D., et al.*, No. 15-CV-4057 (ERK) (JO) (E.D.N.Y. July 30, 2015) (ECF No. 31) attesting to service of the summons upon "Inna Lyubranetskaya a/k/a Lyubronetskaya a/k/a Lyubronwtskaya" by personal delivery at 2775 East 12th, a property described as Lyubronetskaya's "dwelling place/usual place of abode within the State of New York," to a person of suitable age and discretion identified as "Milana Dashaeva/Housekeeper"; (ii) Motor Vehicle Service &

---

[8] Individual Defendant Apresyantsi also consistently used the residential address 1479 Dahill as his personal address on the Certificate of Incorporation for Grigol Supply. *See* ECF No. 64, at pp. 48-50.

Warranty Record, provided by Thomson Reuters Legal and obtained by Plaintiffs' counsel at WestLaw.com, describing Lyubronetskaya as a "Renter" in the "High Rise" building located at 2775 East 12th; and (iii) a Google Maps street view image captured in June of 2018, showing an apparent residential building at 2775 East 12th.

- Individual Defendant Mezkula's last known residence is located at 316 Avenue X, Brooklyn, New York 11223 ("316 Avenue X"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "82": (i) NYS Department of State Entity Information printout listing Mezkula as Chief Executive Officer of Corporate Defendant Global Best Deal, with Mezkula's personal address listed as 316 Avenue X; (ii) a printout from the NYC Finance website describing 316 Avenue X as "Retail W/ Other Uses"; (iii) a People Finder – Historic Tracker Record, provided by Thomson Reuters Legal and obtained by Plaintiffs' counsel at WestLaw.com, showing Mezkula's current address as 316 Avenue X; and (iv) a Google Maps satellite image captured in June of 2018, showing the vicinity of 316 Avenue X to consist of buildings apparently zoned for mixed use.

- Individual Defendant Semenikhin's last known residence is located at 2955 West 29th Street, Apt. 7C, Brooklyn, New York 11224 ("2955 West 29th"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "83": (i) NYS Department of State Entity Information printout, showing Semenikhin and 2955 West 29th as the registered address for service of process upon Corporate Defendant VDS Medical, with Semenikhin's address listed as 2955 West 29th; (ii) a Utility Record, provided by Thomson Reuters Legal and obtained by Plaintiffs' counsel at WestLaw.com, showing connection of utilities for Semenikhin as customer with service address at 2955 West 29th; (iii) an Apartments.com listing describing the building at 2955 West 29th as the "Ocean Gate Apartments"; and (iv) a Google Maps street view image showing an apparent residential building at 2955 West 29th.

- Individual Defendant Shnaider's last known residence is located at 428 St. Andrews Place, Manalapan, New Jersey 07726 ("428 St. Andrews"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "84": (i) the Affidavit of Service (ECF No. 78) attesting to Plaintiffs' personal delivery of the Summons to Shnaider at 428 St. Andrews on June 8, 2016; and (ii) ) a Google Maps satellite image captured in 2019, showing that 428 St. Andrews abuts a golf course and is located in a residential neighborhood.

- Individual Defendant Zalogin's last known residence is located at 15 Potterville Lane, Palm Coast, Florida 32164-6709 ("15 Potterville Lane"), as demonstrated by materials and information gathered in Plaintiffs' searches and investigations, including without limitation the following materials annexed collectively hereto as Exhibit "85": (i) the Affidavit of Service (ECF No. 78) attesting to Plaintiffs' personal delivery of the Summons to Zalogin at 15 Potterville Lane on June 8, 2016; (ii) a General Warranty Deed dated May 7, 2012 and recorded in the land records of Flagler County, Florida, by which Zalogin acquired 15 Potterville Lane; (iii) a Notice of Commencement recorded on June 14, 2018 in the Official Records of Flagler County, Florida, naming Zalogin as landowner with address at 15

Potterville Lane; and (iv) a Trulia.com listing showing 15 Potterville Lane to be a freestanding, two-bathroom house.

57.     Accordingly, I hereby certify that a copy of all papers submitted in support of the Second Motion seeking a judgment by default have been mailed to the Individual Defendants at the last known residential address of each, as set forth below:

| **Individual Defendant** | **Last Known Residence for Mailing of Second Motion** |
|---|---|
| Dmitrei Abramov | 3901 Nostrand Avenue, Apt. 1F Brooklyn, New York 11235-2121 |
| Grigol Apresyantsi | 1479 Dahill Road, Suite A4 Brooklyn, New York 11235-4804 |
| Boris Khanis | 727 Ocean View Avenue, Apt. A4 Brooklyn, New York 11235-6331 |
| Inna Lyubronetskaya | 2775 East 12th Street, # 626 Brooklyn, New York 11229-5215 |
| Sergey Mezkula | 316 Avenue X Brooklyn, New York 11223 |
| Valeriy Semenikhin | 2955 W 29th Street, Apt. 7C Brooklyn, New York 11224 |
| Oleg Shnaider | 428 St. Andrews Place Manalapan, New Jersey 07726 |
| Vadim Zalogin | 15 Potterville Lane Palm Coast, Florida 32164-6709 |

58.     Furthermore, Plaintiffs respectfully submit that they have addressed the Court's concerns with respect to service of the First Motion upon corporate Defendant Pacific Surgical Supply.  In that regard, the Court had found that the First Motion had been properly served upon the Corporate Defendants at the "last known business address" of each, as "listed on the Secretary of State's website," ECF No. 333, at p. 8, with the exception of Defendant Pacific Surgical Supply, which was mailed to an address (1901 Avenue U) other than the address listed in the Complaint as

its principal place of business (1811 Stillwell Avenue). *See* ECF No. 333, at p. 8.. Because two entities with nearly exactly the same name use or have used 1811 Stillwell Avenue – namely Defaulted Retailer Pacific Surgical Supply, and non-party Pacific Surgical Supply *New York, Inc.* – the Court found it unclear that the right "Pacific Surgical Supply" was served with the First Motion. *See id.* at pp. 8-10.

59. With respect to Defaulted Defendant Pacific Surgical Supply, at some time between the filing of the Complaint and of the First Motion, the entity has moved and/or amended its service of process address as registered with the New York Secretary of State. *See generally* ECF No. 333, at p. 8 n. 13 (taking "judicial notice of information from New York Secretary of State's website"). At the time of the Complaint, the last business address known to Plaintiffs for Pacific Surgical Supply was the same as its service of process address in effect at that time, 1811 Stillwell Avenue. *See* Exhibit "98" (redacted excerpt from No-fault claim form, marked as an exhibit for use in examination under oath, submitted to Plaintiffs by Pacific Surgical Supply with 1811 Stillwell Avenue as "Provider" address). Now, Pacific Surgical Supply is registered for service of process with the New York Secretary of State at 1901 Avenue U, and Individual Defendant Shnaider continues to be listed as its Chief Executive Officer. *See* Exhibit "92" (NYDOS Entity Information for Defaulted Defendant Pacific Surgical Supply).9 Moreover, as shown on the most recent photo of 1901 Avenue U available on Realtor.com, the street level of the building at that location has an awning bearing Pacific Surgical Supply's correct name (as it appears in the Complaint) and the phone number that Pacific Surgical Supply used in connection with its claim submissions to Plaintiffs. *See* Exh. "84," at p. 8. Therefore, Plaintiffs respectfully submit that service of the

---

[9] Non-party Pacific Surgical Supply *New York, Inc.*, on the other hand, remains registered with the New York Secretary of State for service of process at 1811 Stillwell Avenue, the address *formerly* used by Defaulted Defendant Pacific Surgical Supply. *See* Exhibit "97" (NYDOS Entity Information for non-party). Further, the individual associated with the "*New York, Inc.*" non-party an individual non-party named Sergiy Kvasnitskyy, is not the same known officer, Individual Defendant Shnaider, just as the "*New York Inc.*" non-party is not the same entity as the Pacific Surgical Supply that submitted the claims to Plaintiffs that are the subject of the Complaint.

Second Motion is properly made upon Pacific Surgical Supply at the 1901 Avenue U address, as the last know business address of this Defaulted Defendant.

60.     The last known business addresses used for mailing the Second Motion to the remaining six Corporate Defendants were, like Pacific Surgical Supply, obtained from the public website of the New York Department of State's Corporation and Business Entity Database, adopting specifically the address registered for service of process with each Corporate Defendant's domiciliary state, New York, as of March 28, 2019:

- Grigol Supply, a New York corporation, is registered for service of process at 1479 Dahill Road, Suite #A4, Brooklyn, New York 11204, *see* Exh. "79," at p. 1 (NYDOS Entity Information for Grigol Supply);

- Global Best Deal, a New York corporation, is registered for service of process at 316 Avenue X, Brooklyn, New York 11223, *see* Exh. "82," at p. 1 (NYDOS Entity Information for Global Best Deal);

- VDS Medical Supply, a New York corporation, is registered for service of process (c/o Individual Defendant Semenikhin) at 2955 West 29th Street, Suite 7C, Brooklyn, New York 11224, *see* Exh. "83," at p. 1 (NYDOS Entity Information for VDS Medical Supply);

- Liberty Surgical Supplies, a New York corporation, is registered for service of process at 2616 East 28th Street, Brooklyn, New York 11235, *see* Exh. "86"(NYDOS Entity Information for Liberty Surgical Supplies);

- Ridge Medical Supplies, a New York corporation, is registered for service of process at 210 Bridge Plaza Drive, Manalapan, New Jersey 07726, *see* Exh. "87"(NYDOS Entity Information for Ridge Medical Supplies);

- Empire State Medical Supplies, a New York corporation, is registered for service of process at 1611 McDonald Avenue, Brooklyn, New York 11230, *see* Exh. "88"(NYDOS Entity Information for Empire State Medical Supplies);

- Quality Medical Supply Inc., a New York corporation, is registered for service of process at 2525 West Second Street, Apt. 3G, Brooklyn, New York 11223, *see* Exh. "89"(NYDOS Entity Information for Quality Medical Supply);

- Biv Wholesale Inc., a New York corporation, is registered for service of process at 208 Bay Street, Staten Island, New York 10301, *see* Exh. "90"(NYDOS Entity Information for Biv Wholesale);

- Comdex Inc., a New York corporation, is registered for service of process at 525 Neptune Ave. #7-C, Brooklyn, New York 11224, *see* Exh. "91"(NYDOS Entity Information for Comdex);

- IG&NAT Services, Inc., a New York corporation, is registered for service of process at 197- East 18th St., Apt. B10, Brooklyn, New York 11229, *see* Exh. "92"(NYDOS Entity Information for IG&NAT Services);

- Imprezza NYC Inc., a New York corporation, is registered for service of process at 2103 Ave. Z, Brooklyn, New York 11235, *see* Exh. "93"(NYDOS Entity Information for Imprezza NYC);

- Metra Wholesale Inc., a New York corporation, is registered for service of process at 309 Sand Lane 2nd Fl, Front Ste B, Staten Island, New York 10305, *see* Exh. "94"(NYDOS Entity Information for Metra Wholesale);

- Ortiz Omega Corp., a New York corporation, is registered for service of process at 1330 6th Avenue, Suite 23, New York, New York 10019, *see* Exh. "95"(NYDOS Entity Information for Ortiz Omega); and

- VZ Group Inc., a New York corporation, is registered for service of process at 2753 Harway Ave., Brooklyn, New York 11214, *see* Exh. "96" (NYDOS Entity Information for VZ Group).

61.    Accordingly, I hereby certify that a copy of all papers submitted in support of the Second Motion seeking a judgment by default have been mailed to the Corporate Defendants at the last known business address of each, as set forth below:

| **Corporate Defendant** | **Last Known Business Address for Mailing of Second Motion** |
|---|---|
| Grigol Supply, Inc. | 1479 Dahill Road, Suite #A4 Brooklyn, New York 11204 |
| Global Best Deal, Inc. | 316 Avenue X Brooklyn, New York 11223 |
| VDS Medical Supply, Inc. | 2955 W 29th Street, Apt. 7C Brooklyn, New York 11224 |
| Liberty Surgical Supplies Inc. | 2616 East 28th Street Brooklyn, New York 11235 |
| Ridge Medical Supplies Corp. | 210 Bridge Plaza Drive Manalapan, New Jersey 07726 |
| Empire State Medical Supplies, Inc. | 1611 McDonald Avenue Brooklyn, New York 11230 |

| **Corporate Defendant** | **Last Known Business Address for Mailing of Second Motion** |
|---|---|
| Pacific Surgical Supply, Inc. | 1901 Avenue U<br>Brooklyn, New York 11229-3905 |
| Quality Medical Supply Inc. | 2525 West Second Street, Apt. 3G<br>Brooklyn, New York 11223 |
| Biv Wholesale Inc. | 208 Bay Street<br>Staten Island, New York 10301 |
| Comdex Inc. | 525 Neptune Ave., #7-C<br>Brooklyn, New York 11224 |
| IG&NAT Services, Inc. | 1970 East 18th St., Apt. B10<br>Brooklyn, New York 11229 |
| Imprezza NYC Inc. | 2103 Ave. Z<br>Brooklyn, New York 11235 |
| Metra Wholesale Inc. | 309 Sand Lane 2nd Fl, Front Ste B<br>Staten Island, New York 10305 |
| Ortiz Omega Corp. | 1330 6th Avenue, Suite 23<br>New York, New York 10019 |
| VZ Group Inc. | 2753 Harway Ave.<br>Brooklyn, New York 11214 |

**WHEREFORE**, Plaintiffs respectfully move this Court to enter a judgment by default against the Defaulted Defendants in the amounts set forth herein.  Further, I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief; that the amount claimed is justly due and owing to Plaintiffs; and that the disbursements sought to be taxed have been made in this action or will necessarily be made or included in the action.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  New York, New York
        April 19, 2019


                                          ___/s/ James McKenney_____
                                          James A. McKenney, Esq.