UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY, ALLSTATE
FIRE AND CASUALTY INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY, ALLSTATE
NEW JERSEY INSURANCE COMPANY, ALLSTATE
PROPERTY AND CASUALTY INSURANCE
COMPANY,

**REPORT AND
RECOMMENDATION**
16-CV-1465-AMD-SJB

Plaintiffs,

-against-

DMITREI ABRAMOV, BORIS KHANIS,OLEG
SHNAIDER, LIBERTY SURGICAL SUPPLIES INC.,
PACIFIC SURGICAL SUPPLY, INC., QUALITY
MEDICAL SUPPLY INC., RIDGE MEDICAL
SUPPLIES CORP., GRIGOL APRESYANTSI,
SERGEY MEZKULA, VALERIY SEMENIKHIN,
VADIM ZALOGIN, BIV WHOLESALE INC.,
COMDEX, GLOBAL BEST DEAL, INC.,
GRIGOL SUPPLY, INC., IG&NAT SERVICES, INC.,
IMPREZZA NYC INC., METRA WHOLESALE INC.,
ORTIZ OMEGA CORP., VDS MEDICAL SUPPLY,
INC., VZ GROUP, INC.,

Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance

Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, and

Allstate Property and Casualty Insurance Company (collectively "Allstate") commenced

this action on March 25, 2016 based on claims under the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c), and 1964(c), and for

common law fraud and unjust enrichment claims.  (Compl. dated Mar. 25, 2016, Dkt.

No. 1).  Allstate filed an Amended Complaint on May 9, 2016, to add additional

Defendants.  (Am. Compl. dated May 9, 2016, Dkt. No. 5).  Of the 88 Defendants in the

Amended Complaint, 23 did not appear and the Clerk of Court entered a default against them.[1] (Clerk's Entries of Default, Dkt. Nos. 187–93, 195–201, 209–13, 294–96, 307–10 ("Entries of Default")). Allstate filed its first motion for default judgment on May 22, 2018, which the Court denied without prejudice for failure to properly serve the individual defendants. *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465, 2019 WL 1177854, at *4–5 (E.D.N.Y. Feb. 21, 2019), *report and recommendation adopted*, 2019 WL 1172381 (Mar. 13, 2019). On April 22, 2019, Allstate filed a second motion for default judgment. (Second Mot. for Default J. dated Apr. 22, 2019 ("Second Mot."), Dkt. No. 340). Several months later, Allstate filed motions to amend the second motion for default judgment because some of the previously defaulting parties had appeared.[2] (First Mot. to Amend Second Mot. for Default J. dated July 16, 2019, Dkt. No. 347; Second Mot. to Amend Second Mot. for Default J. dated Jan. 23, 2020 ("Am. Second Mot."), Dkt. No. 351). The Honorable Ann M. Donnelly referred the Amended Second Motion for Default Judgment to the undersigned for a report and recommendation. (Order Referring Mot. dated July 19, 2019). For the reasons described below, the Court

---

[1] The Clerk of Court also entered defaults against One Stop Wholesale, Inc., Inna Lyubronetskaya ("Lyubronetskaya"), First American Alliance, Inc., Empire State Medical Supplies, Inc. ("Empire State Medical"), and Gikor Sonayan. (Clerk's Entries of Default, Dkt. Nos. 194, 201, 202, 211, 293). These defendants have settled and have been dismissed from the case. (Stipulation and Order of Voluntary Dismissal dated July 5, 2017, Dkt. No. 286; Stipulation and Order of Voluntary Dismissal dated Apr. 13, 2018, Dkt. No. 318; Mot. to Am. dated July 16, 2019, Dkt. No. 347; Stipulation and Order of Voluntary Dismissal, Dkt. No. 349; Am. Second Mot. at 1).

[2] Allstate excluded Defendant Margarita Akmalova from its Amended Second Motion for Default Judgment because Allstate has been unable to effectuate service upon Akmalova. Allstate has also excluded American Mobility Medical, Inc. due to existing unsatisfied judgments against it exceeding $500,000. (Mem. of Law dated Jan. 23, 2020 ("Pls.' Mem."), attached as Ex. A to Mot. to Am. Second Mot. for Default J., Dkt. No. 351 at 1 n.1).

respectfully recommends that the motion be granted and judgment entered against the remaining 21 defendants (collectively, the "Defaulting Defendants").

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

The Allstate Plaintiffs are Illinois corporations that provide automobile insurance coverage within the State of New York. (Am. Compl. ¶¶ 49–54). Defendants are corporations and their owners alleged to be involved in a series of complex parallel schemes intended to defraud Allstate through New York's No-Fault insurance system.[3] (*Id.* ¶ 1). Allstate alleges "that Defendants stole from [Allstate] through the submission of thousands of false and/or fraudulent insurance claims for durable medical equipment ('DME') and/or orthotic devices."[4] (*Id.* ¶ 2). Defendants billed Allstate for medical equipment that was "never provided, not provided as billed or, if provided, [was] of inferior quality relative to what was represented in the bills submitted to [Allstate] to have been provided and/or [was] otherwise medically unnecessary[.]" (*Id.* ¶ 23).

The Amended Complaint alleges that Defendants operated at least 38 schemes that were used to defraud Allstate. Each purported scheme involved a "Retailer(s)" of medical equipment and "Retail Owner(s)," a "Wholesaler(s)" of medical equipment and "Wholesale Owner(s)," and a medical clinic(s) that billed Allstate for medical services

---

[3] The system requires Allstate to pay for "health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York." (Am. Compl. ¶ 162).

[4] "Durable medical equipment" are medical supplies prescribed to patients for at-home use, such as cervical pillows, circulating pumps, infrared heat lamps, massagers, and whirlpools. (*Id.* ¶ 2). "Orthotic devices" are medical devices that "are used to support a weak or deformed body member or to restrict or eliminate movement," such as braces or cervical collars. (*Id.*). For the sake of simplicity, the Court generally refers to both of these as "medical equipment."

performed under the New York No-Fault system.[5] (*Id.* ¶ 3–7). Defendants can be categorized into four groups based on their roles in these schemes: (1) retail corporations ("Retailers" or "Retail Enterprises");[6] (2) owners of retail corporations ("Retail Owners");[7] (3) wholesale corporations ("Wholesalers");[8] and (4) owners of wholesale corporations ("Wholesale Owners").[9] (*Id.* at 2–4). The schemes generally operated as follows: medical clinics would prescribe patients with large amounts of unnecessary medical equipment, which Retailers would provide to patients. (Am. Compl. ¶ 5). Retailers, through their Owners, would contact Wholesalers, who would issue invoices for medical equipment they never actually provided (or sell Retailers inexpensive equipment and provide them with invoices grossly inflating the prices). (*Id.* ¶ 6). Retailers would then issue checks to Wholesalers according to the inflated invoice amount, and Wholesalers would cash the checks and return a portion of the money to

---

[5] The medical clinics are not parties in this action. (Am. Compl. ¶ 5).

[6] The defaulting Retailers are Liberty Surgical Supplies Inc. ("Liberty Surgical"), Pacific Surgical Supply, Inc. ("Pacific Surgical"), Quality Medical Supply Inc. ("Quality Medical"), and Ridge Medical Supplies Corp. ("Ridge Medical"). (Am. Compl. at 3; Clerk's Entries of Default, Dkt. Nos. 196–98, 294).

[7] The defaulting Retail Owners are Dmitrei Abramov ("Abramov"), Boris Khanis ("Khanis"), and Oleg Shnaider ("Shnaider"). (Am. Compl. at 2; Clerk's Entries of Default, Dkt. Nos. 199, 295, 309).

[8] The defaulting Wholesalers are BIV Wholesale Inc. ("BIV Wholesale"), Comdex Inc. ("Comdex"), Global Best Deal, Inc. ("Global Best Deal"), Grigol Supply, Inc. ("Grigol Supply"), IG&NAT Services, Inc. ("IG&NAT Services"), Imprezza NYC Inc. ("Imprezza"), Metra Wholesale Inc. ("Metra Wholesale"), Ortiz Omega Corp. ("Ortiz Omega"), VDS Medical Supply, Inc. ("VDS Medical"), and VZ Group, Inc. ("VZ Group"). (Am. Compl. at 3–4; Clerk's Entries of Default, Dkt. Nos. 187–93, 195, 210).

[9] The defaulting Wholesale Owners are Grigol Apresyantsi ("Apresyantsi"), Sergey Mezkula ("Mezkula"), Valeriy Semenikhin ("Semenikhin"), and Vadim Zalogin ("Zalogin"). (Am. Compl. at 3; Clerk's Entries of Default, Dkt. Nos. 212, 396, 307, 310).

Retailers, who would then give a portion to the medical clinics as a kickback. (*Id.* ¶¶ 7–8). Retailers would ultimately bill Allstate according to the inflated invoices. (*Id.* ¶ 9).

Allstate's Amended Complaint alleges violations of RICO, as well as fraud and unjust enrichment under New York law, (*id.* ¶ 45), and seeks damages in excess of $980,000, in addition to treble damages and prejudgment interest for the RICO violations (*id.* at 401). The Amended Complaint also seeks a Declaratory Judgment under 28 U.S.C. § 2201 against Retailers and Retail Owners relieving Allstate of the "obligation to pay the pending, previously-denied and/or submitted unpaid claims . . . regardless of the purported dates of service." (Am. Compl. ¶ 1629; *see id.* ¶¶ 1622–29).

Allstate served the Defaulting Defendants that are corporations with the Summons and Amended Complaint through New York's Secretary of State and the individuals who are Defaulting Defendants at their places of business, by affixing the documents to their doors and also mailing them. (*See* Summonses Returned Executed, Dkt. Nos. 18, 20–21, 25–26, 28–29, 31, 35, 40–41, 48–49, 57, 59, 90, 92–98).[10] Each of the Defaulting Defendants failed to appear or otherwise respond to the Amended Complaint, and the Clerk of Court entered default as to each one on various dates ranging from September of 2016 to January of 2018. (*See* Entries of Default).[11] Each of the other Defendants have settled. (*See* Mem. of Law dated Jan. 23, 2020 ("Pls.' Mem."), attached as Ex. A to Am. Second Mot., Dkt. No. 351 at 5). The Defaulting Defendants are as follows:

---

[10] There are two exceptions: Individual Defendants Shnaider and Zalogin were served outside of New York. (Summonses Returned Executed, Dkt. Nos. 75, 78).

[11] The Clerk of Court entered default against Semenikhin twice, (Clerk's Entries of Default, Dkt. Nos. 200, 212), but this is of no practical consequence.

| Table 1: Defaulting Defendants | | | |
|---|---|---|---|
| **Defaulting Retailer Enterprises (Corporations):** | **Defaulting Retail Owners (Individuals):** | **Defaulting Wholesale Owners (Individuals):** | **Defaulting Wholesalers (Corporations):** |
| Liberty Surgical Supplies Inc. ("Liberty Surgical") | Dmitrei Abramov ("Abramov") | Grigol Apresyantsi ("Apresyantsi") | BIV Wholesale Inc. ("BIV Wholesale") |
| Pacific Surgical Supply, Inc. ("Pacific Surgical") | Boris Khanis ("Khanis") | Sergey Mezkula ("Mezkula") | Comdex Inc. ("Comdex") |
| Quality Medical Supply Inc. ("Quality Medical") | Oleg Shnaider ("Shnaider") | Valeriy Semenikhin ("Semenikhin") | Global Best Deal, Inc. ("Global Best Deal") |
| Ridge Medical Supplies Corp. ("Ridge Medical") | | Vadim Zalogin ("Zalogin") | Grigol Supply, Inc. ("Grigol Supply") |
| | | | IG&NAT Services, Inc. ("IG&NAT Services") |
| | | | Imprezza NYC Inc. ("Imprezza") |
| | | | Metra Wholesale Inc. ("Metra Wholesale") |
| | | | Ortiz Omega Corp. ("Ortiz Omega") |
| | | | VDS Medical Supply, Inc. ("VDS Medical") |
| | | | VZ Group, Inc. ("VZ Group") |

Allstate filed a motion for default judgment on May 22, 2018. (*See* Mot. for Default J. dated May 22, 2018, Dkt. No. 322). On February 21, 2019, the Court respectfully recommended that the motion for default judgment be denied without prejudice for failure to comply with Local Rule 55.2(c). *Abramov*, 2019 WL 1177854, at *4–5. The Report and Recommendation was adopted on March 13, 2019, by the Honorable Ann M. Donnelly. *Abramov*, 2019 WL 1172381, at *1.

On April 22, 2019, Allstate filed a renewed motion for default judgment which complied with the Court's February 2019 Report and Recommendation and properly served the Defaulting Defendants according to Local Rule 55.2(c). (Second Mot.). The renewed motion, like the first motion for default judgment, sought specific monetary damages as to each defaulting Defendant, with members of each scheme jointly and severally liable for RICO damages. (*See* Proposed Judgment ("Proposed J."), attached as Ex. 1 to Decl. of James A. McKenney dated Apr. 19, 2019, Dkt. No. 340 at 2–5). The motion also seeks the same declaratory judgment as requested in the Amended Complaint, but only against the Retailers. (*See id.* at 5). The second motion and its

supporting papers were mailed to the Corporate Defendants at their last known business addresses and the Individual Defendants at their last known residential addresses. (Decl. of James A. McKenney dated Apr. 22, 2019 ("McKenney Decl."), attached to Second Mot., Dkt. No. 340 ¶¶ 57, 61).[12]  Allstate filed five declarations stating the motion papers were returned undeliverable as to Defendants Biv Wholesale, Empire State Medical, Global Best Deal, Ortiz Omega, and Mezkula.  (Decls. of Mailing, Dkt. Nos. 341–44, 350).  On July 19, 2019, the Honorable Ann M. Donnelly referred the motion to the undersigned for report and recommendation.  (Order Referring Mot. dated July 19, 2019).

On July 18, 2019, Allstate voluntarily dismissed two of the previously Defaulting Defendants, Empire State Medical and Lyubronetskaya, after they appeared and settled their claims with Allstate.  (Stipulation & Order of Voluntary Dismissal dated July 18, 2019, Dkt. No. 349; First Mot. to Am. Second Mot. for Default J. dated July 16, 2019, Dkt. No. 347).  The Court then directed Allstate to file an updated motion for default judgment with revised damages calculations in light of the appearances of the two previously defaulting parties.  (Order dated Jan. 17, 2020).  A week later, Allstate filed a motion to amend the second motion for default judgment with updated spreadsheets in light of the dismissal of Empire State Medical and Lyubronetskaya.  (Am. Second

---

[12] The Individual Defendants that have defaulted are Abramov, Apresyantsi, Khanis, Mezkula, Semenikhin, Shnaider, and Zalogin.  (McKenney Decl. ¶ 57).  The Corporate Defendants who have defaulted are Grigol Supply, Global Best Deal, VDS Medical Supply, Liberty Surgical Supplies, Ridge Medical Supplies, Empire State Medical Supplies, Pacific Surgical Supply, Quality Medical Supply, Biv Wholesale, Comdex, IG&NAT Services, Imprezza NYC, Metra Wholesale, Ortiz Omega, and VZ Group.  (McKenney Decl. ¶ 61).

Mot.).[13]  The Court now relies on the Amended Second Motion for Default Judgment

("Amended Second Motion") to decide whether default judgment is appropriate and

what damages to award.  For the reasons stated below, the Court respectfully

recommends that the motion be granted against the Defaulting Defendants.

DISCUSSION

I.     Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for

obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-

2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and

recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after

default has been entered, and the defendant fails to appear or move to set aside the

default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment

against that defendant.  Fed. R. Civ. P. 55(b)(2).

The Clerk entered defaults against each of the 21 Defaulting Defendants on

various dates ranging from September of 2016 to January of 2018.  (*See* Entries of

Default).  The next question, before reaching liability or damages, is therefore whether

the Defaulting Defendants' conduct is sufficient to warrant default judgment.

In determining whether to enter a default judgment, the Court is guided by the

same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp.*

---

[13] The only material differences between Allstate's Amended Second Motion for
Default Judgment and its Second Motion for Default Judgment are revised damages
charts and an updated list of defaulting defendants that excludes Empire State Medical
and Lyubronetskaya.

*v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by the Defaulting Defendants to respond to the Amended Complaint demonstrates the defaults were willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). They had sufficient notice of the present litigation because they were properly served with a summons and the Amended Complaint. *See supra* pp. 5–7. The second motion for default judgment was also served via mail to Defaulting Defendants in accordance with Local Rule 55.2, *i.e.* at their last known business addresses and/or home addresses. (Decls. of Mailing, Dkt. Nos. 341–44, 350; McKenney Decl. ¶¶ 52, 56, 57, 59–61). Notwithstanding this notice and service, the Defaulting Defendants did not respond to the Amended Complaint, did not appear, and have not in any way attempted to defend themselves, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude that there is any meritorious defense to the allegations because the Defaulting Defendants did not appear or present evidence of such a defense.

> [W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted.

*Id.* (quotations and citations omitted); *see, e.g.*, *Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether . . . defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, Allstate would be prejudiced if the motion for default were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074 (Jan. 26, 2009); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint.").

As a result, all three factors permit entry of default judgments. The Court now turns to the liability imposed, damages, and other relief awarded in such judgments.

II.     Liability

Allstate alleges that it is entitled to default judgment on the Amended Complaint's RICO, common law fraud, and unjust enrichment claims. The Court must therefore determine whether the facts alleged in the Amended Complaint are sufficient to establish the liability of Defaulting Defendants. *See Au Bon Pain Corp. v. Artect, Inc.*,

653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *e.g.*, *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277, 2016 WL 11395017, at *2 (E.D.N.Y. Feb. 17, 2016) ("Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Premier Prof'l Servs., LLC*, 2016 WL 1071099 (Mar. 18, 2016).

a. <u>RICO Claims</u>

Allstate alleges 13 substantive RICO Claims. (Am. Compl. at 109, 119, 184, 187, 196, 213, 231, 235, 243, 261, 295, 304, 314 (Claims for Relief 10, 14, 43, 44, 48, 56, 64, 65, 69, 77, 93, 97, 101); *see also* Ex. G dated Jan. 23, 2020 ("Final Damages Chart"), attached to Am. Second Mot., Dkt. No. 51). These RICO claims are alleged against the following Defaulting Defendants: Abramov, Apresyantsi, Khanis, Mezkula, Shnaider, Semenikhin, Zalogin, Biv Wholesale, Comdex, Global Best Deal, Grigol Supply, IG&NAT Services, Imprezza NYC, Metra Wholesale, Ortiz Omega, VDS Medical Supply, VZ Group (hereinafter "the RICO Defaulting Defendants").

RICO applies to the acts of "any person employed by or associated with any enterprise engaged in acts prohibited by the statute." *Allstate Ins. Co. v. Abutova*, No. 13-CV-3494, 2017 WL 1185222, at *4 (E.D.N.Y. Feb. 15, 2017) (quotations omitted), *report and recommendation adopted*, 2017 WL 1184107 (Mar. 29, 2017). Under RICO a person is "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3); whereas an enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," *id.* § 1961(4); *see also DeFalco v. Bernas*,

244 F.3d 286, 307 (2d Cir. 2001) ("[E]vidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise.").

"The alleged enterprise through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity." *Allstate Ins. Co. v. Yehudian*, No. 14-CV-4826, 2018 WL 1767873, at *8 (E.D.N.Y. Feb. 15, 2018) (quotations and alteration omitted) (collecting cases), *report and recommendation adopted*, 2018 WL 1686106 (Mar. 31, 2018). This distinction requirement is met by demonstrating that a "formal legal distinction" exists between the individual defendants and the RICO enterprise. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001). Where the alleged enterprises are corporations and the individual defendants are natural persons, the person-enterprise distinction is met. *See, e.g.*, *Palatkevich v. Choupak*, No. 12-CV-1682, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("[A] *natural person* named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met.").

Assuming that such distinctness exists, to state a RICO claim a plaintiff must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco*, 244 F.3d at 305 (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d. Cir. 1996)). Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To demonstrate a violation of § 1962(c), a plaintiff must show: "'(1) that the

defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). The Court concludes that Allstate has sufficiently pled claims for relief under RICO.

Allstate seeks to impose RICO liability on the RICO Defaulting Defendants. The Amended Complaint alleges that some of these RICO Defaulting Defendants, namely the Retail Owners and Wholesale Owners, are natural persons; whereas some of the RICO Defaulting Defendants, namely the Wholesalers, are corporate entities. (Am. Compl. at 19–40). Each of the RICO Defaulting Defendants, whether a corporation or individual, is alleged to have engaged in a pattern of racketeering activity through a separate and distinct entity, namely one of the named alleged RICO enterprises, *i.e.* the Retail Enterprises. (*E.g.*, *id.* ¶ 765 ("Through the Liberty Surgical Supplies enterprise, Defendant Abramov submitted hundreds of fraudulent claim forms[.]")). Allstate has sufficiently alleged the existence of illegal enterprises by describing how the Retail Enterprises constituted ongoing organizations through which individuals and corporations would perpetuate fraud against Allstate. (*See id.* ¶¶ 172, 174, 186). Further, Allstate has identified the connections between these RICO enterprises and the individual defendants by describing the process by which retailers, owners, and wholesale corporations participated in the racketeering activity. (*Id.* ¶¶ 394–405, 431–42, 705–16, 720–31, 757–70, 831–42, 905–15, 920–31, 957–68, 1031–42, 1179–90, 1216–27, 1253–64; Table 2, *infra*, pp. 14). There is, in other words, a corresponding

RICO enterprise identified for each of the RICO Defaulting Defendants. And none of the RICO Defaulting Defendants is alleged to be a RICO enterprise.

These allegations are sufficient to satisfy the distinctness requirement for RICO claims as to the RICO Defaulting Defendants, as well as elements one and six of a RICO claim. *See, e.g.*, *Abutova*, 2017 WL 1185222, at *4; *Allstate Ins. Co. v. Afayansyev*, No. 12-CV-2423, 2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016), *report and recommendation adopted*, 2016 WL 1189284 (Mar. 22, 2016); *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391, 2014 WL 527834, at *5 (E.D.N.Y. Feb. 7, 2014) (adopting report and recommendation); *Yehudian*, 2018 WL 1767873, at *8.

| Table 2 | | |
|---|---|---|
| **Defaulting Defendant** | **Claim for Relief** | **RICO Enterprise** |
| Sergey Mezkula | 10th Claim | Any Medical Supply, Inc. |
| Global Best Deal, Inc. | | |
| Vadim Zalogin | | |
| VZ Group, Inc. | | |
| IG&NAT Services Inc | | |
| Biv Wholesale, Inc. | 14th Claim | Bento Ortho Inc. |
| Ortiz Omega Corp. | 43rd Claim | Infinite Ortho Products, Inc |
| Biv Wholesale, Inc. | 44th Claim | Pravel, Inc |
| Dimitrei Abramov | 48th Claim | Liberty Surgical Supplies Inc. |
| Imprezza NYC, Inc. | 56th Claim | Maxford, Inc. |
| Comdex, Inc | 64th Claim | Milldorp, Inc |
| | 65th Claim | Sureway NY Inc. |
| Vadim Zalogin | 69th Claim | New Utrech Services, Inc. |
| VZ Group, Inc. | | |
| Oleg Shnaider | 77th Claim | Pacific Surgical Supply, Inc. |
| Metra Wholesale, Inc. | 93rd Claim | Quality Custom Medical Supply, Inc. |
| Grigol Apresyantsi | 97th Claim | Quality Medical Supply Inc. |
| Valeriy Semenikhin | | |
| Grigol Supply, Inc. | | |
| VDS Medical Supply, Inc. | | |
| Boris Khanis | 101st Claim | Ridge Medical Supplies Corp. |

i.    <u>Pattern of Racketeering Activity</u>

To determine whether a RICO claim has been stated, the Court first looks to whether Allstate has alleged sufficient facts to establish a "pattern" of "racketeering activity."

"Section 1961(1) sets forth an exclusive list of those acts that may constitute racketeering activity; those include: (1) mail fraud (18 U.S.C. § 1341); (2) wire fraud (18 U.S.C. § 1343); and (3) money laundering (18 U.S.C. § 1956)." *Cappone v. Morrissey*, No. 16-CV-7170, 2018 WL 4055280, at *6 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, 2018 WL 4054871 (Aug. 24, 2018). For acts to form a "pattern" of racketeering activity, there must be at least two predicate acts occurring within ten years of one another, 18 U.S.C. § 1961(5); they must be related and "amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

A plaintiff using the mail or wire fraud statutes as a RICO predicate must allege three elements: "(1) a scheme to defraud [including scienter], (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708, 717 (S.D.N.Y. 2018) (quoting *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016)). To state a claim for money laundering, a plaintiff must show that "defendant (1) engaged in a financial transaction that in fact involved the proceeds of a specified unlawful activity, (2) knew that the transaction involved such proceeds, and (3) either intended to promote the carrying on of a specified unlawful activity or knew the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the

proceeds." *Afanasyev*, 2016 WL 1156769, at *9 (quoting *Tymoshenko v. Firtash*, No. 11-CV-2794, 2015 WL 5505841, at *6 (S.D.N.Y. Sept. 18, 2015) (internal quotations and citations omitted)).

Finally, to demonstrate "participation" in the racketeering activity, "a plaintiff need only demonstrate that defendant played *some* part in the operation of the enterprise, even if not the predominant one." *Afanasyev*, 2016 WL 1156769, at *8 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). "[T]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required" *Reeves*, 507 U.S. at 179 (footnote omitted).

Allstate has pled sufficient facts to establish a pattern of racketeering activity under RICO. Allstate alleges that RICO Defaulting Defendants engaged in a pattern of racketeering activity by committing continuous and numerous acts of mail and/or wire fraud and money laundering beginning from as early as 1995 to the present. (Pls.' Mem. at 28–29; Am. Compl. ¶ 7, 36, 393–407, 430–44, 504–18, 704–33, 756–70, 830–44, 904–33, 956–70, 1030–44, 1178–92, 1215–29, 1252–66). Allstate has laid out, in detail, a scheme in which the RICO Defaulting Defendants each played a part—one that involved the mailing of thousands of fraudulent insurance claims over periods of time ranging from 3 to 15 years.[14]  (Am. Compl. ¶ 6). Allstate explained how the Retailers,

---

[14] The durations for each of the RICO claims sought in the Amended Second Motion are as follows: 10th Claim: six years; 14th Claim: three years; 43rd Claim: five years; 44th Claim: three years; 48th Claim: five years; 56th Claim: three years; 64th Claim: four years; 65th Claim: three years; 69th Claim: six years; 77th Claim: nine years; 93rd Claim: five years; 97th Claim: six years; and One-Hundred-and-First Claim: fifteen years.  (Pls.' Mem. at 28 n.9).

through their Owners, would contact Wholesalers, who would issue invoices for medical equipment they never actually provided (or sell Retailers inexpensive equipment and provide them with invoices grossly inflating the prices). (*Id.* ¶ 6). Retailers would engage in fraudulent transactions by issuing checks to Wholesalers according to the inflated invoice amount, knowing that Wholesalers would cash the checks and return a portion of the money to Retailers, who would then give a portion to the medical clinics as a kickback and then bill Allstate according to the inflated invoices. (*Id.* ¶¶ 7–8, 9). (And each of the RICO Defaulting Defendants was either a Wholesaler, Wholesale Owner, or Retail Owner—*see supra* pp. 6, 14—and therefore played *some* part in the predicate acts of racketeering).[15] There were also more than two such acts attributable to each RICO Defaulting Defendant. (*E.g.*, Am. Compl. ¶ 762 ("The racketeering acts set forth herein were carried out on a continued basis for more than a four-and-a-half-year period."), ¶ 765 ("Defendant Abramov submitted hundreds of fraudulent claim forms[.]")).

These allegations, accepted as true on default, constitute mail and wire fraud as well as financial transactions "done to conceal the true nature of the transactions and to present the illusion of legality" in violation of money laundering statutes. *See, e.g.*, *Aminov*, 2014 WL 527834, at *6. Numerous courts in this circuit have found that similar facts, taken as true on default, sufficiently establish violations of both mail and wire fraud and money laundering statutes. *See, e.g.*, *Abutova*, 2017 WL 1185222, at *6

---

[15] That the non-defaulting defendants have settled does not preclude the imposition of RICO liability on the defaulting defendants. *See, e.g.*, *Yehudian*, 2018 WL 1767873, at *19 (imposing RICO liability on defaulting defendants even though some of the non-defaulting defendants had settled); *Allstate Ins. Co. v. Kumar*, No. 10-CV-8166, 2013 WL 2395748, at *4 (S.D.N.Y. June 3, 2013) (same); *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 WL 5774459, at *18–19 (E.D.N.Y. Sept. 30, 2015) (same).

(noting that Allstate's allegations clearly establish violations of mail and wire fraud as well as money laundering) (collecting cases); *Yehudian*, 2018 WL 1767873, at *9 (same). Because it is alleged that each of the RICO Defaulting Defendants engaged in two or more such acts through a distinct RICO enterprise, the Amended Complaint has sufficiently alleged, and established on default, a pattern of racketeering activity and satisfied elements two through five of a RICO claim. *See id.*; *Abutova*, 2017 WL 1185222, at *6.

       ii.    <u>Interstate Commerce</u>

The final element under RICO requires a plaintiff to demonstrate that "defendant's racketeering acts . . . constitute participation in the affairs of an enterprise involved in interstate commerce." *Gov't Emps. Ins. Co. v. Scheer*, No. 13-CV-4039, 2014 WL 4966150, at *5 (E.D.N.Y. Aug. 18, 2014), *report and recommendation adopted*, 2014 WL 4966137 (Sept. 30, 2014). To meet this, "plaintiffs need only show a minimal effect on interstate commerce." *Abutova*, 2017 WL 1185222, at *6 (quotations omitted). Here, Allstate has alleged a fraudulent scheme involving national insurance companies and the mailing and cashing of checks obtained through falsely inflated invoices. Such facts are sufficient to meet the interstate commerce requirement. *See, e.g.*, *Afanasyev*, 2016 WL 1156769, at *10 (collecting cases) (noting that "[s]everal courts have found that identical facts are sufficient to establish the necessary impact on interstate commerce[]").

      b.   <u>Joint and Several Liability</u>

Allstate also seeks to hold the RICO Defaulting Defendants named in each RICO claim jointly and severally liable for all of the fraudulent billing submitted by each enterprise. (Pls.' Mem. at 39).

"Joint and several liability is rooted in the principle that a wrongdoer is liable for the reasonably foreseeable acts of his fellow wrongdoers[.]" *United States v. Philip Morris USA*, 316 F. Supp. 2d 19, 26 (D.D.C. 2004) (citing *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F. 3d 629, 633 (7th Cir. 2002)).  Although the Second Circuit has not yet directly addressed joint and several liability in a civil RICO action, *see Nazarov*, 2015 WL 5774459, at *17, "every circuit in this country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations." *Yehudian,* 2018 WL 1767873, at *18 (alteration omitted) (quoting *Philip Morris USA*, 316 F. Supp. 2d at 27).  Further, courts in this district have routinely found that joint and several liability is proper under civil RICO. *See, e.g.*, *id.* at *18 (collecting cases) (quotations omitted).  Because the alleged RICO schemes involve repeated fraudulent acts by multiple defendants, "plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused." *Allstate Ins. Co. v. Williams* ("*Williams I*"), No. 13-CV-2893, 2014 WL 6900121, at *10 (E.D.N.Y. Dec. 5, 2014) (quotations omitted) (adopting report and recommendation).

A RICO Defaulting Defendant can be jointly and severally liable only for the damages arising out of the RICO enterprise with which it was associated. *See, e.g.*, *Nazarov*, 2015 WL 5774459, at *17 ("[T]he Subject Defendants . . . participated in RICO enterprises to submit numerous fraudulent bills to Plaintiffs, such that each defendant contributed to the RICO Enterprise of which it was a part, and should be held jointly and severally liable with the other participants in the *particular* scheme."  (emphasis added)).  Accordingly, the Court finds that RICO Defaulting Defendants are "jointly and

severally liable for the entire amount of damages resulting from the RICO violations associated with each of the respective schemes that they participated in." *Abutova*, 2017 WL 1185222, at *9 (quotations omitted).  Table 2, *supra* p. 14, details each RICO enterprise and the Defaulting Defendant(s) connected with that enterprise.

   c.  <u>Common Law Fraud</u>

Allstate also alleges that several of the Defaulting Retail Defendants (the Retail Enterprises and the Retail Owners), namely Abramov, Liberty Surgical Supplies, Shnaider, Pacific Surgical Supply, Quality Medical Supply, Khanis, and Ridge Medical Supply, committed common law fraud (hereinafter the "Fraud Defaulting Defendants").[16]  (Am. Compl. ¶ 45; Pls.' Mem. at 32 n.10).  A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (quotations omitted); *accord Schlaifer Nance & Co.*, 119 F.3d at 98.

"[I]n federal court, fraud must be plead with particularity in accordance with Fed. R. Civ. P. 9(b)[.]" *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005).  As a result, in making out the first element for fraud—a material representation or omission of fact—a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state

---

[16] Allstate also seeks to impose RICO liability claims against some of these the Retail Owner Defendants: Abramov, Shnaider, and Khanis.  *See supra* p. 11.  However, while it is appropriate to impose liability for both RICO and common law fraud, because the predicate acts for both causes of action are the same, the Court only recommends awards of damages based on the RICO violations.

where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at *10 (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)); *see also Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720, 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation).

Here, Allstate has alleged that Fraud Defaulting Defendants, through false and misleading statements, created a fraudulent scheme that billed Allstate for reimbursements to which they were not eligible. (Am. Compl. ¶¶ 161–303). The Amended Complaint attaches as exhibits charts that list the bills that these parties submitted to Allstate, along with claim numbers and when the claim was received (the "Claims Charts"). (Charts of Fraudulent Claims dated May 9, 2016, attached as Exs. 1–56 to Am. Compl., Dkt. No. 5; *see also* App. to Am. Complaint dated May 9, 2016, Dkt. No. 5). Each of the Fraud Defaulting Defendants were involved with at least one of the claims contained in the Claims Charts.

The Amended Complaint alleges that each and every one of these claims was fraudulent, *i.e.* it was either for services not rendered or for costs not actually incurred, or both. (Am. Compl. ¶¶ 2–4, 9, 10, 16). A claim for fraud must satisfy Rule 9(b), that is, the claim must identify with particularity the statement alleged to be fraudulent, the speaker, and when the statement was made. Fed. R. Civ. P. 9(b). The Claims Charts—which contain statements or claims made by each of the Fraud Defaulting Defendants and when those claims were made—are sufficient to meet this standard. *See, e.g.*, *Badia*, 2015 WL 1258218, at *15 ("Plaintiffs' very detailed chart identifies Baneur as the speaker of the fraudulent statements and states when and where each statement was made by listing Baneur's claim submission dates, claim numbers and claim-demand amounts."); *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028, 2013 WL 9600668, at

*5 (E.D.N.Y. July 19, 2013) ("Plaintiffs set forth examples and described in detail how the Retail Defendants submitted charges for items more expensive than those actually dispensed, if dispensed at all. Plaintiffs have also supplied a schedule detailing when the Retail Defendants' claims were paid. Accordingly, Plaintiffs have pled the fraud with sufficient particularity[.]") (citations omitted), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.*, 2013 WL 5209415 (Sept. 13, 2013); *Allstate Ins. Co. v. Lyons* ("*Lyons I*"), 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent. The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate. Such information clearly directs defendants to the specific misrepresentations Allstate is alleging. Under the circumstances, the specificity requirement of 9(b) requires no more[.]" (citations omitted)).

Additionally, Allstate has alleged that the Fraud Defaulting Defendants knew that the claims submitted were false claims. (Am. Compl. ¶¶ 776, 1050, 1272). And the Amended Complaint alleges that the Fraud Defaulting Defendants had both motive and opportunity for the fraud: they each had strong motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims to Allstate. (*Id.* ¶¶ 452, 465, 478, 491, 504, 517, 530); *see also Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120, 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019) (alleging that the Fraud Defaulting Defendants, along with various providers, "intentionally made . . . false and fraudulent statements and concealed material facts in a calculated effort to induce

GEICO to pay charges"), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 57885 (Mar. 31, 2019). Such motive and opportunity are sufficient basis on which to infer that a party acted with an intent to defraud. *See, e.g.*, *Spectrum Neurology*, 2016 WL 11395017, at *3 ("This [intent] requirement may be satisfied by alleging facts that show that defendants had both motive and opportunity to commit fraud." (quotations omitted)); *see also Allstate Ins. Co. v. Lyons* ("*Lyons II*"), No. 11-CV-2190, 2015 WL 13735435, at *4 (E.D.N.Y. Mar. 10, 2015) ("Since the purpose of submitting these false claims was to obtain funds the defendants were not entitled to obtain, there was an unmistakable intent to have the plaintiffs rely on the false claims."), *report and recommendation adopted*, Order dated Mar. 31, 2015; *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157, 2013 WL 829302, at *7 (E.D.N.Y. Feb. 11, 2013) ("Plaintiffs allege that Defendants not only knew that they were submitting fraudulent claims to Allstate, but that they did so intentionally in a scheme for profit. This gives rise to a strong inference of fraudulent intent and is sufficient to establish the scienter requirement." (citation omitted)), *report and recommendation adopted as modified*, 2013 WL 829274 (Mar. 6, 2013).[17]

Finally, Allstate avers that it relied on the facially valid bills that were submitted by the Defaulting Defendants; and as a consequence, it paid them in excess of $980,000 in claims otherwise not reimbursable under the No-Fault law. (Am. Compl. ¶ 48).[18]

---

[17] Furthermore, "[t]he volume of fraudulent claims, which generated more than [$980,000] in payments over several years, is further evidence of defendants' fraudulent intent and lack of inadvertence or mistake." *Spectrum Neurology*, 2016 WL 11395017, at *4 (citations omitted).

[18] $980,000 reflects the estimated total amount of damages from all defendants, including those who have settled separately with Allstate and are not part of this motion for default judgment.

These allegations, taken as true on default, satisfy the fourth and fifth elements of common law fraud by showing a reasonable reliance on Defaulting Defendants' misrepresentations, which caused injury to Allstate. *See e.g.*, *Erlikh*, 2019 WL 1487576, at *7 ("Given the lengths the Defaulting Defendants took to conceal the fraudulent bills . . . and the facially valid bills, it was reasonable for GEICO to rely on the bills containing the purported misstatements and pay the Defaulting Defendants."); *Spectrum Neurology*, 2016 WL 11395017, at *4; *cf. State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04-CV-5045, 2008 WL 4146190, at *13 (E.D.N.Y. Sept. 5, 2008) (finding in the RICO context that "[t]he harm here is directly quantifiable—State Farm has alleged that it was harmed when defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein").

Allstate, therefore, has sufficiently alleged each of the elements for a claim of common law fraud against the Fraud Defaulting Defendants and is therefore entitled to a judgment of liability on its claims of common law fraud.

d. Unjust Enrichment

Allstate seeks a default judgment for unjust enrichment against the Fraud Defaulting Defendants. Having decided to grant a default judgment on the fraud claims against these parties, it is inappropriate to also grant judgment on the unjust enrichment claims. While Allstate explains in its brief that its Amended Complaint meets the elements of an unjust enrichment claim, (*see* Pls.' Mem. at 36–37), it does not address the viability of such a claim when other tort liability already exists. Although its name suggests otherwise, unjust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a

plaintiff only in those circumstances where she has no other recourse in tort or contract. As the New York Court of Appeals has explained:

> unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (citations omitted).

Here, Allstate alleges that the Defaulting Defendants were unjustly enriched at Allstate's expense. But Allstate's unjust enrichment claims are based on the same transactions as their claims for common law fraud, and thus these claims duplicate the fraud claims. As a result, Allstate is not entitled to a judgment on its claims for unjust enrichment. *See Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) ("Unjust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.") (quotations omitted); *e.g.*, *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) ("The instant case is not representative of the 'unusual' circumstances which provide for an unjust enrichment claim. The Plaintiffs' unjust enrichment claim rehashes and improperly duplicates their fraud claims. . . . As this claim is based on the same set of facts as the fraud claim, the Plaintiffs' thirteenth (unjust enrichment) claim is dismissed[.]"); *Nazarov*, 2015 WL 5774459, at *16 (denying liability in default judgment motion reasoning that "as Plaintiffs have established the Danilovich Defendants' liability for common law fraud,

Plaintiffs have not adequately pled a claim for unjust enrichment because that claim would rely on duplicative facts.").

III.    <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992). "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases). Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make a damages determination upon a review of detailed affidavits and documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

Allstate has submitted declarations from James A. McKenney, attorney for Allstate, and Michael Bruno, an Analyst in the Special Investigations Unit of Allstate, and other supporting documents in order to demonstrate its damages. (McKenney Decl.; Bruno Decl.; Exs. A–G dated Jan. 23, 2020 ("Amended Charts"), attached to Am. Second Mot., Dkt. No. 351). The Defaulting Defendants have not submitted any response or opposition to these filings.

a. RICO Damages

Allstate has submitted spreadsheets itemizing each payment made by Allstate to the Retail Enterprises on account of the fraudulent billings, along with a declaration from Bruno detailing how the damages were calculated based upon payment records maintained by Allstate in the ordinary course of business. (*See* Exs. 56–69, attached to McKenney Decl., Dkt. No. 322; App. to Am. Compl., Dkt. No. 5; Decl. of Michael Bruno dated Apr. 22, 2019 ("Bruno Decl."), attached to Second Mot., Dkt. No. 340 ¶ 3–4). These spreadsheets list the claim numbers submitted by each enterprise, the billing codes used, the dates of payment, and the amounts paid. (*See* Exs. 56–69, attached to McKenney Decl., Dkt. No. 322; App. to Am. Compl., Dkt. No. 5). Allstate seeks RICO damages based upon the itemized payments given to the RICO Defaulting Defendants.

Allstate requests treble damages for each RICO claim asserted against the RICO Defaulting Defendants. (Am. Compl. ¶ 46). Pursuant to 18 U.S.C. § 1964(c), an injured party is automatically entitled to recover "threefold the damages" it sustains for a RICO violation. Indeed, "[c]ourts have found that an award of treble damages is appropriate in No-Fault billing cases involving RICO fraud claims, even in the context of a default." *Afanasyev*, 2016 WL 1156769, at *12 (collecting cases). "These damages may be

recovered independently of any enterprise liability." *Id.* (citing *4 K& D Corp. v. Concierge Auditions, LLC*, 2 F. Supp. 3d 525, 536 n.4 (S.D.N.Y. 2014)).

The damages calculations submitted by Allstate are sufficient evidence on which to award RICO damages. *E.g.*, *Nazarov*, 2015 WL 5774459, *17 (noting that "[i]n similar cases, courts have found such documentation [an affidavit from Allstate's Michael Bruno and copies of payment summaries] sufficient to support a damages award[.]" (collecting cases)). Therefore, the Court respectfully recommends that Allstate be awarded treble damages against the following Defaulting Defendants in the amounts listed below in Table 3.

b. Set-offs

Allstate has included in their final calculations certain set-offs based on settlements reached with other defendants who were also involved in the same RICO enterprises as the RICO defaulting defendants. (*See* Final Damages Chart). "In RICO cases, when a plaintiff settles with one defendant, the non-settling defendants are entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the non-settling defendants as long as both the settlement and judgment represent common damages. The set-off is not an affirmative defense." *Allstate Ins. Co. v. Polack*, No. 08-CV-565, 2012 WL 4489282, at *7 (E.D.N.Y. Sept. 12, 2012) (quotations and citations omitted), *report and recommendation adopted*, 2012 WL 4490775 (Sept. 28, 2012). Allstate has noted that there is a settlement amount of $5,000 with a party to the 10th Claim for Relief. (Pls.' Mem. at 39). Therefore, all other parties named in the 10th Claim for relief received a $5,000 deduction from the total

judgment amount (after trebling).[19]  The final amount of damages to be awarded, after set-offs, for each RICO violation is listed below in Table 3:

| Defaulting Defendant | RICO Claim(s) | Retailer Enterprise | RICO Damages | Treble Damages | Set-Offs | Total |
|---|---|---|---|---|---|---|
| Table 3: Total RICO Damages | | | | | | |
| Sergey Mezkula | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | $162,711.91 |
| Global Best Deal, Inc. | 10th - RICO | Any Medical Supply, Inc | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| Vadim Zalogin | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| | 69th - RICO | New Utrech Services, Inc. | $23,607.19 | $70,821.57 | 0 | $70,821.57 |
| VZ Group, Inc. | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| | 69th - RICO | New Utrech Services, Inc. | $23,607.19 | $70,821.57 | 0 | $70,821.57 |
| IG&NAT Services Inc | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| Biv Wholesale, Inc. | 14th - RICO | Bento Ortho Inc. | $36,161.87 | $108,485.61 | 0 | $108,485.61 |
| | 44th - RICO | Pravel, Inc | $39,448.09 | $118,344.27 | 0 | $118,344.27 |
| Ortiz Omega Corp. | 43rd - RICO | Infinite Ortho Products, Inc | $31,227.96 | $93,683.88 | 0 | $93,683.88 |
| Dimitrei Abramov | 48th - RICO | Liberty Surgical Supplies Inc. | $19,830.21 | $59,490.63 | 0 | $59,490.63 |
| Imprezza NYC, Inc. | 56th - RICO | Maxford, Inc. | $75,335.49 | $226,006.47 | 0 | $226,006.47 |
| Comdex, Inc | 64th - RICO | Milldorp, Inc | $20,679.34 | $62,038.02 | 0 | $62,038.02 |
| | 65th - RICO | Sureway NY Inc. | $57,666.30 | $172,998.90 | 0 | $172,998.90 |
| Oleg Shnaider | 77th - RICO | Pacific Surgical Supply, Inc. | $8,220.72 | $24,662.16 | 0 | $24,662.16 |
| Metra Wholesale, Inc. | 93rd - RICO | Quality Custom Medical Supply, Inc. | $14,745.00 | $44,235.00 | 0 | $44,235.00 |
| Grigol Apresyantsi | 97th - RICO | Quality Medical Supply Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Valeriy Semenikhin | 97th - RICO | Quality Medical Supply Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Grigol Supply, Inc. | 97th - RICO | Quality Medical Supply, Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| VDS Medical Supply, Inc. | 97th - RICO | Quality Medical Supply, Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Boris Khanis | 101st - RICO | Ridge Medical Supplies Corp. | $194,090.94 | $582,272.82 | 0 | $582,272.82 |

---

[19] Drawing on the authority of other circuits, courts in this district have held that calculating set-offs after trebling damages is appropriate.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04-CV-4631, 2007 WL 4326920, at *9 (E.D.N.Y. Dec. 7, 2007) (adopting report and recommendation) ("[T]he Court finds that the settlement monies received by [plaintiff] from the other defendants should be deducted from the total amount of treble damages owed.") (collecting cases).

c. Fraud Damages

Allstate also seeks damages against the Fraud Defaulting Defendants. (Pls.'
Mem. at 37–38; McKenney Decl. at 47; Final Damages Chart). Having found that
Allstate has sufficiently demonstrated liability on its fraud claims, Allstate is entitled to
damages in the entire amount it paid to the Fraud Defaulting Defendants, unless it is
already recovering damages against that Defaulting Defendant for a RICO violation. *See*
Restatement (Second) of Torts § 525 (Am. Law Inst. 1977) ("One who fraudulently
makes a misrepresentation of fact . . . for the purpose of inducing another to act . . . is
subject to liability to the other in deceit for pecuniary loss caused to him by his
justifiable reliance upon the misrepresentation."); *Gov't Emps. Ins. Co. v. Esses*, No. 12-
CV-4424, 2013 WL 5972481, at *10, n.3 (E.D.N.Y. Nov. 5, 2013) (adopting report and
recommendation) ("Since the award of damages under RICO wholly compensates the
plaintiffs and the award having been trebled, the plaintiffs are not entitled to separate
awards of damages on the claims for common law fraud and unjust enrichment."). The
Court, therefore, respectfully recommends that Allstate be awarded compensatory
damages from the Fraud Defaulting Defendants in the amounts listed below:[20]

---

[20] Under New York law, a fraud action may be commenced within "six years from
the date the cause of action accrued." N.Y. C.P.L.R. § 213(8); *Spectrum Neurology*,
2016 WL 11395017, at *6 n.6. Because this action was commenced in March 2016, the
earliest Allstate could seek fraud damages under the New York statute of limitations is
March 2010. Allstate is only seeking damages for claims falling within the six-year
statute of limitations for Liberty Surgical, Pacific Surgical, and Quality Medical. Allstate
is seeking, however, damages from as early as 2001 for Defendant Ridge Medical
Supplies. Had Ridge Medical appeared in the case, it could have asserted a statute of
limitations defense. By failing to appear, it has waived this defense. *See, e.g.*, *Spectrum
Neurology*, 2016 WL 11395017, at *6 n.6 (noting that defaulting defendants had waived
their statute of limitations defense by failing to respond to plaintiff's complaint)
(collecting cases); *see also Connor v. Kira Int'l, Inc.*, No. 13-CV-417, 2015 WL 4656530,
at *6 n. 7 (E.D.N.Y. July 14, 2014) (same) (collecting cases).

| Table 4: Common Law Fraud Damages | | |
|---|---|---|
| **Defaulting Defendant** | **Claim** | **Damages** |
| Liberty Surgical Supplies, Inc. | 49th - Fraud | $20,625.92 |
| Pacific Surgical Supply, LLC | 78th - Fraud | $8,220.72 |
| Quality Medical Supply Inc. | 98th - Fraud | $26,689.12 |
| Ridge Medical Supplies, Corp. | 102nd - Fraud | $195,951.05 |

(*See* Final Damages Chart).

d. Prejudgment Interest

In addition, Allstate seeks prejudgment interest at the rate of 9% per year on its RICO, common law fraud, and unjust enrichment claims. (Pls.' Mem. at 40–42). "An award of prejudgment interest is [not] mandatory . . . under RICO." *Kumar*, 2013 WL 2395748, at *4. Under RICO, prejudgment interest "is awarded at the discretion of the Court." *Abutova,* 2017 WL 1185222, at *9. "Courts in this circuit generally only award prejudgment interest in civil RICO actions where treble damages do not adequately compensate for plaintiff's losses." *Id.* (quoting *Afanasyev*, 2016 WL 1156769, at *14 (collecting cases)); *see also Kumar*, 2013 WL 2395748, at *4 ("Prejudgment interest is not necessary where trebled damages have sufficiently compensated the plaintiff and where there are no extraordinary circumstances that would otherwise warrant compelling defendants to pay interest."). Here, the Court finds that Allstate is already sufficiently compensated by the award of treble damages for its RICO claims, and thus an award of prejudgment interest from the RICO Defaulting Defendants is inappropriate.

Allstate is, however, entitled to prejudgment interest on its fraud claims. "In diversity cases, the award of prejudgment interest is a substantive issue, governed . . . by

New York law." *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261, 2013 WL 764735, at *8 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 765190 (Feb. 28, 2013). New York law provides for prejudgment interest on fraud claims, *id.*, and dictates that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001(b). In the insurance fraud context, however, "prejudgment interest accrues from the date the insurance company makes payment." *IAV Med. Supply*, 2013 WL 764735, at *9 (quotations omitted).

In its motion, Allstate requests less interest than what New York law provides; it requests that the Court calculate interest "from the first day of the year following the date of Plaintiffs' first payment to the relevant Retailer's enterprise." (Pls.' Mem. at 41–42; Ex. F dated Jan. 23, 2020 ("Interest Charts"), attached to Am. Second Mot., Dkt. No. 351). The Court recommends that Allstate be awarded prejudgment interest at 9% per year, beginning on the first day of the year following Allstate's payments through May 1, 2018.[21] (*See* Interest Charts at 1 ("Interest is calculated from January 1st of the year following the year in which each payment was made by Plaintiffs through May 1, 2018."); *IAV Med. Supply*, 2013 WL 764735, at *9; *see, e.g.*, *Allstate Ins. Co. v. Williams* ("*Williams II*"), 2015 WL 5560543, at *8 (E.D.N.Y. 2015) ("For each fraudulent claim, Allstate seeks interest from the first day of the year following the year in which it received that claim through December 31, 2014. This methodology, which groups all of the claims filed in a given year into a group for purposes of computing interest, has been

---

[21] Allstate is not seeking any additional interest that might have accrued after May 1, 2018. (*See* Pls.' Mem. at 42 n.11).

used in previous default cases in this district, and I recommend doing so here as well.");

*Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295, 2013 WL 5131057, at

*9 (E.D.N.Y. Sept. 12, 2013) (granting prejudgment interest using the same calculation).

The Court recommends that the 9% per year interest rate be awarded in the following

amounts, from the dates indicated until May 1, 2018:[22]

| Table 5: Prejudgment Interest on Common Law Fraud Claims | | | | | | |
|---|---|---|---|---|---|---|
| **Defaulting Defendant** | **Claim** | **Annual Damages** | | **Annual Prejudgment Interest** | | **Total: Compensatory Damages and Prejudgment Interest** |
| Liberty Surgical Supplies, Inc. | 49th - Fraud | 2011 | $7,426.91 | 2011 | $4,230.64 | $29,835.18 |
| | | 2012 | $4,194.12 | 2012 | $2,011.57 | |
| | | 2013 | $2,688.22 | 2013 | $1,047.39 | |
| | | 2014 | $6,316.67 | 2014 | $1,892.67 | |
| | | **Total:** | **$20,625.92** | **Total:** | **$9,182.26** | |
| Pacific Surgical Supply, LLC | 78th - Fraud | 2010 | $343.91 | 2010 | $226.85 | $11,895.11 |
| | | 2011 | $3,606.71 | 2011 | $2,054.51 | |
| | | 2012 | $635.07 | 2012 | $304.59 | |
| | | 2013 | $806.64 | 2013 | $314.28 | |
| | | 2014 | $2,013.68 | 2014 | $603.36 | |
| | | 2015 | $814.71 | 2015 | $170.80 | |
| | | **Total:** | **$8,220.72** | **Total:** | **$3,674.39** | |
| Quality Medical Supply Inc. | 98th - Fraud | 2010 | $6,054.28 | 2010 | $3,993.59 | $42,026.73 |
| | | 2011 | $17,517.99 | 2011 | $9,978.88 | |
| | | 2012 | $1,675.01 | 2012 | $803.36 | |
| | | 2013 | $1,441.84 | 2013 | $561.77 | |
| | | **Total:** | **$26,689.12** | **Total:** | **$15,337.61** | |
| Ridge Medical Supplies, Corp. | 102nd - Fraud | 2001 | $5,377.24 | 2001 | $7,902.54 | $328,794.07 |
| | | 2002 | $3,774.00 | 2002 | $5,206.73 | |
| | | 2003 | $0.00 | 2003 | $0.00 | |
| | | 2004 | $9,495.00 | 2004 | $11,390.43 | |
| | | 2005 | $10,148.80 | 2005 | $11,261.38 | |
| | | 2006 | $4,220.45 | 2006 | $4,303.30 | |
| | | 2007 | $4,186.55 | 2007 | $3,891.96 | |
| | | 2008 | $8,470.90 | 2008 | $7,112.36 | |
| | | 2009 | $14,365.24 | 2009 | $10,768.55 | |
| | | 2010 | $27,639.85 | 2010 | $18,232.09 | |
| | | 2011 | $36,877.54 | 2011 | $21,006.79 | |
| | | 2012 | $47,625.61 | 2012 | $22,842.03 | |
| | | 2013 | $20,031.64 | 2013 | $7,804.77 | |
| | | 2014 | $3,738.23 | 2014 | $1,120.09 | |
| | | **Total:** | **$195,951.05** | **Total:** | **$132,843.02** | |

(*See* Interest Charts).

[22] The amounts in these tables come from the Interest Charts, attached to the Amended Second Motion for Default Judgment as Exhibit F. Allstate has provided the Court with the spreadsheets it used to determine damages, (*see* Interest Charts), and the Court has confirmed the accuracy of Allstate's principal and interest calculations.

e.  Unjust Enrichment

It is unclear from Allstate's papers whether it is seeking damages or an award based upon its unjust enrichment claims.  To the extent Allstate seeks damages from any of the Defaulting Defendants on its claims of unjust enrichment, the Court recommends that application be denied.  As explained above, *see supra* pp. 24–26, Allstate is not entitled to a judgment of liability based on unjust enrichment; as such, the Court cannot award damages for such claims.  *See, e.g.*, *Abutova*, 2017 WL 1185222, at *7 (awarding no damages for unjust enrichment when "plaintiffs' motion for a default judgment on the unjust enrichment claims should be denied as duplicative"); *Nazarov*, 2015 WL 5774459, at *16 (same).

IV.  Declaratory Judgment

Allstate also seeks a declaratory judgment relieving Allstate from any obligation to pay the approximately $183,200 in unpaid fraudulent claims made by the defaulting Retail Defendants.  (Am. Compl. ¶ 43; Bruno Decl. ¶ 6).  A party seeking a declaratory judgment must allege that there is a "substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (quotations and emphasis omitted).  "The controversy must be real and substantial such that declaratory relief will provide 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Williams II*, 2015 WL 5560543, at *6 (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 177 (2d Cir. 2001)).  "Declaratory relief is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it

will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" *Id.* (quoting *Md. Cas. Co. v. Rosen,* 445 F.2d 1012, 1014 (2d Cir. 1971)). However, "a court has broad discretion to decide whether to render a declaratory judgment." *Id.* (citing *Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1100 (2d Cir. 1993)).

The Court declines to recommend entry of a declaratory judgment. For one thing, there is nothing to indicate any of the Defaulting Defendants are currently seeking payment of the outstanding invoices submitted to Allstate. Allstate alleges that Retail Defendants will "continue to bill" Allstate for false and fraudulent claims absent a grant of declaratory relief, (Am. Compl. ¶ 1629), but aside from this vague, generalized allegation, the record is devoid of any evidence that this allegation is true: no specific invoices for these outstanding payments have been submitted; no proof of any attempt to collect by the Defaulting Defendants has been provided. Indeed, the Defaulting Defendants by all evidence have all but ceased communicating with Allstate—mail has been returned unavailable for some, *supra* p. 7; none of the Defaulting Defendants have responded to the Amended Complaint, filed an appearance, or responded to the panoply of filings made by Allstate. If any of the Defaulting Defendants were in fact continuing to seek payment from Allstate, the Court would expect some evidence of such an effort, either through demand letters, arbitration or similar proceedings for collections or affirmative litigation brought against Allstate. No such evidence has been proffered in the motion for default judgment. The absence of such evidence suggests that there is no actual justiciable controversy between the parties over the bills submitted by the Defaulting Defendants to Plaintiffs, and absent such actual controversy, it would be inappropriate—and indeed the Court lacks the power—to issue an advisory opinion on a

hypothetical dispute between Allstate and some or all the Defaulting Defendants. *See, e.g.*, *Hamburg-Sud N. Am., Inc. v. Bomix Industria de Embalagens Ltda.*, No. 15-CV-4774, 2017 WL 9482108, at *5 (E.D.N.Y. Nov. 3, 2017) ("[T]here is no justiciable case or controversy, and no potential for the declaratory judgment plaintiffs seek to alter defendant's conduct. According to plaintiffs, the sole purpose of the declaratory judgment they seek is to limit the potential exposure they *may* face in an action currently pending in Brazil. In essence, then, plaintiffs are attempting to litigate a defense they may have to an action pending in Brazil before this Court."), *report and recommendation adopted*, 2017 WL 6606896 (Dec. 26, 2017). As such, the Court respectfully recommends that declaratory relief be denied.

<u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends that the motion for default judgment be granted against the Defaulting Defendants as follows:

1. Against the RICO Defaulting Defendants, liability be entered as to Allstate's RICO claims;

2. Against the Fraud Defaulting Defendants, liability be entered as to Allstate's common law fraud claims;

3. Against the RICO Defaulting Defendants, treble damages as reflected in Table 3, and without prejudgment interest;

4. Against the Fraud Defaulting Defendants, compensatory damages and prejudgment interest as reflected in Table 5;

5. The Court also recommends that the motion for declaratory judgment be denied, and the following causes of action be dismissed against the following Defaulting Defendants:

     a. Unjust Enrichment claims against the RICO Fraud Defaulting
       Defendants

     b. Any claims asserted against Akmalova and American Mobility.

6. The Court respectfully recommends that Allstate be awarded damages in the
   amounts as summarized in Appendix A and B to this Report and
   Recommendation.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.") (quotations omitted).

Allstate is directed to serve a copy of this Report and Recommendation on each defaulting Defendant and file proof of such service on the record.

                 SO ORDERED.

                 */s/ Sanket J. Bulsara* Feb. 21, 2020
                 SANKET J. BULSARA
                 United States Magistrate Judge

Brooklyn, New York

| Appendix A: Total RICO Damages | | | | | | |
|---|---|---|---|---|---|---|
| **Defaulting Defendant** | **RICO Claim(s)** | **Retailer Enterprise** | **RICO Damages** | **Treble Damages** | **Set-Offs** | **Total** |
| Sergey Mezkula | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | $162,711.91 |
| Global Best Deal, Inc. | 10th - RICO | Any Medical Supply, Inc | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| Vadim Zalogin | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
|  | 69th - RICO | New Utrech Services, Inc. | $23,607.19 | $70,821.57 | 0 | $70,821.57 |
| VZ Group, Inc. | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
|  | 69th - RICO | New Utrech Services, Inc. | $23,607.19 | $70,821.57 | 0 | $70,821.57 |
| IG&NAT Services Inc | 10th - RICO | Any Medical Supply, Inc. | $55,903.97 | $167,711.91 | ($5,000) | 162,711.91 |
| Biv Wholesale, Inc. | 14th - RICO | Bento Ortho Inc. | $36,161.87 | $108,485.61 | 0 | $108,485.61 |
|  | 44th - RICO | Pravel, Inc | $39,448.09 | $118,344.27 | 0 | $118,344.27 |
| Ortiz Omega Corp. | 43rd - RICO | Infinite Ortho Products, Inc | $31,227.96 | $93,683.88 | 0 | $93,683.88 |
| Dimitrei Abramov | 48th - RICO | Liberty Surgical Supplies Inc. | $19,830.21 | $59,490.63 | 0 | $59,490.63 |
| Imprezza NYC, Inc. | 56th - RICO | Maxford, Inc. | $75,335.49 | $226,006.47 | 0 | $226,006.47 |
| Comdex, Inc | 64th - RICO | Milldorp, Inc | $20,679.34 | $62,038.02 | 0 | $62,038.02 |
|  | 65th - RICO | Sureway NY Inc. | $57,666.30 | $172,998.90 | 0 | $172,998.90 |
| Oleg Shnaider | 77th - RICO | Pacific Surgical Supply, Inc. | $8,220.72 | $24,662.16 | 0 | $24,662.16 |
| Metra Wholesale, Inc. | 93rd - RICO | Quality Custom Medical Supply, Inc. | $14,745.00 | $44,235.00 | 0 | $44,235.00 |
| Grigol Apresyantsi | 97th - RICO | Quality Medical Supply Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Valeriy Semenikhin | 97th - RICO | Quality Medical Supply Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Grigol Supply, Inc. | 97th - RICO | Quality Medical Supply Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| VDS Medical Supply, Inc. | 97th - RICO | Quality Medical Supply, Inc. | $26,689.12 | $80,067.36 | 0 | $80,067.36 |
| Boris Khanis | 101st - RICO | Ridge Medical Supplies Corp. | $194,090.94 | $582,272.82 | 0 | $582,272.82 |

| Appendix B: Total Common Law Fraud Damages | | | | |
|---|---|---|---|---|
| **Defaulting Defendant** | **Claim** | **Total Damages** | **Total Prejudgment Interest** | **Total Damages and Prejudgment Interest** |
| Liberty Surgical Supplies, Inc. | 49th - Fraud | $20,625.92 | $9,182.26 | $29,835.18 |
| Pacific Surgical Supply, LLC | 78th - Fraud | $8,220.72 | $3,674.39 | $11,895.11 |
| Quality Medical Supply Inc. | 98th - Fraud | $26,689.12 | $15,337.61 | $42,026.73 |
| Ridge Medical Supplies, Corp. | 102nd - Fraud | $195,951.05 | $132,843.02 | $328,794.07 |